UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. SHEILA K. OBERTO, MAGISTRATE JUDGE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )   No. 13-CR-409-AWI
                               )
vs.                            )   DETENTION HEARING
                               )
ADAM ALAN HENRY,               )
                               )
          Defendant.           )
_____)

Fresno, California            Monday, November 18, 2013

REPORTER'S TRANSCRIPT OF PROCEEDINGS

KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiff:          United States Attorney's Office
                            BY: **DAVID GAPPA**
                            2500 Tulare Street
                            Suite 4401
                            Fresno, California 93721


For the Defendant:          **DANIEL L. HARRALSON**
                            Attorney at Law
                            Post Office Box 26688
                            Fresno, California 93729

3

1    Monday, November 18, 2013                    Fresno, California

2    1:58 p.m.

3          THE COURT:  Calling the last matter on the duty

4    calendar.  Thank you very much for coming back.  Calling the

5    11th matter on calendar.  United States versus Adam Alan

6    Henry.  Case number 13-mj-237.

7          MR. GAPPA:  Good afternoon, Your Honor, David Gappa

8    for the United States.

9          THE COURT:  Good afternoon.  Ms. Olson, while they're

10   bringing in Mr. Henry, can I ask you a question?  I left you a

11   phone message, but I'm sure you didn't get it.  If I can speak

12   with you real quickly regarding this matter.

13          (Off the record.)

14          THE COURT:  Thank you.  I apologize for the delay.

15   If we could please have the appearances in Mr. Henry's cause.

16          MR. HARRALSON:  Yes, Your Honor.  Dan Harralson on

17   behalf of Adam Henry, who's present in custody.  He does not

18   need the assistance of an interpreter.

19          MR. GAPPA:  Good afternoon, Your Honor, David Gappa

20   for the United States.

21          THE COURT:  Good afternoon, Mr. Harralson.  Good

22   afternoon, Mr. Gappa.  And good afternoon to you, Mr. Henry.

23          This is the time is place for the detention hearing

24   in this case.  I have reviewed the report.  I've actually

25   discussed it at some length with Mr. Olson.  And do the

4

1  parties have any comments or additions with respect to the
2  report?

3       MR. HARRALSON:  Your Honor, I can only say, on behalf
4  of Mr. Henry, that I believe that the report very completely
5  analyzes and deals with all aspects of the case.  But would
6  like to point out that there will be no children at the home
7  where he will be residing.  If he's released, he'll be with
8  his mother in the country.  There will be no internet access.

9       And he will be required to have his third party
10 custodian, should his mother be accepted as that third party
11 custodian, at any contact with his own children.  And that
12 he'll have no contact with any children other than his own.

13      So I believe that -- and also he's going to be -- as
14 I understood this report, he would be on house arrest.

15      THE COURT:  Home incarceration.

16      MR. HARRALSON:  So he would be basically restricted
17 to the home unless there was some extraordinary circumstance
18 might be required to leave the home.  And I think based upon
19 Mr. Olson's analysis of the situation, the circumstances in
20 this case, my client should be released.

21      THE COURT:  Thank you very much, Mr. Harralson.

22      MR. HARRALSON:  Under the terms that are set forth.

23      THE COURT:  Understood.  Thank you very much, Mr.
24 Harralson.  Mr. Gappa.

25      MR. GAPPA:  Your Honor, the government opposes the

1   defendant's release.  Notes, as I'm sure the Court is aware,

2   there is a presumption on both grounds that are referenced in

3   the complaint.  The presumption is on both the danger and the

4   flight risks.  And we don't believe that these conditions

5   sufficiently ensure the safety of the community.

6         Among other things, the defendant has repeatedly

7   abused the trust of those close to him, such as his employer.

8   And those people responsible for his employment were also his

9   relatives.

10        But specifically, I don't believe -- I know for a

11  fact that Mr. Olson has not reviewed any of the evidence in

12  this case.  So if the report reflects any analysis of the

13  danger element, typically Pretrial Services takes the view

14  that they don't address that.  So I know that he hasn't

15  reviewed any of the evidence in this case and declined an

16  offer to do that.

