1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                            --o0o--

4    UNITED STATES OF AMERICA,        ) Case No. 1:13-cr-00409-AWI-BAM
                                      )
5                    Plaintiff,       ) Fresno, California
                                      ) Friday, November 22, 2013
6         vs.                         ) 2:19 P.M.
                                      )
7    ADAM ALAN HENRY,                 ) Hearing re:  detention; and
                                      ) arraignment and plea re:
8                    Defendant.       ) indictment.
     _____)
9
                        TRANSCRIPT OF PROCEEDINGS
10             BEFORE THE HONORABLE GARY S. AUSTIN
                   UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For Plaintiff:              DAVID L. GAPPA
13                               U.S. Attorney's Office
                                 2500 Tulare Street, Suite 4401
14                               Fresno, CA   93721
                                 (559) 497-4000
15
     For Defendant:              DANIEL L. HARRALSON
16                               A Law Corporation
                                 P.O. Box 26688
17                               Fresno, CA   93729
                                 (559) 486-4560
18
     Court Recorder:             OTILIA ROSALES
19                               U.S. District Court
                                 2500 Tulare Street, Suite 1501
20                               Fresno, CA   93721
                                 (559) 499-5928
21
     Transcription Service:      Petrilla Reporting &
22                                 Transcription
                                 5002 - 61st Street
23                               Sacramento, CA   95820
                                 (916) 455-3887
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

1

1    FRESNO, CALIFORNIA, FRIDAY, NOVEMBER 22, 2013, 2:19 P.M.

2

3         THE COURT:  All right.  Let's go on the record with

4    the matter of U.S. v. Adam Henry, and this is -- we should --

5    it was formerly here on a complaint and it looks like he was

6    arraigned on the complaint, but it does not look like he was

7    arraigned on the indictment.

8         MR. HARRALSON:  Your Honor, we just received the

9    indictment today.

10        THE COURT:  I was going to say, because it was filed

11   on the 21st.  You ready to proceed on the arraignment of the

12   indictment and I'll vacate the preliminary hearing that was

13   previously set and note that the case number has changed from

14   an "mj" case number ending in 237 to a criminal case number now

15   ending in 409.

16        So, counsel, when ready.

17        Mr. -- the record should reflect that Mr. Gappa is

18   here, and from Pretrial Services, Mr. Olson, who's prepared a

19   report and then I have an exhibit that you should have

20   received, Mr. Harralson, that the Court also has a copy of, and

21   this is from the U.S. Attorney's Office.

22        But let's take up first matters first, and that is

23   the arraignment on the indictment.

24        MR. HARRALSON:  Yes, Your Honor.  We received a copy

25   of the indictment that was filed November 21st, 2013 setting

2

1   forth two counts.  My client's name is correctly set forth

2   thereon and we waive a reading of the indictment, my client's

3   statutory and constitutional rights.

4           THE CLERK:  Use the microphone please.

5           MR. HARRALSON:  I'm sorry.

6           THE CLERK:  Thank you.

7           MR. HARRALSON:  Okay.  We have received the

8   indictment.  My client's name is correctly set forth thereon,

9   plead not guilty to both counts contained therein, deny the

10  forfeiture allegation and request discovery and a status

11  hearing on this matter.

12          THE COURT:  All right.  And I assume, Mr. Gappa, the

13  government's asking for reciprocal discovery?

14          MR. GAPPA:  Yes, Your Honor.

15          THE COURT:  And Mr. Gappa, if you have the penalty

16  slip I'm going to be calling upon you to recite what's in there

17  in just a moment.

18          Mr. Henry, on your behalf the Court is going to enter

19  pleas of not guilty to all counts that exist in the indictment

20  and deny on your behalf any allegations or enhancements that

21  may be contained therein as well on your behalf.

22          I will ask Madam Clerk find a status hearing, but ask

23  counsel maybe to confer with one another about when they wish

24  to have that set.  In the meantime the Court will order

25  discovery within the local rule time frame.  I assume some

1    discovery probably has been turned over already and I will

2    order reciprocal discovery.

3            Mr. Henry, just let me remind you you've already had

4    an initial appearance in this case when it was in a complaint

5    stage, but you are entitled to be represented and continue to

6    be -- and have a continued right to be represented by counsel

7    throughout all of these proceedings.  That's been addressed.

