```
 1                    UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF CALIFORNIA

 3                              --o0o--

 4   UNITED STATES OF AMERICA,      ) Case No. 1:13-cr-00409-AWI-BAM
                                    )
 5              Plaintiff,          ) Fresno, California
                                    ) Monday, February 24, 2014
 6       vs.                        ) 1:43 P.M.
                                    )
 7   ADAM ALAN HENRY,               ) Hearing re:  motions, 4th
                                    ) status conference, bail review
 8              Defendant.          )
                                    )
 9                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE BARBARA A. McAULIFFE
10                 UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:

12   For Plaintiff:              DAVID L. GAPPA
13                               U.S. Attorney's Office
                                 2500 Tulare Street, Suite 4401
14                               Fresno, CA   93721
                                 (559) 497-4000
15
     For Defendant:              ANTHONY P. CAPOZZI
16                               Law Offices of Anthony Capozzi
                                 1233 W. Shaw Ave., Suite 103
17                               Fresno, CA   93711
                                 (559) 221-0200
18
     Court Recorder:             OTILIA ROSALES
19                               U.S. District Court
                                 2500 Tulare Street, Suite 1501
20                               Fresno, CA   93721
                                 (559) 499-5928
21
     Transcription Service:      Petrilla Reporting &
22                                 Transcription
                                 5002 - 61st Street
23                               Sacramento, CA   95820
                                 (916) 455-3887
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

1

        FRESNO, CALIFORNIA, MONDAY, FEBRUARY 24, 2014, 1:43 P.M.


        THE COURT: Twenty-one on calendar, the United States v. Adam Alan Henry, Case No. 13-409.
        MR. GAPPA: Good afternoon, Your Honor. David Gappa for the United States.
        THE COURT: All right.
        MR. CAPOZZI: And Your Honor, Tony Capozzi for Mr. Adam Henry, who's present in court in custody.
        THE COURT: Okay. All right.
        We're on for two things: one for a status conference, the other one is for motions, the bail review -- let's just handle status first. Tell me what's going on in the case and then we'll deal with the bail review.
        MR. CAPOZZI: I think the government's given us all discovery, I don't know.
        MR. GAPPA: Yes.
        MR. CAPOZZI: Okay. And I have sent it up to the expert and I have not heard back from him yet, so I need some additional time to review it with the expert.
        THE COURT: Okay. And so what do you want to do for a continuance of --
        MR. CAPOZZI: We set another case for April 28th, if we can do that again? And if there's any change I can file a motion.

1    THE COURT: Okay. All right. Mr. Gappa, does that
2 work with you?
3    MR. GAPPA: Yes, Your Honor.
4    THE COURT: Okay. The Court will set one for April
5 28th, continued status conference April 28th, 1:00 p.m. back
6 here before me and exclusion of time?
7    MR. CAPOZZI: Yes, Your Honor.
8    THE COURT: Okay. Court will make an ends of justice
9 finding that time should be excluded for case preparation,
10 settlement exploration and pre-plea negotiations.
11    Okay. As to the bail review, I have -- I know it
12 went up to Judge Ishii, came back with some new information.
13 I've received and reviewed your motion for release -- the
14 defendant's motion for release, as well as the declaration of
15 Thomas White (phonetic). And I've looked at the papers filed
16 in -- well, the detention order was up on appeal before Judge
17 Ishii. Let me ask just a question here.
18    MR. CAPOZZI: Yes.
19    THE COURT: I understand what the difference is, but
20 the concern is getting him to the hearing so that he can attend
21 and have his interest represented in the state court
22 proceedings over the custody issues. Why can't that court
23 issue a writ to get that to come -- for him to come here? We
24 do that in federal court. Why can't the state court do that?
25    MR. CAPOZZI: You know, I have never seen a writ from

1  the state court to the federal court.  Maybe the U.S. Attorney
2  could help me out.
3           MR. GAPPA:  Your Honor, I haven't really seen it;
4  however, I do believe it's happened.  And it's, in my
5  experience, been where somebody has been detained at the Fresno
6  County Jail on a marshal's hold.  The information I've received
7  in one or two cases, even though it's the same facility and it
8  could be a local transport to the Fresno County Superior Court
9  without a writ, that wouldn't happen.
10          However, I know of at least one case relatively
11 recently where a writ was issued for that defendant to go to
12 court.  I believe he did make his appearance.
