```
 1                    UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF CALIFORNIA

 3                              --o0o--

 4   UNITED STATES OF AMERICA,      ) Case No. 1:13-cr-00409-AWI-BAM
                                    )
 5               Plaintiff,         ) Fresno, California
                                    ) Wednesday, July 2, 2014
 6       vs.                        ) 1:37 P.M.
                                    )
 7   ADAM ALAN HENRY,               ) Hearing re:  bail review.
                                    )
 8               Defendant.         )
     _____)
 9
                         TRANSCRIPT OF PROCEEDINGS
10               BEFORE THE HONORABLE SHEILA K. OBERTO
                    UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For Plaintiff:               DAVID L. GAPPA
13                                U.S. Attorney's Office
                                  2500 Tulare Street, Suite 4401
14                                Fresno, CA   93721
                                  (559) 497-4000
15
     For Defendant:               ANTHONY P. CAPOZZI
16                                Law Offices of Anthony Capozzi
                                  1233 W. Shaw Ave., Suite 103
17                                Fresno, CA   93711
                                  (559) 221-0200
18
     Court Recorder:              OTILIA ROSALES
19                                U.S. District Court
                                  2500 Tulare Street, Suite 1501
20                                Fresno, CA   93721
                                  (559) 499-5928
21
     Transcription Service:       Petrilla Reporting &
22                                  Transcription
                                  5002 - 61st Street
23                                Sacramento, CA   95820
                                  (916) 455-3887
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

1

<u>FRESNO, CALIFORNIA, WEDNESDAY, JULY 2, 2014, 1:37 P.M.</u>

THE COURT:  Going back to No. 3 on the calendar, the United States v. Adam Alan Henry, Case No. 13-cr-409.  If we can please have the parties' appearances?

MR. GAPPA:  Good afternoon, Your Honor.  David Gappa for the United States.

THE COURT:  Good afternoon, Mr. Gappa.

MR. CAPOZZI:  And Your Honor, Tony Capozzi for Mr. Henry.  He hasn't been brought out.

THE COURT:  Good afternoon, Mr. Capozzi.  We're going to wait for Mr. Henry to appear.

    (Pause.)

THE COURT:  Good afternoon, Mr. Henry.

This is the time and place for a bail review hearing pursuant to 18 U.S.C. Section 3142(f) which authorizes reopening a detention hearing when material information that was not known to the movant at the time of the hearing comes to light.

I've reviewed Mr. Olson's report and it's my understanding that the changed circumstance consists of the need for a total knee operation as well as the availability of an approximately $90,000 secured bond.

Have the parties had an opportunity to review the Pretrial Services report?

1           MR. CAPOZZI:  I have, Your Honor.
2           MR. GAPPA:  Yes, Your Honor.
3           THE COURT:  I've reviewed it too, as well as the
4  entire file.  Is there anything the parties would like to add?
5           MR. CAPOZZI:  Yes, Your Honor.
6           THE COURT:  Okay.
7           MR. CAPOZZI:  I believe the pretrial officer is not
8  here today, but is saying that he should not be released
9  because of the threat to the community, but my concern is I
10 think he's saying that because a prior magistrate has said that
11 he would be a threat to the community.
12          THE COURT:  Two.
13          MR. CAPOZZI:  Judge Austin.
14          THE COURT:  Two prior magistrate judges.
15          MR. CAPOZZI:  Not prosecutor, just prior judge, Judge
16 Austin.
17          THE COURT:  And Judge McAuliffe.  I believe she had a
18 bail review hearing also.
19          MR. CAPOZZI:  Yeah.  But I think she said refile this
20 and take it back before Judge Austin because I can't
21 countermand what he did because there wasn't new evidence at
22 that time.  Now we have the surgery we think that he needs very
23 badly.
24          I submitted a picture to my declaration that was
25 taken just before he was arrested in September/October last

1   year.  He's lost 50 to 60 pounds, if not more, since then.  The
2   knee has gotten much worse.  He does need surgery and I don't
3   think there's any question about that.
4           He is not getting the medication at the jail.  He
5   gets it sporadically.  He requests it and it takes a while for
6   it to come back in.  If he requests it right after it runs out
7   they always complain about he's asking for it too quickly.  I
8   don't think there's any question about the surgery.
9           The big thing is whether or not he's a threat to the
10  community.  His aunt and uncle who are his employers will put
11  up their equity in their home.  I disagree with what Zillow
12  says about the equity in the home.  It's much more than that.
