1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. ANTHONY W. ISHII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 1:13-cr-409  AWI-BAM |
| Plaintiff, | ) | |
| | ) | MOTIONS IN LIMINE AND TRIAL |
| vs. | ) | CONFIRMATION |
| | ) | |
| ADAM ALAN HENRY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Fresno, California                 Tuesday, May 30, 2017


REPORTER'S TRANSCRIPT OF PROCEEDINGS

**APPEARANCES OF COUNSEL**:

For the Government:        **DAVID L. GAPPA**
                          Assistant U.S. Attorney
                          2500 Tulare Street, Rm. 4401
                          Fresno, California  93721

For the Defendant:         **ANTHONY P. CAPOZZI**
                          Attorney at Law
                          1233 W. Shaw Ave.
                          Suite 102
                          Fresno, CA  93711


REPORTED BY:  PEGGY J. CRAWFORD, RDR, CRR, Official Reporter


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

2

<u>INDEX</u>

<u>DEFENDANT'S WITNESSES</u>:

**ANGELE HENRY**                                                4
DIRECT EXAMINATION BY MR. CAPOZZI                       6

\* \* \* \* \*

EXHIBITS

<u>GOVERNMENT'S</u>                                      Marked

1                                                       14
2                                                       22
3                                                       24
4                                                       26
5                                                       30
6                                                       32
7                                                       33

\* \* \* \* \*

3

Tuesday, May 30, 2017                    Fresno, California

1:30 p.m.

      THE CLERK:  Court calls 1:13-CR-0409 AWI, United States versus Adam Alan Henry.

      MR. GAPPA:  Good afternoon, your Honor.  David Gappa for the United States.

      MR. CAPOZZI:  And your Honor, Tony Capozzi with the defendant, who is present in court.

      THE COURT:  Okay.  All right.  I set this over today to do -- allow counsel to do some followup work.

      And a couple of things I did want to --

      MR. CAPOZZI:  Judge, before we get into that, I subpoenaed Angele Henry, who is present in court today, and I would rather take care of that issue so she won't have to hang around.

      THE COURT:  Okay.

      MR. CAPOZZI:  I subpoenaed her to see if she would testify in the trial.  But again, may we ask her to come up?

      THE COURT:  Yes, please.

      Ms. Henry, if you could come forward, please.

      Is counsel with her?

      THE WITNESS:  I do not have --

      MR. CAPOZZI:  I wanted to ask.

      THE COURT:  Ma'am, why don't you come up to the witness stand here.

4

1                        **ANGELE HENRY**,

2     called as a witness on behalf of the Defendant, having been

3     first duly sworn, testified as follows:

4           THE CLERK:  Please have a seat, and when you do,

5     state your full name for the record, and spell your last.

6           THE WITNESS:  Angele Christine Henry.  Last name is

7     H-e-n-r-y.

8           THE COURT:  Okay.  Now, before we get started on

9     Ms. Henry, are you represented by a lawyer?  I understand you

10    have your own case pending; is that correct?

11          THE WITNESS:  That's correct.

12          THE COURT:  Are you represented by a lawyer in that

13    case?

14          THE WITNESS:  I am.

15          THE COURT:  But he or she is not present today?

16          THE WITNESS:  She is a public defender, and this is

17    outside of her area.

18          THE COURT:  I'm going to limit it.  I do not want you

19    to say anything other than a brief answer.  And if I think you

20    might be saying something that shouldn't be on the record, I'm

21    going to stop you.

22          So be very careful about answering.  Keep your

23    answers very short.

24          Is your attorney is aware you are here today?

25          THE WITNESS:  Yes, your Honor.

1          THE COURT:  But she indicated she would not represent

2     you on this particular hearing; is that correct?

3          THE WITNESS:  Correct.

4          THE COURT:  Okay.

5          THE WITNESS:  Do I have the right or opportunity to

6     speak to counsel of some kind?

7          THE COURT:  You will.  The only thing that we are

8     going to ask today is whether or not you wish to -- and I

9     don't know if your attorney had talked to you about your right

10    to remain silent.

11         You have a Fifth Amendment privilege.  And it is my

12    understanding the only purpose today is to determine whether

13    or not, if you were subpoenaed for Adam Alan Henry's trial,

14    whether or not you would testify or invoke your Fifth

15    Amendment privilege to remain silent, which you have the right

16    to do because it is my understanding you have your own case

17    pending.

18         But today, you are not going to be asked any

19    substantive questions.  And if it turns out that you are

20    willing to come in to testify, then we will pursue that and,

21    if necessary, appoint an attorney to represent you at the

22    trial itself, if you choose to testify at Mr. Henry's trial.

23         But anyway, that's all we are going to do today.  And

24    if at any point in time, whether I ask the question, counsel

25    asks a question, you can always say, "Stop," and ask me a

6

1    question, okay?  "Do I need to proceed?"  "What can I do," et

2    cetera, so be very careful about that.

3             THE WITNESS:  Thank you, your Honor.

4             THE COURT:  But don't volunteer anything before you

5    ask me about that.  But otherwise, just answer specific

6    questions.  Most of them are going to be "yes" or "no."  Very

7    short.

8             THE WITNESS:  Yes.

9             THE COURT:  With that understanding, this is going to

10   be a very limited hearing, with the understanding that

11   Ms. Henry does not have her attorney here on her case, and I

12   would not appoint an attorney on this proceeding if there is

13   nothing of substance, if it is only a matter of whether or not

14   she is willing to testify in Mr. Henry's trial.

15            With that understanding, Mr. Capozzi, you can ask

16   those limited questions.

17            MR. CAPOZZI:  Thank you, Judge.

18                      DIRECT EXAMINATION

19   BY MR. CAPOZZI:

20   **Q.**  You have been subpoenaed for the trial on June 14th?

21   **A.**  Correct.

22   **Q.**  If you were called to testify, would you invoke your Fifth

23   Amendment right to remain silent?

24   **A.**  I don't know.

25            THE COURT:  Okay.  So in other words, if you were to

1    come to this trial and both lawyers were to ask you questions

2    that might relate to Mr. Henry's case that might involve you

3    also, the question is, would you testify or not.

4            So I guess the question is if you are not sure, would

5    you honor the subpoena and come to court for the trial itself?

6    Would you be here for the trial?

7            THE WITNESS:  Under the current circumstances, no,

8    because of my own situation.  If that's an option to say.

9            THE COURT:  I'm sorry.  Go ahead and proceed.

10           MR. CAPOZZI:  That is an option.

11   BY MR. CAPOZZI:

12   Q.  You have a right not to say anything at all if you don't

13   want to.  You are under pending charges in state court, and

14   I'm sure you have spoken to your lawyer about that.

15           Have you spoken to the U.S. Attorney about whether to

16   testify?

17           THE COURT:  The gentleman seated at the counsel

18   table.

19   BY MR. CAPOZZI:

20   Q.  Have you talked to Mr. Gappa?

21   A.  I have spoken to no one except my own lawyer.

22   Q.  Okay.  Have you e-mailed the U.S. Attorney's Office?

23   A.  I have e-mailed no one regarding this case or mine.

24   Q.  And are you aware what this case is about against Adam

25   Henry?

1  **A.**  I have a vague understanding.  I have not been following

2  the case.

3  **Q.**  Again, you have been subpoenaed to testify in this case.

4  If you are called as a witness in June, next month, to be a

5  witness in this case, would you be willing -- would you be

6  invoking your Fifth Amendment right not to testify, which you

7  have a perfect right to do?

8  **A.**  Unless I spoke to a lawyer who told me otherwise, I would

9  not have an option but to do exactly that.

10  **Q.**  I didn't understand that.  Is your answer you would not

11  testify?

12  **A.**  I cannot testify with my current situation.

13  **Q.**  So you are invoking your Fifth Amendment right not to

14  testify; is that correct?

15  **A.**  I am sorry.  Am I being unclear in some way?

16  THE COURT:  Well, there is a technical requirement

17  because you have a constitutional right under the Fifth

18  Amendment not to testify in this trial because you have your

19  own case pending in state court, but the legal requirement is

20  that you be aware of your Fifth Amendment privilege not to

21  testify.

22  So all Mr. Capozzi is asking you is if you were

23  subpoenaed -- you have been subpoenaed, but he needs to know,

24  and I need to know, and the government needs to know, would

25  you -- are you invoking your Fifth Amendment privilege not to

1 testify in this case because of your pending state court case?

2 That's the simple question.  "Yes" or "no."

3         THE WITNESS:  Okay.  So you need a definitive answer

4 for the record.  Then I suppose, yes, I am invoking my Fifth

5 Amendment right.

6 BY MR. CAPOZZI:

7 Q.  Which you are saying you would not testify?

8 A.  Circumstances are such at the moment that I am not able to

9 do so.

10 Q.  Again, you will invoke your Fifth Amendment right not to

11 testify, yes or no?

12 A.  I do believe I just said that.  Yes, I am invoking my

13 Fifth Amendment right.

14         MR. CAPOZZI:  I have no further questions.

15         THE COURT:  Cross-examination on behalf of the

16 government?

