**ANTHONY P. CAPOZZI, CSBN: 068525**
**LAW OFFICES OF ANTHONY P. CAPOZZI**
1233 W. SHAW AVE., SUITE 102
FRESNO, CALIFORNIA 93711
PHONE: (559) 221-0200
FAX: (559) 221-7997
EMAIL: Anthony@capozzilawoffices.com
www.capozzilawoffices.com

ATTORNEY FOR Defendant,
ADAM ALAN HENRY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

\* \* \* \* \* \*

| UNITED STATES OF AMERICA, | Case No.: 1:13-CR-00409-AWI |
|---|---|
| Plaintiff, | **MOTION TO ADMIT RESULTS OF POLYGRAPH EXAMINATION AND REQUEST FOR EVIDENTIARY HEARING** |
| v. | |
| ADAM ALAN HENRY, | **Date:** September 25, 2017 |
| Defendant. | **Time:** 10:00 a.m. |
| | **Courtroom:** 2 |

**TO THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF CALIFORNIA:**

Defendant, Adam Alan Henry, moves for the admission of the results of a polygraph examination administered on June 2, 2017. Rule 702 of the Federal Rules of Evidence provides as follows:

> **Rule 702.   Testimony by Expert Witnesses**
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

In *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir. 1989) the court stated under Rule 702 to admit expert testimony the trial judge must determine that the expert testimony will be relevant and will be helpful to the trier of fact. In addition, courts require the proponent of the testimony to show the principle or technique is generally accepted in the scientific community. McCormick, McCormick on Evidence § 203 (3rd Ed. 1984). *Id.* at 1533.

The *Piccinonna* court indicated that tremendous advances have been made in polygraph instrumentation and technique with better equipment being used by more adequately trained polygraph administrators. Field investigative agencies such as the FBI, the Secret Service, military intelligence, and law enforcement agencies also utilize the polygraph test. Polygraph testing has gained general acceptance for use in all circumstances. *Id.* at 1532. The court went on to re-examine the per se exclusionary rule and instituted a rule more in keeping with the progress made in the polygraph field. The court held that:

  Polygraph evidence may be admitted when used to impeach or corroborate the testimony of a witness at trial under three preliminary conditions:

  (1) Adequate notice must be given by the party seeking to introduce such evidence.

  (2) Evidence would be admissibly if the opposing party has an opportunity to have its own polygraph expert administer a test convening substantially the same questions.

  (3) The admissibility of the polygraph administrator's testimony is governed by the Federal Rules of Evidence i.e. does the probative value outweigh the potential prejudicial effect of such testimony.

Thus under the Federal Rules of Evidence governing the admissibility of expert testimony, the trial court may exclude polygraph expert testimony because

  (1) the polygraph examiner's qualifications are unacceptable;

  (2) the test procedure was unfairly prejudicial or the test was poorly administered; and

  (3) the questions were irrelevant or improper. The trial judge has wide discretion in this

1    area and rulings on admissibility will not be reversed unless a clear abuse of discretion is
2    shown (citations omitted).  *Piccinonna* at 1537.

3        In *United States v. Padilla,* 908 F.Supp. 923, (So. Dt. of Florida, 1995), the defendant
4    was charged with the importation of heroin and possession with intent to distribute.  The
5    defendant was arrested at the Miami airport after a substantial amount of heroin was discovered
6    in her luggage.  The defendant denied she had any knowledge about the heroin, but later
7    confessed that she knew of its existence.

8        The defendant later alleged that her confession was coerced and attempted to introduce
9    a polygraph test which indicated that she was truthful in her responses as to whether the
10   confession was coerced.  The court cited *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir.
11   1989) where the court erased the per se ban on the admissibility of polygraph results and
12   enumerated the three (3) conditions under which such testimony would be admissible i.e.

13       (1)  Adequate notice;

14       (2)  Opposing party has reasonable opportunity to have its own polygraph expert
15   administer a test covering substantially the same questions; and

16       (3)  Whether probative value of the admission of such expert testimony to "impeach" or
17   "corroborate" outweighs the potential prejudicial effect of such testimony pursuant to Fed. R.
18   Evid. 702.

