UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. ANTHONY W. ISHII


| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 1:13-cr-409  AWI-BAM |
| Plaintiff, | ) | |
| | ) | MOTION HEARING |
| vs. | ) | |
| | ) | |
| ADAM ALAN HENRY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


Fresno, California                    Friday, September 29, 2017



REPORTER'S TRANSCRIPT OF PROCEEDINGS

**APPEARANCES OF COUNSEL**:

For the Government:          **DAVID L. GAPPA**
                             **ROSS PEARSON**
                             Assistant U.S. Attorneys
                             2500 Tulare Street, Rm. 4401
                             Fresno, California  93721


For the Defendant:           **ANTHONY P. CAPOZZI**
                             Attorney at Law
                             1233 W. Shaw Ave.
                             Suite 102
                             Fresno, CA  93711


REPORTED BY:  PEGGY J. CRAWFORD, RDR, CRR, Official Reporter

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

2

1   Friday, September 29, 2017                Fresno, California

2   1:30 p.m.

3           THE CLERK:  Court calls item 1, 1:13-CR-0409, United

4   States versus Henry, motion hearing.

5           MR. GAPPA:  Good afternoon, your Honor.  David Gappa

6   and Ross Pearson for the United States.

7           MR. CAPOZZI:  Your Honor, Tony Capozzi with

8   Mr. Henry, who is present in court, in custody.

9           THE COURT:  This is the date and time that we have

10  set for consideration of various motions.

11          We had continued over the motion, government

12  objection or motion in limine to exclude defense expert

13  witnesses.  We will take that up.

14          And the defense previously submitted its list of

15  expert witnesses.

16          In addition, there is a separate motion that relates

17  to a new and different expert, proposed expert witness, and a

18  motion to allow, essentially, that expert witness to testify

19  regarding results of a polygraph examination.

20          And then the government had submitted an ex parte in

21  camera request for a proceeding.  Defense has objected to

22  that, and I will go ahead and take that up also.

23          But before I get started, are there any issues that

24  we need to take up before we handle those issues?  A

25  particular order that you want to take those in?

3

1      MR. CAPOZZI:  No.

2      MR. GAPPA:  No, your Honor.

3      THE COURT:  All right.

4      MR. CAPOZZI:  Judge, did you get the reply?

5      THE COURT:  To?

6      MR. CAPOZZI:  The expert, the lie detector.

7      THE COURT:  The polygraph?  Yes, I have received and

8  reviewed that also.

9      Let me go ahead and get started with the government's

10  objection to defense proposed expert witnesses.

11      Defense did file on August 7, 2017, Document 144,

12  Notice of Expert Witnesses, and listed three witnesses,

13  Harold L. Seymour, Howard B. Terrell, and Hy, H-y, Malinek,

14  M-a-l-i-n-e-k, indicating experts, those experts would testify

15  as to the traits of one who collects child pornography and as

16  to whether the defendant displays those traits.

17      Number 4 is Philip S. Trompetter, who would testify

18  as to the traits of one who collects child pornography, and as

19  to whether Angele Henry displayed those traits.

20      And number 5 is Mr. Marcus Lawson, who would testify

21  as to Count 1, but in any case, he would only testify if there

22  is any rebuttal or clarification of government experts.

23      Okay.  And I have received and reviewed the expert

24  reports submitted on behalf of defense for Dr. Seymour,

25  Dr. Terrell, and Dr. Malinek, and also Dr. Trompetter, and the

1  CV for Mr. Lawson.

2          So let me go ahead.  And government has moved in

3  limine to exclude proposed expert witnesses.  Let me just

4  allow the government to state its position with respect to

5  each of the proposed experts, and I will allow defense to

6  respond.

7          We will just take them in order, defense, Notice of

8  Expert Witnesses.  And if you want to do them in combination

9  or separately or whatever, that's fine.

10          So government, with respect to Dr. Seymour.

11          MR. GAPPA:  Thank you, your Honor.

12          I'm sure the Court has reviewed the government

13  objection.  It is Document 118.  And there, with that expert,

14  the government's concern is that the question that was posed

15  and the proposed opinion is to address the likelihood that the

16  defendant is a pedophile, as well as whether he currently

17  presents a risk to the safety of the community.

18          And we've argued that whether or not he is a

19  pedophile is not really relevant to the charged offenses.  He

20  could very well be a pedophile.  He might not be a pedophile.

21  But it doesn't determine whether or not he committed these

22  offenses.

23          And his dangerousness is even less relevant.  That

24  would certainly be relevant at sentencing, but not on the

25  issue of whether he is guilty or not of the charged offenses.

1          We also pointed out that, technically, his diagnosis

2     or assessment is not even in compliance with the most recent

3     DSM, and the characterization of pedophilia and whether

4     somebody is a pedophile is not the current diagnostic

5     indicator.

6          So it's really a question of relevance and, under

7     403, whether the Court should permit it.  And for the reasons

8     we have argued in writing, we don't believe that that

9     testimony is appropriate.

10          THE COURT:  Okay.  Anything else in addition on

11     behalf of the government?

12          MR. GAPPA:  Not on that expert, your Honor.

13          THE COURT:  All right.  Okay.  All right.  Is it best

14     just to go through each one individually?

15          MR. GAPPA:  I think so.  So I don't know if the Court

16     wants to address them separately or if you want all of the

17     argument.

18          THE COURT:  Well, let me -- we will do them

19     separately, but I will go ahead and comment after you have had

20     a chance to review each one.

21          So with respect then first to Dr. Seymour, defense?

22          MR. CAPOZZI:  Judge, I thought this hearing this

23     afternoon was solely on Mr. King and his issue.  But --

24          THE COURT:  Okay.

25          MR. CAPOZZI:  But I will go from memory, Judge.  I

1 | don't want to pass this up.  Let's get it done.

2 | On Seymour, he -- the report that you have on Seymour

3 | was based on releasing the defendant during the bail hearings.

4 | He has updated that report.  We received new

5 | discovery or additional discovery from the government this

6 | summer, and I sent that off to Mr. Seymour and he reviewed

7 | that.  And again, pretty much the same report, but based on

8 | the new discovery the government sent us.

9 | And I don't have that with me right now.  I can give

10 | it to the government tomorrow, or by Monday, I will give it to

11 | them, but it is not much different than what he has already

12 | done.

13 | Again, his testimony is he does not have the

14 | characteristics of being a pedophile, and that a pedophile is

15 | one who would normally get into child pornography.

16 | And indeed, in one of the documents that the

17 | government has filed and one of the videotapes that they want

18 | to play, the title of it is, "Pedophile," which is directly

19 | related to what we are talking about here.

20 | So I think it is highly relevant and important for

21 | the jury to see that testimony from Dr. Seymour to point out

22 | what the characteristics are and whether or not this defendant

23 | has those characteristics.  I think it is very highly

24 | relevant.

25 | MR. GAPPA:  Well, your Honor, in response to that, it

1    sounds like there is an additional report that the government

2    hasn't received, the Court hasn't received.

3         I think the Court made it very clear in the last

4    motions hearing that there would be some strict deadlines, and

5    there would be consequences for not filing in compliance with

6    the deadlines, there would be appropriate sanctions.

7         So at this late date where we are talking now about

8    things that haven't been provided to be the basis for

9    testimony which we don't even see being relevant at all, but a

10   bigger problem is if he is going to be trying to express

11   opinions that we haven't even seen, that puts us at a

12   significant disadvantage.

13        MR. CAPOZZI:  I would like to submit it.  If there is

14   a problem, we will deal with it.  If not, we will go with the

15   old report if the Court allows it in.

16        Again, it is based on the new evidence that the

17   government sent us this summer, and I can't remember the date

18   they sent it.

19        THE COURT:  Okay.  Well, I think if nothing else, in

20   abundance of caution, I think we need to look at it first

21   before I make a ruling as to Dr. Seymour.

22        I don't know if we can do the others.  If we can do

23   the others today, and we will just hold off on Dr. Seymour.

24        MR. CAPOZZI:  I'm okay on the others.  There is no

25   change on those.

8

1          THE COURT:  The other thing is that Dr. Terrell

2   reviewed the report of Dr. Seymour dated August 19, 2015.

3          MR. CAPOZZI:  Judge, if I could interrupt.  I'm

4   sorry.  I'm not going to use Terrell.  There is no need,

5   because he is repeating Seymour pretty much.

6          THE COURT:  Okay.  So it is my understanding -- let

7   me back up a little bit.

8          On the Notice of Expert Witnesses filed on behalf of

9   defense on August 7, 2017, which is Document 144, it does list

10   as the second proposed expert Dr. Terrell.

11          Is it my understanding now that the defense is

12   formally withdrawing Dr. Terrell as a witness in this case?

13          MR. CAPOZZI:  Yes, your Honor.

14          THE COURT:  Very well.  That's withdrawn.  So any

15   objection with respect to the testimony of Dr. Terrell is now

16   moot.  And so I will go ahead and grant the motion to preclude

17   the testimony of Dr. Terrell at this time, with the

18   understanding, obviously, if later on, even during the course

19   of the trial, the defense believes that his testimony then

20   becomes relevant, there would just be a motion for

21   reconsideration.

