1                   UNITED STATES DISTRICT COURT

2                 EASTERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,       : Case No. 1:13-cr-0409-AWI-BAM-1

4         Plaintiff,                 :       Fresno, California
                                             Monday, October 16, 2017
5            v.                      :       1:33 p.m.

6    ADAM ALAN HENRY,                :       MOTION HEARING AND
                                             PRE-TRIAL CONFERENCE
7         Defendant.                 :

8    : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

9
                        TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE ANTHONY W. ISHII,
                   UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the United States        U. S. Attorney's Office
     of America:                  BY:  DAVID L. GAPPA, AUSA
14                                     ROSS PEARSON, AUSA
                                   2500 Tulare Street, Suite 4-401
15                                 Fresno, CA  93721

16   For the Defendant:           ANTHONY P. CAPOZZI, ESQ.
                                   1233 W. Shaw Avenue, Suite 102
17                                 Fresno, CA  93711

18
     Court Recorder:              OTILIA ROSALES
19

20   Transcript prepared by:      JANICE RUSSELL TRANSCRIPTS
                                   1418 Red Fox Circle
21                                 Severance, CO  80550
                                   (757) 422-9089
22                                 trussell31tdsmail.com

23
     Proceedings recorded by electronic sound recording; transcript
24   produced by transcription service.

25

| | |
|---|---|
| 1 | FRESNO, CALIFORNIA, MONDAY, OCTOBER 16, 2017, 1:33 P.M. |
| 2 | THE COURTROOM DEPUTY:  Court calls Item No. 2, 13-cr- |
| 3 | 409, USA versus Adam Alan Henry. |
| 4 | MR. GAPPA:  Good afternoon, Your Honor.  David Gappa |
| 5 | and Ross Pearson for the United States. |
| 6 | MR. CAPOZZI:  Good afternoon, Judge.  Tony Capozzi |
| 7 | with Mr. Henry, who's present in court in custody. |
| 8 | THE COURT:  All right. |
| 9 | Okay.  This is the date and time set for the pre-trial |
| 10 | conference.  Also, we had set over a pending motion in limine |
| 11 | regarding Dr. Seymour and defense counsel indicated that there |
| 12 | was a supplemental report and that that would be submitted to |
| 13 | the Court and counsel for the Government.  And I did receive |
| 14 | the defense memorandum regarding the admission of Dr. Seymour's |
| 15 | testimony and also, the supplemental report, the addendum |
| 16 | report, dated October 5, 2017 and also, the opposition by the |
| 17 | Government. |
| 18 | So with respect to -- it's really the Government's |
| 19 | motion in limine regarding Dr. Seymour's testimony.  So |
| 20 | anything further on behalf of the Government on that particular |
| 21 | motion? |
| 22 | MR. GAPPA:  Your Honor, did the Court say that it |
| 23 | reviewed it and received our response, which was just filed on |
| 24 | Friday?  The Government didn't get the report until Tuesday |
| 25 | last week.  So we filed our opposition on Friday. |

1          THE COURT:  I did receive that, yes.

2          MR. GAPPA:  Okay.

3          So, Your Honor, those are really the Government's

4   concerns.  It's, in our view, significant in the timing of it

5   because the Government went back, as, perhaps, the Court did,

6   to when we were here in June and the Court set that deadline

7   initially in July, but then the defense said, "We are busy with

8   a different trial.  Could we have until August?"

9          So then the Court set the August date for disclosure

10  and then stated that, "Any expert that is required to be

11  disclosed is not disclosed and is required to submit a report

12  and has not submitted a report by August 7th will more than

13  likely be precluded from testifying at the trial, itself."  And

14  that was on the record at the hearing in June.

15         So our view is that this is an opinion that could have

16  been provided by the deadline the Court set and for the reasons

17  that we put in the objection, we're now in the throes of trial

18  preparation and if the Court were to allow this, then we would

19  most likely want our own person to review it to, at a minimum,

20  help us understand what the bases are for his opinion.  And as

21  we pointed out, we don't even see the basis for his opinions.

22  So the Court would have to do its own hearing to see whether

23  he's qualified to give them.  But all of that is within this

24  concentrated timeline and the Court noted that when it set

25  these deadlines and it set deadlines with the anticipation that

1    if there were objections, that both sides would get a chance to

2    file an adequate objection and the Court would have adequate

3    time to make an informed ruling.

