PHILLIP A. TALBERT
United States Attorney
DAVID L. GAPPA
ROSS PEARSON
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ADAM ALAN HENRY,<br><br>　　　　　　　　Defendant. | CASE NO.  1:13-CR-409-DAD<br><br>GOVERNMENT MOTION IN LIMINE TO ADMIT RELEVANT EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B)<br><br>DATE: November 13, 2017<br>TIME: 1:00  p.m.<br>COURT: Hon. Dale A. Drozd |

　　　　The United States of America, by and through Assistant United States Attorneys DAVID GAPPA and ROSS PEARSON, moves to admit evidence under Rule 404(b) of the Federal Rules of Evidence.  The government brought this request to the attention of the court and counsel at the conclusion of the trial day on November 9, 2017, and referenced earlier hearings on related requests.

　　　　The government previously moved to admit evidence that the defendant installed and used hidden cameras in a residence in which he lived in Fresno before he began a relationship with Angele Henry.  Docket Item 87.  The court conducted hearings on issues related to the government's requests on May 30, June 26, September 29, and October 16, 2017.  The government understood the court's rulings to permit the government to prove the defendant's participation in the charged conspiracy with evidence that he installed a video camera in the bathroom of his residence on Burman Drive and then took steps, along with Angele Henry, to improve the quality of recordings by actions including removing a shower curtain and installing a curtain for a window to reduce glare from excessive light.

The government also had argued that it should be allowed to introduce evidence that the defendant had engaged in similar activity (surreptitious recording of females in a shower) at times before he first met Angele Henry, because it would rebut any suggestion that he only engaged in the charged conspiracy at Angele's behest. At the June 26 hearing, the Court indicated that these recordings would not be admissible initially, but that it was "possible during the course of trial that [this evidence] may become relevant, at which time the Government [could] move for reconsideration." (Docket 142, Tr. of June 26 Motion Hrg., pp. 43:23-44:11). The Court stated that it would wait to receive evidence during the course of trial, then make a decision on both relevancy and possible 403 grounds. *Id.* The government understood the court to say that it would make a final ruling on this issue only after the trial began and based on what defense, if any, was raised. The government also understood the court to make a similar ruling on the government's request to introduce evidence that the defendant had recorded himself engaging in sexual activity with women other than (and/or in addition to) Angele Henry.

The government renews its request to introduce evidence that the defendant alone installed cameras in a residence in Fresno, California prior to establishing a relationship with Angele Henry. The government recovered numerous videos that the defendant created and stored on his home computer network that show him installing a video camera, then using the camera to record women take showers, and repositioning the camera to improve the quality of images. This is highly probative of whose idea it was to install a hidden camera in the bathroom that the defendant shared with Angele Henry at their residence on Burman Drive. The defendant's opening statement and cross-examination of Britton Moore portrayed the defendant as a hardworking man with a strong interests and abilities in computers. He suggested that the Burman Drive bathroom camera was installed only because Angele Henry was an exhibitionist and the camera facilitated that activity; by contrast, installation and use of the camera was not his idea and did not demonstrate his intent to capture nude images of a minor using the bathroom. Leaving the jury with this misimpression would be unfair, because it is not consistent with the defendant's history of installing cameras and taking steps to improve the quality of images that they recorded. Indeed, the proposed evidence would show that the defendant evolved his technique from cutting a crude hole in the ceiling above the shower in his Fresno residence (which was covered with a screen) to creating and installing the same hanging fake plant (Exhibit 11, in evidence) with cutouts that helped hide the video

camera. So the evidence goes to the defendant's identity as a co-conspirator with Angele to create nude images of a minor, and his planning, preparation, and absence of mistake in how the camera was hidden and who it recorded. The government would not oppose a limiting instruction on the use of this "other acts" evidence should the court believe that a jury admonition were appropriate.

The defendant also opened the door for the court to admit evidence that the defendant has an interest in genres of sexual material other than "normal" pornography. The court (Judge Ishii) had previously ruled that Angele Henry could not be called as a witness, yet the defendant was permitted to elicit statements that Angele Henry made to Detective Moore. The defendant elicited that Angele Henry conceded to Detective Moore that she had an interest in images depicting bondage and little girls in skirts as well as role playing. The government believed that all of Angele's statements, as elicited by the defendant, were inadmissible hearsay. Currently the jury is at risk of being left with the misimpression that the defendant was only interested in "normal" pornography and anything more deviant should be attributed to Angele. This makes highly probative evidence that the defendant and Angele created videos of themselves having sex with other females, particularly any video that shows bondage or "sex and submission." In one video the defendant and Angele tied a female to a piece of exercise equipment in their bedroom and then proceeded to cut pieces of the woman's clothing with a knife. Both Angele and the defendant recorded each other performing sexual acts with the female. The defendant made this evidence even more relevant when he cross-examined Detective Moore about search terms that the defendant has attempted to attribute solely to Angele Henry. He specifically highlighted terms that he suggested related to Angele's interests (which, he suggested, were different from the defendant's interests). But one of the search terms was "ffm" which, the government can establish, is known to stand for female-female-male pornography, a genre that the defendant created with Angele. The government should be permitted to show the jury this evidence to demonstrate the defendant's identity as a co-conspirator with Angele, because it shows them working in concert to record them engaged in sexual activities in which they shared an interest. It also makes it more likely that the defendant entered the search terms in the Shareaza program at his workplace, because it demonstrates that he had at least similar sexual interests as Angele as well as knowledge of how to obtain the types of material in which he had an interest.

For the same reasons, the government should be permitted to prove that the defendant searched for and found bestiality videos. The defendant has attempted to attribute any type of non-"normal" sexual material to Angele while suggesting that he was only interested in "normal" pornography. But there are numerous search terms within Exhibit 1A.3 (in evidence) that would retrieve bestiality material, and the defendant had a large amount of bestiality videos on his computers. But on the network that he shared with Angele, all of the bestiality and child pornography obtained from Shareaza was stored on the password-protected section of the network attached storage device (NAS) (received in evidence as Exhibit 9). Similar videos were placed on a computer and/or hard drive(s) owned by the defendant prior to the time his relationship with Angele began. The defendant told Detective Hively that he was "not a fan" of bestiality, so it will be important for the jury's assessment of his credibility to see the material that was organized in folders and subfolders entitled "animal." The defendant had older computers and file structures with similar nomenclature, so the evidence goes to his knowledge of the material (bestiality and child pornography), his identity as the person responsible for its presence (bestiality and child pornography), his intent in obtaining and retaining it (bestiality and child pornography), and the absence of mistake in getting that material (bestiality and child pornography) instead of just "normal" adult pornography.

Dated: November 12, 2017

PHILLIP A. TALBERT  
United States Attorney

By: /s/ DAVID L. GAPPA  
DAVID L. GAPPA  
Assistant United States Attorney

ROSS PEARSON  
Assistant United States Attorney