UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13-CR-409-DAD |
| | ) | |
| vs. | ) | DEFENSE CLOSING ARGUMENT |
| | ) | |
| ADAM ALAN HENRY, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

Fresno, California                    Thursday, November 16, 2017

REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiff:        United States Attorney's Office
                          BY: **DAVID L. GAPPA**
                          and **ROSS PEARSON**
                          2500 Tulare Street
                          Suite 4401
                          Fresno, California 93721


For the Defendant:        Law Offices of Anthony P. Capozzi
                          BY: **ANTHONY P. CAPOZZI**
                          1233 West Shaw Avenue
                          Suite 102
                          Fresno, California 93711

1   Thursday, November 16, 2017                    Fresno, California

2   10:25 a.m.

3          THE COURT:  We are back in the presence of the jury.

4   Mr. Capozzi, your closing argument on behalf of defendant.

5          MR. CAPOZZI:  May it please the court.  Counsel for

6   the government.  Ladies and gentlemen of the jury, this is my

7   opportunity to explain our side of the case.  Keep in mind

8   what the government just said is mere argument.  What I'm

9   going to say is mere argument.  You're going to hear the law

10  from the judge.  He's what counts.  We're just arguing.

11         But what's missing in this case?  What's missing?

12  Who isn't here?  Here's a chair that nobody is sitting in.

13  But you've heard a lot of evidence in this case.  And is it

14  all Adam Henry?  Is it all Angele Henry?  No.  No.  There's a

15  little bit of both.  More of Angele Henry.  Our position is

16  she's the one who's responsible for this.  And this is a case

17  where there was a rush to judgment.

18         One of the agents, I think it's Detective Moore said

19  he saw on his law enforcement computers that some child

20  pornography was going to Lock-N-Stitch.  So he got a search

21  warrant, went to Lock-N-Stitch and sure enough, there it is.

22  Child pornography being brought down on Shareaza, the

23  peer-to-peer.  And whose office?  Adam Henry's.  Immediately

24  he's guilty.  We found it.  He's a dead duck.

25         But they don't take it further.  They pull down what

1  came there.  There's child pornography.  No question about it.

2  But do they ever check to see all the tens or thousands of

3  adult pornography that's there too?  And when you put terms

4  in, if you think it's adult, it may come back child

5  pornography.

6         Do they look to see when the child pornography came

7  down?  Remember these dates.  He put it in May 23rd, 2013.  He

8  started downloading on Shareaza for adult pornography.  Five

9  days later, May 28th, other terms are put in and child

10 pornography starts coming in.

11        Now, was he there when that was happening?  You have

12 witnesses.  You saw the deposition of David Silva, the guy on

13 the monitors that you saw.  He worked across the hall from

14 Adam.  I'll show you a picture.  This is defendant's A-1.

15 That's the view from Silva's office to Adam's office.  He sees

16 Angele there.  And there is Gary Reed sitting at that same

17 table, same type of picture.  And this is the office as it

18 was -- D-1, as it was back then when the search was done.

19        Now, was David Silva being honest?  I got to tell

20 you, he was.  Because he said "I didn't see her on the

21 computer."  If he was lying, he would have said, "Yeah, I saw

22 her doing it, I saw her downloading."  He didn't say that.  He

23 was being honest.  "I saw her there, I don't know what she was

24 doing."  That's fair.

25        But it puts her there in the afternoons after they

1   came back from the honeymoon in May 2013.  She's in there in

2   the afternoons.  She brought the kids.  The kids are running

3   around.  You heard from Gary Reed, you heard from Mrs. Reed,

4   Louise Reed, on the kids being there.

5         And you even heard from Louise Reed, she asked me, I

6   don't know, if I can use the computer or I'm going to use the

7   computer.  Does that tell you she knew the password?  She goes

8   into Adam's office and uses the computer.  And these are in

9   the afternoons when he wasn't there.

10        And when did these downloads happen?  From May 28th

11  to June 6th.  And I'll show you on some of the search terms.

12  But those are the dates that this happened.  He's not there.

13  She's there.  And no one is sitting here.  No one.

14        They have to prove this case beyond a reasonable

15  doubt.  Please follow the rules.  Have they proven their case

16  beyond a reasonable doubt?  Think about it.  Think about it

17  hard.  They haven't.  They want to throw everything up against

18  the wall.  I always say -- I say spaghetti against the wall

19  and see what sticks.  My wife says jello.  What sticks?

