# EXHIBIT A

FD-302 (Rev. 5-8-10)

- 1 of 1 -



## FEDERAL BUREAU OF INVESTIGATION

Date of entry _____11/20/2013_____

Adam Alan HENRY, date of birth (DOB) 12/09/1977, was interviewed at
███████████████ Turlock, CA. After being advised of the identity of the
interviewing Agent and the nature of the interview, HENRY provided the
following information:

The interview of HENRY occurred shortly after his arrest. Writer
provided HENRY an FD-395 Advice of Rights form. HENRY signed the form and
invoked his right to an attorney at 8:14am.

HENRY observed writer inspect a fake house plant located in the
bathroom shower. Writer opened the pot and observed small windows built
into the pot capable of housing a video camera. Writer asked HENRY the
location of the camera used in the pot. HENRY showed Writer a spot in the
garage where he left the camera. He further explained it was a small
camera silver in color. Writer directed a member of the search team to
search in that area where a small camera was found.

Writer took HENRY to his room where he was uncuffed and allowed to use
the restroom. HENRY was barefoot at the time and writer asked HENRY where
a pair of slip-on shoes would be. HENRY pointed to a pair of shoes on the
upper shelf of the closet which writer retrieved and handed to him. HENRY
then pointed out there was a box of micro cameras in the closet and a video
camcorder on the bedroom shelves. After putting on his shoes, HENRY was
again handcuffed.

Henry was transported from his residence to the Fresno Federal
Building. During the trip to Fresno, HENRY made spontaneous utterances
such as "I didn't mean to download those video files". Writer explained to
HENRY he invoked his right to an attorney but was free to talk to writer if
he wished. HENRY again determined he wanted his attorney present.

| | | | |
|---|---|---|---|
| Investigation on | 11/13/2013 | at | Turlock, California, United States (In Person) |

| | | |
|---|---|---|
| File # | 305C-SC-3444183 | Date drafted | 11/20/2013 |

by   LUCAS MARK E

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

**US v. HENRY - 000664**

# EXHIBIT B

◦ Vendor Resources

Home » Online Services

- Online Services
  ◦ Online Case Index
  ◦ Pay Traffic Tickets
  ◦ Court Calendar
  ◦ Tentative Rulings
  ◦ Court Reporter Transcripts
  ◦ Juror Postponement Request

Case information for case number 1463984

Case Number:1463984
Case Caption:PEO VS HENRY, ADAM ALAN
Case Type:CR
Date Filed:2013-09-27
Case Status:CLOSED

# Party Information

| HENRY, ADAM ALAN | | DEFENDANT | | MCALLISTER KIRK W ESQ | |
|---|---|---|---|---|---|
| Count | Degree | Code | Description | | Outcome |
| 1 | Felony | PC 311.11(A) | POSSESS/ETC OBSCENE MATTER: MINOR IN SEXUAL ACTS | | DISMISSED |
| 2 | Felony | PC 311.11(A) | POSSESS/ETC OBSCENE MATTER: MINOR IN SEXUAL ACTS | | DISMISSED |

# Case Events

| Event Date | Event Type | Event |
|---|---|---|
| 11/13/2088 | Report | PURGE FILE |
| 11/13/2013 | Report | ELECTRONIC DISPOSITION REPORTING |
| 11/13/2013 | Status | CASE CLOSED |
| 11/13/2013 | Report | CASE DISMISSED |
| 11/13/2013 | Report | CASE DISPOSED |
| 10/18/2013 | Hearing | ARRAIGNMENT - DEPT12 10/18/2013 01:30 PM |
| 10/17/2013 | Report | ASSIGNED JUDGE |
| 10/14/2013 | Status | CASE INTAKE |

| 09/27/2013 | Report | COMPLAINT FILED |
| 09/23/2013 | Report | BAIL BOND |

Submit Query

- Feedback
- Site Map
- Jobs
- ADA
- Disclaimer
- Privacy Policy

Copyright © 2014 Stanislaus County Superior Court. All Rights Reserved.

# EXHIBIT D

THOMSON REUTERS
**WESTLAW**  **New York Official Reports Service**

**People v Greene**
Supreme Court, Appellate Division, Third Department, New York
June 12, 2003
306 A.D.2d 639
760 N.Y.S.2d 769

306 A.D.2d 639, 760 N.Y.S.2d 769, 2003 N.Y. Slip Op. 14932

The People of the State of New York, Respondent,

v.

Howard Greene, Appellant.