17        But the government's view is that this defendant,

18  over the course of several months and years, had attempted to

19  and did surreptitiously record people in his house in intimate

20  moments and in very personal situations.  Specifically using

21  hidden cameras in a bathroom and in a bedroom.  And recorded,

22  among other people, friends and relatives.  And I've got a set

23  of exhibits for the Court's review, which I can provide and

24  I'll give a copy to counsel just for purposes of this hearing.

25  With the Court's permission.

6

1          THE COURT:  Mr. Gappa.

2          MR. GAPPA:  Yes.

3          THE COURT:  I have reviewed -- thank you.  I have

4    reviewed the -- no.  You can approach --

5          MR. GAPPA:  Okay.

6          THE COURT:  -- if you would like to provide anything.

7    But I do have a question for you.

8          Thank you.  I'm going to return these.  That specific

9    one.  I have reviewed the complaint.  And I know that the

10   charges in this case are receipt and distribution of child

11   pornography.  And that is what's before me today.  Correct?  A

12   complaint.  And I'm not minimizing in any way the charges,

13   but --

14         MR. GAPPA:  Your Honor, that is correct.  And I think

15   when I referenced the allegations in the complaint, there was

16   also a federal search warrant that was done.  The federal

17   search warrant did reference an additional charge for

18   production and attempted sexual exploitation of a minor.  And

19   I know that that is what the indictment, its return will

20   allege.  There will be a count referencing sexual exploitation

21   of a minor and attempted sexual exploitation of a minor.

22         THE COURT:  Will there be a production charge?

23         MR. GAPPA:  Yes.

24         THE COURT:  In the indictment?

25         MR. GAPPA:  Yes.

1          THE COURT:  And it will be a production of child

2    pornography?

3          MR. GAPPA:  Yes.  And attempt.  Because among other

4    things, what these images show is the defendant's very

5    concerted efforts over time to work with his wife to install

6    cameras in their bathrooms and in the bedroom.  And then

7    specifically, looking at pages 5 and 6, these are images of

8    the defendant removing a curtain before a 14 year old female

9    was using that bathroom to change clothes.  And then the 14

10   year old victim in page 6 caught changing clothes.

11         And later, the defendant's wife is seen using a

12   camera in the bedroom which then recorded a video of minor

13   changing clothes.  And it wasn't just that she was changing

14   clothes, it was that there had been basically a conspiracy

15   between the defendant and his wife to have her specifically in

16   front of this camera at certain angles.  And there were tests

17   done to make sure that the camera was properly positioned.

18         And then even though this girl was reluctant to

19   remove any of her clothing, the defendant's wife had her

20   remove the clothing.  And what I did not include here were

21   some of the close-up edited versions of these photos, one of

22   which is at page 11.  But where the defendant, having produced

23   the video of this encounter in the bedroom, then created still

24   images and cropped those and focused on the genital or pubic

25   area of this 14-year-old girl.

1          But there were other victims of the surveillance and

2     the photos that were taken.  13, 14 year old people.  9 and 10

3     show some of the efforts where the defendant is setting up a

4     camera.  10, where it's apparent that he's cut out portions of

5     the ceiling in that house to secure the camera.

6          Specifically the 14-year-old girl who was depicted in

7     the image at page 11 was their babysitter, which by itself, in

8     the government's view, is an abuse of that relationship.  But

9     not only that, she was the daughter of the defendant and his

10    wife's best friend.  So in other words --

11          THE COURT:  How old is she?

12          MR. GAPPA:  She was at this time 14.  And there are

13    other images where, for instance, her breasts are more fully

14    exposed.  The government chose not to present those in this

15    packet of images.

16          THE COURT:  And as I understand it, you plan on

17    requesting that the grand jury return an indictment on

18    Thursday for production of child pornography against Mr.

19    Henry?

20          MR. GAPPA:  Yes.

21          THE COURT:  And is Mrs. Henry involved in that?  You

22    don't need to tell me if you can't.  But -- because I heard

23    you say that he and his wife were doing this.

24          MR. GAPPA:  She is very clearly involved.  It's just

25    that the investigation is still ongoing and there were certain

1    things that still needed to be done before a final decision
2    could be made.  So in the interim, when the federal search
3    warrant was executed -- take that back.

4         The warrant was executed at the residence because,
5    although this started as a more or less routine investigation
6    of peer-to-peer file sharing, it was being shared out of the
7    business which I think is significant for a couple of reasons.