8            Mr. Harralson, have you been retained in this case or

9    appointed --

10           MR. HARRALSON:  I'm appointed, Your Honor.

11           THE COURT:  -- off the panel?  All right.  So that

12   issue has been addressed by way of appointment.

13           In addition I remind you, Mr. Henry, of your right to

14   remain silent.  You don't have to say anything about these

15   charges and your silence can't be used nor interpreted against

16   you, but should you elect to say something other than in

17   confidence to Mr. Harralson or his defense team what you do say

18   might later be used against you.  So caution should be

19   exercised in that regard.

20           And finally, the complexion of the case has changed

21   somewhat because I understand that count No. 1 now regarding

22   the allegation pursuant to 18 U.S.C. 2251 may be above and

23   beyond what was in the initial complaint.  I'm not sure of that

24   because I don't have the complaint in front of me.  But Mr.

25   Henry, I don't know what will ultimately happen in this case;

4

1   whether or not you'll be convicted of either of these offenses,

2   but should you be there are certain penalties that you face and

3   I'm going to call upon Mr. Gappa at this time to announce those

4   for the record so that you know what they are.

5           MR. GAPPA:  Thank you, Your Honor.  For count 1 the

6   maximum term of imprisonment is 30 years.  There's a minimum

7   term of 15 years.

8           For count 2 the maximum is 20 years.  The minimum is

9   five years.

10          For both counts 1 and 2 there is a potential $250,000

11  fine, lifetime term of supervised release and a mandatory $100

12  penalty assessment.

13          THE COURT:  All right.  And again, Mr. Henry, I don't

14  know what the outcome of this case will be; whether or not

15  you'll be convicted of either of these offenses, but those are

16  the possible penalties that you face should you be convicted.

17          I do have a Pretrial Services report and

18  recommendation.  I know -- I believe that the government is

19  moving for detention.  I'm not sure if it's on both danger and

20  flight.  Mr. Gappa, perhaps you can inform the Court because

21  there was an initial detention hearing that was begun when this

22  case was before Judge Oberto.  She's gone today so I'm taking

23  the calendar over for her, so there are some things that you

24  may have brought up to her attention that I'm unaware of.

25          So Mr. Gappa, are you asking for detention?  And then

5

1    if so, on what grounds?

2           MR. GAPPA:  Yes, Your Honor, on both the flight and

3    danger grounds.

4           THE COURT:  All right.  And I do have a Pretrial

5    Services report and recommendation and that report is authored

6    by Mr. Olson, but I think Mr. Olson was not aware at the time

7    of perhaps count No. 1 or what's in Government's Exhibit No. 2.

8    And Mr. Harralson, perhaps I should just digress for a minute.

9    Have you received a copy of Exhibit No. 2?

10          MR. HARRALSON:  I have, Your Honor, and I've reviewed

11   it.

12          THE COURT:  And I assume the government's asking that

13   this be filed with the Court and we would file it under seal

14   obviously.

15          MR. GAPPA:  Yes.  Thank you, Your Honor.

16          THE COURT:  All right.  And Mr. Olson, let me return

17   to you.  You have prepared a report and recommendation,

18   thorough report.  I do note that maybe circumstances since it's

19   preparation have changed somewhat and so I'm going to ask for

20   your input with regard to whatever changes may have occurred

21   between the time you prepared that report and today.  And if

22   so, if there is any changed circumstances, if that would alter

23   your recommendation.

24          MR. OLSON:  Well Your Honor, obviously my initial

25   recommendation was made in consideration of the nature and

6

1  circumstances as they were laid out in the complaint, which did

2  not include count 1 of the indictment.

3          THE COURT:  Yeah.  And that's noted in your report.

4          MR. OLSON:  And as the Court's aware, my

5  recommendation is made independent of the weight of the

6  evidence, the rebuttable presumption; mostly focuses on the

7  nature and circumstances of the offense, not so much the

8  details.

9          That being said, Your Honor, I'm not sure -- and draw

10  the Court's attention to count 1, knowingly employed used,

11  persuaded, induced, enticed or coerced a minor to engage in any

12  sexually explicit conduct for the purpose of producing a visual

13  depiction.  How do I address that through conditions?