13          MR. CAPOZZI:  It's in Fresno State Court.  It's very
14 close.  And this is Stanislaus, it's a civil case, it's totally
15 different.  I don't think they can issue a writ.
16          But anyway, that's -- the real issue to me in this
17 case is that he's not a threat to the community.  He was held
18 as a threat to the community, not as a flight risk.  Clearly
19 he's not a flight risk.  He's been in the jail since he's been
20 arrested, I think September of last year.  Frankly, I think he
21 should've been released a long time ago.
22          The pretrial office has an ankle bracelet they can
23 use for him.  His mother is willing to act as his third-party
24 custodian.  Her home is way out in the country.  It's not near
25 public transportation or anything of that.  It would be safe

4

1  for the public and conducive to the defendant.  He does need to
2  have surgery on his knee.  Every time I see him at the jail
3  he's barely making it to the interview room.
4        His aunt, whom he worked for, Louise Reed (phonetic),
5  who's here today has kept him on her insurance so he could have
6  the proper medical care.  She can't take him back because
7  there's computers there.  She can't take him into her home
8  because there's computers at her home because of the business
9  and that's why his mother, who is a law school graduate from
10 San Joaquin, I think would be an adequate third-party
11 custodian.
12       THE COURT:  Well --
13       MR. CAPOZZI:  I talked to the person who --
14       THE COURT:  Wait just a minute.
15       MR. CAPOZZI:  Yes.
16       THE COURT:  On a bail review, what comes back to me
17 is new and different information.
18       MR. CAPOZZI:  I understand.
19       THE COURT:  What is new and different?
20       MR. CAPOZZI:  Well the one new and different is the
21 CPS hearing going on up there.  But my point is, I think he
22 should be released to his mother so he can attend those
23 hearings.  Not just the hearings, Your Honor, he needs to meet
24 with his lawyer.  If you look at the declaration, he has over
25 290 cases and that he can only meet with him one time at the

1  jail when we met the three of us together.  And he says he
2  needs to meet with him more to go over this case.  I just don't
3  see why he should be held in custody when this case is going on
4  and he can lose the custody of his children.
5          THE COURT:  I agree that it is a concern that he
6  might potentially lose the custody of his children, but I have
7  a bigger responsibility here.
8          MR. CAPOZZI:  Right.
9          THE COURT:  Based upon the allegations that are
10 against him and based upon what the -- Mr. White has said, I
11 don't see any compelling reason why he should be released.  He
12 is definitely a danger to the community.  Based upon what was
13 represented to -- by the government to Judge Ishii about the
14 longevity of the actions that are underlying this case, I can't
15 see releasing him.
16         MR. CAPOZZI:  I don't think it was ever presented to
17 Judge Ishii.
18         THE COURT:  Well something was filed.
19         MR. GAPPA:  Your Honor, I believe it was.
20         MR. CAPOZZI:  And all Judge Ishii did is just sent it
21 back down here.  He didn't issue any rulings whatsoever.
22 Correct me if I'm wrong.
23         MR. GAPPA:  What I heard the Court say is presented
24 to and we did present to the Court the exhibits that are
25 referenced in the ECF filing.  We didn't --

6

1        MR. CAPOZZI:  To the magistrate court, not to the
2   federal -- not to the judge.
3        THE COURT:  No.  Well what I'm referring to are the
4   documents that were filed -- hang on, it was filed on January
5   31st by the government, opposition to appeal from detention
6   order.
7        MR. GAPPA:  Right.
8        THE COURT:  It's record.  That's what I'm referring
9   to, in which it says that there has been ongoing conduct for
10  years basically.
11       MR. CAPOZZI:  But not dealing with child pornography.
12  It was something different.
13       THE COURT:  Exploitation of children, that's what I
14  understand.
15       MR. CAPOZZI:  Well not by this defendant, Your Honor.
16  There's no evidence whatsoever.  I'm sorry for raising my
17  voice, but there isn't.
18       THE COURT:  Well I want to understand and make sure
19  that I'm clear on what I thought these papers were
20  representing, that the video recordings were longstanding;
21  that's what I understood.
22       MR. CAPOZZI:  True.  Of adults.  Now there's one or
23  two with a child when the defendant's at work and doesn't even
24  know it's going on.  And now he's being held in custody and
25  responsible for all of that.  Maybe we need to have a hearing.

7

1           THE COURT: What will we be hearing?

2           MR. CAPOZZI: Well whether or not he is doing
3 something longstanding in terms of breaking the law with regard
4 to child pornography. Now my understanding, pornography itself
5 is not illegal. I think we all know that.