13  They just received their insurance -- homeowner's insurance.
14  It would cost them over $500,000 to replace their home, so I
15  think there's a lot more than 90,000 in there.
16          But my point is he would be staying with his mother
17  here in Fresno County, a rural area.  There's no public
18  transportation there.  We would agree to some kind of an ankle
19  bracelet, home confinement where he'd be allowed to go to the
20  doctors and have the surgery.
21          There's no computers in the home.  His mother's a law
22  school graduate.  She understands the ramifications.  She's
23  here today, as well as his aunt and uncle.  And for the life of
24  me, I do not see where there's any threat to the community
25  whatsoever under the conditions that we're setting out here.

4

1   The government argued that because of where he was
2   staying in Modesto with the child care taking place there and
3   the cameras in the house that that would be a threat.  Well
4   that's no longer -- no longer exists.  They don't have a
5   daycare any longer.
6   His wife is out of custody.  She's indicted in state
7   court.  She's out of custody, she's on bail.  I just don't see
8   any reason why this defendant should be in custody where he can
9   be helping me defend himself in this case.  Thank you.
10   THE COURT:  Okay.  Thank you, Mr. Capozzi.
11   Mr. Gappa.
12   MR. GAPPA:  Your Honor, just some points.  There is,
13   as I'm sure the Court knows, a presumption that he's both a
14   flight risk and a danger to the community.  At least as
15   significant as that, if not more so, are the findings by Judge
16   Austin that he is not somebody who should be released, as well
17   as Judge McAuliffe.
18   And if we look at the previous request for bail
19   review, there was a motion for release that was filed.  It was
20   heard by Judge McAuliffe.  It was filed on February 19th, 2014.
21   THE COURT:  And heard on February 24th.
22   MR. GAPPA:  Okay.  And it was a motion for release
23   and it referenced many of the same factors.  Instead of the
24   defendant's health condition, the other factor cited there was
25   that there was a custody issue that was pending and the

1    defendant wanted to be released to assist in that proceeding.
2            Since then it's the government's understanding that
3    the children that were the subject of that proceeding have gone
4    to Canada.  They are now in Canada.  The defendant's wife is a
5    citizen of Canada.  She's not a citizen of the United States.
6    Her immigration status is in jeopardy in the United States if
7    she were convicted as charged in Stanislaus County.  She would
8    be subject to removal.  In the government's view, there's a
9    greater risk of flight at this time than there was when this
10   issue was last before the Court.
11           On the issue of his access to healthcare, the
12   defendant has submitted his own medical records and in
13   reviewing those it appears that he was given access to medical
14   care at the Fresno County Jail, but because apparently he
15   didn't think that was adequate, I believe the Marshals Service
16   transferred him to Laredo and it's clear that he has been given
17   access to nurses and doctors.  There's been lab procedures
18   done.  He has seen an orthopaedic specialist and it appears
19   that there is adequate medical care that's available to him
20   through the program set up through Kern County and the Marshals
21   Service.
22           So on the issue of his dangerousness, the only new
23   fact that's being argued it appears is that there would now be
24   some property that's available and has equity in it.  However,
25   it doesn't really change the fact that these same proposals

1  were put forward to Judge Austin, then Judge McAuliffe and they
2  concluded that his release to go live with his mother in that
3  location where there would not be internet access, where there
4  is limited public transportation; all of those factors still
5  would not rebut the presumption that he is a danger.
6       So we don't see that there really is any changed
7  circumstance on the issue of dangerousness and would urge the
8  Court to not find differently from Judge Austin and Judge
9  McAuliffe that he should stay detained.
10      THE COURT:  Thank you, Mr. Gappa.
11      Mr. Capozzi.
12      MR. CAPOZZI:  Thank you, Judge.  Your Honor, Judge
13 McAuliffe, who listened to the transcript, says I cannot
14 countermand Judge Austin.  She recommended that we go back
15 there.  Matter of fact we had appealed Judge Austin's, but
16 asked that Judge Ishii to review this.  He sent us back to the
17 magistrates.  We went to Judge McAuliffe.  She says without new
18 circumstances I can't countermand Judge Austin.  That's what
19 happened in that case.
20      Then we said let's get -- we contacted pretrial.
21 They said get the medical records.  It took us forever to get
22 medical records.  We got those, we submitted them.  These are
23 not the same proposals that were put together before Judge
24 Austin and Judge McAuliffe.  There is a difference.
25      His medical condition has deteriorated and now we

1  have his employer, aunt and uncle, who are willing to put up
2  their property.  And they understand that if he does something
3  when he's out, or he's a threat or does something to anyone
4  they will lose their house.  They understand that fact.