17         MR. GAPPA:  No, your Honor.

18         THE COURT:  All right.  Okay.  Anything further of

19 Ms. Henry before she is excused from today's proceeding?

20         MR. CAPOZZI:  Other than --

21 BY MR. CAPOZZI:

22 Q.  If there is any change, will you notify my office -- I

23 think on the subpoena is my name and telephone number -- if

24 you change your mind whether or not you will testify?

25 A.  If I -- if circumstances change, I will notify my lawyer,

1  who can be in touch with whomever is requiring that

2  information.

3  **Q.**  But would you tell your lawyer to contact me?  Your lawyer

4  has not responded to any of my phone calls.

5  **A.**  I can inform my lawyer that you would like that step to be

6  taken.

7          MR. CAPOZZI:  Thank you.

8          THE COURT:  Yeah.  So basically, you can advise your

9  attorney you appeared in court today, you invoked your Fifth

10 Amendment privilege not to testify in this particular case,

11 and that that's all we did, and we ended the inquiry.

12          But if there is any further communications,

13 obviously, as you indicated, you could do it through your

14 lawyer, and your lawyer can decide whether or not to contact

15 either Mr. Capozzi for the defense or Mr. Gappa for the

16 government.  Okay?

17          THE WITNESS:  With that being said, does that mean I

18 do not need to be here on the 14th unless circumstances

19 change?

20          MR. CAPOZZI:  That's correct.

21          THE COURT:  Yes.

22          THE WITNESS:  Thank you.

23          MR. CAPOZZI:  Thank you.

24          THE COURT:  Thank you.  You are excused.

25          THE WITNESS:  Thank you.

1          (The prospective witness left the courtroom.)

2          THE COURT:  The record will reflect that Ms. Henry

3     has left the courtroom.

4          MR. CAPOZZI:  Your Honor, could I ask permission to

5     allow the defendant to have a pen so he could take notes?

6          THE COURT:  Yeah, that's fine.

7          MR. CAPOZZI:  Can we loosen one hand?

8          THE COURT:  Just so he can write would be okay.

9          MARSHAL:  It is loose enough; I can see it.

10          MR. CAPOZZI:  We are okay.

11          THE COURT:  And then you need to work that out with

12     the Marshal's Service for the trial itself.  Our general

13     policy is security is a matter for the Marshal's Service.  So

14     if those arrangements can be made, then the Marshal's Service

15     needs to know what to do and how to make sure that Mr. Henry

16     can fully participate in the trial, taking into consideration

17     security considerations.

18          MR. CAPOZZI:  Thank you.

19          THE COURT:  Okay.  So in terms of the issues to deal

20     with today, I will leave it to counsel as to what you would

21     like to take up in what particular order, and we can go from

22     there.

23          MR. CAPOZZI:  Well, I think the government has some

24     of the pictures they want to put in evidence because we made a

25     motion to exclude any pictures taken at a baseball game.  I

1  think the government has those that they want to show the

2  Court.

3  　　　　　MR. GAPPA:  Your Honor, we do have those, and I can

4  show those to the Court and explain why they are admissible.

5  　　　　　THE COURT:  All right, okay.  Do you want a hard copy

6  or do it on the screen?

7  　　　　　MR. GAPPA:  Your Honor, I just, I think it might be

8  more efficient to put them on the Elmo, if that's okay.  If

9  the Court would prefer, I could make paper copies.

10 　　　　　THE COURT:  Whichever works out best for you folks,

11 as long as, obviously, defense has a chance to see what I'm

12 seeing.

13 　　　　　MR. GAPPA:  Okay.

14 　　　　　MR. CAPOZZI:  I think there was a request for

15 exclusion of witnesses.  I just want to make sure whoever is

16 in the courtroom is not a witness.

17 　　　　　THE COURT:  All right.  Yeah, all right.  Let me

18 state and reiterate.  I will grant the motion to exclude

19 witnesses.  I will leave it to counsel to make sure that no

20 witnesses are present during the testimony of any other

21 witness.

22 　　　　　At the conclusion of the witness' testimony, I will

23 turn to counsel and ask if either side wishes the witness to

24 remain subject to recall.

25 　　　　　If you do, then I will leave it to counsel meet and

1   confer as to when to notify the witness to return, the date

2   and time.

3           If neither side wishes the witness to be remain

4   subject to recall, then that witness is excused.  If they are

5   under subpoena, they are no longer subject to the subpoena.

6   They can go on their way or if they want to sit in the

7   audience area and watch the proceedings, they can do that.

8           MR. GAPPA:  Your Honor, for the record, what we have

9   is Art Hively.  He is the case agent.  He is a detective with

10  the Ceres Police Department.  So our plan would be to have him

11  present during all of the trial at counsel table.

12          THE COURT:  All right.  So he would be the chief

13  investigator?

14          MR. CAPOZZI:  No objection, Judge.

15          THE COURT:  Yes.  He can be present during the trial

16  at counsel table.

17          MR. GAPPA:  Your Honor, we outlined different

18  categories of evidence in our motion, some of which we think

19  is actually evidence of the conspiracy and doesn't really

20  technically have to come in under 404(b), because it, in our

21  view, is direct evidence of the communications, which shows

22  the intent of the two conspirators, the defendant and his then

23  wife.

24          So this is evidence that was taken from a cell phone,

25  and this is a report with the text communication in one

1    column, the dates and the times here of when the communication

2    was sent, and from whom and to whom, and the type of message.

3           And this has all previously been provided in

4    discovery.

5           THE COURT:  Have you marked that as an exhibit

6    already?

7           MR. GAPPA:  I didn't for this hearing, but I can do

8    that at this time.

9           THE COURT:  Well, that's not a problem.  I just want

10   to make sure that the record is clear that we are all talking

11   about the same document.

12           I suppose for purposes of this hearing, you can go

13   ahead and identify it.  And I see on the top, it is, "Timeline

14   (31)."

15           I don't know if that's sufficient for identifying the

16   document for both sides.

17           MR. GAPPA:  Your Honor, because I can reprint this, I

18   will hand-write "Exhibit 1" in the upper right-hand corner of

19   page 1.

20        (Government's Exhibit 1 was marked for identification.)

21           THE COURT:  Okay.

22           MR. GAPPA:  What we can see is here, it is a series

23   of text messages that are exchanged between Adam Henry and

24   Angele.  It shows as "Brennan," but this is a phone that she

25   was using with that phone number, and at the time they were

1   married, so it was Angele Henry, but this is the defendant and

2   his wife.

3          And Count 1 is charged as a conspiracy, so our view

4   is that these statements would come in as either admissions of

5   the defendant or coconspirator statements.

6          But here, for instance, there is reference about what

7   is being seen; for instance, Adam is stating to Angele at this

8   time, on August 17 -- and I'm reading from page 2,

9   August 17th, 2012, "So much T&A."

10          MR. CAPOZZI:  Can you try to focus that better?

11          MR. GAPPA:  Then the response is, "Lol."

12          And there are some images that are sent back and

13   forth.  And then there is a comment from Angele to Adam,

14   "Braggart."

15          And then Adam says, "Fine.  I won't send the picture

16   I just took then."

17          So these communications are going back and forth at

18   the same time images are being exchanged.  And unfortunately,

19   this original image was not the most focused, but what we

20   could see here is these are two young females that are

21   walking.

22          And then there is reference here in response to

23   receiving the images of the young girls from Angele, "What's

24   with all the fat men hanging around those hot chicks," which

25   confirms the content.

1         Adam says, "Wasn't looking at them myself, but to

2    each their own," which we would argue says he is not looking

3    at what she referred to as the "fat men."

4         Then here is a reference to, "redheads needing

5    representation."  This is from Adam Henry, same day, just a

6    little bit later in the evening.

7         And so he is taking a picture and sending it to

8    Angele.  And this, in our view, is a redhead, which he has

9    referenced just above there.

10        And then some more communication from Angele to Adam,

11   "I love your," quote, snarky ass," end quote.

12        Reference from Angele to Adam, "Oh, dang, she's hot."

13        And then Adam says, "Sorry for bragging.  I will stop

14   taking them and sending."

15        These are additional images that Adam took and sent

16   to Angele, as are these on page 12.  He is asking Angele, who

17   receives those, "Is this more your style?"

18        Prior to that, he commented, "Nice legs on that one,

19   eh?"

20        And here is a message same day, a little bit later in

21   the evening, from Adam to Angele, "These two keep walking by,

22   hanging around."

23        And then Angele communicates back, "Think they want

24   you to take them home?"

25        So our view is this is an example of some of the

1    direct evidence of their conspiracy that demonstrates their

2    interest in underage females, females below the age of 18,

3    such as the victim in Count 1.

4           These are --

5           MR. CAPOZZI:  Can we just deal with that issue first

6    rather than getting into the others?  Do it step by step?

7           MR. GAPPA:  Okay.

8           MR. CAPOZZI:  Is that okay?

9           Your Honor, those pictures are taken in August of

10   2012.  Some of those are adults, not children.  And there is

11   nothing pornographic with any of those pictures.

12          They were charged with child pornography, producing

13   child pornography in Count 1, with a conspiracy to induce

14   others to engage -- to coerce a minor to engage in sexually

15   explicit activity, conduct for the purpose of producing a

16   visual depiction of that conduct, knowing or having reason to

17   know that it would be produced or transmitted in interstate

18   commerce.