19       The *Padilla* court found the first two steps were met and had to determine whether the
20   testimony was admissible pursuant to Fed. R. Evid. 702.

21       The defendant made clear her intention to testify about circumstances surrounding her
22   alleged confession and anticipated on cross-examination her veracity and credibility would be
23   questioned.  Under these circumstances, the defendant would then attempt to introduce the
24   polygraph results in order to corroborate her testimony about the alleged coercion.  Under Rule
25   608(a) of the Federal Rules of Evidence the introduction of this extrinsic testimony would be
26   allowed, to attack or support a witness' "character for truthfulness," as long as such testimony
27   only referred to that person's character for truthfulness and only after such character had been
28   questioned.

1   The *Padilla* court ruled that once a witness' character for truthfulness or credibility has been attacked, a polygraph expert may introduce testimony as to that witness' character for truthfulness based on the results of a polygraph examination. *Padilla* at 928

The *Padilla* court went further stating that *Piccinonna* provided that as long as polygraph evidence is being admitted solely for impeachment or corroboration, a court only needs to determine that the testimony is relevant and that its probative value is not substantially outweighed by its prejudicial effect. *Ibid.*

The court found the evidence to be relevant and that pursuant to Fed. R. Evid. 403 the expert polygraph testimony was probative and would not result in confusion of the issues, unfair prejudice, waste of time, nor would it unduly prejudice plaintiffs.

The *Padilla* court also found, pursuant to Fed. R. Evid. 702, that the expert testimony would help the trier of fact to resolve the issues and found that the polygraph examination was conducted with enough scientific accuracy to ensure that it may reliably aid the fact finder in determining an issue at trial. *Padilla* at 929.

In *United States v. Galbreth* 908 F.Supp. 877 (Dt. of New Mexico, 1995) the defendant was charged with three (3) counts of willful tax evasion for intentionally filing returns which underreported his income. It was undisputed that the defendant failed to include certain items of income which should have been reported. At trial, the sole issue was whether the defendant knew that his income tax returns omitted taxable income which should have been set forth on his returns.

A polygraph test was administered to the defendant to determine his knowledge and intent regarding the items which should have been reported. The conclusion was that the defendant did not realize his returns under reported his taxable income. The defendant moved to introduce this evidence at the trial.

The court referred to the plain meaning of Fed. R. Evid. 702 that in assessing the admissibility of scientific testimony, the court must determine that the testimony is based on scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. *Id.* at 879. The validity of the polygraph results depended upon the examination being properly

conducted by a qualified competent examiner. *Id.* at 881-882.

The *Galbreth* court examined the background of the examiner, his technique, the polygraph machine, the scientific theory underlying the polygraph technique and the known rate of error where the numerical scoring system is employed, being 5% to 10%. *Id.* at 891-892. The court ultimately determined that there was a general acceptance of the control question polygraph technique when it is administered properly by a qualified examiner. *Id.* at 892.

The polygraph testimony was admitted since it would assist the trier of fact in that the testimony was highly probative of a critical fact in issue, i.e. whether the defendant possessed the willful mens rea at the time he failed to report certain items of income. In light of the high accuracy rate, the results of the test were highly probative of whether the defendant did, in fact, realize that the items he failed to report should have been reported on his income tax returns. *Id.* at 895.

In *United States v. Mosquera*, 2015 U.S.Dist.LEXIS 177631, a more recent case, a deck hand and cook was charged with possession with intent to distribute 1700 kilograms of cocaine. The defendant denied any knowledge of the drugs found concealed and denied any involvement of any kind in the illegal drug trade.

The defendant was administered a polygraph examination by a former FBI agent with extensive experience in administering polygraph examinations on behalf of the United States government. The results of the test indicated that there was no deception on the following relevant questions:

> (1) Did you know those drugs were on that ship before the Coast Guard boarded the ship?
>
> Answer: No.
>
> (2) Did you know those drugs were on the Hope II before the coast Guard boarded the ship?
>
> Answer: No.
>
> (3) Did you know those drugs were on that ship before the Coast Guard found them in August?