22          Obviously, the closer we are to trial, and certainly

23   in the middle of trial, it could become more problematic in

24   terms of allowing that testimony because the government, and

25   certainly the Court, would not have had a chance to really

1  review that prior to trial.

2          But at this point in time then, I will grant that

3  motion.  Dr. Terrell would not be testifying.

4          Okay.  Now, Dr. Malinek, in his report of January 11,

5  2017, does reference Dr. Seymour's report, listed as one of

6  the documents he discussed.  That's at his page 2.

7          And in discovery information, at paragraph 7, he does

8  indicate the forensic report by Harold Seymour, Ph.D.,

9  8/19/2015, and does indicate on page 5 of his report that

10  Dr. Seymour examined Mr. Henry on 3/11/15 and 5/6/15.

11          So I don't know if the new report by Dr. Seymour

12  might impact the parties' argument and my ruling on the

13  other -- those other experts who at least reviewed

14  Dr. Seymour's report, the 2015 report.

15          MR. CAPOZZI:  Could I explain Dr. Malinek's report,

16  your Honor?  Explain why I want to use him?

17          THE COURT:  Sure.

18          MR. CAPOZZI:  Dr. Seymour, his report was done pretty

19  much for bail purposes to show that the defendant would not be

20  a risk if he were out.

21          Dr. Malinek came in later on and he was pretty much

22  to tell us or advise us as to whether or not the defendant is

23  a predator and someone who would be inclined to seek child

24  pornography.

25          He is more to the point.  And I think he is the

1    crucial one, but I think he needs the backup of Seymour to be

2    able to give his expert opinion also.  That's the difference

3    between the two.

4           THE COURT:  Has Dr. Malinek reviewed Dr. Seymour's

5    most recent report?

6           MR. CAPOZZI:  No.

7           THE COURT:  Would he have to submit a supplemental

8    report?

9           MR. CAPOZZI:  I doubt it, because the second

10   supplemental report is not much different than the first,

11   other than that he reviewed the new discovery the government

12   gave him.

13          THE COURT:  Okay.  Without having seen the

14   supplemental report of Dr. Seymour, I do need to take your

15   representation on that so that I don't make a ruling and then

16   find out later that had Dr. Malinek reviewed Dr. Seymour's

17   supplemental report, that his report, he would have filed a

18   supplemental report.

19          So all I can say is that with respect to Dr. Malinek,

20   I'm going to rule on the government's motion in limine to

21   preclude his testimony based strictly on his January 26, 2017,

22   report, with the understanding that although he reviewed

23   Dr. Seymour's 2015 report, that the supplemental report by

24   Dr. Seymour, it would not appear from the defense standpoint,

25   to alter or change Dr. Malinek's 2017 report.

1    So okay.  With that understanding, we can proceed.

2  Okay.  I guess at this point in time, with respect to

3  Dr. Seymour, we will go ahead and hold off on that, but

4  obviously, we are getting close to trial.  And I am not sure

5  how soon we will be able to have the hearing on Dr. Seymour;

6  that is, give the government and me an opportunity to review

7  the supplemental report and then have the hearing on the

8  government's motion in limine as to Dr. Seymour.

9    MR. CAPOZZI:  I can get it to the government right

10  away.

11    THE COURT:  Okay.

12    MR. CAPOZZI:  I'm available next week.

13    THE COURT:  Well, part of the problem is that

14  Mr. Henry is in custody.  And with respect to transporting,

15  normally, that would be on a Monday.  I just don't know --

16    MR. CAPOZZI:  Defense is willing to waive his

17  presence for that, your Honor.

18    THE COURT:  That would only be for the Court's ruling

19  as to the government's motion in limine regarding Dr. Seymour?

20    MR. CAPOZZI:  Yes.

21    THE COURT:  Mr. Henry, did you hear and understand

22  what your attorney said about -- we are going to continue over

23  the hearing on the government's motion to preclude; that is,

24  not allow you to present the testimony and the report and

25  opinion of Dr. Seymour.

1         Your attorney has indicated that there is a

2    supplemental report that the government and I need to review.

3    And so I'm going to go ahead and allow a continuance of that

4    motion as to Dr. Seymour to a later date.

5         One of the problems we have, as you probably are

6    aware, is that with respect to the Marshal's Service, their

7    transporting is basically on Mondays.  Occasionally, I think,

8    on a Wednesday.

9         And I could set it for some other day other than a

10   Monday or Wednesday sometime next week that works out with

11   your lawyer's schedule and the government's schedule and my

12   schedule.  And we could probably plug it in sometime in

13   October, the first week in October, but transportation would

14   be a problem.

15        You have a legal right to be personally present at

16   that hearing.  If you wish, you can waive that right as to

17   that issue only, and then your lawyer will appear on your

18   behalf.  Do you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Is that what you wish to do?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  You agree to waive your personal presence

23   at the hearing?  And the hearing will only deal with the

24   Dr. Seymour issue; do you understand that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  You agree with that?

2          THE DEFENDANT:  Yes.

3          MR. CAPOZZI:  We have a Court appearance on the 10th

4     on this case.

5          THE COURT:  We do.  And that's a trial confirmation.

6     If that gives you both enough time, because the trial is going

7     to start -- well, actually, trial -- so we could.  Then that

8     would allow Mr. Henry to be present because it would be a

9     trial confirmation.

10          MR. CAPOZZI:  It's up to the Court, unless you want

11     to do it a week earlier.

12          THE COURT:  I'm okay either way.  Whatever you folks

13     prefer is fine with me.

14          Government have any preference?

15          MR. GAPPA:  Your Honor, maybe we could hold that in

16     abeyance until the end of the hearing and then see if there

17     are any other issues potentially that could be in effect on

18     the timing in general.

19          THE COURT:  All right.  Remind me on that, so we will

20     reserve Dr. Seymour.

21          So, okay.  And then so anything further by -- switch

22     back to the government.  Anything further with respect to --

23     well, I guess with Dr. Seymour, we will hold off on that.

24          And then with respect to Dr. Terrell, that is now a

25     moot issue.

1          All right.  So then moving to -- see if that fits --

2     yeah, with Dr. Malinek on behalf of the government.

3          MR. GAPPA:  Your Honor, the biggest concern is

4     similar to -- for Seymour.  And that is, the report was

5     prepared for purposes of a bail hearing and whether or not the

6     defendant would pose a risk to the community and whether he is

7     considered dangerous.

8          And that, in part, was premised on an argument of

9     whether or not he was a pedophile.  So those are really issues

10    that are not relevant for a jury, considering whether he is

11    received or distributed child pornography or conspired to

12    sexually exploit children.

13         It is very potentially confusing, a waste of time,

14    and there is a great potential for misleading the jury.

15         For instance, although Dr. Malinek is a little more

16    precise in his use of the diagnostic criteria, and he referred

17    to Pedophilic Disorder, and doesn't purport to give an opinion

18    that the defendant is or is not a pedophile, it still is

19    extremely confusing and not relevant that those parameters are

20    even considered because they are very specific to the age of

21    children and the sexual interest in those children.

22         So it's typically preteen children.  But here, it is

23    significant that the victim of the conspiracy to sexually

24    exploit children count was 14 and 15.

25         So the fact that he may or may not have a sexual

1   interest in children who are preteen, which is generally

2   accepted to be 13 or below, is very confusing to people who

3   are also at the same time asked to decide did he sexually

4   exploit or conspire to sexually exploit a girl who was 14 and

5   15, and other teenagers.

6           So given that that's really not dispositive of what

7   the jurors are going to have to decide, it is really not

8   relevant.

9           It is certainly a factor at sentencing.  We wouldn't

10  object to having that come in at sentencing, but for purposes

11  of whether or not he has committed these crimes, it is not

12  relevant.  And it is certainly potentially extremely confusing

13  and misleading and unduly prejudicial to the government.

14          THE COURT:  Let me ask you this.  Mr. Capozzi raises

15  an interesting question, and that is, if the government is

16  intending to show a video at trial and the video's title is

17  "Pedophilia" or something like that, I think one of the

18  concerns is just that phrase itself may have some prejudicial

19  connotations.

20          And I don't know if there is a way the government

21  can, by stipulation, use a more neutral title that is not

22  misleading, but does not use the term "Pedophile" or

23  "Pedophilia," or a stipulation to the jury that Mr. Henry is

24  not charged with being a pedophile or having a Pedophilic

25  Disorder or something.

1          But that title might, in one or more jurors' minds,

2    indicate something that they are really not cognizant of.

3    What does it mean, except it doesn't sound good?

4          MR. GAPPA:  Your Honor, I can see the potential

5    concern on that.  There are well over a hundred different

6    videos.  I don't think the government is going to have any

7    problem finding a sufficient number because we are sensitive

8    to not overexposing anybody, much less the jurors, to any of

9    the material.  And we can certainly be selective and try to

10   find, and in fact will find things that don't reference

11   pedophilia or pedophiles.