4            So I think all of that's been compromised by the

5    chronology since we were last in court.

6            THE COURT:  All right.  Okay.

7            And on behalf of defense?

8            MR. CAPOZZI:  Judge, I think I set it out in my memo.

9    We had gone on the theory that the Government was alleging the

10   defendant was a pedophile.  Indeed, one of the interviews, the

11   officer just was berating his wife alleging that he was a

12   pedophile and one of the tapes the Government wants to put in

13   is labeled Pedophile.

14           So we had the reports that dealt with that issue and

15   the last time we were here the Court said that wasn't an issue.

16   So I immediately contacted Dr. Seymour -- and again, the

17   problem I've had with Dr. Seymour is he's moved out of town.

18   He's no longer in Fresno.  He's in San Luis Obispo -- and he

19   did the updated report.  It's not essentially different from

20   the one that we've already submitted other than pretty much it

21   still mentions pedophile, but brings out the characteristics

22   and the fact that those characteristics are lacking in this

23   defendant as to someone who possessed child pornography.

24           As to qualifications, in our notice of, on December

25   29, 2016 we indicated that we're going to have expert witnesses

1  and we sent over, I thought, all of our witnesses'

2  qualifications.  But, if I didn't, I'll send one over to the

3  Government today on Mr. Seymour.

4       I think it's essential to our defense, Your Honor.  I

5  think it's relevant.  The Government now argues that it's not

6  relevant.  We made -- they made that argument once before and I

7  think the Court said that this was relevant.  I cited the

8  Staggs case in a memorandum that I submitted to the Court, I

9  think it was, on August 7th.  I think it's highly relevant.

10  It's important to our defense.  The only witness the defendants

11  could really have to explain his side is himself and I think

12  it's important to have Dr. Seymour at least give us the

13  background with regard to this defendant.

14       Thank you, Judge.  Unless you have questions.

15       THE COURT:  Okay.

16       Yeah.  You know, I, as I indicated earlier at the

17  prior hearing, although I didn't rule on, on the testimony of

18  Dr. Seymour, I did note in his original report dated August 19,

19  2015 that was in the context, essentially, of a motion for pre-

20  trial release.  And Dr. Seymour indicated on his cover page

21  that the legal issue for which he was consulted to render an

22  opinion was to address the likelihood that Mr. Henry is a

23  pedophile --- and again, as we mentioned or discussed at the

24  last hearing, there are different terms used.  I'll just use

25  that term, in general -- and whether he currently presents a

1  risk to the safety of the community.  Now that was the, the

2  pre-trial issue.  That's not at issue --

3          MR. CAPOZZI:  Right.

4          THE COURT:  -- for the trial.

5          So with respect to whether or not Mr. Henry is a

6  pedophile or suffers from a pedophilic disorder, or whatever, I

7  indicated at the last hearing that I agreed with the Government

8  that that's not an issue as to what Mr. Henry is charged with.

9  So that's not relevant.  And also, just the discussion of the

10  term, "pedophile" or "pedophilic disorder," or "pedophilia,"

11  does raise, I think in, in most jurors, a concern because it,

12  obviously, has very negative connotations.

13          So I did indicate that, to the extent that that word

14  or those terms like that are used, they needed to be excluded

15  as not really relevant, but also, under 403, the potential

16  prejudicial impact upon Mr. Henry, and I did direct the parties

17  to meet and confer with respect to exhibits.  The Government

18  did indicate that although there were some videos or other

19  materials that had titles that indicated pedophilia or

20  pedophile or information such as that, that that would have to

21  be redacted.  The Government indicated that there were a number

22  of files that did not have that terminology and would disclose

23  to the defense the exhibits that would be used and if there

24  were any that had that as a title or content, that it would be

25  redacted.

1          So I find that an opinion as to whether or not

2     Mr. Henry is or is not a pedophile or suffers from a pedophilic

3     disorder is not relevant and is extremely prejudicial in any

4     context with respect to Mr. Henry and to have Dr. Seymour

5     discuss that, I think, is, is injecting into the trial

6     something that really has no relevance and under 403 is

7     definitely prejudicial.

8          So in terms of the initial report, I would grant the

9     motion to exclude that report because the opinions that

10    Dr. Seymour was asked to render are either not relevant, that

11    is, risk to the safety of the community, or of relevance as to

12    pedophile or pedophilic disorder is virtually not relevant in

13    this case simply because that's not a claim or defense, in and

14    of itself, and clearly, under 403, presents serious prejudicial

15    concerns.