20        They're trying to find some way to prejudice you.

21  Bringing in all those videos from Rebecca Jackson.  What does

22  that have to do with A.T.?  Rebecca Jackson is a female grown

23  adult.  The other two women in that room that were videotaped

24  were grown adults.  Is that child pornography?  Or is that

25  voyeurism?  He's not here for voyeurism.  He's here for

1   exploiting a child.

2           And look at the videos that are taken of A.T.  They

3   just put those in with her.  You heard Detective Hively.

4   There were over 22 videos of that bathroom in their house.

5   Whose on there?  Robert Todd, Mrs. Todd.  Angele is on there.

6   And there's a few others.  But they don't play those for you.

7   They just want [A.T.].  So it prejudices you to think all he

8   ever did is go after [A.T.].

9           And ladies and gentlemen, how many text messages were

10  there with Adam and [A.T.]?  A big fat zero.  When you look at

11  Defendant's Exhibit C, you're going to see -- I'll give you

12  the last page.  Right there.  This number.  759 text messages

13  between A.T., the minor, and not Adam but Angele.  He's not

14  talking to her.  He's not trying to groom her.  She is.

15          Well, is he helping her do that?  That's the

16  government's position.  Where is there an agreement?  You

17  could put a timeline together.  You could put statistics

18  together to have them say anything you want them to say.

19          But listen to the other side of the story.  He had no

20  contact with her.  The most contact he had was he rubbed her

21  shoulders once.  And his wife was in the room.  And he rubbed

22  her shoulders and rubbed hers.  That's it.  He's known [A.T.]

23  since 2005 when he's at Lock-N-Stitch working.  Sees her

24  there.  Nothing.  Nothing.  This is the government's

25  concoction to add more to the child pornography and Count Two.

1    Throw it up against the wall and see what sticks.

2           Then the government argued after that first search,

3    he took down that plant because he knew we'd be coming back.

4    But I asked Detective Hively, what's the significance of that?

5    He says, well, it would show that we were coming back and he

6    wanted to hide something.  Detective Moore said that that

7    plant was found in the garage.  Detective Hively said the same

8    thing.

9           When you look at Defendant's Exhibit H, somewhere

10   here, there it is.  H.  I got to -- this is the picture of the

11   bathroom when they came out on the second search.  Hively says

12   this was in the garage.  Moore says this was in the garage.

13   Defendant said, no, it wasn't, it was still there.  And here's

14   the mirror, here's the painting, there's the plant.  It's

15   still there.

16          What's he trying to hide from them?  Nothing.  He

17   cooperated with them.  He told them passwords.  And then the

18   agent took a picture.  Exhibit J from the defense.  There's a

19   picture that the agent had taken and there's the painting in

20   the bathroom.  It was still there.  Nothing hidden.  I showed

21   pictures of the garage to Detective Hively, he said he never

22   went in the garage, but he didn't see any plant in those

23   pictures because it wasn't there.

24          And if he was guilty of something, he'd be trying to

25   hide it.  He didn't.  All is made of this interview with

1  Detective Hively and the videotape.  This was when they came

2  out back in September now.  This is not the November time.

3  This is September when they first come out.  And he's brought

4  to the office.  A ruse, "come to the office."  He gets in his

5  car, gets to the office, they arrest him.  Takes him to the

6  office in cuffs.

7          They get to the office, take the cuffs off and they

8  start talking about these things.  You heard Detective Hively.

9  Talking about assuming something and just being a rush to

10 judgment.  They sit him in the room.

11         "Now, tell me, Adam, you know the words I want to

12 hear.  What are those words?"  Listen to that videotape,

13 you'll see.  "What are the words?"

14         It might not be the videotape.  It might be the one

15 in the car.  "What are the words?  Tell me those words."

16         He goes, "What are you talking about?"  "Downloading,

17 what did you download?"

18         He says, "Well, there's some nasty stuff on there."

19         "Tell me the words.  You know what the words are."

20         He goes, "Bestiality."

21         "No, you know what they are.  They're child porn.