Supreme Court, Appellate Division, Third Department, New York
14437
(June 12, 2003)

CITE TITLE AS: People v Greene

Kane, J.

Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered January 9, 2002, upon a verdict convicting defendant of the crimes of rape in the first degree, rape in the second degree, incest (four counts), sodomy in the first degree (three counts), sodomy in the second degree (two counts), sodomy in the third degree, sexual abuse in the first degree and intimidating a victim or witness in the third degree.

In February 2001, defendant's daughter revealed that he had sexually molested her several times during his visitation over the prior five years. A State Police investigator and a child protective services (hereinafter CPS) caseworker interviewed *640 the victim together, as part of the Sullivan County Family Violence Response Team (hereinafter FVRT). The FVRT is comprised of a State Police investigator, a county sheriff's investigator, and three CPS caseworkers who cooperate to investigate reports of child sexual or physical abuse. The State Police investigator later interviewed defendant, then arrested him. Upon arraignment, defendant obtained an attorney.

In March 2001, the CPS caseworker was meeting a client at the Sullivan County Jail when she saw defendant, who was incarcerated on various sex-related charges for acts committed against the victim. She asked to speak with him, identified herself, indicated that she knew he had an attorney, mentioned that attorney by name, then stated that defendant did not have to talk to her. Defendant agreed to meet with her, and a half hour conversation ensued.

After *Huntley* and *Ventimiglia/Molineux* hearings, County Court found defendant's statements to the investigator and CPS caseworker admissible (189 Misc 2d 276 [2001]), and allowed the People to introduce 7 out of the 12 requested prior bad acts. At trial, the People presented the testimony of the investigator and victim and rested. Defendant then testified, after which the People produced the CPS caseworker in rebuttal. The jury found defendant guilty of all 14 counts submitted, which involved five separate incidents. County Court sentenced defendant to the maximum periods of incarceration, reduced to an aggregate determinate sentence of 50 years pursuant to Penal Law § 70.30.

On appeal, defendant first contends that his statements to the CPS caseworker should have been suppressed because they were obtained in violation of his constitutional right to counsel. It is not disputed that defendant's right to counsel had attached at the time of the CPS interview since he had already been arraigned (*see People v Samuels*, 49 NY2d 218 [1980]) and had obtained counsel on the criminal charges about which he was interviewed (*see People v Arthur*, 22 NY2d 325 [1968]). Since defendant was represented by counsel, he could not waive that right without counsel being present (*see People v Settles*, 46 NY2d 154, 165-166 [1978]). As statements elicited by a private individual need not be suppressed even if obtained after the defendant's right to counsel has attached (*see People v Velasquez*, 68 NY2d 533, 537 [1986]; *People v Warren*, 97 AD2d 486, 487 [1983], *appeal dismissed* 61 NY2d 886 [1984]), the question becomes whether the CPS caseworker can be deemed an agent of the police such that she should not have spoken with defendant without counsel. "Relevant indicia of State *641 involvement, which may transform private conduct into State action, include: a clear connection between the police and the private investigation; completion of the private act at the instigation of the police; close supervision of the private conduct by the police; and a private act undertaken on behalf of the police to further a police objective" (*People v Ray*, 65 NY2d 282, 286 [1985] [citations omitted]).

Here, the FVRT, a joint venture between the Division of Family Services and police agencies, collaborated on sexual abuse investigations. As a member of the FVRT, the CPS caseworker interviewed the victim with a State Police investigator. She regularly shared information gained through her interviews with the police and District Attorney's office, and intended to do so here. The police investigator characterized himself as being in charge of the FVRT and testified that if the CPS caseworker knows there is a criminal investigation, that caseworker will tell him or the correct authority the information obtained from a defendant. While social workers are generally not agents of the police (*see e.g. Matter of Luis M.*, 83 NY2d 226 [1994]; *People v Batista*, 277 AD2d 141 [2000], *lv denied* 96 NY2d 825 [2001]), we are satisfied that, under the specific facts of this case, the CPS caseworker was an agent of the police. Because of the common purpose of the FVRT, the cooperative working

arrangement through the structure of the FVRT and the understanding that incriminating statements obtained by the CPS caseworker would be communicated to the police agency, all of the indicia of an agency relationship are satisfied (*see People v Ray, supra* at 286).