8         One, the defendant is very sophisticated with his
9    technology, had been the IT director at that business and set
10   up a network there.  And it is most likely because of the
11   faster internet connection there.  And I think in his view the
12   perceived lower risk of somebody connecting him to that
13   material that he used the work place as the main location for
14   receiving and distributing child pornography.

15        However, when the investigators went there, they
16   could pretty quickly determine that somebody had been
17   transferring files from one location to another.  That led
18   them to his house.  When they went to the house, they did find
19   additional child pornography there.

20        But in addition, when they reviewed the computers
21   that had been seized, they saw many, many videos that had been
22   produced over the course of years.  Some of which are depicted
23   in these screen captures.  But it was apparent to them, in
24   reviewing this material, that they saw the defendant and his
25   wife and local victims in the images.  So it appeared to them

1    that there were still cameras at that location, which they

2    were not aware of and didn't seize when the first search

3    warrant was done.

4         So they obtained the second search warrant.  That was

5    executed more recently.  And at that time, the investigators

6    attempted to interview the defendant's wife.  She refused to

7    speak to them and was arrested and has been charged by the

8    Stanislaus County District Attorney's Office.  Whether or not

9    there will be a federal charge against her in connection with

10   this hasn't yet been decided.

11        THE COURT:  Thank you for that information.

12        Mr. Harralson, before you respond, I'm not sure that

13   Mr. Olson was aware of the fact that there may be charges in

14   connection with production of child pornography being brought.

15        MR. HARRALSON:  Your Honor, I did read the initial

16   reports written by officers regarding the search warrant.

17        THE COURT:  Well, I don't really need that.  I have

18   the complaint.

19        MR. HARRALSON:  Well, I understand that, Your Honor.

20   But as I understood it from those reports, they were alleging

21   that she was there with the 14 year old.  But there was no

22   evidence that my client was there at any time that this 14

23   year old was being filmed or anything like this was going on.

24        So I mean, although Mr. Gappa has envisioned that my

25   client did all of these things and he envisions this modus

1   operandi and everything, I think the police reports basically

2   represent that the wife did these things.  And there's no

3   evidence, at least -- I haven't seen those photographs, but

4   there's no evidence that I've seen in the reports that

5   indicate that my client produced any child pornography.

6          Now, there may have been -- there may have been

7   filming of adults.  But we're talking about child pornography

8   here.  And the reports -- and that's why I'm a little bit

9   surprised because the reports talk about her being involved

10  and her positioning the camera.  And yet Mr. Gappa is talking

11  about my client doing it.

12         And there was an interview of this 14-year-old girl.

13  And as I understood it, from the reports that I received, she

14  never mentioned my client as being there or involved in any of

15  that filming.  So I would -- I would object to Mr. Gappa's

16  representations in that regard because that's not what the

17  police officers said when they interviewed the young lady that

18  was interviewed.

19         And again, I don't have a copy of those photographs.

20  But he represents that my client was there positioning a

21  camera.  But I don't see anything in the reports where the

22  young lady says that my client was there or was involved in

23  any way during those particular instances.

24         And having filmed -- I don't see any police reports

25  that indicate that the filming of any adults was without their

1   consent.  I haven't seen any of that.  I don't know -- and as

2   I understand it, it's not illegal for adults to film

3   themselves in sexual scenarios.  But I've not seen that.  I've

4   only seen the reports that were written by the officers that

5   presented the search warrants.

6          And I don't see anything that indicates that my

7   client was involved in production.  In receiving, the

8   information I think, yes, that the information was received to

9   a computer that -- you know, and I have to say, Your Honor, if

10  my client was so sophisticated and he was doing something

11  illegal like this, the computer that this came to was under

12  his name, under his -- I mean, he understands IP addresses, he

13  understands all of that.  And I would suggest to the Court

14  that there may be -- there may be an argument that these were

15  incidental recordings that came with other legal recordings

16  without his knowledge.

17         And the allegations, of course, are here by Mr.

18  Gappa, but I'm not seeing anything from the -- from the

19  reports that I've seen, that these were intentional downloads.

20  Number one.  Number two, that he was involved in any way with

21  the production of those films of this 14-year-old girl.