14          THE COURT:  I think that's -- for the Court -- let me

15  just indicate that I think when there is no criminal history

16  and we are dealing generally with just one count of the

17  receipt, and in my opinion there's kind of a demarcation

18  between receipt and also distribution, but if it's simply

19  receipt and minimal distribution, no criminal history, I think

20  my general practice has been to release.  But when you really

21  cross the line with this Court's opinion is when you have

22  allegations that are addressed in count No. 1 and that's a very

23  tough hurdle for the Court at that point.

24          MR. HARRALSON:  May I be heard, Your Honor?

25          THE COURT:  Yes.  And I intend to hear, but first of

1    all I want to just learn a little bit more about Exhibit No. 2

2    so that you can respond all at one time as opposed to this

3    being broken up with me going back and forth between you and

4    Mr. Gappa.

5           Mr. Gappa, let me ask the basis for your request and

6    tell us more about Exhibit 2.  It's somewhat self-explanatory I

7    should note.

8           MR. GAPPA:  Sure.  It was, Your Honor, mainly in

9    response to the previous hearing.  I know the Court wasn't here

10   for that and may not have the benefit of what happened at that

11   previous hearing.  However, the government at that time

12   introduced -- offered Exhibit 1 which was a different series of

13   items taken from a forensic analysis of some of the evidence

14   that had been seized in this case and the suggestion and the

15   argument from the defense was well, to the extent that there's

16   been any kind of filming of anybody in that residence there's

17   no indication that my client was involved in that.

18          So the implication of that argument is that if he

19   were, that it would have some significance.  And so it wasn't

20   that that's not serious conduct, that's not something the Court

21   should be concerned about.  It's rather that was somebody else

22   who was responsible for that, somebody else who's not before

23   the Court, somebody who's not charged and certainly not my

24   client.

25          So in response, the government, in the intervening

8

1    time asked the investigator to go back and to gather some

2    evidence that would show in fact as alleged in the indictment

3    that the defendant has been responsible for installation and

4    use of cameras in his residence, and notably the defendant

5    began installing and using these cameras even before he knew of

6    his current wife and having a relationship with her.

7           So in the government's view, completely eviscerates

8    the argument that he had nothing to do with the cameras being

9    installed and used to film the 14 and 15-year-old female

10   because as depicted in some of these images, the camera was

11   installed -- for instance, look at page five of eight, that is,

12   I would represent, a still shot of a video that was taken by a

13   video camera installed in the defendant's bedroom, the same

14   location where video of the 14-year-old girl was taken, which

15   showed the defendant's wife in the video.

16          So the argument at that time, at the last hearing was

17   well, the defendant isn't responsible for that, that's clearly

18   the defendant's wife who is responsible because she's shown in

19   it.

20          Notably, also on page seven, is a screen capture of

21   some of the file structure of the defendant's computer, and

22   this is from the portion of the computer that had the

23   defendant's account on it and it was password protected.

24          So this is not -- the defendant's wife said she had

25   no knowledge of the defendant's passwords.  This is where he

1   had stored many videos, including the videos of the minor

2   female.  And that he then took the videos of her in the shower,

3   in the bathroom and in the bedroom of the minor female and then

4   produced still images of those videos and they've captured in

5   still fashion portions of the video which showed her without

6   clothing on.

7          So to the extent that the defendant came in and

8   argued he had nothing to do with filming a 14-year-old girl in

9   the defendant's bedroom, this rebuts that and does go to show

10  that this has been ongoing conduct and he is the one

11  responsible for it.

12         And in addition, I think it's important to note that

13  there would be no combination of conditions that could be

14  imposed because he has violated the trust of so many people,

15  including his relatives who had employed him, by using their

16  computer network to obtain and arguably distribute child

17  pornography from that location and transfer it to his home.  He

18  violated the trust of his relatives, again, who had employed

19  him as well as his friends.

20         The 14-year-old girl was the daughter of one of his

21  best friends and also their babysitter.  It indicates that he

22  is a very manipulative person and that he's willing to film

23  people who come into his home and use the bathroom and are seen

24  using a toilet and a shower and that he's recorded this over

25  the course of several years, kept it on his computer.

1          It is, in the government's view, somebody who is not

2     willing to exercise the trust that's been placed in him by

3     different people.  So given also his level of sophistication

4     with technology, given that he was the information technology

5     director at the company that he worked at and his ability to

6     hide these cameras and get away with this conduct for so many

7     years unbeknownst to the victims of the surreptitious filming,

8     there are no conditions that would reasonably assure the safety

9     of the community.