6           THE COURT: Well adult.

7           MR. CAPOZZI: Yeah. Right.

8           THE COURT: Right. Okay.

9           Mr. Gappa, did I misunderstand what the papers were
10 saying in here?

11           MR. GAPPA: No, Your Honor, I don't think so. And in
12 addition, just to correct the record, there was reference to
13 the defendant having been detained since September, but the
14 case didn't start until the middle of November.

15           And just briefly, what happened then is there was an
16 initial appearance, he was ordered temporarily detained. The
17 Pretrial Services report was prepared at that point and there
18 had not been an indictment yet. Then there was an indictment
19 and there was a detention hearing after the indictment was
20 returned and it was done by Judge Austin.

21           THE COURT: Uh-hmm.

22           MR. GAPPA: And there was evidence that was presented
23 to Judge Austin and that partly was in response to prior
24 counsel's suggestion and adamant statement that this defendant
25 was not involved in anything related to any surreptitious

1  recording of anybody at any residence that he had been in and
2  that he said, for instance, that if the government had anything
3  to tie my client to that conduct they would have submitted it,
4  and since everything that they've submitted depicts the
5  defendant's wife, it exonerates my client, so therefore he's
6  had nothing to do with this and he should be released.
7         So in part -- in response to that the government
8  prepared additional exhibits.  So there were two sets of
9  exhibits that were given to Judge Austin and he considered all
10 of that, considered all the arguments about releasing the
11 defendant to his mother to have her be the third-party
12 custodian, to have any of the most restrictive conditions put
13 on him and rejected that proposal.
14         So after that, the government prepared additional
15 exhibits and gave those -- submitted those to Judge Ishii and
16 those in part are designed to show how long the defendant has
17 been engaged in that type of conduct where he has hidden
18 cameras in different residences even before he met his current
19 wife, and he's got them very well organized on a computer;
20 because the allegation too was again, he had nothing to do with
21 this.
22         However, everything that had been recovered
23 forensically and was the basis for the exhibits given to Judge
24 Austin came from the password protected side of the defendant's
25 computer.  So it was the defendant who, previous to meeting his

9

1  wife, had engaged in similar conduct.  And then you see them
2  acting in concert hiding the cameras, checking for things such
3  as exposure, different angles, and then you see both of them in
4  some of the footage.
5       And so when you see that with the nature of the
6  material that he alone had collected related to the child
7  pornography and how he had done that, Judge Austin considered
8  all of that.  It would have been available to Judge Ishii, but
9  it's available to this Court as well.
10       If anything, the evidence against the defendant is
11 stronger at this point and the factors that weigh in favor of
12 detention, in the government's view, are stronger now because
13 now we have further insight into what his real interests and
14 activities have been.
15       MR. CAPOZZI:  Your Honor, what the government's
16 referring to in terms of movies is with adults, not with
17 children.  There is one -- a video with a child with his wife.
18 The government assumes he was the one taking the video.  There
19 is no evidence of that whatsoever.  There is one with his wife
20 with a child.  She is being charged with that up in Stanislaus
21 County.
22       The videos that the government's talking about are
23 adult videos.  It's just not against the law.
24       MR. GAPPA:  Your Honor, that's not entirely true.
25 For instance, and I have this if the Court wants to review

1 it --
2       THE COURT: Well before you go there, Mr. Gappa,
3 because there's a threshold here that I need to consider, and
4 that is Judge Austin has made a ruling that he should be
5 detained based upon being a danger. And the evidence has been
6 presented to Judge Austin on which he ruled.
7       Now I'm asking to -- basically to reconsider it. And
8 if I'm being asked to reconsider it, it's --
9       MR. CAPOZZI: I can't ask you that.
10       THE COURT: Yeah. It's only on new and different.
11       MR. CAPOZZI: Right. I agree.
12       THE COURT: And so we're going down a path that's
13 already been considered by Judge Austin. What is new and
14 different that relates that this man is not a danger?
15       MR. CAPOZZI: Okay. To me, it's because of the -- I
16 appealed Judge Austin's decision. Judge Ishii looked at it and
17 says well I think there's something new because of the CPS
18 situation and sent it down here. Now I'd rather be arguing
19 this up there, but he says no, come down here.