5  They're convinced that that's not going to happen in this case.
6          As to whether or not there's adequate medical care, I
7  can't more vehemently disagree with what the government is
8  saying about adequate medical care at this jail or at Laredo.
9  It's been atrocious.  They say he's seen an orthopaedic
10 surgeon.
11         Your Honor, he has never, never seen an orthopaedic
12 surgeon.  Never.  He saw one the other day standing talking to
13 a nurse.  That's as close as he got to an orthopaedic surgeon,
14 the closest.  It's just so frustrating to hear that they have
15 adequate medical care.  He has medical insurance, his aunt and
16 uncle kept him on the policy so he could have surgery done.
17         His children, the two children that were sent back to
18 Canada because his wife is a Canadian citizen are his
19 stepchildren.  They're not -- they've never been adopted.
20 They're back with their father in Canada.  He and his wife have
21 one child.  That child is in Turlock with his mother-in-law and
22 father-in-law and he wants to be able to see him and have some
23 kind of custody with him.  We will be dealing with Child
24 Protective Services on that and I've been dealing with the
25 attorneys on the case up there on the issue of child custody.

1   For the life of me, I just don't see where the danger
2   exists, not whatsoever. He would live with his mother. He
3   would have an ankle bracelet if the Court so required. We have
4   the collateral set up by his aunt and uncle. I'm trying to
5   think of what other restriction we can put on him. I just
6   don't see where there would be any danger to the community.
7   THE COURT: Thank you, Mr. Capozzi.
8   MR. CAPOZZI: Thank you, Judge.
9   THE COURT: Is there anything further?
10  MR. GAPPA: No, Your Honor.
11  THE COURT: Thank you.
12  Mr. Henry, I believe I handled the initial detention
13  hearing but then Mr. Gappa brought up additional information
14  and the matter was heard before Judge Austin. And Judge Austin
15  determined that based on the charges and the additional
16  information that you posed a danger to the community.
17  The factors identified in the initial Pretrial
18  Services report that indicated, and that was the one dated
19  November 18th, 2013 that indicated you may pose a danger to the
20  community included the following: nature and circumstances of
21  the offense which includes downloading child pornography onto
22  an employer's computer, copying and storing child pornography
23  on your home computer, operation of a daycare at your house
24  where hidden cameras were used in the bathroom and the bedroom
25  with your wife's help who's incidently, as Mr. Capozzi pointed

9

1  out, facing state charges and I do realize that she's released.
2       Now on November 22nd, 2013 Judge Austin ordered that
3  you be detained as a danger to the community for those reasons
4  and -- I should say for reasons including those reasons.
5       And on February 24th, 2014 at the bail review hearing
6  Judge McAuliffe ordered that you remain detained.  I understand
7  what your counsel is saying, that the equity was not available,
8  but the remaining circumstances remain the same.  Both the
9  magistrate judges found that your release to a third-party
10 custody of your mom was not sufficient to ensure -- to
11 reasonably assure the safety of the community.
12      Mr. Olson's report points out that the new
13 information consisting of the availability of the 90- or
14 100,000 property bond is not sufficient to ensure the safety of
15 the community and that has been the concern all along.
16      So I don't -- I'm going to follow the recommendation
17 because I too agree that the additional bond is not sufficient
18 to ensure the safety of the community.  That -- the concerns
19 that Judge Austin had, and I was not here at Judge McAuliffe's
20 hearing frankly, nor at Judge Austin's, but the concerns that
21 Judge Austin had at a minimum are not addressed by the
22 availability of a property bond.
23      So for all those reasons I'm going to order that you
24 remain detained as a danger to the community.  I know that the
25 status conference is on August 11th, 2014 at 1:00 p.m. before

1  Judge McAuliffe.  Is there anything else I can assist the
2  parties with?
3          MR. CAPOZZI:  No, Your Honor.
4          THE COURT:  Okay.
5          MR. GAPPA:  No.  Thank you, Your Honor.
6          THE COURT:  You're welcome.
7      (Whereupon the hearing in the above-entitled matter was
8  adjourned at 1:51 p.m.)
9                          --o0o--
10                         CERTIFICATE
11     I certify that the foregoing is a correct transcript from
12  the electronic sound recording of the proceedings in the above-
13  entitled matter.
14
15  /s/ Jennifer Barris                July 29, 2016
16  Jennifer Barris, Transcriber
17  AAERT CET*668