19          None of these pictures are even related to anything

20   like that.  Again, if there are adults in those pictures, they

21   shouldn't even be here.

22          MR. GAPPA:  Your Honor, the superseding indictment,

23   as I know the Court has seen, references in Count 1, "a

24   conspiracy to sexually exploit a minor," and the date range

25   is, "from an unknown date, but no later than May of 2012

1  through approximately September 19th, 2013, that the defendant

2  and others" -- Angele Henry, his wife at the time, is not

3  named in the indictment, but she is an unnamed coconspirator.

4       And the indictment alleges that they, "knowingly

5  used, persuaded, induced, or enticed a minor to engage in any

6  sexually explicit conduct for the purpose of producing any

7  visual depiction."

8       So, again, this is evidence of the communication

9  between the coconspirators that demonstrate their sexual

10 interest in minors.

11      It is not that particular victim, who ultimately is

12 the subject of the charged images, where we will get to that,

13 but there are images which are in video and still formats that

14 they produced in their own home.

15      This is evidence of their intent and what their

16 purpose was, and they are working together in reference to

17 taking home some of these girls, if there would be interest in

18 them doing that.

19      So it is direct evidence of their communication,

20 working together, and demonstrating their sexual interest in

21 minors.  So it is directly related to the charged offenses,

22 certainly within the time frame, and we believe it is

23 admissible.

24      The jury can give it what weight it deems

25 appropriate.

1          MR. CAPOZZI:  And that's --

2          MR. GAPPA:  They are admissions by the defendant, as

3   well as coconspirator statements.

4          MR. CAPOZZI:  I don't see where there is admissions

5   there by the defendant.  I don't see where the government has

6   shown these are children.  And I don't see where anything is

7   explicit sexual conduct.  It is not there, Judge.  And it is

8   highly prejudicial over probity.

9          THE COURT:  Is there going to be some further tie-in

10  with Angele with the actual charge itself?

11          Because I can understand why this is relevant

12  evidence to show that there is a relationship between

13  Mr. Henry and then Mrs. Henry, their interest in -- implicitly

14  in some sexual conduct.

15          And, obviously, it is not conclusive proof with

16  respect to child -- exploitation of children, but I can

17  understand how it sort of helps to set the scene between

18  Mr. and then Mrs. Henry, because otherwise -- and I haven't

19  seen what would be more closely related to their activity on

20  the superseding indictment -- but otherwise, the jury would

21  have no idea who Angele Henry is or whether she has any

22  interest at all in this sort of conduct.

23          Obviously, taking pictures of females, whether they

24  are adults or young adults or individuals under the age of 18,

25  initially it shows a sexual interest that both of them are

1   interested in, but then the government is going to have to

2   then further refine that into actual minors.

3          So I can see the relevance of that.  So I will allow

4   that in as both direct -- well, direct and circumstantial

5   evidence of the conspiracy itself, and the relationship

6   between Mr. Henry and then Mrs. Henry.

7          And let me just indicate, and I think I mentioned

8   this at our last hearing on motions in limine, my rulings

9   become the law of the case, of course.  At any point in time

10  the parties believe, even during the middle of the trial, that

11  I need to reconsider, just move for reconsideration.  We will

12  do that outside the presence of the jury.

13          Also, if you decide and believe that there should be

14  some specific jury instructions that relate to my rulings,

15  whether it is a cautionary instruction, a limiting

16  instruction, or otherwise, you can certainly put that

17  together, and I will take that into consideration, and if it

18  needs to be read during the trial itself, I'm certainly

19  willing to do that.

20          And we'll determine mid-trial jury instructions at an

21  appropriate time, either before we start the trial or sometime

22  during the course of the trial.

23          But, obviously, in this situation, it could call for,

24  and I certainly would invite counsel, to propose limiting,

25  cautionary, or informative instructions for the jury as to how

1   they are to handle certain evidence that comes into court

2   which might be admitted for a limited purpose.

3           In this case, it is direct and circumstantial

4   evidence.  First of all, of course, because of the

5   relationship between Mr. Henry and Mrs. Henry, their apparent

6   interest circumstantially in viewing individuals.

7           Now, obviously, the jury will determine the

8   significance of the photos taken.  It is obviously unusual,

9   certainly, for someone to be taking pictures of females,

10  whether adult or minors.  And then transmitting back and forth

11  between the two, that has implications that they are both

12  interested in some sort of sexual activity.

13          And then it would be up to the government to further

14  refine that as being interested in minors.  Okay.

15          MR. GAPPA:  Thank you, your Honor.  Just to

16  complete -- I believe that that is the correct ruling, and

17  certainly, your Honor, we appreciate that.

18          Just to complete on this particular set of material,

19  these are better quality images related to those

20  communications.  I'm putting on a series of four of these.

21          MR. CAPOZZI:  Do we have evidence of the ages of

22  these girls?

23          MR. GAPPA:  Your Honor, to answer that question, no,

24  because these are people in public.  And to a certain extent,

25  they don't even know -- these girls apparently probably do

1 │ know they are being photographed, but I would say, for

2 │ instance, these don't.  This person probably does not.

3 │       Let me get, if I could, to the next point, and then

4 │ we can see if this makes some progress on that issue.

5 │       This is another set of conversations between Adam,

6 │ the defendant, and Angele, his wife.  And this one is on

7 │ June 3rd, 2013.

8 │       THE COURT:  Okay.  So this -- for the purpose of this

9 │ hearing, you can mark that as Exhibit Number 2, which is also

10 │ then a timeline of text messages.

11 │     (Government's Exhibit 2 was marked for identification.)

12 │       MR. GAPPA:  Correct.  This series of messages in this

13 │ report starts on June 3rd, 2013, and it is in red, "Omg, you

14 │ are so coming next week or the week after.  One of these

15 │ assistant coaches gets me every time."  And this is a message

16 │ from Angele to Adam.

17 │       And then there is reference in this next message, "I

18 │ think she's 16.  Good lord, she fits into that category we

19 │ have been talking about."  And this is between Angele and

20 │ Adam.

21 │       And then here is a different message the next day

22 │ from Angele to Adam, "Taking some down time with Alyssa,"

23 │ which I think the Court will learn soon that Alyssa is the

24 │ victim who is referenced in Count 1.  At the time, she was 14

25 │ or 15 years of age.

1        So "Taking some down time with Alyssa to have lunch.

2    Kitchen is clean.  Going to weed, and in an hour when we all

3    go out, it is only going to be a high of 80, so not bad."

4        And then Angele says, "Looks like we are going to see

5    a lot of her this summer.  Mom has a house full, and one kid

6    really annoys Alyssa, so her mom told her to take as much time

7    as possible out of the house" -- "as much time out of the

8    house as possible.  Yay," three exclamation marks.

9        The defendant says, "Did you offer her dinner?"

10        And then Angele says, "LMAO," three exclamation

11    marks.  "Alyssa just asked if she could tan here topless.  I

12    said," all capitals, ANYTIME," three exclamations, and then,

13    "LOL.  Yes to dinner."

14        These are direct references to girls who are under

15    the age of 18, and in particular, one who is then the victim

16    in Count 1.

17        MR. CAPOZZI:  I would object to these as being

18    hearsay.  And again, there is no sexually explicit activity

19    here whatsoever.

20        MR. GAPPA:  Well, your Honor, they are not hearsay.

21    They are admissions of the defendant.  They are his own

22    statements, and it is a coconspirator that he is communicating

23    with.

24        MR. CAPOZZI:  The defendant didn't make any

25    statements.  At the very end, he said something, "Did you

1  offer her dinner?"

2         THE COURT:  All right.  Well, a statement can be

3  oral.  It can be in writing.  There are obviously different

4  forms of writing, and certainly now with the technology the

5  way it is, text messaging is a statement.

6         So to the extent that the objection is hearsay, the

7  hearsay objection is overruled.

8         MR. GAPPA:  Your Honor, this now I will mark as

9  Exhibit 3.

10    (Government's Exhibit 3 was marked for identification.)

11         MR. GAPPA:  And these are additional communications

12  by text message between Angele Henry, and Adam, the defendant.

13  And this one, in particular, is where Angele sends to Adam, a

14  photo, this is the girl who was, most likely, age 15 at the

15  time, perhaps 14, but -- actually, I think she is 14.  She is

16  the victim referenced in Count 1.

17         And the message is, "I had to help her get into

18  that," exclamation mark.

19         There are a series of other messages between the two

20  of them, "they" being Angele Henry and Adam Henry.

21         Some of these, the Court has already seen.  These are

22  just in a slightly different report that has additional images

23  of the victim who is referenced in Count 1 of the indictment.

24  So these are images of that victim being transmitted between

25  Adam and Angele Henry.

1    Now, your Honor, this, on page 35, is an image that

2  the defendant's wife at the time, Angele, took and then sent

3  to defendant.  Same with item 36.

4    Your Honor, I apologize.  There are several reports,

5  so it's a little bit confusing, but these are taken on

6  April 5th, 2013.

7    Angele, who the Court just heard from, had a daughter

8  from a previous marriage, and that daughter was taking

9  instructions in karate, and Angele took that daughter to those

10  lessons.

11    But then in taking these photos, sent these with

12  comments to Adam, the defendant.  And it's in this particular

13  set of messages on April 6th, reference to the daughter's

14  coach for the evening.