1                        Answer: No.

*Id.* at *2.

2

3      The defendant planned to testify in his own defense at trial and requested that the results

4 of the polygraph examination be admitted into evidence to corroborate his testimony. The

5 Government objected arguing the polygraph examinations were "one step above" junk science

6 and are "not suitable for juror consumption." *Ibid.*

7      The court held an evidentiary hearing under Fed. R. Evid. 702 and found that methods

8 and techniques were tested, subject to peer review and publications, the potential rate of error

9 of the technique was acceptable, the technique was accepted in the scientific community and

10 the testimony would be helpful to the jury. The results of the polygraph examination and the

11 expert testimony regarding that examination were admitted. This evidence would help the jury

12 make a credibility determination regarding whether the defendant had knowledge of drugs

13 being on the ship.

### PRESENT CASE

15      Former Fresno Police Department Lieutenant Melvin King conducted a polygraph

16 examination of Defendant, Adam Henry on June 2, 2017 at the Fresno County Jail. Mr. King

17 has been a polygraph examiner since 1976. He initiated the Fresno Police Department Pre-

18 Employment Polygraph Program in 1977. He has been an expert witness in the Fresno County

19 Superior Court, taught at Fresno City College, Fresno State University, and at the State Center

20 Police Academy. He also served as Deputy Chief of Training in Baghdad, Iraq from June 2007

21 to February 2010.

22      Mr. King has a Bachelor of Science degree from Fresno State University (graduated

23 Cumma Sum Laude); a Master of Science degree also from Fresno State University (graduated

24 with honors); has a certificate in Polygraphy from Gormac School of Polygraphy; and has

25 attended numerous polygraph seminars/training in Psychology, Physiology, chart

26 interpretation, Polygraph methodology, question formulation, and chart scoring from January

27 1976 to the present. Mr. King also has post-conviction sex offender training with ongoing

28 seminars from March 2013 to the present. (Attached is a copy of Mr. King's Curriculum

Vitae.)

One of the issues in this case concerning Count 2, a violation of Receipt and Distribution of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct, the Defendant has denied any knowledge of knowingly receiving and distributing any child pornography.

Mr. King asked Defendant, Adam Henry, the following questions:

> (1) Have you ever intentionally and deliberately searched for child porn or images of minors on any electronic device?
>
> Answer: No.
>
> (2) Have you ever masturbated to or become sexually aroused while watching child porn or images of minors?
>
> Answer: No.
>
> (3) Did you know child porn or sexual images of minors were on any of your electronic devices prior to being contacted by law enforcement?
>
> Answer: No.

Mr. King concluded after a thorough review and hand scoring of the test charts, that Mr. Henry had NO SIGNS OF DECEPTION (NDI) to the relevant questions. It was determined that Mr. Henry was truthful.

The cases cited herein clearly allow for the admission of polygraph results so long as certain conditions are met. The defense contends that Mr. King is qualified to administer the polygraph test, has properly administered the test and is qualified to determine the results of the test.

This case is identical to the facts in *United States v. Galbreth,* 908 F.Supp. 877 (Dt. of New Mexico, 1995) and *United States v. Mosquera*, 2015 U.S. Dist. LEXIS 177631 in that Mr. Henry will testify and has denied in the past, that he did not have any knowledge of child pornography being received or possessed for distribution. The admission of the polygraph examination results would corroborate his testimony and deals directly with the issue in Count 2 of the Superseding Indictment.

**CONCLUSION**

Based upon the cases cited herein, it is respectfully requested that an evidentiary hearing be held to determine if the results of the polygraph examination may be admitted into evidence at the time of trial.

Respectfully submitted,

Dated:   September 14, 2017        By:   */s/Anthony P. Capozzi*
  ANTHONY P. CAPOZZI
  Attorney for Defendant ADAM ALAN HENRY