12         And to the extent that we would absolutely need any

13   of that material, there is no doubt that we could figure out a

14   way to redact that reference.  So I don't think that should be

15   a reason to admit irrelevant testimony that he is a pedophile

16   or he is not a pedophile.

17         There is another concern -- I'm going by memory --

18   but Malinek did say, "Well, I haven't really reviewed the

19   evidence in this case, and my opinion might differ if I were

20   to find that he did view child pornography for more than six

21   months.  That could very well change my opinion."

22         So that's our position, that he has been viewing it

23   for years.  And so we would be in a position where I don't see

24   why the defendant would even want to present that scenario,

25   but if they did, it would be an interesting cross-examination,

1  where he is giving an opinion, and then he is confronted with

2  evidence, and then he is going to have to say, "Well, I guess

3  that would change my opinion."

4       But I don't think we should even get into that

5  position because his testimony is, in our view, not relevant.

6       THE COURT:  All right.

7       MR. CAPOZZI:  We would welcome that

8  cross-examination, your Honor.

9       The other problem the government has is those

10 videotapes that deal with pedophiles, in the interview of

11 Angele Henry, who is a coconspirator here, the agent is

12 Mr. Hively or Mr. Moore -- I'm not sure which one -- it was

13 Mr. Moore, is screaming at Angele Henry, "Your husband is a

14 predator.  You know it.  You know he likes child pornography.

15 You know he likes young kids.  You know he is a predator.

16 Just admit it."  That is an issue in this case, your Honor.

17      THE COURT:  Okay.

18      MR. GAPPA:  Well, your Honor, if that's the concern,

19 they should make a motion to exclude that.  We are not

20 intending to use that.  We have already had a hearing and

21 determined that she is not to be called as a witness.  So how

22 that cross-examination comes in is beyond my understanding of

23 the rules of evidence.

24      MR. CAPOZZI:  She is not available as a witness

25 anymore.  She is taking the Fifth.

1      THE COURT:  Well, but you have the situation that if

2   the defense wants to introduce it, that's a different

3   situation than the government attempting to introduce

4   something.  The defense can't introduce something as a straw

5   man just so you can bring in other evidence that would

6   otherwise be irrelevant.

7      So you have to be careful that at the trial that you

8   don't introduce something with the understanding -- with the

9   intention of then bringing in information to rebut it or to

10  whatever, and then there is an objection and I sustain the

11  objection, because then you are stuck.

12     MR. CAPOZZI:  Judge, I would never do that.  I would

13  never do that.  Never have and never will.

14     THE COURT:  No, I understand.  But I'm just saying in

15  terms of the government's concern about Angele Henry, that if

16  they are not going to attempt to introduce her testimony or

17  evidence because she is unavailable as a witness, if the

18  defense intends to, then the defense is going to suffer

19  whatever consequences there are to objections regarding her

20  testimony or what can be brought in to either impeach, rebut,

21  or corroborate her testimony.

22     MR. CAPOZZI:  I am allowed to get into the state of

23  the mind of the investigator.

24     THE COURT:  Ah --

25     MR. CAPOZZI:  They focused this whole investigation

1   on Mr. Henry because he is the man.  They talked to

2   Mrs. Henry, accusing him of all these different things, where

3   in fact, our evidence is going to show it was her that was

4   doing this, not Mr. Henry.

5          And I want to get into the state of the mind of that

6   investigator as to how he conducted this investigation,

7   totally blind-sighted as to one person.  That was it.  Not

8   looking at the other side.

9          And indeed, we only have federal charges on Mr. Henry

10  and the state charges on Mrs. Henry.  She should be here along

11  with him, and she is not.  That's going to be an issue at the

12  trial, Judge.

13         THE COURT:   Okay.

14         MR. CAPOZZI:  I will bring a motion to clarify it if

15  you feel better about it.

16         THE COURT:  Well, you have to, because at this point

17  in time, it is my understanding the state of mind of the

18  investigator is not relevant to the case.  There is only one

19  state of mind in a criminal law case, and that's the state of

20  mind of the defendant.

21         MR. CAPOZZI:  True.

22         THE COURT:  Either general intent or specific intent.

23         MR. CAPOZZI:  But what I want to show is that this is

24  a rush to judgment.  They focused on who they wanted and they

25  put the evidence together the way they wanted it to come out.

1          THE COURT:  Well, it might be admissible for the

2    limited purpose of showing maybe some improper conduct, but it

3    isn't going to go to the state of mind in terms of accusations

4    of him being a pedophile so that then there is evidence that

5    can be introduced regarding he is not a pedophile.

6          MR. CAPOZZI:  I understand that.  I understand what

7    you are saying there.  Yes.

8          THE COURT:  Okay.  I'm sorry.  Let me back up.

9          Anything else with respect to the government's motion

10   as far as Dr. Malinek is concerned?

11         MR. GAPPA:  No, your Honor.

12         THE COURT:  Defense?

13         MR. CAPOZZI:  The Malinek issue, Judge?

14         THE COURT:  Yes.

15         MR. CAPOZZI:  Really, nothing more to add.  I think

16   he is relevant to the issues in this case, and I don't have

17   his report.  I haven't read it in a while.  I think he related

18   a predator to child pornography too.  I'm not sure.

19         I think it is highly relevant, your Honor.  Thank

20   you.

21         THE COURT:  Is the matter as to Dr. Malinek submitted

22   then?

23         MR. CAPOZZI:  Yes.

24         THE COURT:  Okay.  Now, let me just indicate, and

25   this will give you something to think about with respect to

1  Dr. Seymour, because I reviewed all three of the reports,

2  including Dr. Terrell's report, which is now no longer in

3  play.

4       Here is my concern.  In the Notice of Expert

5  Witnesses, with respect to those three -- and of course now,

6  not Dr. Terrell -- the representation was that these experts

7  would testify as to the traits of one who collects child

8  pornography and as to whether the defendant displays those

9  traits.

10      I read each of the reports.  And let me focus in on

11  Dr. Malinek, on his first page, January 26, 2017 report.

12      "Reason for referral and circumstances of the

13          evaluation."

14      Moving down to the last sentence, which is the

15  significant sentence:

16      "Specifically, an assessment was requested whether

17          Mr. Henry meets the criteria for the diagnosis of

18          pedophilia or other paraphilia (sexual deviation) and

19          whether he is dangerous to the community at this

20          time."

21      Obviously, whether he is dangerous to the community

22  at this time is irrelevant.  So, basically, his assessment as

23  to whether or not Mr. Henry meets the criteria for -- I'm

24  going to use the general phrase, I know there have been some

25  changes with regard to wording -- but whether or not Mr. Henry

meets the criteria for diagnosis of pedophilia.  Not whether or not one who collects child pornography; that's much more general and is very different.

My concern with all the reports, and this includes Dr. Seymour, so that you folks can get a heads up as to what I'm thinking, is that that's what was asked for.

Not general characteristic traits as to whether or not Mr. Henry was one who collects child pornography or not, but whether or not he is a pedophile.

And that -- and so when I'm going through the report, and he does a very thorough report, also reviews the prior forensic evaluations of Dr. Trompetter, Dr. Seymour, Dr. Terrell, et cetera, he makes some interesting comments that are something of a concern.

My general sense is that an opinion as to whether or not Mr. Henry has the characteristics of a pedophile is irrelevant in this case, because pedophilia or pedophile or Pedophilic Disorder is not an issue in this case.

And as defense has pointed out, just that word alone can be prejudicial, because I think it is probably common knowledge that that probably has some negative connotation to anyone.  Even though if I ask any particular prospective juror, "What does that mean," they probably couldn't, and I couldn't, give a good scientific, medical definition of pedophilia, but it doesn't sound good.

1         So I do have a concern about injecting into the trial

2    any opinion regarding pedophilia, pedophile, or Pedophilic

3    Disorders, because it is not relevant in this case, and it is

4    highly prejudicial.

5         And obviously, under 403, it injects a irrelevant

6    issue in that it is clearly going to be confusing to the jury

7    because they would have no idea what the significance of a

8    pedophile or whether or not they have to decide whether or not

9    Mr. Henry is a pedophile or not.  And that's just not relevant

10   in this case.  So I have a significant concern.

11        And there is some information in here that, you know,

12   I think defense position is, "Bring 'em on, we will go ahead

13   and accept the report and whatever cross-examination there

14   is."

15        Some things sort of stick out, and this isn't the

16   main thing with respect to ruling on any motions here, but it

17   is -- I think, it does indicate some concern.

18        In Dr. Malinek's report, at page 10, the third full

19   paragraph down, where it begins:

20        "Mr. Henry recalls that when his wife became

21            pregnant," et cetera.

22        In the middle of that paragraph is:

23        "When I specifically asked Mr. Henry what search words

24            he had used while seeking pornography, he remembered

25            using search words like 'mother/daughter fucks' and

1            'mommy and me,' and believed these search words often

2            linked to web sites where he had seen 'threesomes.'

3            He may also have entered search terms like 'Lolita,'

4            'mother/daughter fuck' and 'mommy/me fuck.'"