16         And again, as far as the discussion as far as the

17    Government's concerned, the Government is going to have to meet

18    and confer, if you haven't done it already, with respect to the

19    possible exhibits to be introduced to the jury and there needs

20    to be some redacting.  And I'm certainly willing to hold a

21    hearing during the course of trial or at the trial itself on

22    any issues that have not been resolved in that regard.

23         And also, as far as the interview, comments,

24    discussion, accusations, or whatever, by law enforcement

25    officer or officers to Mrs. Henry, it's been established she's

1  not going to be testifying and any discussions or conversations

2  that the agent or officer had with her using the term

3  "pedophile" or "pedophilic disorder," or anything like that is

4  totally irrelevant and would not be allowed.

5      So that gets us to the addendum report and I, I did

6  review the addendum report and in the report -- it is dated

7  October 5, 2017 -- and on the legal issues Dr. Seymour states,

8  "Counsel has requested an opinion regarding Mr. Henry and

9  whether or not he fits the common characteristics found in

10  child pornography users."  Now that is a new, totally new and

11  different opinion than the opinions that he rendered pretrial

12  in terms of the issue of pre-trial release.  So that is a

13  concern because it is very late to render that new and

14  different opinion since August 19, 2015.

15      The other concern I have is that he states that that,

16  that an opinion was requested as to whether or not he fits the

17  common characteristics found in child pornography users.  And I

18  reviewed his report, including his summary and his final

19  paragraph -- and I, I'm curious and maybe either or both sides

20  can point to me -- where is his opinion regarding that aspect?

21  I didn't see it.  I'll be candid.  I did not see an opinion

22  that I'm accustomed to seeing in a report where a doctor or an

23  expert renders an opinion and then his justification for the

24  opinion.  So I am concerned about an expert opinion for which I

25  did not see one.

1          So I don't know.  Defense or Government can point to

2     what you believe to be an opinion?

3          MR. CAPOZZI:  I'm just looking at Page 4, the second-

4     to-last paragraph.  "It does not appear that an exchanged

5     pattern of child pornography was established in this case.  It

6     does not appear that Mr. Henry had a pattern of securing child

7     pornography prior to the development of his relations with his

8     ex-wife."  And he talked about the older child pornography

9     being found.  Let's see.

10         (Pause)

11         MR. CAPOZZI:  That's it.  He, he just indicates that

12    it may be the case that he was interested in it, but may not

13    be.  But he -- I think if he were allowed to testify he would

14    explain more fully his position and that this defendant does

15    not have those characteristics.

16         THE COURT:  Okay.  Well, see, that's the problem.

17    It's -- it --

18         MR. CAPOZZI:  Well, again, Judge, on Page 3, it talks

19    about, second paragraph, "The males who engage in consumption

20    of child pornography often develop relationships with other

21    adult males who also view child pornography."  Talk about the

22    mutual exchange.  And in the next paragraph he talks about,

23    well, it's about females

24         Well, I know in talking to Mr. Seymour he does not

25    believe that the normal characteristics of one who possesses

1   child pornography, that those characteristics are not possessed

2   by this defendant.

3          THE COURT:  Well, but he didn't put it in his report

4   and the ---

5          MR. CAPOZZI:  I, I understand.

6          THE COURT:  You know, the problem with that -- and I

7   know at the last hearing you said, "Well, let's just go ahead

8   and admit it and, and if the Government wants to cross-examine,

9   so be it," but that's not the way it works.  Because --

10         MR. CAPOZZI:  Well --

11         THE COURT:  -- we don't know what Dr. Seymour's

12  opinion is, as you've indicated on the record.  He didn't put

13  it in his report and so the Government has absolutely no way of

14  knowing what his actual opinion, if he has one, is going to be

15  and what his basis is and trial is not the time for, for it to

16  be disclosed for the first time and for the Government to try

17  to respond.  And --

18         MR. CAPOZZI:  And I can't disagree with that, Judge,

19  but I would ask that we have a hearing outside the presence of

20  the jury prior to trial.

21         In my notice of expert witnesses on August 7th we said

22  that he would testify as to traits of one who collects child

23  pornography and whether or not the defendant possesses those

24  traits.