22 Child porn."

23         He goes, "What?  Child porn?  What are you talking

24 about?  When I download, and if I see child porn, I delete it.

25 I don't keep it."

1          But that didn't stop Hively.  And I got to say,

2   Hively was a good witness.  And I got to tell you, he's a good

3   cop, he's a good detective.  He was truthful.  But he focused

4   on Adam.  That was it.  He's a male.  He's not a female.  You

5   don't see females do these things.

6          But you remember the one videotape you saw?  I mean,

7   it was brief, ten seconds.  It was a grown female in that

8   videotape with a young child.  Wasn't a male.  In the others

9   there were males, yes, but this was a female with a child

10  committing child pornography.  No question about that.

11  Females can commit the same offenses that men commit.  And I

12  submit to you the agents, the cops focused on Adam because

13  he's a male.

14          Again, you have to find the evidence of the

15  government beyond a reasonable doubt.  And reasonable doubt is

16  proof that leaves you firmly convinced that he's guilty.  It's

17  not required that the government prove guilt beyond all

18  possible doubt.  But a reasonable doubt is based upon reason

19  and common sense and not based on any speculation.

20          If you can come to either of two conclusions, he

21  might be guilty; but then again, he might be innocent, you

22  have to find him innocent.  That in itself is reasonable

23  doubt.  If you have any reasonable doubt as to whether he

24  committed this crime or doubt as to whether she did, there's

25  some questions.  That's reasonable doubt.

1       And it comes from careful and impartial consideration

2   of the evidence or from the lack of evidence.  After careful

3   and impartial consideration of all the evidence, you are not

4   convinced beyond a reasonable doubt that the defendant is

5   guilty, it is your duty -- you may not want to find him not

6   guilty.  But it's your duty.  You got to follow the law.  The

7   judge is going to tell you what the law is.

8       You may feel he's guilty because you saw all this

9   stuff.  You saw that child pornography.  Who would ever want

10  to watch that stuff?  He never did.  Remember what Detective

11  Hively said?  He's not here.  Detective Hively, Detective

12  Moore.  Do you have any proof that anyone looked at that child

13  pornography that we saw in court?  I think we saw four or five

14  videos, I'm not sure what it was.  Is there any proof that

15  Adam Henry looked at that?  No.  None.  Take it further.  Is

16  there any proof that Angele looked at it?  None.  Because

17  there was no proof that anybody looked at it.

18      First count is dealing with child exploitation.

19  Second count is dealing with the child pornography.  So it's

20  two different scenarios completely.  The judge will read the

21  entire instruction to you.  I have them so just so you know.

22      But Count One, is where they charge A.T.  This is

23  where [A.T.] one comes in.  Knowingly.  Knowingly.  You have

24  to know what you're doing.  Conspiring to employ, use,

25  persuade, induce, entice, coerce a minor to engage in sexually

1   explicit conduct.  What is sexually explicit conduct?  For the

2   purpose of producing a visual depiction -- videotape -- of

3   such conduct knowing or having a reason to know that the

4   visual depiction would be produced or transmitted in or

5   affecting commerce.

6          That's Count One.  Knowingly using her to engage in

7   sexually explicit activity.  What sexually explicit activity

8   did A.T. take part in?  Was there any at all?

9          Here's what the government has to show in Count One.

10  On or about May, 2012 and ending September 19, 2013, there was

11  an agreement between one or more persons to commit the sexual

12  exploitation of a minor.  And obviously that other person is

13  Angele.

14         Secondly, that the defendant became a member of the

15  conspiracy knowing at least of one of its objects, intending

16  to accomplish it.  Conspiracy is a kind of criminal

17  partnership, an agreement between two or more persons to

18  commit one or more crimes.  The crime of conspiracy is the

19  agreement to do something unlawful.  It does not matter

20  whether the crime agreed upon was actually committed.

21         And I'll go through what the agreement has to be

22  between them.  For a conspiracy to have existed, it's not

23  necessary that the conspirators have a formal agreement or

24  that they agreed on every aspect of the conspiracy.  It is not

25  enough, however, that they simply met, discussed matters of

1  common interest and acted in similar ways or perhaps helped

2  one another.  You must find that there was a plan to commit at

3  least one of the crimes alleged in the indictment -- and

4  that's the exploitation of A.T. -- as an object of the

5  conspiracy with all of you, all of you agreeing as to the

6  particular crime which the conspirators agreed to commit.