A person's right to counsel cannot hinge on the government's characterization of its own investigation (*see People v West,* 81 NY2d 370, 380 [1993]). The regulatory mandate that a CPS caseworker conduct face-to-face interviews with subjects of child abuse reports (18 NYCRR 432.2 [b] [3] [i] [a]) cannot overcome a subject's constitutional right if the CPS caseworker is an agent for the police at the time of the interview. That mandate can be complied with either by arranging an interview with the subject and counsel or merely completing the information gathering by the CPS caseworker without the ability to use the statement in any criminal proceeding (*see e.g. People v Townes,* 41 NY2d 97, 104-105 [1976]).

Notwithstanding our holding on that issue, this does not end the inquiry since the People did not use the testimony of the CPS caseworker on its direct case. "[S]tatements elicited in violation of [a constitutional right], although not admissible on the prosecution's case in chief, may nonetheless be used to *\*642* impeach the defendant's credibility" (*People v Wise,* 46 NY2d 321, 328-329 [1978], citing *People v Harris,* 25 NY2d 175 [1969], *affd* 401 US 222 [1971]). By defendant's denial, on direct examination, of any sexual contact with his daughter, he opened the door to the statements made to the CPS caseworker that admitted the possibility that the events occurred, but that he had blacked out as a result of the consumption of alcohol (*see People v Wise, supra* at 327-328). Even though properly admitted, this rebuttal evidence may be considered by the jury only on the issue of credibility and the jury should have been so instructed by County Court (*see id.* at 328-329). Defense counsel never sought said instruction from the court and, under the circumstances, this error, standing alone, would not warrant reversal.

"Evidence of a defendant's prior uncharged crimes is 'clearly inadmissible to prove criminal propensities,' but may be admitted to establish an element of the crime at issue where the probative value of the proof outweighs its poss ble prejudicial effect" (*People v Fleegle,* 295 AD2d 760, 762 [2002], quoting *People v Forbes,* 203 AD2d 609, 611 [1994] [internal citation omitted]; *see People v Cook,* 93 NY2d 840, 841 [1999]). After a *Ventimiglia/Molineux* hearing, County Court permitted the prosecution to admit evidence regarding seven prior bad acts, consisting of threats to the victim's mother and sister, and sexual molestation of the victim both before and after the time of the crimes charged in the indictment. Prior and concurrent threats and violence to the victim's family and uncharged sexual assaults and threats against the victim are admissible as proof of the element of forcible compulsion and to explain the victim's failure to reveal the ongoing sexual assaults (*see People v Watson,* 281 AD2d 691, 694 [2001], *lv denied* 96 NY2d 925 [2001]; *People v Sturdivant,* 277 AD2d 607, 608 [2000], *lv denied* 95 NY2d 970 [2000]; *People v Rogner,* 265 AD2d 688, 689 [1999]). County Court properly weighed the probative value of this proof against its possible prejudicial effect (*see People v Rogner, supra* at 689).

Although County Court properly admitted this testimony, it failed to give cautionary instructions at the time the evidence of each of the acts was received and during its final instructions. Defense counsel neither requested such instructions nor objected to County Court's failure to so charge. Our courts have repeatedly stressed the importance of limiting instructions when admitting proof of uncharged criminal acts because, "by giving thorough and repeated cautionary instructions to the jury on the limited purpose for which this evidence was being *\*643* received, ... the possibility of prejudice" is minimized (*People v Steinberg,* 170 AD2d 50, 74 [1991], *affd* 79 NY2d 673 [1992], citing *People v Santarelli,* 49 NY2d 241, 254 [1980]; *see People v Fleegle, supra; People v Luck,* 294 AD2d 618, 620 [2002], *lv denied* 98 NY2d 699 [2002]; *People v Forbes, supra*). The failure to instruct the jury concerning the limited purposes for which this testimony was being received was error which heightened the danger of the jury receiving said evidence as proof of defendant's propensity to commit the crimes charged. In a case such as this, where the finding of guilt rests squarely on the jury's assessment of the credibility of the victim and defendant, we cannot say that the error was harmless and did not affect the jury's verdict. Such errors "seriously impinged upon defendant's right to a fair trial" (*People v Intelisano,* 188 AD2d 881, 883 [1992]; *see People v Fleegle, supra* at 762; *People v Luck, supra* at 620; *People v Forbes, supra* at 611; *People v Steinberg, supra* at 74).