22         Now, I'm sure Mr. Gappa, in his imagination and his

23  theory of the case, believes that my client was there, but I

24  don't see the evidence that supports that from what I've

25  received.

1      THE COURT:  Thank you, Mr. Harralson.  Let me do

2  this.  I have not had an opportunity to review the reports

3  that you're referring to, Mr. Harralson.

4      MR. HARRALSON:  Yes.

5      THE COURT:  And I don't know that Mr. Olson has.  I'm

6  going to ask that you provide a copy to Mr. Olson.  And I'm

7  going to ask whether the parties have an objection to my

8  continuing this matter to 1:30 on Thursday.  By that time,

9  either there will be charges of production -- and I'm not

10  saying that that will necessarily close the door on release or

11  determine detention or release unequivocally.  But at that

12  time, the charges will either be brought or they will not be

13  brought.  And I know that it's within the prosecutor's

14  discretion until the indictment is returned.

15      So if the paries don't have an objection, I'd like to

16  continue this to 1:30 p.m. on Thursday and allow Mr. Olson to

17  receive copies of what you have, Mr. Harralson, and the

18  indictment will hopefully be returned before 1:30 so that we

19  can take up this matter.  Is there any objection by either

20  party to that?

21      MR. GAPPA:  Your Honor, could I ask before anybody

22  decides that.  It works for the government, to answer the

23  Court's question.  Whether -- we currently, as I understand

24  it, have arraignment on Friday.  And there's something in my

25  office scheduled which has required three other people to

1    change their schedules.  I could try to work around that for

2    Thursday afternoon.

3            THE COURT:  Understood.  Actually, the only reason I

4    put it over until Thursday.  Friday is fine.

5            MR. GAPPA:  Okay.

6            THE COURT:  I will not be here.  Judge Austin will be

7    handling it.  And if the parties don't have an objection, that

8    may work out better because you won't have to make another

9    trip.

10           MR. HARRALSON:  But, would Judge Austin have an

11   opportunity to review the materials to be prepared for the

12   hearing as you are?

13           THE COURT:  Well, I will be speaking with him.

14   Absolutely.  I will be speaking with him about the case and

15   Mr. Olson will also be reviewing the information.  And --

16           MR. HARRALSON:  Excuse me.  I was just informed by

17   Mr. Olson that he has reviewed this information, is fully

18   aware of this information.

19           PRETRIAL SERVICES OFFICER:  If all defense counsel

20   has is the complaint, I've read the complaint.

21           THE COURT:  Oh, I thought you were referring to

22   reports.  I read the complaint too, Mr. Harralson.  I thought

23   that you had reports.

24           MR. HARRALSON:  No.  I'm reading the backup

25   information of what the police officer said they saw -- or

1    they did with the 14-year-old girl.  I didn't see anything in

2    there that indicated my client was present during anything

3    regarding the 14-year-old girl.

4            THE COURT:  I'm sorry.  I thought that you had the

5    officer's direct conversations or reports of their

6    conversations with Mr. Henry or Ms. Henry.

7            MR. HARRALSON:  No, Your Honor.

8            THE COURT:  I have reviewed the complaint.

9            MR. HARRALSON:  But I would assume that if they did

10   have conversations with her that indicated my client was there

11   and doing these things, that they would have mentioned it here

12   in the complaint.  It was not mentioned in the complaint.

13   However, it was mentioned that his wife was there and that she

14   did these particular acts.

15            So I'm assuming that an officer, who is attempting to

16   be complete and write a report, especially supporting my

17   client's complaint and not his wife's complaint, would mention

18   his name if his name was brought up in any way with this

19   14-year-old girl.

20            So maybe I'm assuming too much, but I think it only

21   makes sense that if there was any allegation against my client

22   filming this 14-year-old girl, that it would have been in the

23   complaint against my client rather than mentioning his wife

24   who's not even included in the complaint.  And not him.  So

25   that's my concern.

1        And what I'm seeing is the officer, you know, that

2    wrote the complaint or the information that supports the

3    complaint that doesn't mention my client whatsoever with

4    regard to the production of anything regarding this young

5    lady.

6        And when Mr. Gappa talks about photographs being

7    cropped and photographs being this and being that, I don't

8    know where that comes from.  But I don't know if he has proof

9    that my client did it or he just has proof that someone did it

10    and perhaps my client's wife or some other individual was

11    involved in that.