10          So we believe he is a danger, there's a presumption

11     that he's a danger and he cannot come up with any conditions

12     that would rebut that danger.

13          THE COURT:  All right.  Thank you, Mr. Gappa.

14          Mr. Harralson?

15          MR. HARRALSON:  Your Honor, I see this Exhibit 2 as a

16     carefully crafted document to throw general allegations out

17     there without any type of proof that my client was involved

18     with this 14 year old.  Now I understand that there is proof

19     that he did -- I'm sorry.

20          I understand that there is proof that he may have

21     been involved in setting up cameras and it's not illegal for

22     people to film themselves, not illegal for them to film others

23     that is consensual.  But there -- and this again, we don't have

24     the dates that this alleged minor was filmed.  We have a date

25     in page two as 2008, page three is 2009, page four is April

1   7th, 2013, page five is sometime in 2012 and page six is

2   sometime in 2012.  I don't see what date it was that this 14

3   year old was involved in.

4            The client -- my client's wife was seen in the film

5   with the 14 year old and my client was not in any way seen in

6   that film and there should be a time.  If there's a time and a

7   date on that film, my client, I would submit, may have a

8   complete alibi to any involvement with that particular filming,

9   but we've not been provided with that.

10           And I think this is a carefully crafted document to

11  give the Court an overall feeling that my client committed this

12  act against this 14 year old as -- and I wasn't at the grand

13  jury, but I would be interested to read the grand jury

14  transcript to see if there were specific documents or specific

15  times shown where my client was there at the time and the date

16  when the 14 year old was filmed.

17           Now these are all very general and open allegations,

18  but I'm not seeing proof that he was involved filming a minor,

19  which is the charge contained in count No. 1.  So we have this

20  overall bad feeling about my client, but we don't have any

21  specifics that indicate that he violated that particular

22  statute.

23           So I'm a little uneasy, and I would object to Exhibit

24  No. 2 because it doesn't speak to the issue.  It does not speak

25  to the issue about whether or not he filmed this 14-year-old

1    girl or he was involved in the filming of a 14-year-old girl.

2    Just because he has cameras in his home doesn't mean that he

3    actually was involved in filming that child.  And I would

4    submit to the Court my client denies that.

5           Now we don't have the dates, we just have the date of

6    these particular -- some of these shots, but we don't have the

7    date, that the 14 year old was filmed.  And I don't know if

8    there was one, maybe two dates and those dates should be

9    something Mr. Gappa could provide for us because these films

10   will have some kind of coding or some kind of identification

11   that would give us the date and the time that those films were

12   made.  We're not seeing that.  We just get this overall thing

13   for 2008 through 2013 without any specific reference to the

14   date and time that that child was filmed.

15          But we do know his wife was present at that time.  We

16   don't know from any proof whatsoever that my client was

17   present, and I think if we could get that date and time we

18   could then explore whether or not he was at work or where he

19   was at the time that -- or some other location that might give

20   us an opportunity to meet these allegations or meet the overall

21   and general perception that this Exhibit No. 2 provides.

22          And Mr. Gappa, he took Exhibit No. 1 up at the last

23   detention hearing and I guess it didn't show -- I believe it

24   didn't show what he must have represented to the Court because

25   he didn't bring Exhibit No. 1 back and say yes, this is proof

13

1    that Mr. Henry was involved in filming the 14 year old as he

2    was saying, here he is, Mr. Henry, doing this and doing that.

3    I still don't see that.  I haven't seen Exhibit No. 1, but I

4    don't see him involved in filming that 14-year-old child.

5            And I would submit to the Court that there are

6    conditions.  And if he's in a home with his mother, his

7    mother's a graduate attorney -- or graduate lawyer from law

8    school.  They would live out in the country.  There are no

9    children.

10           She has no internet access that would be available to

11   him.  He would be isolated from the community to where he would

12   not have an opportunity -- he would be on house arrest.  He

13   would not have an opportunity to have a minor present.  He

14   would not have an opportunity to have the electronic equipment

15   or anything that might be used in involving himself in any kind

16   of activity alleged in this complaint.  But I am not seeing any

17   evidence here that indicates that he was involved in filming a

18   14-year-old child.  And Mr. Gappa's had a week to put that

19   together and I'm not seeing it.