20       THE COURT: Right.
21       MR. CAPOZZI: So that's why we're here. And because
22 of the CPS situation, that's a change. My argument is with
23 that change he should be released to his mother with an ankle
24 bracelet. He could be -- he would go with his mother or his
25 aunt to court and back to his mother's house. He would always

1 be with a third-party person. If he were to visit his children
2 it would be with adult supervision. I don't see where the
3 government -- not the government, the society's in danger with
4 him under those restrictions.
5      His mother will not have a computer in the house. He
6 will not have access to a computer. He will live out in a
7 rural area, have no access to public transportation. His
8 mother has one car, a pickup truck, and she would use that to
9 transport him back and forth to court and to get his surgeries.
10 I just don't see where the public's safety is involved with
11 that, allowing him to go back and forth. Now -- I'll submit it
12 there.
13      THE COURT: All right. Mr. Gappa.
14      MR. GAPPA: Your Honor, I think the Court is correct
15 on the threshold issue that the only different circumstance
16 now, in addition to there obviously being different counsel, in
17 addition to the government having additional evidence, the only
18 thing in the defendant's favor is that he's now in a dependency
19 proceeding. So that really doesn't go to the issue of danger.
20      THE COURT: And Judge Austin considered all these
21 issues about monitoring and third-party custodian and all of
22 that?
23      MR. GAPPA: Yes.
24      THE COURT: Mr. Olson.
25      MR. CAPOZZI: Can we ask the pretrial about that?

1     THE COURT: Yeah. Mr. Olson, I know at the time you
2 prepared your report the indictment had not come down and
3 things changed once that occurred. So your report really would
4 be -- may be different if the indictment had come down before.
5 So -- but you were at the hearing before Judge Austin, yes?
6     MR. OLSON: Yes, I was, Your Honor.
7     THE COURT: Okay. And he evaluated all of these
8 factors that have been argued here?
9     MR. OLSON: Yes, Your Honor. As a matter of fact,
10 most of what's being argued here was -- I had recommended at
11 the initial appearance in my report, which everybody has a copy
12 of. Everything that's been mentioned here today was mentioned
13 in that report but for the fact that the new hearings that he's
14 going through in Stanislaus County regarding his parental
15 rights.
16     I'm not in the practice of second guessing judges and
17 why they do things, but Judge Austin ordered him detained as a
18 danger. And I -- there's nothing I can add to this report that
19 wasn't already considered by him. The fact that the defendant
20 would like to be present at the hearings in Stanislaus County,
21 that doesn't make him any less or more of a danger, it just
22 doesn't even go to that issue.
23     So I'm not here to recommend that he be released
24 against Judge Austin's detention order because I don't have
25 that kind of information.

13

1 MR. CAPOZZI: The other new thing is I spoke to the
2 CPS officer, her name is Casto, Valerie Castro (phonetic), and
3 she's doing the report on whether or not the defendant should
4 be entitled to have the kids taken away from him. And she says
5 simply because he's in custody we're going to recommend that he
6 lose custody of the children. And to me, that's so unfair. If
7 you were able to appear in court. And I asked her that, if he
8 were there. And she says well that would be a different story.
9 That's what's so unfair about this situation.
10 THE COURT: I agree that it may be unfair, but
11 really, based upon what is presented, there's nothing new or
12 different that I can change other than the action and the CPS
13 action in Stanislaus County. He may be able to be writted up
14 there. He does have representation. It does -- I looked at
15 the statute. The statute says certain actions can be taken
16 based upon defendant's presence or counsel's presence. So it's
17 not like he's not there.
18 And the fact that CPS would say because he's in
19 custody here on a different set of considerations, you know, I
20 can't comment on that. That's how they have to rule. There's
21 nothing new or different for me other than the CPS.
22 MR. CAPOZZI: Understand.
23 THE COURT: So I'm sorry. He's going to be detained.
24 MR. CAPOZZI: Thank you, Judge.
25 THE COURT: All right. Thank you.

14

1     MR. GAPPA: Thank you, Your Honor.
2     THE CLERK: Court's in recess.
3     (Whereupon the hearing in the above-entitled matter was
4  adjourned at 2:00 p.m.)
5                         --o0o--
6                        CERTIFICATE
7     I certify that the foregoing is a correct transcript from
8  the electronic sound recording of the proceedings in the above-
9  entitled matter.
10
11 /s/ Jennifer Barris                July 29, 2016
12 Jennifer Barris, Transcriber
13 AAERT CET*668