15    And the specific reference to, "that girl being 13

16  years old, that she is a black belt, and she is just coming

17  into her body."  The initial reference is "into jet body."

18  That was a typographical error, so then the following message

19  was clarifying that.  "It's her body, not jet body."

20    So, again, our view is that these are pictures

21  exchanged between Adam and Angele that demonstrate a sexual

22  interest in teenage girls and is evidence of their actions

23  together.  So.

24    MR. CAPOZZI:  Judge, our response is that doesn't

25  show any sexual interest whatsoever.  These are pictures with

26

1    young children with clothes on.  The worst one is the one

2    that's on the monitor right now, if you have one up there.

3               THE COURT:  Yes.

4               MR. CAPOZZI:  And to me, none of these are sexually

5    explicit pictures.  They are just trying to throw Jello on the

6    wall and see what sticks to impassion the jury here somehow.

7               I don't see how this is relevant.  It is highly

8    prejudicial.

9               THE COURT:  All right.  That series would be Exhibit

10   4, the April 2013.

11              MR. CAPOZZI:  Was that 3 or 4?

12              THE COURT:  3 was the one that he referenced

13   before -- I'm giving you the timeline and the specific

14   reference is to page 35 and 36, that was a series -- I'm

15   looking at the series he was showing to me, and that is what I

16   considered Exhibit 3.

17              And this set here, the April 2013 set, is Exhibit 4.

18         (Government's Exhibit 4 was marked for identification.)

19              THE COURT:  Obviously, at trial, they would be

20   marked, and so both sides will get an opportunity to see how

21   they are marked for trial itself.  This is strictly for the

22   hearing itself.

23              Okay.  Response to the defense argument?

24              MR. GAPPA:  Your Honor, we are not saying that any

25   one of those by itself is an image of a minor engaged in

1   sexually explicit conduct.

2          It is not even related to Count 2, which deals with

3   that, for receipt and distribution of those images, that type

4   of image.

5          This is for Count 1, which is a conspiracy to

6   sexually exploit a minor, and it is direct communication

7   between the two people that, in our view, have sexually

8   exploited the girl whose picture is in image 1, and we are not

9   saying that image even is sexually explicit conduct, but it is

10  context for what the jury will see and will be asked to

11  conclude is sexually explicit conduct.

12          THE COURT:  Anything else on that?

13          MR. CAPOZZI:  What the government is ultimately going

14  to show is that picture you are looking at right now as being

15  sexually explicit activity that he is being charged with in

16  Count 1.  Hopefully, the government will show you the

17  videotape of what is the essence of this case, which was taken

18  by the person who was here to testify, not by this defendant.

19          And throwing all of this evidence in is just priming

20  the jury, which is highly prejudicial against him, when

21  nothing sexually explicit is here, Judge.

22          Yes, there is an interest, but let's see the sexually

23  explicit activity.  None of it ever comes out all the way

24  through the end, and that's why I hope the government shows

25  that today.

1          THE COURT:  All right.  Okay.  Now, what I'm seeing

2    here is basically a timeline of the relationship between

3    Mr. Henry and then Mrs. Henry, starting in 2012, showing first

4    of all, contacts with each other of a sexual nature, and then

5    progressing to 2013, where it becomes more explicit with

6    respect to the alleged victim.

7          And so I'm seeing this timeline.  I'm seeing this

8    relationship between the two individuals.  And so I assume the

9    government is going to continue on with what ultimately will

10   be the attempt to or the conspiracy to persuade, induce,

11   entice or coerce a minor to engage in sexually explicit

12   conduct for the purpose of, et cetera.

13         So I'm not ruling this in a vacuum.  I understand the

14   sequence, both time wise, and the relationship between the two

15   Henrys.

16         MR. GAPPA:  That's correct, your Honor.

17         And just by the time of the trial, we will have

18   synchronized this with the forensic metadata.  These are the

19   two images most likely we would select to show that

20   defendant's stepdaughter and the 13-year-old instructor.

21         MR. CAPOZZI:  Objection as to the 13-year-old

22   instructor.

23         THE COURT:  I will sustain that objection for now.

24   Obviously, statements by counsel, even at trial, are not

25   evidence, so that's something the government is going to have

1    to be able to show in terms of the age or approximate age of

2    that instructor.

3         MR. GAPPA:  Okay.  So, your Honor, we didn't -- as I

4    said, I don't think we really consider any of that necessarily

5    404(b) evidence.

6         So now that we are -- I think it is helpful, though,

7    to have the defendant understand some of the theory and some

8    of what we anticipate using as the evidence of Count 1.

9         We did put this under 404(b), this next set of

10   material, because, as we understand the defense, it's evolved

11   over time; however, a lot of what I believe the defense is, is

12   that -- and you have heard a bit today -- that it is all

13   Angele's idea to, and she has the sexual interest in minors.

14        Ultimately, what we will show to the jury, or

15   anticipate showing, are some still images and video images of

16   Victim 1, who, at the time, was 14 and 15.

17        These are videos that were created in the defendant's

18   residence on Burman Drive, in Turlock, where they were living.

19   And they are taken in a bathroom and in a bedroom, and then

20   they are found on the defendant's computer.  The screen

21   captures are made from the videos.

22        And to the extent that the defendant says he had

23   nothing to do with that, that it was Angele, or we have also

24   heard that "We put a camera in the bathroom so that Angele,"

25   who had the somewhat deviant interest, "could record some

1    material and watch herself," this evidence refutes all of

2    that.

3            And it is also evidence of the conspiracy, but some

4    of it goes prior in time.  So it goes as far back as 2008.

5            So what we have here -- and I can mark these next

6    images as perhaps a group exhibit of 5, and then 5-1.

7        (Government's Exhibit 5 was marked for identification.)

8            MR. GAPPA:  What we have -- and we have the video.

9    This is a screen capture from the video, where the defendant

10   in the residence that he occupied without Angele, so before

11   that relationship was established, he lived in a different

12   residence.  He, on his own, set up a camera, in this instance,

13   in the bathroom, so that he could record people, unbeknownst

14   to them, using the bathroom, using the toilet as well as the

15   shower.

16           And so this is evidence of the defendant's motive,

17   opportunity, intent, and the absence of mistake.  All of those

18   grounds under Rule 404(b) that would permit this to be

19   admissible as evidence both for Count 1 and Count 2, but in

20   particular, on Count 1, because those videos that he has made

21   of the victim, who was 14 and 15, she will testify she did not

22   know were being made and that she did not give consent or

23   permission to have those images created, as these victims of

24   this earlier conduct, solely by the defendant, also establish.

25           So this is the first screen capture of the defendant

1    installing a camera.  This is as far back as 2008.  And this

2    is 5-2.  This, the video would show, is part of a longer video

3    where there is a lot that isn't happening, but then when the

4    defendant enters the shower area, he manipulates the place

5    where the camera is hidden.

6         And then at one point, he takes part of the device

7    apart, and you can see that in his hand here.  And ultimately,

8    with some adjustments to the settings and the camera, he is

9    able to create videos of women using the shower in his

10   bathroom and record those on video.

11        And I understand that this is not the highest

12   quality, but we do have the video I can show.  It is a much

13   higher quality image, but this is one woman who investigators

14   confirmed had no idea that she was being secretly recorded in

15   the shower.

16        And there is a second female who had a video made of

17   her as well.  This was in 2009, again, in the residence prior

18   to the defendant occupying the residence with Angele Henry.

19        So this is conduct of the defendant himself secretly

20   recording females using the bathroom.

21        And it is also notable that over time, this being

22   2008 on Exhibit 5-5, that you can see this is a rather crude

23   method of hiding the camera.  He literally cut a hole above

24   the shower area and put a screen over it.  But by 2009, he has

25   refined the technique, and he has hidden the camera in a

1  device, and it is a more obscured camera.

2         But it is important because it links, ultimately, to

3  the technique that the defendant employed at the residence

4  where the videos of Victim 1 in Count 1 were produced.

5         So we go to -- and I will mark this next item as

6  Exhibit 6.

7         (Government's Exhibit 6 was marked for identification.)

8         MR. GAPPA:  This is a screen capture from a video

9  taken in the residence that the defendant shared with Angele.

10  And this is a still image, but what we anticipate the Court

11  will learn and the jury will learn is that this was a camera

12  that was hidden.

13         It is a video camera that was hidden in a hanging

14  plant that was then hidden in part by these leaves, but the

15  defendant and Angele took deliberate steps to get the best

16  quality images of the victim using the bathroom and the

17  shower.

18         So they would do things such as adjust the lighting.

19  At some point, they took off this curtain rod because at times

20  when she would come in, the shower curtain would be drawn

21  across and you couldn't see her using the bathroom or looking

22  at herself in the mirror, so they, at sometime, took this out.

23         And in part, at times, there is a window up here and

24  the lighting, depending on the time of day, would interfere

25  with the quality of the image, so you could see them come in

1    later and make adjustments to the lighting.

2           And, ultimately, what they are after are images such

3    as this, which I will mark as Exhibit 7.

4        (Government's Exhibit 7 was marked for identification.)