5      What that indicates is that Mr. Henry knew or was

6  aware of search terms that seemed to indicate minors.  And

7  that's a concern.

8      And also in his Summary of Relevant Resources of

9  Child Pornography, at page 12, top line, he says:

10           "Studies have shown that many online offenders have

11           unique characteristics and that they are often, one,

12           older," which Mr. Henry is not; "two, have never been

13           in trouble with the law before," which is true with

14           Mr. Henry, and that's one thing that all of the

15           experts point out; "and, three, are absent many of

16           the criminogenic risk factors,"

17           c-r-i-m-i-n-o-g-e-n-i-c, "which have been associated

18           with recidivism; for example, young age," which

19           Mr. Henry is not young, "history of violence," which

20           he doesn't have, "psychopathy," which he apparently

21           doesn't have, "and substance abuse," which he

22           apparently doesn't have.

23     So he doesn't have those criminogenic risk factors,

24  but it seems to indicate that he fits in the general outline

25  of what you see on online offenders.

1          And then on page 13, "Diagnostic Impressions:  Rule
2     out Pedophilic Disorder."
3          I don't know from that whether it is his opinion that
4     he has ruled it out or that's one thing that needs to be done
5     because in his discussion and comments at paragraph 1 he says:
6          "Whether Mr. Henry is a pedophile could be a matter of
7               some debate, needs to be ruled out, and, in my
8               opinion, is not at all certain, given the totality of
9               the database and information in this case."
10         So I don't know if he is rendering an opinion one way
11    or the other.
12         And then the third full paragraph down, at the last
13    sentence, he says, in relation to criminal orientation, he
14    states:
15         "It is also noteworthy that the search words he has
16              acknowledged entering into the search engine and that
17              officers reported finding are commonly used by
18              sexually normative men.  In fact, several studies
19              that have looked at the search words men often enter
20              while looking for pornography online report that
21              sexual interest in teenagers and 'mothers and
22              daughters' are not uncommon."
23         And then at page 14, the first full paragraph, at the
24    end of that paragraph:
25         "In that sense, I would certainly concur with the

1          reasoning offered by Dr. Terrell six months ago; that

2          is, that for the sake of argument, one assumes that

3          Mr. Henry derived sexual arousal from viewing

4          unsuspected visitors in his guest bathroom or from

5          viewing sexual images of prepubescent children, then

6          the diagnostic possibilities of voyeurism and

7          Pedophilic Disorder could be considered."

8      The problem with that is that I have already excluded

9  evidence, including photos and videos of unsuspecting visitors

10 to his guest bathroom.

11     Now, if we bring in the question of pedophilia or

12 Pedophilic Disorder by the defense, then the government is

13 going to say, "Well, okay, but even Dr. Malinek says that if

14 the jury finds it's sexually" -- because both Dr. Terrell and

15 Dr. Malinek said those are questions of fact for the jury,

16 that the jury -- the government would say, "Well, look, now we

17 get to bring in those videos of visitors to his guest

18 bathroom, including adults, to show, as Dr. Malinek has

19 indicated, that there were these videos, and then the jury can

20 infer from that that Mr. Henry derived sexual arousal from

21 that," which means then he could be diagnosed as possibilities

22 of voyeurism and Pedophilic Disorder.

23     So there is a real problem.  Although at paragraph 3,

24 it does say:

25     "Regardless of the diagnostic issue," which he was

1    talking about there, "the risk that Mr. Henry poses

2    to the community at this time appears low."

3   And that's the main thing he was asked for, because

4 this was relating to the release of Mr. Henry, the pretrial

5 release, is his danger to the community.  And that's basically

6 his opinion.

7   But I'm not so sure, very frankly, whether or not

8 this is one of those things where either side could say,

9 "Well, bring in the expert, bring in the report and then we

10 can go at it," because there is just so much in the reports

11 that really open the door to things that either I've excluded

12 or that are just not relevant to the case, but arguably, I

13 guess, could become relevant if I allowed evidence regarding

14 pedophilia or pedophilic disorders, et cetera.

15   The bottom line, at least, as to Dr. Malinek, he is

16 not, to my knowledge -- and I looked at this report and you

17 can correct me if I'm wrong -- but I didn't see anything in

18 the report that would indicate that they would testify from

19 the report as to the traits of one who collects child

20 pornography.

21   That was not their assignment.  Their assignment was

22 to determine whether or not he was a pedophile.  So.

23   MR. CAPOZZI:  True.  And we would relate the

24 pedophile to the child pornography.  And I understand what the

25 Court is saying.

1          But the question I have is, you are not allowing any

2    of that videotape from the bathroom to come in?

3          THE COURT:  Well, now, remember, I ruled that the

4    videos of the adults, the prior adults, and I think one of

5    the -- one of the reports was really a great more detail than

6    I had seen with respect to the number of images.  I didn't

7    realize how many images there were.

8          Okay.  Now, obviously, this is not relevant because

9    Dr. Terrell's report is not going to be admitted.  He is not

10   going to be testifying, but in his report, he describes,

11   starting at page 4, videos, two videos of an Asian female.

12   The next paragraph identifies a woman by name.  And other

13   information regarding prior videos and prior actions, activity

14   in a motel room, et cetera.  So there is an awful lot here.

15         MR. CAPOZZI:  Oh, there is thousands, thousands, but

16   they are adult videos.

17         THE COURT:  Yeah.  And I indicated that those are not

18   admissible.

19         MR. CAPOZZI:  Okay.  But the camera in the bathroom

20   took video of both adults and this one young girl.  So how do

21   we exclude, separate one from the other?

22         THE COURT:  Oh, okay.  Now, my ruling was those that

23   were prior to him starting to set up, allegedly set up -- and

24   again, the government provided us with a timeline to show the

25   relevancy.

1          But the point of, regardless of who it was in the

2     video when he was setting it up or allegedly setting it up, is

3     that he was focusing in on the bathroom, the guest bathroom,

4     apparently.

5          MR. CAPOZZI:  Yes.

6          THE COURT:  And there were images of either he or

7     Angele or both --

8          MR. CAPOZZI:  Both.

9          THE COURT:  -- setting it up, moving it around, you

10    know, with the shower curtain, the shade on the window, et

11    cetera, just trying to get that perfect shot.

12         Now, they recorded a lot of people, including -- not

13    a lot of people -- some people, including adults.  And none of

14    those, I don't think, were particularly pornographic in any

15    sense, even the adults.

16         But it shows them working on this camera, and it is

17    up to the jury to determine, number one, whether or not

18    Mr. Henry was involved in that; number two, whether or not

19    they were setting that up as part of the conspiracy to

20    ultimately record a minor in an undress that could be

21    considered to be pornographic.

22         MR. CAPOZZI:  Now, I assume that's going to come into

23    evidence, that the camera was set up in the bathroom.  I don't

24    think there's any question about that.

25         THE COURT:  Right.

1          MR. CAPOZZI:  But I want it to come out that it

2     wasn't just a video of children, but anyone who came into the

3     bathroom.

4          But I guess we are not going to show any of it, but I

5     want it to come out that it was both for adults or whoever

6     came into the bathroom, not just solely for children.  I don't

7     want to do something I'm not allowed to do.  I plan on that

8     coming out.

9          THE COURT:  No.  It is my understanding, my ruling

10    really related to the government attempting to bring in

11    another -- if I could actually separate out where the

12    defendant had allegedly set this camera up to view adults,

13    basically.

14          And the time frame involved was when he was allegedly

15    setting up the camera, positioning it.  And the government's

16    position was positioning it to be able to ultimately record a

17    minor being undressed in the bathroom.

18          So as they are recording things, and they see, oh, it

19    didn't matter.  I mean it might have been someone there

20    actually posing just to see whether or not the quality was

21    good, the position was good, et cetera, it is going to be up

22    to the jury to decide whether or not they were setting it up

23    with the ultimate goal of having a child in there and being

24    able to record the child versus they are just voyeurs and they

25    just wanted to record everybody who was in the bathroom

1   because they like to see people in the bathroom.

2          MR. CAPOZZI:  So then should those videos come in,

3   though, the bathroom videos?  Some of that is adult and there

4   is some with the 14-year-old.

5          THE COURT:  I will have to review it, but I don't

6   think I precluded that, because it did show that they were

7   viewing somebody, and then they looked and said, "Oh, that's

8   not a good angle, we need to raise it," or "We have some

9   glare."

10          So the fact that they might have recorded adults or

11   whatever, only, as I understood it, just went to them using

12   whatever subject it was just to adjust the camera so it would

13   be in the best possible position to record someone undressed,

14   and the government's position was it was ultimately to record

15   a minor person undressed.

16          But, yeah, like I say, as I recall, my ruling related

17   to the government's attempt to introduce other depictions of

18   where he was recording, like unsuspecting adult females, a

19   former girlfriend or something like that.

20          And I ruled that stuff like that was inadmissible,

21   and I think that was my ruling.  That was, as I recall, the

22   thrust of my ruling, was those other videos that showed

23   adults, where he was -- it seemed to be attempting to video

24   adult women, even with him there, which was not particularly

25   relevant.