25         THE COURT:  And he should have --

1          MR. CAPOZZI:  And --

2          THE COURT:  -- rendered an opinion.  I mean, what

3   you're saying let's have a hearing and let's let him come in

4   for the very first time during trial or shortly before trial to

5   somehow on the record render an opinion, which he had an

6   opportunity to do.  Certainly, it's no shock or surprise after

7   the August 19, 2015 report that, if it was significant enough,

8   that it would have been timely filed and certainly, the request

9   to have a hearing between now and the trial, even during the

10  trial, is just a complete violation -- not a violation --

11         MR. CAPOZZI:  Yeah.

12         THE COURT:  -- but it certainly is not consistent or

13  comport with reasonable notice.

14         I'll tell you another thing that concerns me in this

15  case -- and again -- and I'm pointing out some things just to

16  show what problems could arise that would cause direct and

17  cross to be out of the realm of what he's put in his report,

18  which really creates some real 403 problems.  And I know that

19  defense might say when I point these out that, "Well, yeah,

20  that's fine.  We're willing to, to have him talk about this and

21  the Government can cross-examine," but that's really not the

22  time and the place for a general discussion.

23         At Page 2, the first paragraph, the first partial

24  paragraph, he states, "However, in this case Mr. Henry was

25  found in possession of child pornography."  Now the Government

1   can obviously say, "Look, Dr. Seymour, you have rendered that,

2   you have stated.  You have done all the research," etc., and

3   I'm sure that both sides will review what he did, the research,

4   but then he's going to have to give an explanation.  Now if

5   he's going to try to back pedal from that statement, then I

6   have no idea what he's going to say.  But his flat-out

7   statement is Mr. Henry was in possession of child pornography.

8          So, you know, again, there's just a -- I have

9   absolutely no idea what the parties are going to make of that

10  and, and I have no idea what Dr. Seymour's going to say about

11  that.  I mean, is he going to say, "Yes," you know, "I've," you

12  know, "I've done all the research here.  I've looked at the

13  files.  He was definitely in possession of child pornography."

14  That's a problem.

15         But in the very next paragraph, "Almost all cases of

16  adults viewing child pornography involve males," which

17  defendant is.  "There is no specific social-economic status

18  associated with those who view or seek child pornography."

19  Again, so regardless of what Mr. Henry's social-economic status

20  is really, apparently, doesn't matter.

21         But, "The typical male is generally able to function

22  well in employment and academic settings."  So if Mr. Henry has

23  a background of employment, which he does, did, that apparently

24  is, is not something that would preclude him from, from viewing

25  child pornography.  And, "They have, generally have adequate

1   pro-social, interpersonal skills," which, given Mr. Henry's

2   job, probably has.

3          So those are all -- the fact that someone is -- is --

4   has, has a job, is, is otherwise pretty well founded in society

5   doesn't preclude someone from being a child, being involved in

6   child pornography.

7          And in his summary, "He stated," summary, first

8   paragraph, at Page 3, "He stated that he and his ex-wife use

9   P2P software to download pornographic videos for their personal

10  use."

11         "Mr." -- and the next page, Page 4, first full

12  paragraph, "Mr. Henry admitted that he did encounter files that

13  contained child pornography, but when he found those he deleted

14  them," although they were ultimately found on his computer,

15  apparently.  And then he goes on, I assume, to blame his wife

16  for that.

17         And then the next paragraph, "Mr. Henry does fit

18  certain characteristics of adult men who seek out child

19  pornography.  These include the fact that he's white, above age

20  30, well educated, does not have an extensive history of other

21  criminal behavior."

22         So, I mean, there are certain things that Dr. Seymour

23  might say that he doesn't fit, but he certainly indicates on

24  those paragraphs that I read that, that Mr. Henry certainly

25  fits the characteristics.

1          And then in terms of the next paragraph, "It appears

2     to be the case that surreptitious videos were taken of children

3     in various states of undress while in a bathroom in the Henrys'

4     home.  These videos were taken using equipment installed by the

5     Henrys," okay?  So he is saying, Dr. Seymour is saying that

6     there were videos taken of children in various states of

7     undress in the bathroom in the Henrys' home and that they were,

8     equipment installed by the Henrys.