7         One becomes a member of a conspiracy by willingly

8  participating in the unlawful plan and with the intent to

9  advance or further some object or purpose of the conspiracy,

10 even though the person does not have full knowledge of all of

11 the details of the conspiracy.

12        Furthermore, one who willfully joins an existing

13 conspiracy is as responsible as though he was one of the

14 originators.  On the other hand, one who has no knowledge of a

15 conspiracy -- this is where Adam comes in.  One who has no

16 knowledge of a conspiracy but happens to act in a way which

17 furthers some object or purpose of the conspiracy does not

18 therefore become a conspirator.  Similarly, a person does not

19 become a conspirator merely by associating with one or more

20 persons who are conspirators, nor merely by knowing that a

21 conspiracy exists.

22        Adam didn't know what she was up to.  Who's the one

23 dealing with kids all of the time?  It's not Adam.  759 texts

24 between her and A.T.  Who's the one in the park?  Doing Art in

25 the Park with kids?  She is.  Who's there with her?  A.T.  And

1   other kids.  Indeed, the day that they took the video of the

2   bedroom, what did A.T. -- yeah, I think A.T. said, "I came

3   from Art in the Park and we went to the bedroom and that's

4   when the video was taken."  Angele was with her that morning

5   and brought her to the house for that.

6        But is that sexual exploitation?  Is that enough in

7   the bedroom?  Is that enough with the scenes in the bathroom?

8   What is sexual exploitation?

9        The offense of sexual exploitation of a minor, as

10  alleged in Count One, has three elements that have to be

11  shown.  At the time she was under 18.  No question, she was.

12        Two, defendant or another person employed her, used

13  her, persuaded her, induced, enticed or coerced A.T. to engage

14  in sexually explicit conduct for the purpose of producing a

15  visual depiction of that conduct.

16        Who did the persuading?  Adam Henry?  Or Angele

17  Henry?  And did he have an agreement with her to have that

18  happen?  Even if he did, was it sexual exploitation of her?

19  A.T.?  We'll get into what sexual exploitation is.  Keep

20  going.

21        The defendant had to know or had reason to know that

22  the visual depiction would be mailed or transported across

23  state lines.  The visual depiction was produced using

24  materials that had been mailed, shipped or transported across

25  state lines.  That is the computer or hard drive was made out

1  of state.  The visual depiction was mailed or actually

2  transported across state lines.

3          Were those elements proven?

4          Sexually explicit conduct.  What does it mean?  It

5  means actual or simulated sexual intercourse.  Was there any

6  sexual intercourse here with A.T.?  No.  Nothing.  Was there

7  genital to genital?  Was there a focus on to her genital

8  areas?  I submit to you no.  Was there oral-genital?

9  Anal-genital?  Oral-anal?  Whether between persons of the same

10 or opposite sex.  Bestiality, masturbation, sadistic or

11 masochistic abuse or lascivious exhibition of the genitals or

12 pubic area of any person?

13         Was there any concentration on that?  Any focusing on

14 that?  There's one in the bedroom with her changing clothes.

15 She's got her bikini underwear on, she's got her bra on.  But

16 is that focusing on the pubic area?  No pubic hairs or

17 anything of that nature.  I submit this hasn't been shown.

18 And it has to be shown.

19         Now, what else does the government have to show?

20 This is all Count One.  In determining whether a depiction

21 includes lascivious exhibition of the genitals or pubic area

22 of any person, you may consider the following factors:

23 Whether the focal point of the depiction is the minor's

24 genitals or pubic area.

25         Whether the setting of the depiction is sexually

1    suggestive, for instance, is the setting in a place or pose

2    generally associated with sexual activity.  Well, the

3    bathroom.  The bedroom.  But is A.T. sitting on a bed with her

4    legs spread or bent over for anal sex?  Legs spread for sex?

5    Did you see any of that?  No.  It's changing clothes with the

6    corset.  Putting a bathing suit on, I think it was.

7            Whether the minor is depicted in an unnatural pose or

8    inappropriate attire considering the age of the minor.  Well,

9    was any of that attire she had on inappropriate?  Was there an

10   unnatural pose?  I submit there was not.