As this matter is being sent back for a new trial, we note that, contrary to defendant's contention, the prosecutor's comments regarding the victim were not improper vouching for her credibility or an attempt to inflame the jury with emotion, but constituted a fair response to the defense summation which stated that the case was all about credibility and asked the members to consider what they would remember had they been raped (*see People v Alexander,* 255 AD2d 708, 710 [1998], *lv denied* 93 NY2d 897 [1999]; *People v Dexheimer,* 214 AD2d 898, 901 [1995], *lv denied* 86 NY2d 872 [1995]). However, we find that the prosecutor's comments asserting that defendant's version of events changed after he obtained counsel were improper. Had the issue been preserved by timely objection, reversal would not be warranted on this ground alone as the remarks, by themselves, were not so prejudicial as to deprive defendant of a fair trial (*see People v Quiller,* 298 AD2d 712, 713 [2002], *lv denied* 99 NY2d 618 [2003]).

In summation, therefore, we hold that the failure to give the jury limiting instructions with respect to defendant's prior bad acts denied defendant the right to a fair trial and warrants a reversal of the judgment as a matter of discretion in the interest of justice notwithstanding defense counsel's failure to preserve said issue by either requesting said instructions or objecting to the court's failure to so charge (*see* CPL 470.15 [3], [6]; *People v Fleegle,* 295 AD2d 760, 762-763 [2002], *supra; People v Intelisano, supra* at 883, 884). Defendant's right to a fair trial was further compromised by defense counsel's failure to request a limiting instruction with respect to the testimony *\*644* of the CPS caseworker and failure to object to certain inappropriate comments by the prosecutor in summation.

Crew III, J.P., Peters, Spain and Lahtinen, JJ., concur.
Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of Sullivan County for a new trial.

Copr. (C) 2017, Secretary of State, State of New York

---

**END OF DOCUMENT**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT F

# CERES

## DEPARTMENT OF PUBLIC SAFETY
## SUPPLEMENTAL REPORT

213-004554

**Page 8 of 8**

Many of the individuals' names related to people that O/HENRY, Adam knew before he met O/HENRY, Angele.

In the folder labeled with V/CONFIDENTIAL's name, I located a subfolder with two snapshots of V/CONFIDENTIAL that were taken from videos in which she was recorded in the Henrys' bathroom while changing. They had been labeled "bath1.jpg" and "bath2.jpg". There were an additional ten screenshots of V/CONFIDENTIAL taken from the video in which she was changing clothes in front of O/HENRY, Angele.

I was also able to speak to one of the victims who was captured showering in the Henrys' bathroom on December 24, 2012. This was V/Brennan. She is O/HENRY, Angele's mother. I spoke to her on November 13, 2013, because she was in the Henrys' Turlock home when the FBI served the arrest and search warrants there. I explained to her that she could be a victim and she said she was visiting during the Christmas season, 2012, and she did use the shower. She then went on to explain to me that she believes that her daughter is a "pleaser" and is easily manipulated. She felt that O/HENRY, Adam was controlling her daughter in these acts.

During this investigation Detective Moore spoke to V/CONFIDENTIAL. She told Detective Moore (refer to his three page supplemental report related to his interview) that O/HENRY, Adam started "weirding her out after a while" and he would be "touchy." She told him of one incident while she was at the Henrys' home and she was at the computer. Her neck started to hurt and O/HENRY, Adam approached her and started rubbing her shoulders. The incident made her feel uncomfortable and said it "weirding her out." Also, at different times he would tickle her, causing, again, for her to feel uncomfortable.

### DISPOSITION:

Attach this supplemental report to the original report.

| OFFICER: | HIVELY | ID #: | 627 | APPROVED: | ID #: | |
|---|---|---|---|---|---|---|
| **COPIES TO:**<br>DPS: ☐CHIEF ☐CMDR. ☐INV. ☐DRUG UNIT<br>☐PATROL ☐INTEL ☐RECORDS ☐PROPERTY ☐CSO<br>☐COURT LIAISON ☐VIPS ☐CHAPLAINS ☐COMPUTERS<br>COUNTY: ☐DA ☐S/O ☐SDEA ☐PROBATION ☐HEALTH<br>☐SCFW ☐ANIMAL CONTROL ☐DEPT. ENV. RES.<br>☐OTHER | | | | **EMERGENCY SERVICES:** ☐CMCPL ☐B/C ☐F/M ☐CAPT.<br>**COURT:** ☐MUNI ☐TRAFFIC ☐JUVENILE<br>**CITY HALL:** ☐CITY MNGR. ☐CITY ATTY ☐PUBLIC WORKS<br>**STATE/FED:** ☐CH ☐ABC ☐FBI ☐PAROLE ☐DOJ ☐DMV | | | |
| **RELATED FILE NUMBERS:** | | | | | Tran by: | Date Tran: |

US v. HENRY - 000592