12        But I did hear some statements about why my client

13    used the work computer.  And that's all speculation.  And

14    that's all, you know, what Mr. Gappa believes is the theory of

15    his case and does not necessarily mean that that's the facts

16    of the case.

17        And that's why I think that this is -- this is a bit

18    of overreaching.  Because my client is not mentioned by the

19    14-year-old girl and is not mentioned in the complaint, where

20    I think it's logical that he would be mentioned since this

21    complaint is against him.

22        I just -- and I understand what the Court is

23    suggesting.  Mr. Olson has the information that I have.  And I

24    do not have the police reports.  But I would suggest to the

25    Court if I did, those police reports would not mention my

client's name or my client's name would have been mentioned in that portion of the complaint.

THE COURT:  Thank you, Mr. Harralson.  Well, if the government elects to file production charges against Mr. Henry, they're going to have to prove those charges.  So they're either going to file those charges or not.  And I'm -- if they do file them, there will be information forthcoming to you to connect your client to production charges.  That's all I was referring to when I mentioned Thursday.

MR. HARRALSON:  But -- I understand, Your Honor.  But in discussing this, I understood that there was no production charge that was anticipated this morning.  Before we came here to court.  So --

THE COURT:  And that's what I thought also.

MR. HARRALSON:  -- I don't know where this is coming from.

THE COURT:  That's also what I thought.

PRETRIAL SERVICES OFFICER:  And Your Honor, Mr. Gappa is correct when he says that we don't -- we, Pretrial Services, does not delve into the weight of the evidence.  And we do no analysis of the applicable rebuttable presumption. We -- that's beyond our scope.  So my recommendation is independent of those.  I can consider the nature and circumstances of the offense charged, but I'm not going into

1   the weight of the evidence.

2           THE COURT:  I understand that.

3           So going back to my question.  Is there an objection

4   to continuing this to either Thursday or Friday in conjunction

5   with the -- Friday would be in conjunction with the

6   preliminary hearing or the arraignment on the indictment,

7   assuming an indictment is returned.  And I would fully brief

8   Judge Austin for the Friday hearing or I will be prepared to

9   handle it on Thursday.

10          MR. HARRALSON:  Your Honor, I'm fine on Thursday.

11          MR. GAPPA:  Your Honor, if it is possible, I think

12  Friday is a more efficient day given that we already have a

13  court date set for that.  Also I'd have to inconvenience three

14  other colleagues in my office to set up a briefing for a Ninth

15  Circuit argument.

16          THE COURT:  I can -- I mean --

17          MR. HARRALSON:  I'll submit it, Your Honor.

18          THE COURT:  You have no objection to Friday.  I was

19  going to say I can change the time if that's better for the

20  parties.

21          PRETRIAL SERVICES OFFICER:  Actually, Your Honor, the

22  fifth day is -- would that be Wednesday because of the

23  holiday?

24          THE COURT:  That's why I asked.

25          PRETRIAL SERVICES OFFICER:  And then -- so yeah.

1    THE COURT:  That's why I asked if the parties have an

2  objection.  Yes, I understand that.  So do the parties -- so

3  I'm assuming the parties do not -- well, I take it the parties

4  do not have an objection to having this matter heard beyond

5  the fifth day on Friday at 1:30 p.m.?

6    MR. HARRALSON:  That's fine, Your Honor.

7    MR. GAPPA:  That's fine.

8    THE COURT:  All right.  So the detention matter will

9  be continued.  And it will be before Judge Austin on Friday at

10  1:30 p.m.  I will speak with Judge Austin probably by

11  Thursday.  I will be here on Thursday.  So I'll speak

12  with -- and I'll communicate all of the information that you

13  provided, Mr. Harralson and Mr. Gappa.  And I'm sure he'll be

14  speaking with Mr. Olson also.

15    MR. HARRALSON:  Thank you.

16    THE COURT:  You're welcome.  Thank you very much.

17    (The proceedings were concluded at 2:24 p.m.)

18

19    I, KAREN HOOVEN, Official Reporter, do hereby certify

20  that the foregoing transcript as true and correct.

21

22  DATED:  15th of July, 2016          /s/  Karen Hooven
                                        KAREN HOOVEN, RMR-CRR
23

24

25