20           I see a crafted document that gives the Court a bad

21   feeling and may have given the grand jury a bad feeling, but

22   I'm not seeing evidence that he committed that crime.  And

23   that's what's being used to hold him into custody, is this

24   generally bad feeling and these allegations, not proof that he

25   was involved in filming that 14-year-old child.

14

1          So Your Honor, I would ask the Court to view this

2    evidence with caution and with distrust because they've had an

3    opportunity to provide evidence to the Court that he was

4    involved in the filming of the child and the acts alleged in

5    count 1 but they've not done that.  They've just provided

6    overall general information that doesn't prove that he

7    committed or that he was involved in that act.

8          And allegations, Your Honor, are easy to make at this

9    stage and honestly, they would be easy to show at this stage if

10   Mr. Gappa would've brought the proof in.  I would submit that

11   there is no proof that he's involved in filming the 14 year

12   old; and if there were, he would've brought it into the Court

13   today just as he brought this Exhibit No. 2 that shows nothing

14   related to the 14 year old.

15          THE COURT:  All right.  Mr. Gappa, anything further?

16          MR. GAPPA:  Your Honor, just one brief point I think

17   refutes that and it's that the defense apparently doesn't

18   understand that all of the video and still images that were

19   recovered related to every victim in this case, including the

20   14-year-old victim were found on the defendant's computer in

21   the portion of which was assigned to him --

22          THE COURT:  Only he had access and was --

23          MR. GAPPA:  -- and it was a password protected.  So

24   for instance, on page seven of eight it says right there that

25   this is in the password protected portion of the device and

1    defendant's wife did not have the password.  I was able to

2    locate a file structure that had the videos and images ranging

3    from 2008 to the present.  Many of the folders had labels

4    relating to the portion or victim who was recorded.

5           Confidential victim was one of the folder labels, and

6    notably he's got it sorted by her age.  She was at sometimes 14

7    and at sometimes 15.  And those are denoted there.  Her name

8    has been redacted from I would say the lower one-third of that

9    file structure, but she's clearly identified in that file

10   structure.

11          So there is no conceivable way that the defendant was

12   not involved when you see him in some of these screen captures

13   setting up the very camera that was used to record that

14   activity in the bedroom.  Page five of eight clearly shows

15   that.  He's looking back at the camera.

16          Other captures that were part of Exhibit 1 showed the

17   installation of the camera in the bathroom and the defendant

18   making arrangements to have those images produced of people,

19   including the victim -- the 14-year-old victim in the bathroom.

20          So the government disagrees that the Court here

21   doesn't have any indication of the defendant's involvement.  So

22   we don't believe he's rebutted the presumption that he's a

23   danger.

24          THE COURT:  All right.  Matter submitted?

25          MR. HARRALSON:  May I be heard very, very briefly?

16

1          THE COURT:  Very briefly, yes.

2          MR. HARRALSON:  There's a statement in here that his

3   wife did not have the password.  She did have the password,

4   Your Honor, and I don't know -- this isn't under penalty of

5   perjury.  It just says she did not have the password.  She did

6   have a password of this file and that's not a true statement.

7   You know, it puts my client in conflict with his wife, but she

8   did have the password to this file.  And so that's not a true

9   statement.  And it may be her denial of that situation, but she

10  did have a password to get into this file.

11         THE COURT:  But nonetheless, it's on his computer.

12         MR. HARRALSON:  I'm sorry.

13         THE COURT:  But nonetheless, it's on his computer.

14         MR. HARRALSON:  I think it was on the home computer,

15  Your Honor --

16         THE COURT:  On the home computer.

17         MR. HARRALSON:  -- not his computer at the office.

18         THE COURT:  All right.  Matter submitted?

19         MR. GAPPA:  Yes, Your Honor.

20         THE COURT:  Matter submitted?

21         MR. HARRALSON:  Yes, Your Honor.

22         THE COURT:  All right.  I will find -- of course the

23  Court cannot resolve at this hearing every evidentiary conflict

24  that counsel raised, but there's certainly a rebuttable

25  presumption here and these are certainly very serious charges.

1          And once you get beyond the accusation that you're

2    merely just downloading child pornography, but actually may be

3    engaged in it directly, and that's to be sorted out at a later

4    hearing, and certainly it's not a trip wire to this Court being

5    able to find by the applicable evidentiary standard is by clear

6    and convincing evidence that he does pose a danger and if he

7    were to be released -- I don't find him to be a flight risk,

8    but I certainly find him to be a danger and therefore I order

9    that he remain detained as such.