5           MR. GAPPA:  Which was taken, this is from a video

6    taken in the defendant's bathroom.  And this does show -- this

7    is just one -- a frozen image of the victim who was 14 or 15.

8    At times, she was 14; at times, she was 15.

9           But the defendant created these videos.  There are

10   multiple videos taken over the time span referenced in the

11   indictment, and then there were screen captures made of some

12   of the videos.  And this is one of the screen captures.

13          So this is shown to explain what the end result was

14   and the technique that was used in the residence, but to show

15   also that it is the defendant who is responsible for this,

16   because four, five, or six years prior to the images in Item

17   7, Exhibit 7 being produced, he, on his own, is creating

18   similar videos of people which we see a part of in Exhibit 5.

19          So we believe that all of those should be admissible.

20          What we have done is isolated the materials that we

21   would show, some excerpts of perhaps two videos of the

22   defendant setting up the camera at the prior residence.  And

23   then we have two women, who were the subject of his videos in

24   2008 and 2009, who never gave permission for their images to

25   be created.

1    And all of these then ultimately end up on the

2    defendant's computer in a very organized system of storage.

3    So we can see this is under a folder structure where

4    there a folder called "Copy," and below that, a folder called

5    "Sorted," and then "Personal," "Not okay," "Exes."

6    And then there are these women who are identified, as

7    well as "Me Vids."

8    And down here are the images of where the victim of

9    the conduct in Count 1 appears.  And he is then further

10   segregated it by the age of that victim, at 14 and 15.

11   And this is all found on the defendant's computer.

12   So it all fits together when it is put on its timeline and

13   it's seen in context.

14   And it goes to show that the defendant is involved in

15   this.  It is true that Angele was also involved, but we are

16   focused on this defendant and his actions.

17   MR. CAPOZZI:  Judge, this isn't even remotely what's

18   going to come out at trial.  I'm just astonished.  2008 is a

19   video put above the bathroom with his fiancee's permission.

20   The government only shows you certain snippets.  I

21   don't think the government is going to be showing the snippets

22   at trial.  They want to show the videos.

23   I think we should be seeing the videos here, if

24   that's what they are going to be doing, because in those

25   videos, you are going to see his fiancee in the bathroom, or

1    just going in the bathtub, looking up at the camera, smiling

2    and exposing herself, fully knowing what was going on.

3         That camera was put there by the defendant, no

4    question, with the understanding with his fiancee that it was

5    there.  And this is taken in 2008.

6         Now, his fiancee, I can assure you, was over 16 years

7    of age.  She was his age at the time.  Everyone in the videos

8    in 2008, 2009, are all adults, have nothing to do with child

9    pornography, nothing whatsoever.

10        I think that is totally irrelevant in terms of

11   404(b).

12        Then the government comes up with the present

13   situation of 5-6, which is the photo of the defendant, I

14   think, with his wife in that bathroom.

15        And they show the photo of the young girl, and I

16   think that was with her behind.

17        And he says this is all on his computer.  Judge,

18   these aren't on his computer.  They are on a server in the

19   house, but not on this defendant's computer, and yet they are

20   relating all this to the defendant.

21        I think it is so unfair to throw all this out in

22   front of the jury, and yet we haven't seen any explicit, any

23   sexual explicit activity yet that would violate any statute.

24        And I would ask that this be totally excluded from

25   any evidence before the jury.  And that if the government is

1    not going to be showing these, and then show the video, we

2    should be seeing that video here, not these pictures, because

3    it is going to show something totally different.

4              MR. GAPPA:  Your Honor, we can show the videos.

5              To respond to the point of it being his fiancee, we

6    have a multiple of victims or women who are recorded.  We are

7    not going to, and we don't think we need to show content from

8    each of those recordings.

9              We focused on two, who law enforcement interviewed,

10   and said absolutely, "We did not," "I did not give permission

11   for the defendant to record me."  So those are the two that we

12   have focused on.

13             And if the Court thinks it is necessary, we can play

14   the videos.

15             MR. CAPOZZI:  I think it is important, Judge, because

16   what they are referring to in those names down here are

17   victim -- not victims.  There is three people having sex

18   together.  It is his wife, him, and another woman.  And there

19   are different women there.

20             They are into adult pornography.  They videotape it.

21   But that's not a violation of any law.  None.  And they are

22   trying to tie this into sexually explicit activity with

23   children.  This is not the case.

24             It is not against the law to do what they did in

25   terms of the adults.

1          THE COURT:  Certainly not in terms of adults.

2          And then so do you have other exhibits or whatever?

3          MR. GAPPA:  The videos?

4          THE COURT:  No, no, no.  I mean as far as anything

5    new or different.  Basically, as I understand, you are

6    showing, and the representation by the government that will be

7    shown to the jury will be possibly still images or videos of

8    the alleged victim, the minor victim in this case.

9          And at least I saw one still, I guess, it was a -- of

10   the backside of the female.  And as I understand it, she is

11   going to come and testify that she did not know and did not

12   give permission to be videoed in the bathroom.

13         But is that the gist?

14         MR. GAPPA:  Yes, but that's not the full extent of

15   the material on that victim, the minor victim in Count 1.

16   That's just one screen capture which I used by way of example

17   to show the continuity of the technique, that goes to show who

18   was responsible for this.

19         So it is not that is all that we have.  There are

20   approximately ten videos in the bathroom, one video in a

21   bedroom, ten screen captures from the video in the bedroom,

22   and two screen captures from the videos in the bathroom.

23         So there is more content of that victim.

24         THE COURT:  Of that victim?

25   ///

1          MR. GAPPA:  Correct, of the 14 and 15-year-old girl.

2          MR. CAPOZZI:  But nothing to tie it into this

3    defendant, your Honor.  The video that the government is

4    talking about, and the essence of their case, is taken in

5    their bedroom.

6          And it is Mrs. Henry setting up a camera and bringing

7    this young girl in to try out a corset.  And we need to see

8    that video because it is not going to show sexually explicit

9    activity.  Every time anything could possibly be seen, the

10   back is turned toward the camera and she is wearing a corset.

11   The Court needs to see that before we play it to the jury.

12         THE COURT:  All right.  Is that an accurate

13   description of what I would see, would be then Mrs. Henry with

14   the alleged minor trying on a corset or fitting on a corset?

15         MR. GAPPA:  That's one of the videos, your Honor.

16   That's the video in the bedroom.  But there are multiple

17   videos of her using the bathroom, using the shower, and then

18   screen captures of that activity.

19         So the vast majority over time is material that's

20   produced in the bathroom.

21         MR. CAPOZZI:  We haven't seen any video of her

22   using -- of the minor using the shower.  Now, if it is there,

23   I haven't seen it.

24         THE COURT:  Okay.  All right.  Let me just say.  So

25   far what I have seen leading up to what I assume was the

1   sexually explicit conduct, were the initial exhibits, if you

2   will, for the purpose of this hearing, the timeline, the text

3   messages back and forth, to establish the relationship between

4   Mr. Henry and the then Mrs. Henry, their interest in at least

5   some sexual aspects.

6           And then the photo video of the different stages of

7   Mr. Henry setting up the camera, refining it, in the bathroom,

8   et cetera, and showing that he was actually videoing women in

9   the bathroom who, unbeknownst to them, were being videoed,

10  either using any of the facilities in there, whether it is the

11  toilet or the shower.

12          And then a video, or at least a screen shot, of the

13  minor in the bathroom.

14          And then the representation that I understand the

15  minor in the bedroom with then Mrs. Henry with a corset.

16          And I can understand all that, and that would all be

17  relevant leading up to sexually explicit conduct.

18          The concern I have is if that's what we have here,

19  surreptitious showing of the minor in the bathroom using the

20  facility, surreptitious filming of the minor with Mrs. Henry,

21  then Mrs. Henry, maybe trying on some clothes, et cetera, I

22  don't see the sexually explicit conduct.

23          What I see is basically a peeping Tom.

24          MR. CAPOZZI:  Voyeur.

25          THE COURT:  Voyeurs filming a minor, unbeknownst to

1   her.  Living in a household, using facilities.  We're being

2   shown that.

3        Possibly in the bedroom, trying on some clothes.  And

4   it is possible that Mrs. Henry is persuading her to try on

5   different clothes so that the minor would have to undress.

6        We have seen the definition over and over again of

7   what constitutes sexually explicit conduct:  Actual or

8   simulated sexual intercourse, bestiality, masturbation, et

9   cetera.

10        And I don't see that.  I see a couple of voyeurs.

11  And I don't know if that constitutes sexually explicit conduct

12  to the extent that it would violate -- constitute elements of

13  Counts 1 and 2, and I think that's rather problematic.

14        And I am concerned that if this goes to the jury and

15  that's what the government shows me, I'm just not sure that

16  you have sexually explicit conduct, which means that I would

17  grant a defense motion for judgment as a matter of law, if

18  that's what you have.

19        Now, I'm not saying that -- assuming that everything

20  the government has shown proves that Mr. Henry is a voyeur,

21  I'm not so sure that that proves a crime, either crime.

22        So you are going to have to have more briefing and

23  more explicit information to me to convince me that that

24  constitutes sexually explicit conduct.

25        Now, there may be a separate charge somewhere for

1    voyeurism of minors, but I'm not so sure it is in these

2    counts.