1          MR. CAPOZZI:  Well, I would like to get the

2     government's understanding of what they intend to put in on

3     the bathroom videos.

4          THE COURT:  Well, I think you folks need to meet and

5     confer.  You can probably do it between now and the time for

6     hearing on the trial confirmation hearing to see if there is

7     any dispute between the two of you as to whether or not what

8     the government intends to introduce in terms of videos is

9     consistent with what you believe my rulings are on that.  So

10    you will need to meet and confer.

11         And the government, if you haven't done it already,

12    they will have to identify those as exhibits so you will know

13    what they are in advance.

14         MR. CAPOZZI:  Okay.

15         THE COURT:  Okay.

16         MR. CAPOZZI:  Well, your thoughts then on Malinek.

17         THE COURT:  Yeah.  So at any rate, my concern with

18    Dr. Malinek is that his assignment was relating to pedophile

19    or Pedophilic Disorder, not simply to someone who collects

20    child pornography and the character traits of someone just in

21    general who collects child pornography.  That was almost an

22    aside.

23         He was really focusing in on the character traits of

24    a pedophile.

25         MR. CAPOZZI:  What I put there in my expert testimony

1    may have been with my conversations with him.  I don't know.

2    I would like to just follow up on this.  And if you can

3    finalize your ruling the next time we meet, I would appreciate

4    that.

5            THE COURT:  Let me do this so we can understand, so

6    that everybody can be aware.  I'm going to grant the motion

7    with respect to Dr. Malinek as testimony and his report.

8            I find that it is really not relevant because his

9    focus is on the characteristics of a pedophile or Pedophilic

10   Disorder, however you wish to phrase it, and not on the

11   general characteristics of one who collects child pornography.

12   Or the opposite, the character traits you would not expect to

13   see on someone who collects child pornography in general,

14   because I think it is irrelevant in terms of his assessment

15   and his opinion on the charges that Mr. Henry faces in Counts

16   1 and 2.

17           And in addition, under 403, as I have already

18   indicated -- and I tried to point out a few things in

19   Dr. Malinek's report that causes me a great deal of concern

20   regarding 403 issues -- that we might -- the jury might wind

21   up wondering just, you know, "Where is the jury instruction on

22   pedophile?  Aren't we supposed to determine whether or not

23   Mr. Henry is a pedophile, because that's what Dr. Malinek's

24   opinion was," that sort of thing.

25           And it really is clearly going to be confusing to the

1  jury and could wind up taking an enormous amount of time on an

2  issue that is really not an issue in terms of relevance.

3          At this point in time, I will grant the motion,

4  obviously subject to reconsideration, though.  And as counsel

5  reviews the reports of Dr. Malinek and the supplemental report

6  of Dr. Seymour, you can always move to renew, and that would

7  be at whatever date we set for further hearings on

8  Dr. Seymour, and that might be as late as the trial

9  confirmation date or sometime next week, if you prefer.

10         Now, the next proposed expert witness is

11 Dr. Trompetter, who now, his -- and I did get his report, and

12 that report was dated May 31, 2014.

13         And there, in his first paragraph, he addresses it

14 to, "Valerie Castro, Associate Clinical Associate Worker."

15         Apparently, he was asked to do an evaluation

16 regarding the reunification of Mrs. Henry with her son, I

17 think it's Liam, L-i-a-m.

18         And in the first sentence to Ms. Castro, the first

19 paragraph, Dr. Trompetter says:

20         "She was informed," that is, Mrs. Henry was informed,

21             "that I was not providing treatment, but rather an

22             evaluation to assist your agency regarding her

23             reunification plan with her son, Liam."

24         So I guess the question, I will go directly to it, as

25 to Dr. Trompetter, is what is the relevance?

1          At least at this point in time, Ms. Henry has already

2     exercised her Fifth Amendment privilege.  At the request of

3     the defense, we did have her come in so that she could be

4     questioned on whether or not she would be willing to testify

5     at trial, and she indicated that she would definitively

6     exercise her Fifth Amendment privilege.

7          So I don't know the relevance of Dr. Trompetter with

8     respect to Mrs. Henry, who is not testifying, but also, what

9     his opinion or evaluation regarding reunification with her son

10    has to do with any issue in this case.

11         MR. CAPOZZI:  We weren't going to get into that part

12    about the reunification.

13         The defendant will testify as to his relationship

14    with his wife, how all of this came about, and what her

15    characteristics are and why he did what he did, explaining

16    that, one -- well, the adult -- the Court is not allowing in

17    the adult videotaping, but she is an exhibitionist.  She is

18    the one who wanted the camera in the bathroom, to expose

19    herself in the bathroom and look at it later on, on the

20    videotapes.

21         And that her interest in children, the defendant will

22    testify to that, to show that it wasn't him that was into

23    this, it was her that did this.  And show the different times

24    when she was available to download this child pornography and

25    how she had access to it.

1          And on none of the defendant's computers was the

2     child pornography found, other than the one at the office

3     where it was being downloaded.  And it is our position it was

4     Mrs. Henry who came in the office and did that.

5          THE COURT:  All right.  Government response?

6          MR. GAPPA:  Your Honor, the government didn't hear an

7     answer to the Court's question, which was:  How is this

8     relevant?  We don't think it is relevant.

9          And my understanding -- I don't want to speak to

10    Mr. Capozzi -- but I thought he had informed the government

11    previously that he was not going to try to use Dr. Trompetter

12    because that report, as the Court has noted, was prepared in a

13    different context for a different purpose for a different

14    witness who is not going to be testifying.

15         So for those reasons, we would ask the Court to grant

16    the government motion to not permit any testimony from that.

17         MR. CAPOZZI:  I would ask it be held in abeyance,

18    because a lot is going to depend on what the defendant can

19    testify to.

20         And Trompetter would back up what the defendant is

21    saying in terms of her characteristics where she admits to him

22    all these things I just told the Court.

23         THE COURT:  Let me indicate, I think what the

24    government is referencing is that on May 19, 2017, Document

25    119, defense did submit his response to the government's

1   motion in limine to exclude expert witnesses.

2          And at page 3, with respect to Dr. Trompetter,

3   defense indicated:

4          "Dr. Trompetter would only be called as a witness if

5              Angele Henry were to testify to clarify her testimony

6              or for impeachment."

7          So I think that's where the government got the

8   understanding that Dr. Trompetter would be called only if

9   Angele Henry were to testify, and she is not going to testify,

10  so that's problematic.

11         MR. CAPOZZI:  Since we had that hearing, she is not

12  going to testify now.

13         I don't know what we can get into on our direct of

14  the defendant.  Some of that information may come in.  I'm not

15  sure yet.

16         But just in abeyance, anticipating not to call,

17  unless something comes up.

18         THE COURT:  Let me do this then to clarify.  I'm

19  going to grant the government's motion with respect to

20  Dr. Trompetter.  However, that is subject to a motion for

21  reconsideration by the defense, if, during the course of the

22  trial, if you believe that he might be called as a witness to

23  testify.

24         And then we would have to go through the process.  I

25  assume that possibly her out-of-court statements might be

1    admitted as an unindicted coconspirator, whatever, so it is

2    possible it might come in, I don't know.

3            And the defense will have to make that command

4    decision as to whether or not it would be beneficial to

5    defense to attempt to move to -- for me to reconsider and

6    allow Dr. Trompetter to testify with respect to certain

7    aspects of his interviews with Mrs. Henry.

8            So but you need to do that out of the presence of the

9    jury, so keep that in mind.

10           Now, some of these that I have ruled on, you know,

11   when you do your final witness list if you want, go ahead and

12   include them, in case I grant a motion for reconsideration or

13   whatever, so that the jury is aware.

14           But if you feel, "You know, I may not call them after

15   all and I don't want the jury to think that I'm going to call

16   some expert."

17           I don't say it is a plaintiff's or defendant's

18   witness, I just read the witness list.  So it wouldn't

19   necessarily be adverse to the defense that a possible witness

20   was not called, but if you feel that you don't even want that

21   name mentioned, then that's a decision you will have to make

22   when you submit your final witness list to me the Thursday

23   before trial, because that's the list that I will be reading

24   to the jury panel to see if they know anybody involved in the

25   trial.

1          All right.  And then finally -- holding in abeyance

2    Dr. Seymour -- Marcus Lawson.

3          Now, in the Notice of Expert Witnesses that was

4    submitted back in May 19, 2017, and also on August 7, 2017,

5    Document 144 that is the latest notice of witnesses, defense

6    indicates as to Marcus Lawson:

7               "He would only testify as to any rebuttal or

8               clarification of the government's experts.  (Report

9               to follow under seal)."

10         I don't think I got his report, and maybe it wouldn't

11   be necessary, but is that still the defense position?

12         MR. CAPOZZI:  Judge, we don't know what their

13   witnesses are going to say.  And I think their experts are

14   either police officers who are expert in the computer area.