9          And then at the last paragraph it says, "It may be the

10    case that Mr. Henry developed a desire to obtain and view child

11    pornography while in his early to mid-30s, but this is not a

12    usual pattern."  So it's not a usual pattern, but it may be the

13    case that he did do so.  "It may also be the case that he

14    secured files absent specific intent as a part of larger

15    searches through an unsecured P2P software program."

16         So even his concluding sentence Dr. Seymour

17    equivocates as to whether or not Mr. Henry did, indeed, have

18    child pornography, but most of it seems to tend to indicate

19    that he does.  And I understand -- and again, I think

20    Mr. Capozzi mentioned this last time, "Well, okay, Judge.

21    Well, let's bring him on and the Government can cross-examine

22    and we'll examine and we'll see what he has to say."

23         MR. CAPOZZI:  Uh-huh (indicating an affirmative

24    response).

25         THE COURT:  But the problem is we don't know what he

1   has to say about any of that stuff.

2          MR. CAPOZZI:  I understand what you're saying.

3          THE COURT:  So I just can't, I just can't say, "Okay,

4   look.  It may be to the Government's benefit to have

5   Dr. Seymour come in, but that's not, that's not the way I'm

6   supposed to operate.  I'm supposed to operate on the, on the

7   notion that if there's an opinion rendered, is it one that will

8   assist the jury?  And this is so equivocal that I'm not sure

9   that it would help the jury to make a decision.

10          And it really brings up from the defense standpoint,

11   okay, how are we going to negate the things that Dr. Seymour

12   says in his supplemental report and then who knows what

13   Dr. Seymour will say if he has to try to back pedal or clarify?

14   He'll provide information that is totally unknown to any of us,

15   at least at this point in time.

16          So I, I just have a really serious concern about

17   finding a real, true opinion in this case that I can say, okay,

18   you know, under the gate-keeping role of the Court whether I

19   can say it's an opinion that will assist the trier of fact that

20   there's enough background information so that the Government

21   is, is aware of the basis for the opinion, etc.

22          So from a substantive standpoint I have a real problem

23   with the addendum report, one, relevancy because he doesn't, I

24   didn't really see a true opinion, but the other thing is 403

25   because it does open the door.  And the other -- that's from a

1   substantive standpoint.

2          From a procedural standpoint, I do agree with the

3   Government that we can't have Dr. Seymour come in whether it's

4   tomorrow or the day of trial to attempt at that point to render

5   an opinion and the basis for the opinion because then it's way,

6   way, way too late too close to trial.

7          So, yeah, it's a problem.  So any rate --

8          MR. CAPOZZI:  Just to make a comment, Judge.

9          THE COURT:  Sure.

10          MR. CAPOZZI:  The facts that he put in his report came

11   from all of the police reports that he listed in the August 19,

12   2015 report.  He lists everything he looked at --

13          THE COURT:  Uh-huh (indicating an affirmative

14   response).

15          MR. CAPOZZI:  -- and it was all the police reports and

16   various Child Protective Services reports.

17          THE COURT:  Uh-huh (indicating an affirmative

18   response).

19          MR. CAPOZZI:  So yes, it, it does say everything that

20   was in those reports that were very negative to this defendant.

21          But I understand what the Court is saying.  In looking

22   for an opinion in that report, it's hard to find one.

23          THE COURT:  Yeah.

24          MR. CAPOZZI:  But I know in my conversations with him,

25   I know what he would say.  But I understand the Court's

1    decision.

2             THE COURT:  All right.  Okay.

3             Anything further by the Government?

4             MR. GAPPA:  Your Honor, I think -- we appreciate the

5    Court's thoughtful analysis.  The only thing we would add is

6    that I think, in addition, there is this layer of, even if you

7    put that, those issues to the side, there's the additional

8    concern that we have, which is that he hasn't really given a

9    basis to say this defendant does not fit this profile and he

10   doesn't really give a basis to say what his expertise is to say

11   what the profile is.  In other words, I mean, how many people

12   like this defendant or others who are charged with similar

13   offenses has he interviewed and drawn conclusions about?  So we

14   don't have that.

15            So I think that would be an additional problem.

16            THE COURT:  Well, as I said, the, the overall problem,

17   of course, is Dr. Seymour has not rendered that --

18            MR. GAPPA:  Right.

19            THE COURT:  -- opinion.  And what defense was

20   suggesting is that we allow him to come in to render that

21   opinion at a hearing and I'm saying that's way too late and,

22   and at this point in time it's just not timely in any sense.