11           Whether the minor is fully or partially clothed or is

12   nude.  She was nude in the bathroom.  No question.  Partially

13   clothed in the bedroom.

14           Whether the depiction suggests sexual coyness or a

15   willingness to engage in sexual activity.  Did you see any of

16   that with her?  Willingness to engage in sexual activity?

17   This is A.T. now we're referring to.  None.

18           Whether the depiction is intended or designed to

19   elicit sexual response from the viewer.  Did the viewer who

20   took the video, did the viewer who took the snapshots have a

21   sexual response to that?  You have to decide that.  Did that

22   create a sexual response?  Those pictures of her in the

23   bedroom?  And the bathroom?

24           In order to establish any visual depiction of a minor

25   engaged in sexually explicit conduct, that it was transported

1    in interstate commerce, the government may prove that the

2    image or any instrument that was used to produce or receive

3    such an image traveled in interstate or foreign commerce.

4    That's between one state, territory, possession or District of

5    Columbia and another state, or territory, or commerce with a

6    foreign country.  Interstate or foreign travel of an image may

7    be accomplished by means of a computer.

8            Do we have any evidence either in Count Two or County

9    One of these videos being sent out?  Remember on Count Two,

10   the loading of the child pornography from Shareaza at

11   Lock-N-Stitch, both Detective Moore and Detective Hively said

12   this couldn't be distributed.  It was dislodged.  It couldn't

13   be sent out.  If it couldn't be sent out, where is the crime?

14           Count Two is the one dealing with the child

15   pornography.  November '05 to September 19th, 2013, defendant

16   knowingly received.  Knowingly received through the internet

17   at least one visual depiction of at least one minor engaging

18   in sexually explicit conduct transported in interstate or

19   foreign commerce, had been sent or received using any means of

20   interstate or foreign commerce of which contained materials

21   mailed, shipped or transported in interstate commerce.

22           Clearly it came across interstate commerce.  The

23   question is did he know child pornography was coming in to his

24   computer when he was on the Shareaza, the peer-to-peer, from

25   May 23rd to June 3rd?  Child pornography didn't start coming

1  in until May 28th, five days later, after he started the

2  Shareaza.  And in that period of time, who's in his office?

3  Someone who isn't here.

4          I think this is important for you to know.  And I

5  think it's pretty clear.  Adult pornography is not unlawful.

6  You can have as much adult pornography as you want.  That's

7  not against the law.  And he had a lot of adult pornography.

8  You can't find him guilty for that.

9          Again, I say this case is a rush to judgment.  I

10  think the government was wrong in their analysis in many

11  respects here.  They were wrong in determining that Adam

12  accessed his work computer from home.  That became a big issue

13  here.  And the reason why the government is saying that is

14  that, yeah, Angele is in his office in the afternoon.  They

15  can't deny it now.  We have one, two, three I think -- yeah,

16  three witnesses saying she was there.  So the government's got

17  to overcome that somehow.

18          She's there, he's not there, but yet during that

19  period of time is the only time child pornography search terms

20  are put in.  And if that's true, she's the one who did it.

21  Government says, oh, no, wait a minute, he did it from home.

22  He did it from home in those afternoons.  Really?  Really?

23          You heard Gary Reed, the owner of the company.  Adam

24  was in charge of the IT.  He had an audit done to check on

25  Adam to see if what he was doing was working, if it was right.

1   Gary Reed said there was no connection from the home computer

2   to the office computer.  Well, he's his uncle, you can't

3   believe him.  What did the auditors say?  There was no

4   connection between the home computer to the office computer

5   A-1, the one that was using Shareaza.  There was no home

6   connection.  Even if the government says there was.  And I'll

7   get to that.  I'll show some proof from their angle.  Again,

8   anything could be twisted, anything, to say what you want to

9   say.

10          Here's the defendant's home computer, Government's

11  Exhibit 5.1.  Where is it?  It's in his home on a desk in the

12  living room.  People can walk by, people can see what's going

13  on.  Is he going to be playing child pornography on that

14  computer for everybody to see?  What does the evidence show?

15  No child pornography on that computer.  None.  None.  And that

16  came from the government witnesses.

17          And here's Exhibit 5.10, that's the tower to that

18  computer.  Nothing of child pornography on those -- that

19  computer.  None.