10         Now we need to discuss the status hearing date and

11   whether or not there'll be enough investigation in this case.

12   If it is going to be delayed, I would require, unless I'm going

13   to set it at a sooner date, that time be excluded.

14         MR. HARRALSON:  Your Honor, I'm going to object to

15   any time being excluded.  I would request that --

16         THE COURT:  We'll get you an early date then.

17         MR. HARRALSON:  -- discovery be provided as soon as

18   possible so we can begin our work since my client is being

19   detained on these charges.

20         THE COURT:  Sure.

21         MR. HARRALSON:  And I'd like to ask Mr. Gappa how

22   soon I can have the electronic information so that I can have

23   it -- or have it available so that I can have an expert

24   evaluate it and look into it.

25         THE COURT:  The Court will order discovery within the

18

1    local rule time frame, which is 10 days from the date of the

2    indictment and his first appearance on that indictment.  So

3    it's 10 days from today's date.

4              And I assume, Mr. Gappa, unless you tell me

5    otherwise, I assume that you can comply with the discovery

6    requests within that time frame?

7              MR. GAPPA:  Yes, Your Honor.

8              THE COURT:  All right.  And then of course I've

9    ordered reciprocal discovery.  I'll ask Madam Clerk to find a

10   status conference date say two weeks out.

11             THE CLERK:  Judge McAuliffe is only calendared this

12   coming Monday and then not again until December 23rd.

13             MR. HARRALSON:  December 23rd?

14             THE CLERK:  Yes.

15             MR. HARRALSON:  We would not be able to do it during

16   December other than --

17             THE CLERK:  She has a December 9th date, but that's

18   been closed.

19             THE COURT:  So without a time waiver I'd put it on

20   Monday's calendar then.

21             MR. HARRALSON:  Okay.  Very well.

22             THE COURT:  All right.  Monday it is, and that's

23   December -- I'm sorry, Madam Clerk, is that the 1st?

24             THE CLERK:  November -- this coming Monday, November

25   25th.

1          THE COURT:  I'm sorry, 25th.  Okay.  Twenty-fifth it

2     is at 1:00 o'clock.  He's ordered to appear at that date, time

3     and --

4          MR. GAPPA:  Your Honor, I just have a question and

5     that is whether if at that time there'd be a waiver of the

6     Speedy Trial Act time or not.  Because if there isn't, then I

7     don't see any point in having another status conference that

8     soon because --

9          THE COURT:  Well this would be the initial one and

10    perhaps discovery can be given by that time and we can find out

11    where we are.  I know that's only Monday, but the problem is I

12    don't want to go too far out without the Court having, you

13    know, some ability to assess how far to go out because the

14    Speedy Trial Act commands trial within 70 -- was it 70 or 71

15    days?

16         MR. GAPPA:  Seventy.

17         THE COURT:  Seventy.

18         MR. GAPPA:  Right.  The other issue, Your Honor,

19    which I can address through a colleague, but I would not be

20    here on Monday.  So there's no guarantee that there will be any

21    discovery or that we can make any progress on Monday.  So --

22         THE COURT:  All right.

23         MR. GAPPA:  It just may be somebody sits around for

24    an hour to an hour and a half only to get a date which we could

25    pick today.  But if that's what the defense wants, then --

20

1          MR. HARRALSON:  I'm hopeful that they'll provide

2   discovery, Your Honor.

3          THE COURT:  All right.  Good luck, Mr. Harralson.

4          MR. HARRALSON:  Thank you.

5          THE COURT:  All right.

6          MR. GAPPA:  Thank you, Your Honor.

7          THE COURT:  Thank you.

8          Mr. Harralson, is it agreed that Exhibit No. 2 can be

9   returNed to the government without actually being filed under

10  seal?

11         MR. HARRALSON:  Yes, Your Honor.

12         THE COURT:  Mr. Gappa, you agree with that?

13         MR. GAPPA:  Yes, Your Honor.

14         THE COURT:  All right.  We'll return that exhibit

15  you.  Thank you.

16      (Whereupon the hearing in the above-entitled matter was

17  adjourned at 2:46 p.m.)

18                          --o0o--

19                         CERTIFICATE

20      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the above-
21  entitled matter.

22

23  /s/ Jennifer Barris_____       July 29, 2016
    Jennifer Barris, Transcriber
24  AAERT CET*668

25