3           MR. CAPOZZI:  If I could, I would ask the government

4    to play that videotape that they are basing this case on so

5    you could see it before it goes to the jury.

6           THE COURT:  I don't need to see a video.  If what you

7    are saying is it shows the young lady in the bedroom with

8    Mrs. Henry trying on clothes, and to the extent they are

9    trying on clothes means taking clothes off to put clothes on,

10   I don't know.

11          You know, I think what you are going to have to do --

12   and I'm willing to hold hearings, because I really don't want

13   to have a jury here and then me finding out that that's it,

14   that's all the government has.

15          You are going to need to give me case authority for

16   the proposition that being a voyeur -- or that what you are

17   alleging Mr. Henry did, and let me just assume for the

18   purposes of my discussion, that yes, indeed, he and Mrs. Henry

19   were talking about, chatting -- from 2008, chatting about

20   recording women, adults, and then getting into minors, and

21   they got this one minor to live with them or whatever, I

22   believe in the cases that were cited, these -- the only thing

23   I got on this was from the defense, and then expert testimony

24   with regard to modus operandi of child molesters, and those

25   who are opportunistic, and those who utilize techniques to

1  gain the trust of minors, et cetera.

2          But I am concerned, and maybe, you know, in fairness

3  to the government, maybe you haven't really shown me what you

4  believe -- well, let me ask you.

5          What, in that that you have showed me and made an

6  offer of proof to me constitutes sexually explicit conduct?

7          MR. GAPPA:  Your Honor, couple of things.  One, this

8  reminds me of a case where, years ago, Mr. Capozzi represented

9  a client who ultimately pleaded guilty to a charge related to

10  child exploitation, but one of the first things he said, when

11  he looked at the charge and he looked at the evidence, he

12  said, he said, "Where is the kiddie porn?"

13          I said, "Mr. Capozzi, it is a little more nuanced

14  than that.  Let's look at the indictment.  Let's look at the

15  statute.  Let's look at the definitions."

16          So I think here, when we look at the indictment, it

17  is a conspiracy to sexually exploit a minor.  So we have got

18  the charge where, in our view -- and we have done the

19  research -- there are plenty of cases in different Circuits

20  that talk about the viability of this Count on cameras set up

21  in situations such as this, where looking at the factors, in

22  part that the Ninth Circuit has articulated, where you look at

23  in its context and the intent of the photographer, what was

24  the purpose of the image.

25          And our view is that you don't necessarily have to

1    have what traditionally we see, just given the nature and the

2    volume of the cases that normally come through, a particular

3    image that would constitute child pornography, where there is

4    penetration of the genital or pubic area of a minor.

5         So it is definitely more nuanced than that, so.

6         THE COURT:  Okay, all right.

7         Now, it is possible, and I want you to brief this,

8    and I will give Mr. Capozzi an opportunity to file an opposing

9    brief, because this sort of strikes me as -- because the --

10   and I would like to see your proposed jury instructions and

11   verdict form on this.

12        Because I can see, if I look at the superseding

13   indictment, Count 1, conspiracy to sexually exploit a minor, I

14   can see a broad parameter that, yeah, if you are going to

15   surreptitiously take pictures of minors in the nude or

16   whatever, I can see where you are sexually exploiting that

17   minor, but when I look at the language of the indictment

18   itself, "to employ, use, persuade, induce, entice, or coerce a

19   minor to engage in any sexually explicit conduct," that's a

20   concern.

21        So I will need to see case authority for the

22   proposition that we are really looking at sexual exploitation

23   in a broader sense, which is, it could well include

24   surreptitiously taking photos or videos of minors who,

25   unbeknownst to them, are being taped or whatever in bathrooms

1　or bedrooms or whatever, but I will need to see that.

2　　　　So if that's the case, if it is indeed that's

3　sufficient for sexual exploitation under 2251(a) and (e),

4　that's a possibility, but I will need briefing on that.  I

5　will give Mr. Capozzi an opportunity to respond.

6　　　　MR. CAPOZZI:  Unfortunately, that was not a motion

7　that was teed up for the Court's consideration.

8　　　　THE COURT:  Totally understand.  Totally understand.

9　This is the first I have heard of it, frankly.  So I'm not

10　blaming the government at all.  You know, this is something

11　that's brand new to me because I'm so accustomed to the,

12　unfortunately, typical child porn, where a child is

13　actually -- oral penetration, et cetera.

14　　　　MR. CAPOZZI:  Sexual abuse, et cetera, I agree.

15　　　　THE COURT:  But I haven't seen one where it's simply

16　photographing a minor.

17　　　　So, Mr. Capozzi, there may be case authority for the

18　proposition that that is sufficient under 2251(a) and (e),

19　that that constitutes sexual exploitation, even without what I

20　had considered to be sexually explicit conduct as defined in

21　the statute, which we are all aware of, et cetera.  So --

22　　　　MR. CAPOZZI:  I think what's important though, Judge,

23　is to see this video that they are talking about.  It is not a

24　whole lot more than what you are seeing pictures now of in

25　terms of the young woman putting the corset on, and turning

1   her back to the camera when she puts it on so there is nothing

2   visible there.

3         In the *Dost* case, a district court case, 636 Fed.Supp

4   828, and it's been affirmed on appeal, it gives the factors as

5   to what child pornography is.

6         THE COURT:  All right.

7         MR. CAPOZZI:  You want a brief.

8         THE COURT:  I will allow briefing on this.

9         MR. CAPOZZI:  I gotcha.

10        THE COURT:  And I think once I get the briefing, I

11   will look at the video because then I will have the parameters

12   by law of what I'm supposed to be looking at.

13        If I look at it now, and then I get the briefs, I

14   will have to see it again because then I will have to try to

15   figure out, and then both sides can argue this is how it fits

16   and you can argue this is how it doesn't fit.

17        I would like to try to keep the trial date, but I

18   know that we are coming very close to the trial date.

19        MR. CAPOZZI:  Judge, if I could bring something up,

20   and I apologize.

21        The government has just given us new discovery, more

22   discovery.  And evidently, there was some other child

23   pornography videos found on one of the computers in the garage

24   or in the house, I'm not sure.

25        And I have contacted my expert right away, as soon as

1    I got this.  And it is another -- excuse me on the number --

2    another 62 videos.  And my expert hasn't seen it.  I haven't

3    seen it.

4            And I just received the testimony of the police

5    officer, Mr. Hively, before the Grand Jury, which is 30 or 40,

6    50 pages, I'm not sure.

7            I would ask for a short continuance because it really

8    puts me in a bind to try to get everything ready now for trial

9    with this new stuff.  If you are available in July, I'm fine.

10           THE COURT:  Government?  I don't want to continue the

11   trial date, but I also don't want us in a position where one

12   week before trial, I'm making decisions that may have a fairly

13   dramatic impact on the trial itself.

14           Other than the Circuit conference, which is July 17th

15   through the 20th, I don't have any other trials set in July.

16           And I know this is -- I'm throwing this at you,

17   Mr. Gappa, because I have already indicated at the last

18   hearing that I would deny the request for a continuance based

19   upon the factors that Mr. Capozzi had cited at that time.

20   Obviously, at that time, I did not have the benefit of my

21   concern.

22           And I may be -- perfectly honest, Mr. Capozzi.  I may

23   be totally off base on this.  There may be sufficient case

24   authority, whether or not it is in the Ninth Circuit, that

25   conspiracy to sexually exploit a minor does not necessarily

1   mean sexually explicit conduct as I understand from the

2   statute.

3         It may well be that there is something less than that

4   in that charge.  But I want to allow the government to --

5   again, I don't want -- you folks stepping into trial, not

6   knowing what I'm going to decide.  And I just want to make it

7   clear what the parameters are.

8         So what I'm considering, Mr. Gappa, is to move the

9   trial date to sometime in July, if your witnesses are

10  available, set up a briefing schedule to allow the government

11  to submit briefing on the issue of whether or not -- and this

12  is a proffer at this point -- is that what the evidence the

13  government has in terms of the sexual exploitation are the

14  surreptitious photos and videos of the minor in the bathroom,

15  doing, I assume normally, utilizing the facilities, as opposed

16  to some more sexually explicit something.  And then in the

17  bedroom, again, the trying on of the clothing.

18        Now, obviously, it is possible that implicit in that

19  is that at least Mrs. Henry might have been persuading the

20  minor to try on clothes so that she could actually video her,

21  you know, getting dressed and undressed.  That's a

22  possibility, but I don't know.

23        But at any rate, what I'm prepared to do -- and

24  Mr. Gappa, I'm not sure, and obviously, Mr. Capozzi, you have

25  a number of expert witnesses.

1        What works for you folks?  It is a little bit of a

2   problem in July because the 4th of July, which is a Federal

3   holiday, falls on a Tuesday, July the 4th.  And then the Ninth

4   Circuit Conference is the 17th through the 20th.

5        We could start this as early as Wednesday, July 5th,

6   or we could start on Tuesday, July 11th, but we would run, if

7   it is going to last more than four days, which is possible, we

8   would run into a break.

9        So we might have to start this on July the 25th.  And

10  I would have two full weeks available before my next scheduled

11  trial, on August the 8th.  So you would have the week of the

12  25th through the 28th of July, and then August 1st through the

13  4th, which gives you eight court days, if you think you might

14  need that much time for the trial.