15         We will listen to what they have to say, and if they

16   say certain things that was on this computer and it wasn't,

17   Mr. Lawson will testify to that, but that's all he can really

18   do.

19         THE COURT:  Let me go ahead and do this then.  I will

20   reserve a ruling on that because at this point in time,

21   defense has indicated that he would only testify in rebuttal.

22         And, obviously, you won't know until after the

23   government's case-in-chief whether or not you would intend to

24   call him.

25         So I will hold off on that.  And then you can -- we

1    can list him as a witness, prospective witness.  And if at

2    some point in time, defense believes that his rebuttal

3    testimony would be relevant, you can let us know in the middle

4    of trial and then we could figure out the parameters of what

5    he can testify to.

6              If he is going to limit himself to computer

7    forensics, or whatever, that's one thing.

8              But I do have to caution you, just based on what I

9    heard at prior hearings, that I don't want a situation where

10   we really get bogged down when the government says, "Well,

11   wait a minute.  If you are going to call Mr. Lawson, he

12   submitted a report in Mrs. Henry's case, in which" -- as I

13   understand it, and I haven't seen it, but that -- "he contends

14   that Mr. Henry was the one that was responsible."

15             So there was some question about Mr. Lawson possibly

16   being an adverse witness as opposed to a witness for the

17   defense.  So I'm not ruling on that now, but you both need to

18   be aware of that.  I suppose if he limits himself to computer

19   forensics, that may not be an issue, but if he gets off into

20   other areas relating to --

21             MR. GAPPA:  Your Honor, I don't know if the Court had

22   finished its thought on that, but this was visited in part at

23   the last motion hearing, and the government expressed its

24   concern that, in our view, there is no rebuttal case for a

25   defendant.  The defendant can either testify or not or put on

1  a case or not, but the defense doesn't have a rebuttal case.

2       So to say that we would only use him in rebuttal is

3  essentially trying to say, "We are not going to give you what

4  we are obligated to give and what the Court's ordered to

5  give," which is an expert designation and a notice and a

6  report.

7       And that was very clearly set forth, and there were

8  deadlines set.  And it was put on notice that we haven't

9  received anything.

10       So we don't think it would be appropriate, again, and

11  we expressed this at the last motion hearing, for the defense

12  to come in, having gotten the same notice from the government

13  from its witness and then clearly identified what the reports

14  are and what the opinions would be, to say that "We don't know

15  what the government is going to say," is not true, because we

16  provided all that and we have continued to provide it.  And we

17  complied with the deadline.  And we have given everything that

18  they would need.

19       So that if they are going to disagree with any of

20  that and have a different opinion from Mr. Lawson, they have

21  had plenty of time to do that.

22       So we don't think it would be appropriate to then

23  wait until all of the government's evidence is in and the

24  testimony, and then have Mr. Lawson say, "Well, here's why I

25  disagree with what they said and the analysis that they did

1  two years ago."  We just don't think that would be

2  appropriate.

3         He has clearly had a chance to review all of the

4  evidence.  And in fact, it appears that he has had a complete

5  set of the evidence through representation of the defendant in

6  the Stanislaus County case.  State law is different.  So he

7  was given a copy of all of the material.

8         So he has had plenty of access to the material.  And

9  why he has chosen not to do a report for this defendant is not

10  clear to the government, but it is not fair to the government

11  to let him come in at trial, not having provided any opinions

12  in advance, and then to try to express those for the very

13  first time in the defense case.

14         There is no defense rebuttal case.

15         So we think his opportunity to present that evidence

16  has been foreclosed by the proceedings here and the deadlines

17  that the Court has set.

18         MR. CAPOZZI:  Judge, Mr. Lawson is going to be

19  sitting at the table, advising me.

20         As to whether he testifies, the odds are probably

21  not.  And I just -- keep his name there just in case something

22  comes up.  That's it.

23         THE COURT:  Okay.  And that's fine.  So at least at

24  this point in time, I will not rule on that because the

25  defense doesn't know whether or not he is even going to

1   testify and to what extent.

2          I do have to caution the defense, as the government

3   has pointed out, certainly he can sit at the table as your

4   chief investigating officer or adviser or however you want to

5   classify him, but if, during the course of the trial, if you

6   intend to call Mr. Lawson, I assume that I would have to have

7   a hearing out of the presence of the jury.

8          MR. CAPOZZI:  Yes.

9          THE COURT:  And I would need a proffer from the

10  defense.  And if it does include what would be considered to

11  be expert testimony, even expert rebuttal testimony, if the

12  procedural requirements have not been complied with, then --

13  and if the government establishes that the information that

14  Mr. Lawson intends to rebut has been previously provided to

15  the defense, I probably would not allow him to testify as an

16  expert witness.  So you need to keep that in mind --

17          MR. CAPOZZI:  Yes.

18          THE COURT:  -- as you are preparing, as both of you

19  are preparing for trial.

20          Again, I won't rule definitively on that because,

21  obviously, it is very likely, as defense has said, that he

22  wouldn't even be called as a witness.

23          So I don't want to make a ruling in the abstract, but

24  keep that in mind if it should arise during the course of the

25  trial.

1          All right.  Now, those are the witnesses that the

2     defense -- well, I'm getting to the polygraph experts

3     separately, but at least as to the five individuals that were

4     listed on defense's most recent Notice of Expert Witnesses

5     filed August the 7th, Document 144, I believe we have covered

6     those.

7          And at the end of today's proceedings, I will get a

8     sense from you as to whether you want to have the hearing as

9     to Dr. Seymour.

10         But at this point in time, with respect to the

11     government's motion in limine with respect to expert

12     witnesses, is there anything further on behalf of the

13     government on these five designated experts by defense?

14              MR. GAPPA:  No, your Honor.

15              THE COURT:  Defense, anything further on that?

16              MR. CAPOZZI:  No, Judge.

17              THE COURT:  Okay.  With respect to expert witnesses,

18     the defense has submitted a motion to admit results of

19     polygraph examination and request for evidentiary hearing.

20         And this, as I understand it, is a polygraph

21     examination conducted by Melvin W. King, on June 2nd, 2017.

22     And on that same day, June 2nd, 2017, Mr. King prepared a

23     report to Mr. Capozzi.

24         Government submitted an opposition.  Defense has

25     submitted a reply, and I have received and reviewed all of

1 | that information.

2 | So with respect to the defense motion to admit the

3 | results of the polygraph examination, and essentially, in

4 | order to do that, there would have to be an admission allowing

5 | an expert witness in this case, Mr. King.

6 | So defense, on that?

7 | MR. CAPOZZI:  Judge, the defendant has always

8 | professed his innocence to me.  And I wanted to feel

9 | comfortable myself.  And I contacted Mel King.  I haven't

10 | talked to him in 25 years.  He worked for the city police

11 | department, did polygraph for police department.  He does it

12 | for the government now.  And I asked him if he would go do

13 | this and have him look at some of the reports.

14 | And when I got the report back, it backed up

15 | everything my client had been telling me.

16 | And I just felt better about it myself, not thinking

17 | I would ever try to put it into evidence because I've never,

18 | ever had that before.

19 | And then the more I thought about it, I contacted

20 | some of my other colleagues across the country, and, my God,

21 | they started sending me cases of where it has been allowed in

22 | evidence, and I was astounded.  I cited those cases to the

23 | Court.  To me, it directly -- very similar to our situation

24 | here, which would back up the credibility of this defendant.

25 | I think it would be helpful to introduce those, that

1  polygraph test.

2          Now, in the past, the Ninth Circuit has not allowed

3  it, but the cases the government cited were before the ones

4  that I cited.

5          There has been such improvements in the way these

6  tests are conducted.  The administrator of the test is much

7  more qualified.  How they do the test.  The equipment has been

8  improved tremendously.  When you read some of these cases, it

9  shows how it has been advanced.

10          Now, the government cites the Ninth Circuit case, in

11  *Alvirez*.  The main issue in that case really wasn't the

12  polygraph, it was whether or not the defendant was an Indian,

13  whether or not there was some kind of jurisdiction for the

14  tribe, but on the second issue was the polygraph.

15          And the defendant alleged that he was coerced into

16  confessing.  He took a polygraph.  The government gave it to

17  him and he flunked the polygraph.  And the government went on

18  to introduce that polygraph to show that if he brings up the

19  fact that he was coerced into confessing, they would bring the

20  polygraph in.

21          The Court allowed that in.  They allowed it in, and

22  they said if the defendant can bring out his defenses and this

23  polygraph showed he was lying, the government could bring it

24  in.

25          Well, to me, that's substantial.  That's authority

1  from the Ninth Circuit that would allow it in.

2          Now, the cases all prior to that have not allowed it

3  in, there is no question about it.

4          I'm saying let's have an evidentiary hearing.  Look

5  at the credentials of Mel King.  Look at the probabilities of

6  the accuracy of these polygraph tests.  And in one of the

7  cases, they are saying it is like over 90 percent accurate

8  now, or maybe it was 95 percent.

9          I'm asking the Court to have a hearing and determine

10  if Mel King has done this properly and whether or not it would

11  aid the jury in terms of being more probative than

12  prejudicial.