23            So --

24            MR. GAPPA:  Agreed.

25            THE COURT:  -- I understand your, your follow-up

1    comments and that certainly adds to the mix as far as why it

2    would be prejudicial to the Government, possibly prejudicial to

3    the defense because we don't know, ultimately, what he's going

4    to say.  I mean, he can't just say, "Well, I just put down what

5    was in the reports."  I mean, that, that's not what he's saying

6    in his supplemental addendum there.  He's not saying, "Well,

7    this is what the reports say."  'Cause sometimes an expert'll

8    say, "According to police reports, they say," or, "According to

9    witnesses, this is what they say," and then there's a

10   disagreement or a clarification, or something.  Here, it's just

11   flat out what he says in the report and I just -- it's

12   problematic.

13            Any, anything else?

14            MR. GAPPA:  No, Your Honor.  Thank you.

15            THE COURT:  All right.

16            MR. CAPOZZI:  He did say, Your Honor, that he's

17   interviewed over 500 people and he, 500 individuals in sex

18   offense cases and this is a particularly unusual case.  But --

19            THE COURT:  Yeah.

20            MR. CAPOZZI:  -- the Court's ruled.  I'm fine.

21            THE COURT:  Yeah.  Okay.

22            And again, I'm not dealing with the issue of

23   qualifications.

24            MR. CAPOZZI:  Uh-huh (indicating an affirmative

25   response).

1          THE COURT:  You know, that's not -- because my ruling

2    on the admissibility in and of itself, but, but I just don't,

3    in general, find that he's unqualified as a clinical and

4    forensic psychologist in, in sex education matters or sex

5    offense matters.

6          But again, I'm not ruling on that --

7          MR. CAPOZZI:  Uh-huh (indicating an affirmative

8    response).

9          THE COURT:  -- specifically 'cause that's not in front

10   of me.  What is in front of me is the opinion and I've -- I've

11   already -- I'm ruling that it is -- I will grant the

12   Government's motion with respect to Dr. Seymour and his

13   original report of August 19, 2015 and his addendum report of

14   October 5, 2017.

15         All right.

16         MR. CAPOZZI:  I have another issue I'd like to --

17         THE COURT:  Sure.

18         MR. CAPOZZI:  --bring up --

19         THE COURT:  Yes.

20         MR. CAPOZZI:  -- if we can.

21         The U. S. Attorney and I have spoken in terms of the

22   videos that are going to be coming in.  We haven't met yet on

23   which ones are coming in --

24         THE COURT:  Okay.

25         MR. CAPOZZI:  -- but we did talk about the bathroom

1   videos and from what I understand the Government intends on

2   using only snippets of when the 14-year-old is in the bathroom.

3   I would disagree with that 'cause I'd like to show that in the,

4   in the camera put into that bathroom in the home, that it

5   wasn't just the child that was videotaped, but numerous adults,

6   numerous other people unrelated to this case.

7          THE COURT:  Uh-huh (indicating an affirmative

8   response).

9          MR. CAPOZZI:  I think that's important.

10          THE COURT:  Okay.  Well, as I mentioned earlier -- and

11   you folks need to meet and confer -- there were some of the

12   videos that, that, apparently, the, the adult females were not

13   aware that they were being videoed.  Those were, apparently, at

14   -- at -- whatever Mr. Henry enjoyed doing with those.  And

15   that's not relevant.

16          MR. CAPOZZI:  Right.

17          THE COURT:  I've already indicated that.

18          What is relevant -- and it may include some videos of

19   adults -- is that the Government set up a timeline, which is

20   not an exhibit at this point in time, but it showed, basically

21   what the Government is saying, that there's some within the

22   proper time frame that show anybody.  It could be adult, it

23   could be adult, it could be minors that are in the bathroom and

24   then after those videos are shown it's shown that Mr. Henry

25   participated in making certain adjustments.

1          So, really, it's not so much what was seen in there.

2   It is that they were making these adjustments ultimately,

3   allegedly, according to the Government, to, they conspired to

4   set the camera and make it just perfect so that they could

5   ultimately get a video of what the Government is going to

6   contend is minors in certain stages of undress.