20          The evidence is clearly overwhelming, one, that he

21  wasn't connected to that computer at work.  Overwhelming there

22  was no child pornography on his computer at home.

23          So what does the government do?  He has to connect to

24  that computer or else the case is out the window.  What do

25  they do?  They bring in 31.1.  And they said, see, see this

1    server.  This is his home computer.  He's connected to a

2    server.  That's that 72.18.240.

3        Then we go to Exhibit 31.2.  This is his home

4    computer.  And they say, see, these server numbers here, that

5    72.18.240.  That's hooked to the office.  We got you

6    defendant, you're lying to us.  That is the number at the

7    office.  That is his home computer.  But it's not to his

8    computer at the office.  How do we know that?  How do we know

9    that?  Defendant must be lying because he's on trial.  He'd

10   lie to get out of this.  And we're the government, what we say

11   is the truth.  You got to trust us.  We're the government.

12   The government are people just like you and me.  They make

13   mistakes.

14       What does the evidence truly show?  Their Exhibit 2.

15   And what does it show that the Shareaza computer, Adam Henry's

16   computer.  Ladies and gentlemen, please follow this.  This is

17   important.  This has a lot to do with the rest of his life.

18   What's that number?  Not the same as they said it was.  Any

19   home computer, anything he had was not connected to the

20   computer that had the Shareaza that was downloading.

21       71.94.43.84.  That's the computer that was

22   downloading on Shareaza peer-to-peer.  The adult pornography

23   and, yes, child pornography came in.  Did he know it?  We say

24   no.  They're trying to show ways to show that he must have

25   known.

1          But the point is he couldn't have been doing this

2     from home because there was no connection.  Gary Reed said it.

3     I forgot who else said it.  Oh, the auditor said it.  But the

4     government says, no, there's got to be another way.  Got to be

5     another way.  He must know.  He must be connecting.  Because

6     if it's only Angele in that office at that time from May 28th

7     to June 6th in the afternoon -- and I'll show you something

8     else on the hours.  There's a reasonable doubt, my goodness.

9          You may want to find him guilty.  Because of this

10    terrible stuff.  Because he's stupid to take this voyeurism

11    pictures of people.  That's awful stuff.  But is he being

12    charged with it?  No.  No connection to that computer, ladies

13    and gentlemen.  None.

14          Well, wait a minute.  We got more evidence.  We'll

15    show you how he did it.  Look at this.  Look at Government

16    Exhibit 33.  We got you now defendant.  We got you.  This is

17    Mr. Hively testified to this.  File created date May 28th.

18    Who's in the office?  Well, what time is she there?  Go to the

19    right.  What time is it?  3:05 in the afternoon.  Who's there

20    in the afternoons in that office alone?  Gary Reed says it,

21    Louise Reed says it, David Silva says it.  And there it is.

22          Then they say, well, it was transferred to the home

23    computer on -- within minutes or seconds.  And they have a

24    time.  Now it's 15:07, that's military time.  So if you

25    subtract however that works, 12 hours off of that, that's

shortly after one up on top.  Okay.  Jeez, I asked Detective

Hively, I said, God, how can that happen?  Well, because he's

at home and he's doing it remotely.  Hmm.  If he's at work,

could he have done that?  He goes, no, it couldn't have

happened.  Look at his work records.  He was at work on August

23rd, 2013.  Couldn't have happened.  Even Hively says that.

And the work records are confusing, no question about that.

So after we did that, what does the government say?

Those work records are terrible.  They're not accurate.  You

can't count on those.  Every time we bring something up, they

throw something more there.  Can't rely on those records.

Well, Mr. Reed testified as to how those records were

put together.  They're given to one of the clerks.  I mean,

obviously you put down when you're going to be gone.  It's

given to a clerk, they put it into the records.

Now, there's something that came up on the day of the

arrest, September 19th, 2013.  There wasn't a record put into

the work schedule that Adam was gone because he was at home.

Well, that happened on the 19th.  Nobody ever got a lot done

on that day.  Indeed, the employees went home early that day.

So that may be one screw up on the 19th.

But on August 23rd, he was at the office.  And I

remember writing this down in my notes.  It could not have

happened if he was at work.  Ladies and gentlemen, he was at

work and the records show it.  Remember the records show when

1    you are not at work.  If it's not there, that means he was

2    there.  If it's not in the records that he was gone, that

3    means he was at work.  The records show when you're gone.