15        At any rate, that's a possibility.

16        MR. GAPPA:  Your Honor, what was the -- because the

17  two weeks in July that the Court was suggesting at the end,

18  starting on the 25th, are the precise two weeks that I'm

19  completely unavailable starting on the 26th, so what were the

20  dates in August?

21        THE COURT:  Another possibility is we start on

22  Wednesday, July the 5th, the day after the 4th of July.  And

23  we would then give you folks the 5th, 6th, and 7th.  And the

24  following week, July 11th, is a Tuesday.  We would go from

25  July 11th to the 14th, but we need to wrap it up by then, if

1  possible, that's seven court days, because I will be gone to

2  the Ninth Circuit Conference from the 17th through the 20th.

3       And I don't think any of us wants a jury to break

4  for -- I mean it is possible, it has been done before.  It is

5  not like they are going to totally lose it, but if you want

6  continuity.  And also it depends on the duration of the trial

7  itself.

8       And I can address the objection to the four defense

9  expert witnesses today if that will help figure out the time

10  frame.

11       So Mr. Gappa, for the government's purpose, July 5th

12  through the 7th, the 11th through the 14th.  Otherwise, we

13  spill over into August.

14       And, obviously, we would not interfere with your

15  unavailability.  And you are not available from the 26th

16  through what date?

17       MR. CAPOZZI:  When are you gone?

18       MR. GAPPA:  I think it is August, 11th if that's a

19  Friday.

20       THE COURT:  We could technically start it on

21  August 15th.  One problem, I do have a trial set on

22  August 8th.  It is a civil case, so you would have priority,

23  but I hate to do that with them if I don't have to double-set.

24       MR. CAPOZZI:  We are looking at like August 16th?

25       THE COURT:  Oh, if it is in August, Tuesday,

1   August 15.  I can give you four days that week.  Now, that

2   is -- well, I have a jury trial that's starting on August the

3   8th.  Now, if that starts, then that pretty much takes up

4   August, because their time estimate is 14 days, which carries,

5   really, through most of August.

6          MR. CAPOZZI:  What's July 5th look like for you,

7   Counsel?

8          MR. GAPPA:  I personally could do the July dates.  I

9   just haven't had a chance to check the dates with witnesses or

10  cocounsel.  I do know that cocounsel has some conflict in that

11  time range, but it's something where he is not here today, but

12  we can check with him to see if we could maybe work around it.

13         THE COURT:  Okay.  One possibility is I could set a

14  briefing schedule, and I could vacate the trial date, set a

15  status hearing for June 5th, which is next Monday, or

16  June 12th, although I don't especially want to go that late.

17         Maybe June the 5th, just on a status, to see what

18  dates might work for you folks.  And I know both sides have to

19  contact your potential witnesses.  And see if we can fit this

20  in on July the 5th.  But I -- again, I can only give you until

21  the seven days before the Circuit conference.

22         I can set a status hearing for next Monday, the 5th.

23  That could either be at 10:00 or 1:30, whatever works out

24  better.

25         MR. CAPOZZI:  10:00 is fine with me.

1          MR. GAPPA:  That's fine, your Honor.  I actually

2    won't be here on Monday, but somebody will.

3          THE COURT:  Yeah, just to give us an update.

4          MR. CAPOZZI:  As to the trial dates?

5          THE COURT:  Whether or not July 5th works for you.

6    You folks need to meet and confer.

7          I'm going to go ahead and rule on the motion

8    regarding the expert witnesses.

9          MR. CAPOZZI:  I would ask to hold off on that because

10   I found, watching one of the audios -- my experts were going

11   to testify as to whether or not the defendant was a sexual

12   predator.  Well, one of the audios, it is clearly obvious the

13   government agents are telling Mrs. Henry, "He is a sexual

14   predator, and here is why he is."  My experts will deal with

15   that issue.

16         MR. GAPPA:  Your Honor, that is not an accurate

17   description, but nonetheless, it is totally irrelevant,

18   because the issue is what is in the defendant's mind and what

19   are the relevant issues for the jury.

20         And whether or not he is, in the defense view, a

21   "pedophile," "pedophile," however it is pronounced, is not

22   even relevant.

23         It is a question that is not even, as we pointed out,

24   a medically or scientifically or a psychiatrically accurate

25   description.

1        The correct psychiatric disorder would be Pedophilic

2   Disorder, but nonetheless, you can be a pedophile and not have

3   an interest in what he is doing, because our victim in Count 1

4   is a 14- and 15-year-old girl.

5        Pedophilia deals with prepubescent children.  So

6   these are concentric circles that don't necessarily intersect.

7        The same for Angele Henry.  To the extent that she

8   has a sexual interest in a certain age range doesn't mean that

9   she doesn't have an interest in another age range.

10       So really this irrelevant description of what they

11  said to her in the process of an interrogation, where they are

12  trying to elicit information at the earliest stages of an

13  investigation, is not really what should guide the Court's

14  decision on what should be admitted in the trial.

15       THE COURT:  All right.  Okay.  I will hold off on

16  ruling on the motion to exclude experts, and then you folks

17  can meet and confer.

18       What I would like, if possible, and maybe it's

19  already been submitted on the motion for release, pretrial

20  release, but if I could get a copy of Dr. Malinek,

21  M-a-l-i-n-e-k, and Dr. Seymour, as to what their opinion is,

22  then that will help me.

23       Let me just --

24       MR. CAPOZZI:  I submitted those to the government.  I

25  apologize for not getting it to the Court.

1          THE COURT:  Not a problem.

2          The one concern I have for you folks to consider, in

3    reading the *Romero* case and the *Betcher* case, which the

4    defense has cited, they did talk about characteristics of

5    preferential child molesters; that's the *Romero* case.  And

6    then behavioral characteristics of sexually abused children;

7    that's the *Betcher* case.

8          Even though the Courts, the trial courts allowed

9    expert testimony and the appellate courts upheld those

10   rulings, the courts in both cases were careful that the

11   experts only talk about general characteristics --

12         MR. CAPOZZI:  Right, right.

13         THE COURT:  -- not specifically as to whether or not

14   the defendant posed those characteristics.  That was for the

15   evidence to show and the parties to argue.

16         So I will just need to see what their reports, and

17   whether or not it is relevant.  If it is that if their

18   diagnosis or opinions as to whether or not Mr. Henry is or is

19   not a pedophile or has a Pedophilic Disorder, that may not be

20   relevant if a person who engages in -- let me use the term,

21   "child exploitation" would not necessarily have to be a

22   pedophile or have a Pedophilic Disorder.

23         So that could be problematic, although I will note

24   that in the stipulations, one of the video files is, "Vicky -

25   Pedofilia".

1        So I don't know if there is going to be an argument

2   that, "Well, wait a minute, you are going to have a video on

3   pedophilia; maybe there ought to be some evidence on that."

4        So at any rate, I just happened to see that when I

5   saw the stip, but that, we can hold off on.

6        So, and it appears that the defense, as to the other

7   two witnesses, may be reserving Mr. Lawson only on rebuttal,

8   depending on the evidence, and Dr. Trompetter,

9   T-r-o-m-p-e-t-t-e-r, only a witness if Angele Henry were to

10  testify, and she has already indicated she has not.

11       MR. CAPOZZI:  Most likely, he would not testify

12  because she is not going to testify, but now he did a report

13  on her which the other experts have analyzed, and I'm not sure

14  if they even mention it in their reports, but they may have.

15  So it may come in through that way.  I'm not sure.

16       THE COURT:  Well, we might have to deal with what an

17  expert can consider, and obviously they can consider a lot of

18  things that might otherwise be inadmissible, might be hearsay,

19  but that's something we will need to deal with when we get to

20  that point and we talk more in detail about the admissibility

21  of any of the defense experts, the designated experts.

22       MR. CAPOZZI:  So we have June 5th, but we are going

23  to do a schedule for briefs?

24       THE COURT:  June 5th is only --

25       MR. CAPOZZI:  Trial date.

1        THE COURT:  Trial date.

2        So Mr. Henry, did you hear and understand what we are

3   saying about this case?  You do have a trial date already set,

4   but your attorney had requested a continuance the last time

5   around, and on what the information I had, I denied it.

6        Mr. Capozzi is indicating he has now received some

7   new discovery and now that there is a legal issue, it really

8   needs to be resolved before your trial.

9        So if you are in agreement also, then I will vacate

10   the trial date and we will see about setting it in July and

11   August, maybe later, if necessary, just to make sure that we

12   can schedule it in, including any witnesses.  But do you

13   understand that?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Do you agree to that?

16        THE DEFENDANT:  Yes.

17        THE COURT:  All right.  I'm going to vacate the trial

18   date.  And for now, the dates and orders relating to the

19   trial, I do find that in this case, the interest of the public

20   and the defendant's speedy trial are outweighed significantly

21   now by the need for further investigation, trial preparation,

22   and to resolve certain legal issues that have arisen.

23        With that understanding then, let me ask, Mr. Gappa,

24   in terms of briefing the issue of based on what's been

25   presented to me today -- and obviously, the government can

1    just indicate generally what the evidence will show -- but in

2    terms of briefing as to whether or not they fit within the

3    elements of Counts 1 and/or 2, how much time do you think you

4    would need to submit a brief on that issue?