13          And we would welcome the government to do the same

14  thing, have an opportunity to have the FBI or whoever do

15  another polygraph with this defendant.

16          And I would submit.

17          THE COURT:  Government?

18          MR. GAPPA:  Your Honor, we don't have really anything

19  to add to our response, but we cited the Ninth Circuit

20  decisions, one from 1986, but then, as the government also

21  noted, that it was just last year, so 30 years later, where

22  the Ninth Circuit said:

23          "In this Circuit, it is well established that

24            polygraph examination may not be admitted to prove

25            the veracity of statements made during the

1      examination."

2          So it seems pretty black and white, in the

3   government's view, that it is not an accepted practice here.

4   So everything that, even in the Eleventh Circuit, that would

5   need to be done if the Court were considering it, is not even

6   a necessary analysis, and we don't need to get through that

7   procedure.

8          But we did, as an additional point, say that when you

9   look at the rules of evidence, under 403, that all of those

10  considerations would weigh against admitting that, because,

11  again, it confuses the issues.

12         The way the questions were asked, they were not

13  focused properly.  And really, to a large extent, they are

14  irrelevant.  Whether he has masturbated to or derived sexual

15  pleasure from looking at the material, whether he knew it was

16  on the devices, those are things that are really not relevant

17  to what's charged.

18         So for all of the reasons that we put in the written

19  response, we don't think the Court can or should allow that

20  testimony or evidence.

21         THE COURT:  Anything further on behalf of defense?

22         MR. CAPOZZI:  Yeah.  It is relevant.  The charge here

23  is whether or not he knew there was child pornography being

24  downloaded on the computers.  This clearly deals with that

25  issue.

1      THE COURT:  Anything further?

2      MR. CAPOZZI:  No.

3      MR. GAPPA:  No.

4      THE COURT:  Okay.  I reviewed the cases, and as the

5  government has pointed out, all of the cases cited by the

6  defense were not within the Circuit.

7      This Circuit has been very clear about the use of

8  polygraph examinations.  And this dates back, historically,

9  quite a ways back.  The *Alvirez* case, *A-l-v-i-r-e-z*,

10  831 Fed.3d 1115, Ninth Circuit, 2016 case, states -- and I

11  recognize as far as the issues are concerned, dealt with the

12  specific situation there.  But the Court did state:

13      "In this Circuit, it is well established that a

14      polygraph examination may not be admitted to prove

15      the veracity of statements made during the

16      examination."

17      And it cites to United States versus *Bowen,*

18  *B-o-w-e-n*, 857 Fed.2d 1337, a Ninth Circuit, 1988.  It does

19  say:

20      "However, polygraph evidence may be admissible as an

21      operative fact."

22      An operative fact being that not the truth of the

23  matter in terms of what was said, but that a polygraph exam

24  was conducted as part of either the government's case-in-chief

25  or defense.

1          Here, the proffer by the defense is not an operative

2    fact, but rather the truth of the matter, the substance of the

3    examination itself.

4          And then the *Bowen* case cites to -- says the same

5    thing.  The *Bowen* case is 857 Fed.2d 1337, Ninth Circuit, 1988

6    case.  And it cites to *Brown versus Darcy*, 783 Fed.2d 1389, a

7    Ninth Circuit, 1986 case, which states:

8          "It is well settled in this Circuit that polygraph

9               evidence is disfavored and cannot be introduced into

10              evidence to establish the truth of the statements

11              made during the examination."

12         So that *Brown Versus Darcy* was 1986.  *Bowen* was 1988.

13   *Alvirez* is 2016.  So the Ninth Circuit has not changed its

14   opinion or ruling with respect to polygraph examinations.

15         In this case, the defense is attempting to introduce

16   the results of the polygraph examination for the truth of the

17   matter, and that is contrary to any Ninth Circuit law, and I'm

18   bound by Ninth Circuit authority.  So for that reason,

19   independent reason, I would deny the motion.

20         Now, separate and apart, the defense did cite to a

21   number of out-of-circuit cases that discuss when a polygraph

22   examination can be admitted.  And in citing a number of cases,

23   including *United States versus Piccinonna*,

24   *P-i-c-c-i-n-o-n-n-a*, 885 Fed.2d 1529, an Eleventh Circuit,

25   1989 case, it indicated that a poly -- results of a polygraph

1   test are not per se excluded, but that there had to be certain

2   requirements.

3          And the Court did state, and defense did cite to this

4   at page 2 of the motion:

5          "The Court held that polygraph evidence may be

6          admitted when used to impeach or corroborate the

7          testimony of a witness at trial under three

8          preliminary conditions."

9          And one of those preliminary conditions is adequate

10  notice.

11         Let me just state that at the May 8, 2017 hearing, in

12  relation to defense motion for a continuance of the trial that

13  was filed on May 3rd, 2017, at that hearing, May 8th hearing,

14  I did summarize the procedural history of this case regarding

15  continuances, and I'm not going to re-recite that.  It is

16  contained in the May 8, 2017 hearing transcript.  So I won't

17  go into detail.

18         There were numerous continuances.  And so I will only

19  mention a few.  And I will note, as defense counsel pointed

20  out at the May 8 hearing, not all the continuances were

21  requested by defense.  Some were joint continuances.  So I'm

22  not saying that all the continuances in this case were as a

23  result of the defense request.  All I'm saying is there were

24  numerous continuances in this case.

25         Mr. Capozzi was substituted in as attorney of record

1   on December 9, 2013.  And there have been a number of

2   proceedings, a number of continuances, et cetera.

3        In this case, the polygraph examination was

4   apparently given on June 2nd, 2017, by Melvin W. King.  He

5   prepared his report on June 2nd, 2017, which I assume that it

6   was provided to defense shortly thereafter.

7        On June 26, 2017, I set a briefing schedule for

8   filing further motions, with any new motions to be filed by

9   August 28, 2017.

10       On August 7, 2017, defense filed its Notice of Expert

11  Witnesses.  Mr. King was not listed as a witness.

12       On September 14, 2017, defense filed a motion to

13  admit the polygraph examination.  Although defense is inviting

14  now the government to seek out its own expert to administer a

15  polygraph examination of Mr. Henry, and although defense is

16  inviting and requesting an evidentiary hearing regarding the

17  credentials of Mr. King, the advances in polygraph testing, et

18  cetera, we are very close to the trial date itself.

19       And as the government has pointed out in its motion,

20  that gives them precious little time, if at all, for them to

21  do all of that and for me to set up an evidentiary hearing

22  regarding the pros and cons of polygraph examinations.

23       Now, I don't have it in front of me, but apparently

24  there are a number of attacks now on forensic evidence, bite

25  marks, fingerprints, things that had been allegedly

1   well-established point of -- ignition point for fires.  And I

2   believe even polygraph examinations have been called into

3   question with respect to their reliability, their scientific

4   reliability.

5           And I just, very frankly, have to find that this

6   motion is not timely.  There is not adequate notice given, as

7   I indicated.

8           Since 2013, there have been numerous continuances.

9   And I can understand, defense counsel is preparing this case,

10  and maybe it was only until the last week or so that, through

11  contact with other defense counsel nationwide, that there were

12  case authorities in other jurisdictions that did allow the

13  introduction of polygraph evidence, many of which may be

14  government-oriented, and may be for rebuttal purposes, but

15  nonetheless, I can understand why defense counsel did not

16  initially try to do this given the state of Ninth Circuit law

17  and authority on this.

18          But under all the circumstances of this case, even

19  understanding that on June 2nd, 2017, or shortly thereafter,

20  defense had Mr. King's report, I didn't find any good cause or

21  justification for failing to file a timely motion.

22          So my second independent reason for denying the

23  motion is that even under out-of-circuit authority, that

24  adequate notice was not given in this case, given what I

25  mentioned.

1          In addition, it does not comply with the Court's

2    rules.  And I know the government has stated repeatedly when I

3    did grant continuances, that, you know, things need to be

4    done, accomplished, et cetera, and I said, "No, we were going

5    to allow continuances."

6          But I did set a hard deadline with respect to filing

7    any further motions, including this particular motion.  And I

8    do find that it was not timely under the Court's orders as to

9    when motions needed to be filed, and there is no good cause

10   given for failure to timely file the motion.  So on that

11   separate basis, I would deny the motion.

12         Finally, with respect to just a general

13   consideration, and that is that perhaps I can read into even

14   Ninth Circuit authority some leeway for the Court to allow in

15   polygraph results, examinations and results, I do have a

16   concern, and I did review the questions that were posed to

17   Mr. Henry.

18         One, "Have you ever intentionally and deliberately

19   searched for child porn or images of minors on any electronic

20   device?"

21         The answer was, "No."

22         "Have you ever masturbated to or become sexually

23   aroused by while watching child porn or images of minors?"

24         "No."

25         Three, "Did you know child porn or sexual images of

1   minors were on any of your electronic devices prior to being

2   contacted by law enforcement?"

3           Answer is, "No."

4           And I agree that the questions do not ask about

5   knowingly receiving and distributing child pornography or

6   possession itself.