7          So that's the real relevance.  You folks need to meet

8   and confer on those and I can certainly meet with you folks,

9   maybe after we pick the jury, or whatever, and go over those

10  videos to make sure that those are the ones that the Government

11  is contending are shown only for the purpose of showing right

12  after that or shortly after that Mr. Henry participating in

13  making the adjustments, whether it's moving the camera angle,

14  you know, getting thicker shades for the bathroom windows, or

15  whatever, that they're setting, he's, he's helping to set this

16  up so that, ultimately, they will have the best possible shot

17  of individuals, including minors under the age of 18, in

18  various stages of undress.  So anyway.

19          MR. CAPOZZI:  But --

20          THE COURT:  Yeah.  So you'll need to meet and confer

21  on that.

22          MR. CAPOZZI:  Yes.

23          THE COURT:  And I'll take that up with you folks, if

24  necessary, if you can't come to some agreement.

25          Okay.  Anything else then?

```
 1            MR. CAPOZZI:  We spoke about the instructions.
 2    Nothing we really agreed with it, but I think a lot of this
 3    could depend on what comes out at trial.
 4            MR. GAPPA:  Your Honor, I do think, just to follow up
 5    on that.
 6            No.  We have, I think, had some good conversation
 7    about the instructions.  As the Court may see from reviewing
 8    what's been filed, there don't seem to be a lot of
 9    contentious --
10            THE COURT:  Uh-huh (indicating an affirmative
11    response).
12            MR. GAPPA:  -- arguments that'll be presented to the
13    Court.
14            So I think what we can try to continue to do is to
15    come up with one set and then if there's that small number of
16    objections that we can't agree on, then we could bring that to
17    the Court.  But I think it's ultimately going to be a handful
18    or fewer where it may be whether certain definitions are too
19    broad or not broad enough.  But I don't think, in general,
20    it'll probably be a big problem.
21            THE COURT:  Okay, sure.  Okay.  Well, I'll hold off on
22    any ruling, preliminary rulings on instructions.  Obviously,
23    you're both entitled, both sides are entitled to a final
24    instruction conference, which will occur after the presentation
25    of all the evidence.
```

1           In the meantime, you folks can continue to meet and

2   confer, work out some of the disagreements, and maybe during

3   the course of the trial if you believe that the time is proper

4   for us to have a discussion on the record with respect to the

5   disputed instructions, we can do that.  But ultimately, at the

6   end of the trial we will have a final instruction conference.

7           But obviously, the more that we can get resolved

8   before that final instruction conference the less time it will

9   take to finalize the instructions so that the jury is not

10  waiting around while we spend a lengthy amount of time.

11          So that's fine.  I'll hold off on any preliminary

12  rulings on the jury instructions and verdict form until you've

13  had a chance to meet and confer.

14          Okay.  Anything else at this time by either side?

15          MR. GAPPA:  Your Honor, just two small matters.  One,

16  it's been long enough.  I don't know what the Court's current

17  practice is or the preference for transcripts as they relate to

18  audio and, audio or video files.  So, for instance, there are

19  some recorded statements.  Some are just audio, but some are

20  also video.  We prepared some transcripts.

21          So we just don't know whether it would be helpful if

22  the Court would allow us to show those transcripts to the jury.

23  Obviously, we'll have to show them to counsel first.

24          THE COURT:  Uh-huh (indicating an affirmative

25  response).

1          MR. GAPPA:  But in that, even if the Court did that,

2     would we be allowed to, if it's a video, sync the transcript to

3     the video and then, depending on what that ruling is, if we're

4     allowed to do that, does that version go back to the jury?

5          THE COURT:  Okay.  All right.

6          Generally, what I do on recordings, first of all,

7     generally, the parties agree that the court reporter doesn't

8     have to take down what's being played simply because it's too

9     difficult.  So if you agree on that, that, that's one thing.

10         The other thing, with respect to transcripts, you

11    know, you can meet and confer.  If there's no dispute as to

12    what's being said, that's fine.  You can always have competing

13    transcripts.  That's fine, also.

14         The bottom line is there's a specific jury

15    instruction.  I will advise the jury that the recordings

16    themselves are the evidence, not the transcripts.  The

17    transcripts are only for the jury's benefit, just to follow

18    along, but their understanding of the audio or video is what

19    controls, not the transcripts.  And if they disagree with

20    what's in the transcripts, their understanding of it controls.