4           And I got to say again, Detective Hively.  When I

5    asked him that, he was forthright.  He was honest.  He says it

6    couldn't have happened if he was at work.  And to me, that

7    just shows there was no remote connection.

8           You know, the government ignores Adam's explanation

9    that he was downloading mass copies of videos without any

10   knowledge of what's coming in.  When you look at -- I tried to

11   do some calculations.  We say there's 10,000 videos.  That's

12   high.  I don't know.  I asked Mr. Hively, Detective Hively how

13   many child porn were there.  He said around 200.  I think it's

14   like 150.  But give them the benefit of the doubt, 200.

15          If there's 200 child porn and about 10,000 adult

16   video, I -- in my calculation, that's two percent.  Two

17   percent of child pornography out of the 10,000.  Well, okay.

18   Give them the benefit of the doubt.  There's not 10,000.

19   There's 5,000.  I think he went up to 5,000.  And there's,

20   say, 200.  I think that's high.  Child porn.  What percent is

21   that?  I did it.  I think it's five percent.  Four percent.

22   Four percent of child pornography.  Did he get to see that

23   four percent of the 5,000 or did he get to see the two percent

24   of the 10,000?  We submit to you he didn't.

25          And what does the evidence show?  Detective Hively,

1   can you show any evidence that anybody looked at this child

2   porn?  No.  "Detective Moore, is there any evidence that

3   anybody looked at these?"  "No."

4           You have to knowingly receive it.  He's charged with

5   receipt.  Not just receiving, but did you know you were

6   receiving?  I think the evidence is clear there is no evidence

7   that he knowingly received.

8           The government purposely presents one side.  And it's

9   those videos in the bathroom.  Only A.T.  Not Robert Todd, not

10  Mrs. Todd, not Angele's mother was also in there.  None of

11  that is shown to you.

12          Again, they talked about the peer-to-peer and all of

13  these videos that are coming down and all of this child

14  pornography, but yet they never check to see whether or not he

15  could distribute any of it and send it out on the internet.

16  Ultimately it was determined it could not be sent out.

17          And the work records show that on August 23rd, 2013,

18  at 3:05 when that exhibit I just showed you, he was at work

19  which made it impossible for him to send anything from home to

20  the work computer back home.  They were wrong about those

21  internet addresses I just showed you.

22          They left out all the others in the bathroom.

23  Rebecca Jackson, with her and the other adults there.  What is

24  voyeurism?  It's defined as capturing of an image of a private

25  area of an individual without their consent, and knowingly

does so under circumstances in which the individual had a
reasonable expectation of privacy.  That's voyeurism.

Did you see that here?  No question.  No question.
A.T.  That's voyeurism.  She's expecting privacy.  Privacy in
the bathroom.  Frankly with the other people that were in the
bathroom, they expected privacy.  That's voyeurism.

Is there any question -- the government keeps pushing
this.  Is there any question that Angele had access to the
password to the Netgear?  To the Aurrora file?  To the Sylvia
file?  And they were saying he said in his statement to Agent
Hively or Detective Hively, September 19th, 2013 when he was
interviewed.  They keep showing you the videotape there of the
comments he made.

Go back to September 13th, 20 -- September 19th,
2013.  They come in with their guns, they come in, they're
going to search the place.  I take that back.  It wasn't on
the 13th.  The 13th they tell him to come to the office.  He's
arrested on the way to the office.  He's brought in.  And Adam
doesn't know why he's there.  And he's in this interview room.

And that's when Hively keeps prodding him.  "You know
it's child porn, you know it's child porn."  And this is all
new to him as to what's going on because he's asking, "What's
this about?  What's this about?"  And they're saying that he
said that Angele didn't have the password.  Well, when you
look at it and listen to it, he starts to say "she had the

1    pass" -- and then went into something else.  And keep in mind,

2    he doesn't know what's going on here.  He doesn't know what

3    they're looking at.  He doesn't know whether it's some kind of

4    adult pornography or some kind of bestiality, whatever it is,

5    which is not unlawful.