5                MR. GAPPA:  Your Honor, can I ask a question first?

6                THE COURT:  Sure.

7                MR. GAPPA:  That is, for the sake of efficiency,

8    whether or not we might know, if it turns out that we cannot

9    use the proposed window in July, I would like to be able to

10   tell these witnesses, "These are the options."

11               If we have a conflict where we can't work around it,

12   then we would -- I would like to be able to come in on Monday,

13   the 5th, and say, "Here's what we have agreed as to the date."

14   And if we know what the Court's availability is in advance, I

15   think we can do that.

16               So all of that is somewhat a factor in terms of how

17   much time the government -- I could try to respond within,

18   say, ten days on the briefing, with the idea that we have this

19   July 5th court date.

20               I'm just away from the office starting Monday through

21   Friday next week, I'm not here, so it makes it a little more

22   challenging.

23               THE COURT:  Yes, I agree.  You know, it is important.

24   I don't want to push.  I'm not saying that we -- obviously, it

25   depends on your respective schedules.

1          Right now, I'm looking at a trial date of July the

2     5th, and then if that doesn't work -- and July 25th doesn't

3     work, and I acknowledge that -- August is problematic because

4     I do have a jury trial that's set August the 8th, that is

5     scheduled for, they say, 14 days.  It could be less than that.

6     It is a civil matter, but it is a 2013 case that's been

7     continued a number of times.  I don't want to deliberately set

8     a trial that would cause that to have to be bumped if we can

9     avoid that.

10          Otherwise, then we are really looking into September.

11    I have a number of trials set in September, October, but they

12    are all related.  Well, the ones in September are related.

13          And so I think those probably can be moved such that

14    we could start a trial September 19th or September 26th.

15          And then after that, I'm fairly flexible.

16          So I would say July 5th or then moving into

17    September 19th or September 26th, or I think we have enough

18    time that I can move, because what I have left for the rest of

19    the year after that are civil matters I could probably move,

20    so that October and November, and possibly very early

21    December, could work also.

22          MR. CAPOZZI:  We were thinking of September 19th,

23    Judge.

24          THE COURT:  Okay.

25          MR. GAPPA:  I do know there are a couple of days

1   around the 25th and the 26 --

2          THE COURT:  Why don't we do this.  I won't set a

3   trial date.  You can meet and confer, talk with your

4   witnesses.  If your witnesses say, "Look, as long as you set

5   it in October, November," that gives us enough time to

6   schedule around whatever date you folks pick, then that would

7   be fine with me also.

8          So, you know, I'm not wedded to the September dates.

9   I can certainly accommodate you in October, November pretty

10  easily, if that helps scheduling your witnesses, giving them

11  enough advance notice so that they can be present.

12      (Counsel conferred off the record.)

13         MR. GAPPA:  Your Honor, it sounds like if we do go

14  out, that counsel would be available on the week of the 9th of

15  October.

16         THE COURT:  So that's a possibility.  And I can do

17  October -- well, the 9th is Monday, it is a holiday, so we

18  might have to start on Wednesday, October 11th, if I have law

19  and motion.  I do have law and motion on October 10, Tuesday,

20  because Monday, our regular law and motion day, is a holiday.

21  So we could start on October the 11th.

22         MR. CAPOZZI:  If the Court would give me a day off

23  the week after, I have commission hearings.

24         THE COURT:  In October?

25         MR. CAPOZZI:  Yeah.

1    THE COURT:  Okay.  That's so if you folks can meet

2  and confer, check with your witnesses, and we will meet on

3  June the 5th, at 10:00 o'clock in the morning, and that will

4  be a status conference just to see about trial dates.

5    In the meantime, with that understanding then,

6  Mr. Gappa, you are talking about -- well, ten days from now

7  would be Friday, June 9th.

8    If you are not going to be here that week, and you

9  want more time, that's totally understandable, in which case,

10  I would set it for sometime the following, the week of

11  June 12th.

12    And that obviously would impact the July trial date,

13  and we would not do a trial in July if we are briefing through

14  the month of June.

15    So it is your choice on that, Mr. Gappa.

16    MR. CAPOZZI:  Is the month of August out of question

17  for a trial?

18    THE COURT:  Only because I have a trial set on

19  August 8th, three weeks potentially.

20    MR. CAPOZZI:  That's right.

21    THE COURT:  And there has been no movement on that.

22  It is a 2013 case, and they have not settled it.

23    MR. CAPOZZI:  Civil or criminal?

24    THE COURT:  Civil.  Like I say, I guess we would have

25  priority, but I don't want to deliberately continue it if I

1  can avoid that and still accommodate your respective

2  schedules.

3          So Mr. Gappa, tell me when you would like to file a

4  briefing on the issue of, based upon what the government's

5  proffer is, that that falls within the parameter of Counts 1

6  and/or Count 2.

7          MR. GAPPA:  Your Honor, if there is a possibility to

8  go in toward the end of the -- I'm sorry.  So that any time on

9  the 12th or later.

10          THE COURT:  Okay.

11          MR. GAPPA:  Perhaps the 14th.

12          THE COURT:  So June 14th.

13          And then the opposition or the response could be

14  filed and served?

15          MR. CAPOZZI:  I would like to do it quickly because I

16  want to keep the possibility of a July 5th trial date.

17          THE COURT:  All right.  Well, but if he files and

18  serves on June 14th.

19          MR. CAPOZZI:  The 21st?

20          THE COURT:  Okay.  June 21st.  Then we can have the

21  hearing on Monday, June 26th, at, see, at 1:30 p.m.  Now, that

22  comes perilously close to a July trial date.

23          MR. CAPOZZI:  I know.

24          THE COURT:  But that's, whatever.  Okay.  And at that

25  time, I would also need to rule on the government's motion to

1   exclude expert witnesses, and then any other -- I'm not sure

2   if there is anything else that's pending or whether either

3   side intends to file any other -- if you feel that you need to

4   file any other motions, go ahead and use that same schedule,

5   filing and serve by June 14, with any opposition to the

6   response by June 21st.

7           And anything that's filed on the 14th, I will hear on

8   the 26th of June, at 1:30 in the afternoon.  And then I will

9   also deal with the expert witnesses at that time.

10          MR. CAPOZZI:  Thank you, Judge.  I would like to get

11  copies of the exhibits that were used today, Counsel, if you

12  could get them over to me.

13          MR. GAPPA:  That's fine.

14          THE COURT:  I assume that what he can do in the

15  meantime, you folks can meet and confer on exhibits, marking

16  exhibits, et cetera, so that you are both on the same page as

17  to what documents constitute trial exhibits.

18          Okay.  Let me ask, is there anything else today that

19  we can or should take up on behalf of the government?

20  Anything?

21          MR. GAPPA:  No, your Honor.  Just to state the

22  obvious, which is there are two counts in the superseding

23  indictment, and we have a stipulation or two on some of the

24  elements on Count 2.

25          So regardless of what would happen on Count 1, we are

1    no doubt going to have a trial on Count 2.

2          MR. CAPOZZI:  Right.

3          THE COURT:  Sure, sure, okay.  And I did receive a

4    document entitled, "Stipulations," Document 121.  Is that what

5    you are referring to?

6          MR. GAPPA:  Yes.

7          THE COURT:  Mr. Capozzi, there are stipulations here

8    that you have signed off on.  Both sides are agreeing that

9    those are stipulations, which means they are conclusively

10   proven for the purpose of the trial; is that correct?

11         MR. CAPOZZI:  Yes, your Honor.  And I have reviewed

12   that with the defendant.

13         THE COURT:  Mr. Henry, do you understand those

14   stipulations?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And you also agree that those would be

17   admitted for the purpose of trial; is that correct?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And then I will leave it to counsel as to

20   what form, and that applies to any stipulation of fact, how

21   you want to present it to the jury, whether you are going to

22   state the stipulation during the course of the trial or

23   whether it becomes a jury instruction or whatever, I will

24   leave that up to you folks.

25         All right.  Anything else by either side today that

1   we need to address?

2          MR. GAPPA:  No, your Honor.

3          MR. CAPOZZI:  No, your Honor.  Thank you.

4          THE COURT:  We will see you June 5th, at 10:00

5   o'clock.

6          MR. GAPPA:  10:00 o'clock.  Thank you, your Honor.

7          MR. CAPOZZI:  Judge, we didn't rule on the adult

8   videos coming in, did we?  Because it is included in that

9   chart he just showed, there is a bunch of adult videos in

10  there.

11         And this is the ones where the government says that

12  the other women were not aware of their being videotaped, and

13  I don't think we dealt with that, so that's still up in the

14  air, so we should bring it up next time.

15         THE COURT:  If you want to brief that on a motion

16  schedule that's fine.

17         MR. CAPOZZI:  Thank you, Judge.

18      (The proceedings were concluded at 3:15 p.m.)

19         I, PEGGY J. CRAWFORD, Official Reporter, do hereby

20       certify the foregoing transcript as true and correct.

21

22  Dated:  1st of June, 2017          /s/ Peggy J. Crawford
                                       PEGGY J. CRAWFORD, RDR-CRR
23

24

25