7           So the questions -- and again, I'm not faulting

8   Mr. King on this; he asked questions.  But I do have to agree

9   with the government that the questions did not go directly to

10  elements relating to the charges themselves, and are

11  potentially confusing to the jury with respect to the

12  questions and the responses and how they relate to specific

13  elements of the charges in this case, being the conspiracy

14  charge and the receipt and distribution charges.

15          So separate and apart, although I agree with defense

16  that there obviously always some relevance arguably for the

17  results of polygraph examination results, that in this case,

18  given the nature and the specific questions, that it would

19  tend to confuse the jury.

20          It would unduly lengthen the trial, as there now

21  would have to be something perhaps before the jury with

22  respect to dueling experts on polygraph examinations, et

23  cetera.

24          And so I do find that in this case, under 403, that

25  whatever relevancy probative value there is, it is far

1   outweigh by the potential prejudicial effect.

2          So on these separate individual bases, separate from

3   each other, one, Ninth Circuit authority; two, the failure of

4   adequate notice; three, not complying with the Court's order

5   regarding timely filing of motion; and, four, 403, I do find

6   that I'm going to deny the motion to admit the polygraph

7   examination or to allow Mr. King to testify as an expert

8   witness or to hold an evidentiary hearing.

9          MR. GAPPA:  Your Honor, sorry to follow up, but to

10  follow up on that point, in light of the ruling, the

11  government would request that to the extent that the defendant

12  does plan to testify, that he not be allowed to state that he

13  either took an examination or that he, in his view, passed an

14  examination, because for the very reasons that the Court has

15  stated, it would be even more prejudicial, more confusing,

16  more misleading for a jury to hear that from him without the

17  explanation for what was involved.

18         MR. CAPOZZI:  That's understood, Judge.  We wouldn't

19  bring that up.

20         THE COURT:  That would be the ruling of the Court.

21  And I understand, and I'm sure Mr. Capozzi will talk to

22  Mr. Henry about this, sometimes parties do blurt out, you

23  know, "I did this," or "I did that," or something that would

24  otherwise be inadmissible, and that could be very problematic.

25         And I think the downside for any party who does that

1    would probably be subject to sanctions.  And a sanction might

2    be some kind of a jury instruction that would really be

3    detrimental to that party showing, basically, some misfeasance

4    as far as testimony that the Court ruled would be

5    inadmissible.  And that applies to all parties in all cases.

6              MR. GAPPA:  Thank you, your Honor.

7              THE COURT:  Anything else, at least at this point in

8    time, on that issue?

9              MR. CAPOZZI:  Nothing more, your Honor.

10             MR. GAPPA:  No, your Honor.

11             THE COURT:  Okay.  On -- as far as Mr. Seymour, I

12   don't know if there are any other -- let me deal with one

13   more.

14             The government had filed a ex parte, under seal

15   motion to ask the Court to review in camera certain

16   information.  And the defense did file an objection to that;

17   that is, the sealing of that information.

18             I can't go into any great detail on that, but if any

19   party wishes to be heard further on the record.

20             MR. CAPOZZI:  Just that I would leave it to the

21   Court.  Is there something the defense should know?

22             THE COURT:  No, absolutely.  And I have reviewed the

23   information.  I will do an order.  Unfortunately, it is going

24   to have to be under seal.

25             All I can say is that if it is information that

1   should be disclosed, I will order it disclosed on Monday.  If

2   not, I will get an order out explaining my reasoning.

3           And the other thing, obviously, that can be done is

4   if there is an appeal, obviously, that information will be

5   available to the appellate court along with my consideration

6   and ruling on that.  So that it would be available for further

7   review, if necessary.

8           All right.  That's really all I had for now, other

9   than setting a date for further hearing on the government's

10   motion regarding Dr. Seymour.

11           But are there any other issues before I set a date on

12   that for the government?  Anything today that we should take

13   up or discuss?

14           MR. GAPPA:  No, your Honor.

15           THE COURT:  Defense, anything?

16           MR. CAPOZZI:  I'm just confused as to this ex parte.

17   You are going to issue an order and let us know?

18           THE COURT:  If I find that it is *Brady/Giglio*

19   material, Rule 16, whatever, then I will disclose it and I

20   will make sure -- basically what I do, I will send it to the

21   government saying, "I have reviewed the materials and I do

22   find that it is *Brady/Giglio*, Rule 16 evidence, and must be

23   disclosed to the defense."

24           Obviously, if I do that, the defense reviews it and

25   feels that there are further motions, I'm not going to

1   preclude motions on that simply because defense would not have

2   known about that unless and until I have it released by the

3   government.

4         If I review and find that it is not *Brady/Giglio*,

5   should not be disclosed under Rule 16 or *Brady/Giglio*, then

6   you are not going to get it.  So if you don't get it, that

7   means I have reviewed it and find that it is not discoverable,

8   in which case, that would end it.

9         MR. CAPOZZI:  Is that fair to the defense, if we

10  don't know what it is?  Shouldn't we have the opportunity to

11  argue?

12        THE COURT:  No.  The process and procedure in terms

13  of ex parte review is pretty clear.

14        MR. CAPOZZI:  Yeah, I understand that.  I can make

15  something ex parte so they don't see it, but that's not

16  necessarily fair.

17        THE COURT:  It depends on what it is.

18        MR. CAPOZZI:  True.

19        THE COURT:  There are a lot of times, frankly, that

20  defense does request ex parte in-camera reviews, and also

21  under seal, you know, requests for experts, requests for

22  investigator fees, and requests for subpoenaes, et cetera, and

23  I never disclose that to the government.

24        So there are some things that are allowed to be done

25  ex parte without the other side knowing, and the government

1    can't say, "Well, wait a minute, Judge.  I understand the

2    defense has asked for expert witness fees.  I want to know who

3    that expert is.  Or has asked for subpoenaes.  I want to know

4    who they are going to be subpoenaing," and I don't allow it

5    because I'm not allowed to, and I'm not going to do it.

6            MR. CAPOZZI:  Okay.

7            THE COURT:  So there are some things that seem, oh,

8    gee, shouldn't the other side know?  And the answer is

9    sometimes, no.  And this is one of those "Sometimes, no."

10           MR. CAPOZZI:  Okay.

11           THE COURT:  Okay.  So with respect to hearing on the

12   motion regarding Dr. Seymour, it could be sometime next week

13   or it can be on October 10th, I think it is.  Whatever works

14   out with you folks is fine.

15           MR. GAPPA:  Your Honor, just to know all possible

16   options, even though we have that trial confirmation and it

17   has been scheduled for a while and it is on our calendars for

18   the 10th, is there an option -- and I understand the Court's

19   limited availability -- but is it an option to do that hearing

20   on the 16th?  Or later in the week of the 10th?

21           THE COURT:  Yeah.  If it is simply a matter of

22   Dr. Seymour, and you folks are okay with my ruling on that on

23   the 16th, and both sides are available, that's fine.

24           And if both sides are going to be doing further meet

25   and confer, investigation, trial preparation, whatever, and

1    obviously, of course, the government is going to get a copy of

2    the supplemental report and file any supplemental motions on

3    that, I suppose I could give you time to do that.

4          But, yeah, I don't have a problem with the 16th.  We

5    still have a little bit of time before trial.  I don't want to

6    get it too close to the trial date because I know you folks

7    want to do the final trial preparation with as much time as

8    possible.

9          Mr. Capozzi, October 16th?

10         MR. CAPOZZI:  Would it be in the morning or

11   afternoon?  I'm supposed to be in Bakersfield in the morning,

12   but I might be able to get out of that.

13         MR. GAPPA:  Either works for the government, your

14   Honor.

15         THE COURT:  I could do it in the afternoon.

16         MR. CAPOZZI:  A safe bet would be the afternoon.  The

17   TC and the motion?

18         THE COURT:  Trial confirmation, hearing on the motion

19   regarding Dr. Seymour.  We will vacate October 10th.  It would

20   be October 16th, 1:30, in the afternoon.

21         And Mr. Capozzi if you are running behind in

22   Bakersfield, just contact the Court and we will let,

23   obviously, Mr. Gappa know that we might be running a little

24   bit late, and that's perfectly fine with me.

25         MR. CAPOZZI:  And the defendant will be here for that

62

1    hearing.

2            THE COURT:  Yes, he should be.  That's a regular

3    Monday calendar.  So, yes, Mr. Henry will be here on that

4    date.

5            Anything else while we are on the record here today?

6            Government's side, anything?

7            MR. GAPPA:  No, thank you, your Honor.

8            THE COURT:  Defense side?

9            MR. CAPOZZI:  No, thank you very much.

10       (The proceedings were concluded at 3:02 p.m.)

11            I, PEGGY J. CRAWFORD, Official Reporter, do hereby

12        certify the foregoing transcript as true and correct.

13

14   Dated:  5th of October, 2017        /s/ Peggy J. Crawford
                                         PEGGY J. CRAWFORD, RDR-CRR
15

16

17

18

19

20

21

22

23

24

25