21         I do allow transcripts to be distributed to the jurors

22    during the playing of any audio or video, but they're taken

23    away immediately thereafter and they do not go back to the jury

24    room.  Now during jury deliberations if they want to hear the

25    audio and video and they request the transcripts, I'll allow

1   counsel to be heard on that before I allow that

2          But they are, they're not evidence and there's a

3   specific jury instruction that provides that transcripts are

4   not evidence and that it's the jury's understanding of what's

5   being said that, that is controlling.

6          So bottom line is I don't have any objection or

7   concerns about either side using transcripts, providing them to

8   the jury during the playing of any audio or video with the

9   understanding that they're not evidence -- I will give a jury

10  instruction to that effect -- and they will be taken away from

11  the jury after the audio or video is played.

12         Okay.  All right.  Anything else by the Government?

13         MR. GAPPA:  The only other item -- thank you, Your

14  Honor.

15         The only other item is Mr. Capozzi asked and we agreed

16  to do a deposition of one of the defense potential witnesses

17  that's scheduled for the afternoon of the 26th.

18         Just in an abundance of caution, we just wanted to put

19  on the record that even though we're agreeing to do that, we're

20  not at this point agreeing that whatever he says would

21  necessarily be admissible.

22         But along those lines, to the extent that any issues

23  come up, if for some reason we can't resolve them, does the

24  Court have any suggestion of whether we should bother somebody

25  with the court or just preserve those on the record?

1          THE COURT:  Yeah.  You can certainly agree to a

2  deposition, audio or video, whatever.  That's perfectly fine.

3          If there are objections on there, then we'll just need

4  to confer out of the presence of the jury.  And the audio or

5  video is going to need to be redacted so that anything that I

6  rule is inadmissible would be excluded.

7          But we can do that either immediately before the trial

8  itself after we pick the jury or during the course of the trial

9  if that, if there is a dispute or disagreement with respect to

10  any content from the deposition.  Personally, I won't get

11  involved unless and until there's a specific objection raised

12  by other side.

13          Okay.  Anything else?

14          MR. GAPPA:  Thank you.  That's all we had, Your Honor.

15          THE COURT:  All right.

16          Defense, anything else, then?

17          MR. CAPOZZI:  Not right now, but there may be a

18  problem with that date of August 26th.

19          THE COURT:  All right.

20          MR. CAPOZZI:  I think it has to be sooner than the

21  26th.  We have to do it earlier in that week.

22          MR. GAPPA:  Well --

23          MR. CAPOZZI:  Or not August.  October.

24          MR. GAPPA:  Your Honor, we'll try to work it out.

25          THE COURT:  Okay.  Yeah.  And again, I, I won't get

1    involved in that aspect.  You folks meet and confer and decide

2    when and where you want to do that.  And the only time I would

3    get involved is, is if either or both sides wished it to be

4    played but there's some objection to part of the content of the

5    deposition, so.

6              Okay.  Anything else, then?  Anything else?

7              MR. CAPOZZI:  Huh-uh, no.

8              THE COURT:  All right.  Now if you need to meet with

9    me before the trial itself, I'm available pretty much this week

10   and next week.  We do have the Eastern District Conference that

11   last full week in October.  So I'd only be available the first

12   couple of days that week.

13             And then I, I do have a civil jury trial scheduled to

14   start October 31st.

15             So keep that in mind, okay?  But otherwise, if you

16   need to get on the record on anything at all, just let me know

17   and we'll try to work it out in your schedule.

18             MR. CAPOZZI:  Are you around on the 30th of October,

19   Judge --

20             THE COURT:  Yes.

21             MR. CAPOZZI:  Okay.

22             THE COURT:  Absolutely.

23             MR. CAPOZZI:  -- that week?  Okay, good.

24             THE COURT:  Okay?

25             MR. GAPPA:  Thank you, Your Honor.

1          THE COURT:  All right.  Okay.

2          This'll conclude this hearing, then.

3          MR. CAPOZZI:  Thank you, Judge.

4          THE COURT:  Thank you.

5      (Proceedings concluded at 2:09 p.m.)

6

7

8

9

10

11                          CERTIFICATE

12          I, court approved transcriber, certify that the

13  foregoing is a correct transcript from the official electronic

14  sound recording of the proceedings in the above-entitled

15  matter.

16  /s/ *Janice Russell*                    October 23, 2017

17  Janice Russell, Transcriber                    Date

18

19

20

21

22

23

24

25