6          But yeah, I think at that time he was trying to

7    protect his wife.  He didn't know all this other stuff.  He

8    didn't know about A.T. and the videos in the bathroom.  He

9    didn't know about the child porn.  He didn't know about what

10   was going on in the bedroom.  He didn't see any of that stuff.

11         So if he's trying to protect his wife, I could see

12   that.  Adam Henry cooperated all the way through this.  He

13   tried to do what he could to work with them and giving them

14   information on passwords, et cetera.

15         And I think what's important here is -- and I may

16   have left this part out.  This is Government's Exhibit 1A.4.

17   Again, 6-3-2013.  These are the search terms that the

18   government says Adam put in.  Moore said her interests were

19   corsets, renaissance, et cetera.  You can see the last search

20   term here is "corset."  Then go down the line.  And these are

21   other search terms.  But here, "r@ygold" is clearly a child

22   porn.  "Strip."  "Costume porn."  Who's into costumes?  Adam

23   isn't.  And these are the child porns right here on page two.

24   "Medieval."  Who's into medieval?  Not Adam.  Who's into

25   renaissance?  Not Adam.  "Bedroom dancing."  "Bedroom dancing

1    paroles de la chanson." That doesn't sound Italian.  It

2    doesn't sound English.  It's French.  "Bedroom."

3          And then the others below that, I think are music.

4    The government says Adam put them in.  And they refer to his

5    video.  Listen to that video carefully, he's not saying he put

6    the search terms in.  He knew what she was interested in and

7    he was looking for some of the videos dealing with those that

8    were on the computer.

9          The important thing here is you have heard evidence

10   of the defendant's character for honesty.  In deciding this

11   case, you should consider that the evidence together of his

12   honesty, you should consider that together with and in the

13   same manner as any evidence in the case.

14         But I would submit to you that evidence of Adam

15   Henry's character for honesty and telling the truth may give

16   you reason for reasonable doubt in this case.  He has denied

17   knowingly conspiring or agreeing with Angele Henry to induce

18   or entice A.T. to engage in any sexually explicit conduct.

19   He's denied any wrong doing of child pornography.

20         You heard Gary Reed.  You heard Louise Reed.  And you

21   heard his mother.  In the wheelchair with the broken back.

22   She's not here today.  She couldn't make it.  He is so honest

23   when he was found stealing a computer part or in possession of

24   a computer part, she asked him, "Did you do it?"  "Yeah."  He

25   goes in and pleads guilty.  I did it.  This guy will tell you

1   the truth even if it hurts.

2          He didn't download child pornography knowing it was

3   being downloaded.  He didn't try to sexually exploit A.T.

4   Why?  Why would he want to exploit her?  No contact with her.

5   Rub her shoulders once.  And he's known her since 2005 at

6   Lock-N-Stitch.  Never any interest.

7          When did this interest start?  When someone, who

8   isn't here, came into the picture.  Was he helping her trying

9   to exploit?  And was there exploitation, sexual exploitation

10  of that young gal?  We submit there wasn't.  Even if they

11  wanted to, what you're seeing doesn't amount to it.  Not at

12  all.

13         What we're asking is the government -- or the Court

14  is going to be giving you a verdict form.  Think about this

15  stuff.  Think about this reasonable doubt.  And mark on Count

16  One not guilty.  Let me zoom in.  Not guilty on Count One.

17  We're asking you to do the same on Count Two.  Receipt of the

18  visual depiction.  That's the child porn one.  And this is the

19  one, Count One is conspiracy to exploit a minor, A.T.

20         I submit to you the evidence isn't beyond a

21  reasonable doubt here.  You might think he's guilty.  You may

22  feel he's guilty.  And I'm sure you do.  But look at the

23  evidence.  Have they proven it beyond a reasonable doubt?  And

24  the law is it's got to be beyond a reasonable doubt.  Even if

25  you think it, you've got to believe it.  But if it's not

28

1    there, do your duty.  It is not guilty.  Thank you very much

2    for putting up with me.  Thank you.

3        (The proceedings were concluded at 11:13 a.m.)

4

5            I, KAREN HOOVEN, Official Reporter, do hereby certify

6    that the foregoing transcript as true and correct.

7

8    DATED:  30th of November, 2017      /s/  Karen Hooven____
                                         KAREN HOOVEN, RMR-CRR
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25