1  McGREGOR W. SCOTT
United States Attorney
2  DAVID GAPPA
ROSS PEARSON
3  Assistant United States Attorneys
2500 Tulare Street, Suite 4401
4  Fresno, CA 93721
Telephone: (559) 497-4000
5  Facsimile:   (559) 497-4099

6

7  Attorneys for Plaintiff
United States of America
8

9                IN THE UNITED STATES DISTRICT COURT

10               EASTERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,              CASE NO.  1:13-CR-0409-DAD

13                   Plaintiff,            GOVERNMENT OPPOSITION TO MOTION
                                          FOR ACQUITTAL UNDER RULE 29(c)
14          v.                            AND FOR NEW TRIAL UNDER
                                          RULE 33(a)
15  ADAM ALAN HENRY,
                                          DATE: March 5, 2018
16                   Defendant.           TIME: 1:30 p.m.
                                          COURT: Hon. Dale A. Drozd
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

I.   This court should deny the defendant's motion for judgment of acquittal, because any rational trier of fact could have found that the defendant conspired to sexually exploit A.T.....................................................................................................................................1

II.   This court should also deny the defendant's motion for a new trial.............................7

      A.   The quantity and strength of the evidence, as well as the interests of justice, support the jury's guilty verdicts......................................................................7

      B.   The defendant still has not demonstrated that the court erred in denying the defendant's motion to strike the government's brief rebuttal testimony............8

      C.   The government did not fail to produce discovery......................................14

      D.   No comments by any prosecutor in closing arguments violated the defendant's right to a fair trial...............................................................14

      E.   None of the defendant's other grievances, alone or cumulatively, would justify granting the defendant another trial..........................................................16

II.   CONCLUSION....................................................................................................19

1

# Cases

2

*Estelle v. Smith,*
    451 U.S. 454 (1981) ................................................................ 13
3

*Harris v. New York,*
    401 U.S. 222 (1971) ................................................................ 12
4

5

*People v. Greene,*
    306 A.D.2d 639, 2003 N.Y. Slip Op. 14932 ........................... 11
6

7

*United States v. Clark,*
    468 Fed. Appx. 102 (3rd Cir. 2011) ......................................... 5

8

*United States v. Dost,*
    636 F. Supp. 828 (S.D. Cal. 1986) ........................................... 4
9

10

*United States v. Frederick,*
    78 F.3d 1370 (9th Cir. 1996) .................................................. 15

11

*United States v. Gomez,*
    725 F.3d 1121 (9th Cir. 2013) ................................................ 12
12

13

*United States v. Grovo,*
    826 F.3d 1207 (9th Cir. 2016) .................................................. 2

14

*United States v. Helton,*
    302 Fed. Appx. 842 (10th Cir. 2008) .................................... 4, 5
15

16

*United States v. Hill,*
    459 F.3d 966 (9th Cir. 2006) .................................................... 4

17

*United States vs. Holmes,*
    814 F. 3d 1246 (11th Cir. 2016) ............................................... 6
18

19

*United States v. Johnston,*
    789 F.3d 934 (9th Cir. 2015) .................................................... 2

20

*United States v. Knox,*
    32 F.3d 733 (3rd Cir. 1994) ..................................................... 4
21

22

*United States v. Kojayan,*
    8 F.3d 1315 (9th Cir. 1993) .................................................... 14

23

*United States v. Miller,*
    829 F.3d 519 (7th Cir. 2016) .................................................... 6
24

25

*United States v. Moe,*
    781 F.3d 1120 (9th Cir. 2015) .................................................. 2

26

*United States v. Ortega,*
    203 F.3d 675 (9th Cir. 2000) .................................................. 13
27

28

*United States v. Overton*,
   567 F.3d 1148 (9th Cir. 2009).................................................................................. 4

*United States v. Reed*,
   575 F.3d 900 (9th Cir. 2009)............................................................................... 2, 3

United States v. Showalter,
   569 F.3d 1150 (9th Cir. 2009).................................................................................. 7

United States v. Steen,
   634 F.3d 822 (5th Cir. 2011).................................................................................. 5

*United States v. Theis*,
   853 F.3d 1178 (10th Cir. 2017)............................................................................. 4

*United States v. Villard*,
   885 F.2d 117 (3rd. Cir. 1989) ................................................................................ 4

*United States v. Wiegand*,
   812 F.2d 1239 (9th Cir. 1987)................................................................................ 4

*United States v. Williams*,
   444 F3d 1286 .......................................................................................................... 4

## Statutes

18 U.S.C. § 2251(a) ............................................................................................... 4, 5, 6

18 U.S.C. § 2256(2) ....................................................................................................... 4

18 U.S.C. § 2256(2)(v)................................................................................................... 3

## Rules

Fed. R. Crim. P. 33(a) ................................................................................................... 7

Fed. R. Crim. P. 33(a) ................................................................................................... 1

McGREGOR W. SCOTT
United States Attorney
DAVID GAPPA
ROSS PEARSON
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile:  (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                Plaintiff,

            v.

ADAM ALAN HENRY,

                Defendant.

CASE NO.  1:13-CR-0409-DAD

GOVERNMENT OPPOSITION TO MOTION
FOR ACQUITTAL UNDER RULE 29(c)
AND FOR NEW TRIAL UNDER
RULE 33(a)

DATE: March 5, 2018
TIME: 1:30 p.m.
COURT: Hon. Dale A. Drozd

The defendant has moved for a judgment of acquittal under Federal Rule of Criminal Procedure (FRCP) 29(c) and alternatively for a new trial under FRCP Rule 33(a).  Within those motions are various other allegations and misgivings about how the court conducted the trial. The court should deny the defendant's motions, because they lack merit.

I.      **This court should deny the defendant's motion for judgment of acquittal, because any rational trier of fact could have found that the defendant conspired to sexually exploit A.T.**

The defendant argues that the evidence was insufficient on Count One, Conspiracy to Sexually Exploit a Minor, because the surreptitious videos of A.T. that he and Angele Henry created using a hidden camera in their bathroom did not amount to a visual depiction of a minor engaged in sexually explicit conduct. (Docket Item 254, Motion at 2–3).  The defendant has

1

1  raised and repeated this argument throughout this case, in pretrial filings, during his motion for a

2  judgment of acquittal, and in his closing argument to the jury.  Because his argument has not

3  changed substantially, it still lacks merit and should be denied.

4      The government's response remains the same. First, the defendant and his wife Angele

5  entered into an agreement to create visual depictions of A.T. engaged in sexually explicit conduct.

6  And some of the material that they created satisfies the definitions of a minor engaged in sexually

7  explicit conduct.  But even if the defendant and Angele did not actually create visual depictions of

8  sexually explicit conduct, their agreement alone is sufficient to support a conviction for

9  conspiracy to sexually exploit a minor. That is because there are only two elements to conspiracy

10  to sexually exploit a minor: (1) the defendant must agree with one or more person(s) to commit

11  the crime of sexual exploitation of a minor; and (2) the defendant intended to commit the offense

12  of sexual exploitation of a minor. *See United States v. Grovo*, 826 F.3d 1207, 1217 (9th Cir.

13  2016) (conspiracy to advertise child pornography, in violation of 18 U.S.C. § 2251(d)); *United*

14  *States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015) (general elements of conspiracy). The

15  defendant does not have to accomplish the object of the conspiracy – the criminal act is the

16  agreement to commit the offense, regardless of whether the defendant actually creates sexually

17  explicit materials. *See United States v. Johnston*, 789 F.3d 934, 940–41 (9th Cir. 2015).

18      The Ninth Circuit's decision in *Johnston* is instructive. In *Johnston*, federal agents found

19  chat logs of Johnston asking a co-conspirator to take pictures of nude children for him. *Id.* at 937–

20  38.  The co-conspirator sent Johnston child pornography that had been made months earlier, and

21  on appeal Johnston challenged the sufficiency of the evidence, arguing that there was no

22  conspiracy because the photos he received were produced months prior to the agreement.

23  Appellant's Opening Brief at 20-22, *United States v. Johnston*, 789 F.3d 934 (9th Cir. 2015) (No.

24  13-10097). The Ninth Circuit rejected this argument and found there was sufficient evidence for a

25  reasonable jury to conclude that Johnston conspired to produce child pornography based solely on

26  the chat transcripts. *Johnston*, 789 F.3d at 940–41. Under *Johnston*, the government needs only

27  prove that the defendant agreed with a co-conspirator to sexually exploit a minor—not that he

28  actually exploited the minor.

1      And there is ample evidence that the defendant and Angele Henry entered into an

2   agreement to sexually exploit A.T.  Videos from the bathroom showed the couple setting up a

3   camera together, making test videos, adjusting the camera's angles, and removing obstacles that

4   blocked their ability to record AT. From these videos, the defendant created screenshots of A.T.

5   and saved them in a folder on a password-protected side of his network attached storage (NAS)

6   device with A.T.'s name on it. A jury may infer the existence of an agreement from the

7   defendant's conduct, including his coordination with a coconspirator. *United States v. Reed*, 575

8   F.3d 900, 924 (9th Cir. 2009).  Here, the defendant's coordination with Angele to surreptitiously

9   record A.T. was sufficient evidence for a rational trier of fact to infer that the two conspired to

10   sexually exploit A.T. The court should deny the defendant's motion for a judgment of acquittal on

11   this basis.

12      Second, even though the government is required only to prove that the defendant agreed to

13   create sexually explicit material, the defendant also succeeded in creating sexually explicit visual

14   depictions of A.T. "Sexually explicit conduct" includes "lascivious exhibition of the genitals or

15   pubic area of any person." 18 U.S.C. § 2256(2)(v). In determining whether a depiction includes

16   lascivious exhibition of the genital or pubic area of any person, the trier of fact may consider any

17   of the following factors:

18      (1)   Whether the focal point of the depiction is the child's genital or pubic area;

19      (2)   Whether the setting of the depiction is sexually suggestive, for instance, the setting
          is in a      place or pose generally associated with sexual activity;
20

21      (3)   Whether the child is depicted in an unnatural pose or in inappropriate attire,
          considering the age of the child;

22      (4)   Whether the child is fully or partially clothed or is nude;

23      (5)   Whether the depiction suggests sexual coyness or a willingness to engage in
          sexual activity;
24

25      (6)   Whether the depiction is intended or designed to elicit a sexual response from the
          viewer.

26

27

28

1   *United States v. Overton*, 567 F.3d 1148, 1151 (9th Cir. 2009) (quoting *United States v. Dost*, 636

2   F. Supp. 828, 832 (S.D. Cal. 1986)).  This is a non-exhaustive list of factors that can be

3   considered.  The Ninth Circuit has made it clear that these factors operate as merely "a starting

4   point" for determining whether a particular image is "so presented by the photographer as to

5   arouse or satisfy the sexual cravings of a voyeur." *Id., citing United States v. Hill,* 459 F.3d 966,

6   972 (9th Cir. 2006).

7         Notably, neither 18 U.S.C. § 2251(a) nor 18 U.S.C. § 2256(2) references – or requires –

8   nudity, and courts have recognized this.  *See United States v. Helton,* 302 Fed. Appx. 842, 846-47

9   (10th Cir. 2008) (Section 2251 "does not specify the genitals or pubic area must be fully or

10  partially uncovered in order to constitute an exhibition and, like our sister circuits, we decline to

11  read such a requirement into the statute."); *see also United States v. Williams,* 444 F3d 1286,

12  1299 ("the pictures needn't always be 'dirty' or even nude depictions to qualify"); *United States*

13  *v. Villard*, 885 F.2d 117, 122 (3rd. Cir. 1989); *United States v. Knox*, 32 F.3d 733 (3rd Cir. 1994).

14  And whether a depiction is lewd or lascivious should be viewed from the perspective of the

15  photographer, not from the perspective of the minor being photographed.  *United States v. Dost*,

16  636 F. Supp. 828, 832 (S.D. Cal. 1986); *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir.

17  1987); *United States v. Villard*, 885 F.2d 117, 122 (3rd. Cir. 1989); *United States v. Knox*, 32

18  F.3d 733 (3rd Cir. 1994).

19        Additionally, conduct that might be considered innocent by those engaging in it can be

20  become sexually explicit based on the motive and intent of someone who surreptitiously creates

21  recordings of the conduct.  For example, in *United States v. Theis,* 853 F.3d 1178 (10th Cir. 2017),

22  the defendant's convictions for attempted sexual exploitation of a child and his 292-month prison

23  sentence were upheld despite his argument to the Tenth Circuit that there was no "causal

24  relationship between" him and "the minor's sexually explicit conduct."  The defendant had

25  hidden cell phones to secretly record his girlfriend's eleven year-old daughter while she showered

26  and used a toilet in a bathroom.  He then transferred the recordings to his computer and created

27  still images, some of which focused on her genital and pubic area.  The court concluded that there

28  was sufficient evidence to support his convictions even though he had secretly videotaped the

1   victim while she performed activities over which the defendant had no control or influence. *See*

2   *also United States v. Helton,* 302 Fed. Appx. 842 (10th Cir. 2008) (conviction for 18 U.S.C.

3   § 2251(a) upheld where defendant hid camera in a bathroom and focused the lens on the toilet.

4   The camera recorded a minor female sitting on the toilet for several minutes, then standing and

5   pulling up her underwear); *United States v. Clark*, 468 Fed. Appx. 102 (3rd Cir. 2011)

6   (convictions for 18 U.S.C. § 2251(a) and (e) upheld on appeal based upon defendant

7   surreptitiously recording 14 year-old stepdaughter using a bathroom to undress and shower).

8         Here, the videos and screenshots that the defendant and his wife conspired to take, when

9   viewed in the light most favorable to the government, depict sexually explicit conduct.  Given the

10   surreptitious nature of the recordings, in which cameras were elevated and hidden from plain

11   sight, it would be difficult for the images to focus exclusively on the genital or pubic area.  And

12   even if the material does not suggest sexual coyness, this factor is not as important since the

13   minor did not know she was being recorded. United States v. Steen, 634 F.3d 822, 827 n.23 (5th

14   Cir. 2011).  The second and third factors are arguable: some of the screenshots were from a video

15   of A.T. in the bedroom, a place generally associated with sexual activity, id. ("Traditional settings

16   that meet this standard are beds or bedrooms."); and A.T. was depicted in those screenshots

17   putting on a corset and wearing a bikini.  Some show her exposed breasts. The fourth factor

18   undisputedly favors the government, because A.T. was often fully naked in the bathroom videos.

19         Finally, the sixth factor also favors the government, because the photos of A.T. were

20   intended or designed to elicit a sexual response from the viewer. The defendant stored the

21   recordings of A.T. on a password-protected side of his NAS along with his other pornographic

22   materials and next to other surreptitious recordings.  He viewed those videos and took screenshots

23   of A.T. at moments when she was fully naked and in the most sexually provocative poses.

24   Viewing this evidence in the light most favorable to the government, a reasonable juror could find

25   that these videos and photos amounted to sexually explicit conduct. Therefore, the court should

26   deny the defendant's motion for a judgment of acquittal on Count One.

27         The overwhelming weight of authority also supports the government's theory, the jury's

28   verdict on Count One, and the court's rulings.  The Eleventh Circuit recently joined the Eighth,

1   Ninth, and Tenth Circuits when it held that "a lascivious exhibition may be created by an

2   individual who surreptitiously videos or photographs a minor and later captures or edits a

3   depiction, even when the original depiction is one of an innocent child acting innocently." *United*

4   *States vs. Holmes,* 814 F. 3d 1246 (11th Cir. 2016). The defendant had hidden video cameras in a

5   bathroom used by his step-daughter during a period of approximately five months when she was

6   15-16 years old. The defendant captured the girl using the bathroom for her daily routine

7   including singing, dancing, standing in front of a mirror, grooming, and applying creams or

8   lotions to her body. Fifteen of twenty-three videos were recorded with a camera hidden

9   somewhere above countertop level and captured the victim generally nude from the waist up.

10   Eight of the videos were recorded with a camera hidden under the lip of the vanity countertop,

11   and they showed the victim completely naked, fully or partially clothed, or wearing a towel or her

12   underwear. The defendant then created twenty-six screen captures from certain sections of the

13   video, and two of those depicted close up views of the victim's pubic area while the remaining

14   still images depicted her naked breasts. A jury convicted the defendant for attempted sexual

15   exploitation of a child based upon the two images that showed the victim's pubic area. The

16   Eleventh Circuit held that "depictions of otherwise innocent conduct may in fact constitute a

17   "lascivious exhibition of the genitals or pubic area" of a minor based on the actions of the

18   individual creating the depiction." *Id.* at 1251-52. The court found the following factors

19   significant: the defendant had placed the cameras in the bathroom where his stepdaughter was

20   most likely to be videoed while nude; his extensive focus on videoing and capturing images of

21   her pubic area; the angle of the camera set up; and his editing of the photos at issue. *Id.* at 11252.

22        Even more recently the Seventh Circuit also concluded that images of minor females who

23   were surreptitiously recorded using a bathroom can constitute sexually explicit conduct that

24   supports convictions for sexual exploitation of children under 18 U.S.C. § 2251(a). The

25   defendant in *United States v. Miller,* 829 F.3d 519 (7th Cir. 2016), cut a hole through the drywall

26   from a basement utility room into a basement bathroom. He scraped off part of the backing of the

27   mirror and lined it up with the hole in the wall and then installed a clear shower curtain. From

28   July 2011 through May 2012 he then used his cell phone to take photos and videos of five

1    different females, ages 12-16, undressing and/or showering in the basement bathroom.  At trial

2    the defendant argued that the images he created were not a "lascivious exhibition of the genitals"

3    and were instead "mere nudity."  The district court, which found the defendant guilty of all of the

4    counts, noted the number of steps that Miller took before he could even create the videos.  These

5    actions led to only one reasonable inference: the defendant intended to view the minor teenage

6    girls for his own sexual arousal.  The district court also rejected an argument that it was necessary

7    for the images to focus only on the pubic area.  The Seventh Circuit upheld the convictions and

8    agreed that the videos were lascivious because they depicted minors nude in the shower and

9    sometimes undressing prior to entering the shower, since "showers and bathtubs are frequent

10   hosts to fantasy sexual encounters as portrayed on television and in film." *Id.* at 525.  The

11   Seventh Circuit held that there is no requirement in the statute that the creator of a video zoom in

12   on the pubic area or that it be the sole focus of the depiction.  Subjective intent of the creator is a

13   relevant, and often probative, consideration.  The court noted that the steps the defendant took to

14   surreptitiously record the videos undermined the inference that there was any legitimate purpose

15   in creating them.

16   **II.   This court should also deny the defendant's motion for a new trial.**

17

18   **A. The quantity and strength of the evidence, as well as the interests of justice,
     support the jury's guilty verdicts.**

19        The court may grant a motion for a new trial "if the interest of justice so requires." Fed. R.

20   Crim. P. 33(a).  But the court should only grant a motion for a new trial in "exceptional cases in

21   which the evidence preponderates heavily against the verdict." United States v. Showalter, 569

22   F.3d 1150, 1157 (9th Cir. 2009).

23        For the same reasons discussed in the response to the defendant's motion for a judgement

24   of acquittal, this court should deny his motion for a new trial. The evidence does not preponderate

25   "heavily" against the guilty verdict on Count One, because the defendant formed a criminal

26   agreement with his wife to create sexually explicit videos and images of A.T.  Even though the

27   government was not required to prove any particular overt act, there was evidence that the

28   defendant and Angele Henry took considerable steps to create the surreptitious videos of CV1

1    using their bathroom and undressing in their bedroom.  They talked about their plan, they

2    exchanged text communications and images of A.T. as well as other young females who appeared

3    to be minors, and they are seen in several videos working in concert to hide cameras, test the

4    quality of the images that were being created, and then adjusting the lighting (on one date adding

5    a window curtain) for some recordings and removing a shower curtain that was obstructing their

6    desired area of focus.  And once videos were recorded, they were transferred to a computer for

7    viewing and creation of selected still images.  There was abundant evidence from which a rational

8    jury could conclude not only that the defendant conspired to sexually exploit a minor but that he

9    actually did so through creating visual depictions of the minor engaged in sexually explicit

10    conduct.

**B.  The defendant still has not demonstrated that the court erred in denying the defendant's motion to strike the government's brief rebuttal testimony.**

13          The defendant has revisited the arguments that he made during trial that the brief rebuttal

14    testimony of a Stanislaus County Child Protective Services (CPS) officer should have been

15    stricken from the record.  The government called Antonio Ruezga as a rebuttal witness at the

16    conclusion of the defense case.  Ruezga worked for Stanislaus County CPS in November 2013,

17    and he was at the defendant's residence in Turlock when law enforcement served a federal search

18    warrant.  Ruezga testified that the defendant stated he wasn't sure of the charges against him and

19    that Angele Henry was "not part of the charges that were brought about by the incident."  Partial

20    Transcript of Proceedings (Transcript) at 5, lines 14-15.

21          The defense cross-examined Ruezga extensively, both in front of the jury and outside its

22    presence, and the court correctly found that Ruezga was not a law enforcement officer but instead

23    was "acting solely for purposes of child protective reasons."  Transcript at 34, lines 1-3.  The

24    court also correctly had informed defense counsel that if Ruezga were not a law enforcement

25    officer, his questioning of the defendant could not be considered an interrogation.  Transcript at

26    18, lines 23-24.  Ruezga clearly testified that law enforcement officers "were conducting their

27    investigation and I was conducting the Child Protective Services investigation."  Transcript at 21,

28    lines 6-7.  Ruezga also testified that the "reason I was there [wa]s to conduct a child welfare

8

1    investigation." Transcript at 23, lines 2-3. Ruezga also testified that the law enforcement officers

2    who had worked on the criminal investigation of the defendant were not present or standing

3    nearby when he questioned the defendant. Ruezga said "I believe at that time they were

4    questioning Mrs. Henry and I was allowed to speak to him by myself." Ruezga's testimony was

5    very clear that he was not "working in tandem with the law enforcement agents" despite defense

6    counsel's argument; rather, Ruezga explained that "[t]hey do the law enforcement part and I do

7    the Child Protective Services part." He was not a law enforcement officer, nor was he authorized

8    to carry a gun or arrest people. He did not enter the defendant's residence with law enforcement

9    and waited until they had secured the location. Transcript at 25, lines 6-23; Transcript at 26, lines

10   10-14; Transcript at 37, line 20 to Transcript at 38, line 1.

11        After extensive cross-examination by the defense, the court succinctly summarized

12   Ruezga's testimony by asking him whether it was accurate that when "asked about the child

13   pornography in general . . . Mr. Henry merely offered in response, 'The children aren't exposed to

14   any of this. I'm not sure of the charges that are against me but whatever they are, my wife wasn't

15   involved in it.'" Transcript at 28, lines 5-10. The court also elicited from Ruezga that he did not

16   report anything he learned from the defendant to law enforcement investigators working on the

17   criminal case against the defendant. Transcript at 29, lines 7-11; *see also* Transcript at 31, lines

18   11-12. Ruezga also reiterated that as a Child Protective Services officer, he was not a peace

19   officer under California law and he acted without any authority to arrest anyone, carry a firearm,

20   or present cases for possible prosecution. *Id.* at lines 14-24. The court correctly ruled that

21   Ruezga's testimony was proper and need not be stricken, because "Ruezga was not a law

22   enforcement officer, but was acting solely for purposes of child protective reasons. According to

23   his unchallenged testimony, he didn't share the answers received nor the report that he wrote with

24   law enforcement, that his inquiry was simply for purposes of attempting to determine whether the

25   children could safely remain in the home." Transcript at 34, lines 1-7.

26        Not satisfied, the defense recalled the defendant for additional testimony. The defendant

27   confirmed that Ruezga did not enter the residence until after law enforcement had secured it.

28   Transcript at 37, line 20 to Transcript at 38, line 1. The defendant's testimony essentially

1   confirmed that Federal Bureau of Investigation (FBI) Agent Mark Lucas advised the defendant of

2   his Miranda rights but did not question him after he invoked his right not to answer questions.

3   Transcript at 37, line 8 to Transcript at 38, lines 2-6.   The court then modified its ruling and

4   found that the defendant was in custody when Ruezga questioned him, but the court correctly

5   maintained that this did not change its rulings on the motion to strike Ruezga's testimony or the

6   motion for a mistrial.   The court again found that "the Child Protective Services Officer was not a

7   law enforcement officer, was not acting in concert with law enforcement officers in connection

8   with his conversation and that his conversation and inquiries posed to the defendant with respect

9   to child welfare did not constitute an interrogation."   Transcript at 40, lines 17-22 to Transcript at

10  41, line 4.

11       The defense offered additional evidence the next morning and again argued that the

12  defendant's Constitutional rights were violated when Ruezga questioned him on November 13,

13  2013.   The court again carefully analyzed the record and again rejected the defendant's argument.

14  The court found that just because Ruezga might have been at a briefing with law enforcement

15  before law enforcement executed the federal search warrant, he did not become an agent of law

16  enforcement.   Ruezga "did not share what he learned during the interview – or during the

17  questioning of the defendant with law enforcement officers who were present. And . . . he also

18  did not provide those law enforcement officers with a copy of his report that reflected the

19  defendant's responses. And . . .the officers were off executing the search warrant when he

20  engaged the defendant in the conversation."   The "CPS officer . . . indicated he's not a law

21  enforcement officer. He wasn't working in concert with the officers. He didn't share the

22  information he obtained with them and . . . his conversation was focused on the welfare of the

23  children and what was going to happen with them as a result of the execution of the search and

24  the arrest."   Transcript at 47, lines 12-23.   The court also concluded that in *Miranda* itself, the

25  Supreme Court defined custodial interrogation as, 'questioning initiated by law enforcement

26  officers after a person has been taken into custody or otherwise deprived of his freedom in any

27  significant way.' Here, the CPS officer was not a law enforcement officer nor . . . were the

28  questions that he asked motivated by a law enforcement purpose. They were motivated by a

1   different purpose, the protection of the children who he knew to be located within the home."

2   Transcript at 48, lines 4-8.

3       In its final decision denying the defendant's renewed motions the court cited *People v.*

4   *Greene*, 306 A.D.2d 639, 2003 N.Y. Slip Op. 14932, which the defense now misreads to support

5   his current argument. Even if Adam Henry had been tried in state court in New York rather than

6   federal court in Fresno, *Greene* would not support the defendant's argument, because there are

7   several significant distinctions between the cases. The CPS worker who testified in *Greene*

8   worked as part of a well-established Family Violence Response Team (FVRT) which included a

9   state police investigator, a county sheriff's investigator, and three CPS workers who cooperated to

10  investigate reports of child sexual or physical abuse. The appellate court found that FVRT was a

11  joint venture between the Division of Family Services and police agencies which collaborated on

12  sexual abuse investigations. The CPS caseworker interviewed a victim with a state police

13  investigator, regularly shared information from interviews with the police and prosecutors, and

14  intended to do that in the case on appeal. The appellate court found that "social workers are

15  generally not agents of the police" but "under the specific facts of this case, the CPS case worker

16  was an agent of the police." Here, by contrast, Ruezga worked for the Stanislaus County CPS

17  agency, and neither he nor his agency participated in any task force, much less one formed before

18  his actions on the day in question. He was merely invited, in this one case, to conduct an

19  independent civil investigation for a purpose completely different from those of law enforcement.

20  And as the court here has repeatedly found, Ruezga never became an agent of law enforcement,

21  never shared the results of his questioning with law enforcement, and he had no independent law

22  enforcement authority. Indeed, even the defendant's version of events suggests he knew that

23  Ruezga was there for a different reason, because although he testified that he was advised of his

24  Miranda rights by law enforcement, invoked them, and refused to speak to law enforcement, he

25  did freely answer questions from Ruezga. A reasonable inference is that once he told the law

26  enforcement investigators that he had an attorney and did not want to speak with them, their

27  attention and presence moved away from the defendant and onto other tasks. But the defendant

28  did agree to answer questions from Ruezga after he identified himself and the purpose of his

11

1  investigation. This only strengthens the court's repeated findings that Ruezga's testimony was

2  properly included in the record.

3        In addition, the New York appellate court in *Greene* held that even assuming that

4  Greene's Sixth Amendment right to counsel had been violated, the statements "elicited in

5  violation of [a constitutional right], although not admissible on the prosecution's case in chief,

6  may nonetheless be used to impeach the defendant's credibility." *Greene*, at 641-42. And even

7  though an instruction to the jury that it should have considered the defendant's statements only

8  for purposes of credibility should have been given, defense "counsel never sought said instruction

9  from the court and, under the circumstances, this error, standing alone, would not warrant

10 reversal." *Id.* at 642. Here, even though the defense strongly objected to Ruezga's testimony

11 and repeatedly argued to exclude it from the record, and even though there was ample time to

12 request one, the defense never asked for an instruction that would have limited how Ruezga's

13 testimony could have been used. So even the authority to which the defendant now points would

14 support a finding that any failure to provide a limiting instruction was harmless. Moreover, the

15 government never referred to Ruezga's testimony in any closing argument, and the court here

16 opined that "for what it's worth, I found the testimony that was submitted in rebuttal to be, for the

17 most part, unnecessary, cumulative. . . . So to bring the CPS officer in rebuttal to testify that he

18 made similar statements in November at the time of the federal search warrant seemed to me to

19 not add a lot to the mix." Transcript at 49, lines 8-23. In sum, the court repeatedly made legally

20 correct decisions to not strike Ruezga's testimony or declare a mistrial, and nothing compels the

21 court to revisit the issue yet again. *Cf. United States v. Gomez,* 725 F.3d 1121, 1127-29 (9th Cir.

22 2013) ("when Defendant testified in a manner arguably inconsistent with his earlier explanation,

23 the Constitution does not prohibit the use of his explanation *during rebuttal only, as impeachment*

24 *evidence*) (emphasis in original), citing *Harris v. New York*, 401 U.S. 222, 224 (1971) ("It is one

25 thing to say that the Government cannot make an affirmative use of evidence unlawfully

26 obtained. It is quite another to say that the defendant can . . . provide himself with a shield

27 against contradiction of his untruths.").

28 ///

1        The defendant's reliance on *Estelle v. Smith,* 451 U.S. 454 (1981), a death-penalty case,

2   also does not help him.  There a defendant, charged with murder, had been ordered by a trial court

3   judge to undergo a psychiatric examination to determine his competency to stand trial.  The

4   doctor found the defendant competent to stand trial, and he was convicted.  In a separate

5   sentencing trial, the same doctor – who was not identified on the state's witness list – testified,

6   based on his pretrial examination, that the defendant would be a danger to society.  The United

7   States Supreme Court held that "[v]olunteered statements . . . are not barred by the Fifth

8   Amendment," but "we must conclude that, when faced while in custody with a court-ordered

9   psychiatric inquiry," the statements to the doctor were not "given freely and voluntarily without

10  any compelling influences."  *Id.* at 468.

11       Here, the defendant was not subjected to any court-ordered examination or questioning,

12  and the court has repeatedly ruled that the defendant was not subjected to interrogation, because

13  Ruezga was not a law enforcement officer.  The defendant's Sixth Amendment right to counsel

14  was not violated, because law enforcement did not elicit any statement that was used against him,

15  and Ruezga did not elicit any statement that he intended to use during any pending or future

16  prosecution of the defendant.  To the contrary, Ruezga testified that he had no law enforcement

17  authority and did not provide law enforcement with information he had obtained from the

18  defendant.  And the defendant's statements here were offered only on rebuttal after he testified

19  that Angele Henry was the only person who had committed any crimes.  So even if there were a

20  Sixth Amendment violation, the court properly kept the statements in the record because they

21  were inconsistent with the defendant's testimony at trial.  *See, e.g., United States v. Ortega,* 203

22  F.3d 675 (9th Cir. 2000) ("Although the INS interview violated the Sixth Amendment so that the

23  statements relating to the gun offenses may not be admitted as evidence in the government's case-

24  in-chief, the government may still use these statements to impeach Ortega's inconsistent

25  testimony).

26       The defendant has not developed any new or different facts that undermine the court's

27  rulings, nor has the defendant shown that there is any realistic possibility that he could elicit any

28  additional facts that would support a different conclusion.  The government urges the court to

again deny the defendant's attempt to revisit this issue or disturb earlier rulings.

### C. The government did not fail to produce discovery.

As explained in and established by Docket Item 272, filed on February 6, 2018, the government provided the defense with the discovery he now claims he did not receive years before the trial began and the evidence was again given to the defense with exhibit stickers on it.

### D. No comments by any prosecutor in closing arguments violated the defendant's right to a fair trial.

The defendant has suggested that his due process rights were violated because a prosecutor stated that defense counsel "did a great job on his closing," noted that "the defendant is entitled to be well represented. Mr. Capozzi is the most experienced attorney here. And he's done his job." Rather than "backhandedly praising defense counsel," the comment was an explicit compliment. Partial Transcript of Proceedings on November 16, 2017 (Transcript) at 16, lines 6-7. And the compliment was no less sincere than the gratitude expressed to the jury for its service just a moment earlier. *Id.* at lines 3-5. The point of rebuttal argument is to refocus a jury's attention and offer a different perspective on the same evidence that was just addressed by the defense. There was nothing unethical or improper in suggesting that the jury was hearing competing interpretations of the same evidence. Indeed, defense counsel heard the statements when they were made but never voiced any objection. Nor was there a motion to strike the statement from the record. Moreover, the court instructed the jury that the lawyers were not witnesses, and their questions, statements, objections, and arguments were not evidence. And the court instructed the jury that what the lawyers said in their opening statements, their closing arguments and at other times was intended to help interpret the evidence, but the statements were not evidence. The prosecutor's statements were fleeting and at the beginning of an argument that exceeded thirty minutes which summarized a trial that took place over more than the course of a week. So there is very little basis for concluding that they deprived the defendant of a fair trial.

The cases that the defendant has relied upon were far different. In *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993), the Ninth Circuit concluded that a prosecutor did not tell the

14

1  truth and misled a jury about a cooperation agreement for a person who did not appear as a

2  witness at a trial against co-conspirators.  The Ninth Circuit examined the trial and appellate

3  records and, while noting that "the exigencies of trial may make it hard to consider all the

4  implications of a particular assertion," concluded that the conviction had to be vacated in light of

5  the government's cumulative actions in district court and on appeal.  But the Ninth Circuit noted

6  that defense counsel had timely objected to a statement later established not to be true, and that

7  prosecutor did not correct the record after an extensive colloquy with the district court.  Nor did

8  the prosecutor respond to the defense argument when it was raised months later in a motion for a

9  new trial.  The Ninth Circuit opined that the prosecutor's "error of judgment" might "have been

10 driven by inexperience," but that the matter became troubling by the government's positions

11 during the appellate process.  Factoring into the Ninth Circuit's decision was that the court

12 characterized the case as close, since the jury deliberated for more than two days after a day-and-

13 a-half trial.  Here, the defense does not allege that the government misstated any facts, nor did

14 that happen.  There was no contemporaneous objection to any comments by the prosecution, and

15 even though the trial took several days to complete, the jury was only out for a few hours before

16 returning guilty verdicts.

17        The defense reliance on *United States v. Frederick*, 78 F.3d 1370 (9th Cir. 1996), is

18 similarly insufficient to warrant a new trial.  In *Frederick* a jury convicted a defendant for two of

19 three charged counts of aggravated sexual assault on an Indian reservation after a two-day trial.

20 The Ninth Circuit reversed the defendant's convictions after finding that there were three

21 significant errors; 1.) an improper attempt by the prosecutor to link itself with the court; 2.) an

22 erroneous representation during closing argument about the testimony of a victim and her earlier

23 out-of-court statements; and 3.) testimony by two witnesses suggesting that there might have been

24 additional accusations by other victims against the defendant.   At one point during the trial,

25 defense counsel objected to the prosecutor's comments about defense counsel, and the trial court

26 sustained the objections.  The Ninth Circuit did not view the comments as "crossing the line

27 sufficiently to warrant action of any kind by this court," but it did have concern about the

28 perceived effort by the prosecutor to align the court with the prosecution during closing argument.

15

1  Nothing remotely like that happened in this case.  But even so, it was only because the Ninth

2  Circuit saw two other problems that the court vacated the defendant's convictions and remanded

3  the case.   The Ninth Circuit opined that "the evidence against the defendant was not

4  overwhelming and . . .the case was a close one."

### E.  None of the defendant's other grievances, alone or cumulatively, would justify granting the defendant another trial.

7       The defendant has pointed to a series of alleged errors, but a closer review of the record

8  reveals no basis for finding that anything other than the defendant received a fair trial.  For

9  instance, the defendant has characterized as a "complete fabrication" the fact that minor victim

10  A.T. was the only person whom the defendant and Angele Henry recorded in the bathroom of

11  their residence whose images were then placed in a folder with her name on it.  It is true that the

12  defendant began surreptitiously recording females when he lived in Fresno even before he knew

13  who Angele Brennan (whom he later married), and it is true that he created a folder called "exes"

14  and then subfolders that contained content that he recorded.  But it is also true, as the government

15  established and later argued, that even though the defendant and Angele captured images of

16  people other than A.T. using the secreted cameras in a bathroom of their residence, A.T. was the

17  only victim whose images were put into a folder with her name on it.  The defense did not object

18  to this "complete fabrication" during the trial.  In fact, there was no fabrication to which to object.

19       The defense has also misrepresented the record on issues of adult pornography.  The trial

20  judge (Judge Drozd) specifically ruled that the government could elicit testimony from an

21  investigator that investigators found a wide spectrum of pornography on computers and storage

22  devices connected to the defendant including depictions of sex between multiple people and

23  animals.  The defense did not object to the court's ruling, so the allegation now that evidence was

24  "irrelevant and highly prejudicial" to the point of warranting a new trial is simply not compelling.

25  And, of course, if the defendant now believes that "any evidence of adult pornography" "was

26  irrelevant and highly prejudicial," only can only wonder why the defendant offered extensive

27  direct testimony about his interest in pornography, the time frame during which he acquired it (no

28  later than when he was in college), how he acquired it (first by exchanging it with friends and

16

1   then by downloading it from internet sources), and how much he had acquired (more than 10,000

2   images).  Partial Transcript of Proceedings on November 15, at 16-18, 28-29.

3        The government established everything that it referenced in its closing argument about the

4   defendant's use of Shareaza.  Detective Hively testified about recovering Shareaza on multiple

5   computers, and the defendant himself conceded that he had used the program for many years.

6   There was sufficient evidence from which the jury could have inferred that the defendant used

7   Shareaza to download child pornography on each device on which it and the file-sharing program

8   were located.  Indeed, the government established that the defendant had moved two completely

9   downloaded files, at least one of which was child pornography, from a folder associated with

10  Shareaza on his work computer onto his home network on the morning of the first search warrant.

11  Defense counsel cross-examined Detective Hively about a prior reference to Limewire, a different

12  file-sharing program, and the jury was free to consider all of the evidence it had before it.  The

13  defense has not identified which report allegedly contains a statement that Shareaza was never

14  used to download child pornography on item 16.

15       Nor was it an incorrect or improper argument that 25 child pornography video files were

16  added to a computer hard drive on August 20, 2010, and that the material was downloaded before

17  Angele Henry was living with the defendant at their Burman Drive residence.  The defendant did

18  not object to that argument when it was made, and the defendant's own testimony established that

19  he did not even begin to share personal information with Angele until the end of 2009 when he

20  was still married to and living with a different woman.  He also testified that Angele would

21  usually stay at a motel when she began visiting the defendant.  Partial Transcript of Proceedings

22  on November 12, at 10-12.

23       The defendant has also misstated facts by alleging that "[n]o evidence was ever produced

24  as to which device recorded the videos in Count One."  The defendant has either forgotten or

25  chosen to ignore the nature of the conspiracy charge which alleged that he worked with his wife

26  to sexually exploit a minor.  Part of that conspiracy was to capture images of A.T. as she changed

27  into various items of clothing that Angele offered to her in the bedroom that Angele and the

28  defendant shared.  The government established that a lengthy video was recorded of that session,

17

and there was strong evidence from which the jury could have inferred that the recording was made with a Canon Vixia camcorder that had been manufactured in Japan.  The defendant and/or Angele transferred the video to a computer and hard drive, both also manufactured outside California, and screen captures were made from those images as well as images that were recorded in one of their bathrooms.  There was abundant evidence from which the jury could have found that the defendant and Angele used multiple devices manufactured outside of California as part of their conspiracy.  But again, the essence of the charge for which he was convicted was an agreement.

The defendant has complained that the government used "an unproven, uncharged crime to prejudice the Defendant that had nothing to do with child pornography," but it was the defendant himself who volunteered in his direct testimony – several times – that he used Shareza over the course of a decade to download music.  Transcript of November 15 at 17, lines 4-14 and Transcript at 78-81.  The government specifically told the jury "we're not concerned about that," and the court instructed the jury that he was only on trial for the crimes charged in the indictment. The defendant has suggested that the argument that people get child pornography from Shareaza is misleading, but it is not.  There was evidence before the jury that Shareaza was used to download child pornography.  In fact, the defendant testified about search terms that were recovered that had been entered into the Shareaza program.  The jury chose to believe that he was the person who downloaded the child pornography, just as they apparently chose to discredit his testimony – which contradicted his initial statements to Detective Hively about who had access to which sides of Exhibit 9 – that Angele knew the password to the secured side of Exhibit 9.

The defendant's motion concludes with an unsupported argument and yet another misstatement of the record.  As mentioned above, the government never referenced Antonio Ruezga's testimony in its closing.  The defendant has quoted passages from the government's closing argument which merely highlight the defendant's apparently shifting defenses from downloading child pornography by accident or mistake to having nothing to do with anything involving the sexual exploitation of children.  The defendant's decision to testify certainly created a greater record upon which it was fair for the government to comment, but those comments

1  never looped in any rebuttal testimony.  Finally, the defendant has misstated that "A.T. did not

2  testify that the Defendant made her uncomfortable – indeed Judge Ishii had excluded such

3  testimony."  Judge Ishii did not rule that the victim could not state that the defendant's

4  unwelcome touching of her made her feel uncomfortable; he only stated that she could not testify

5  generally (as she had told an investigator) that the defendant "'weirded' her out."  Partial

6  Transcript of Proceedings of November 9 at 5, lines 11-20.  And the defendant's current argument

7  is completely undercut by recognizing that defense counsel himself revisited the issue of

8  unwanted touching on his cross of the victim.  Defense counsel implied that she asked the

9  defendant to massage her shoulders, but she testified she did not make this request.  Defense

10  counsel then elicited that the defendant just went over and massaged her shoulders and "I would

11  get uncomfortable."  *Id.* at 12, lines 3-11.

12  ### III.  CONCLUSION

13  The court should deny the defendant's motions, because they lack merit.

Dated:  February 26, 2018

McGREGOR W. SCOTT
United States Attorney

By:  /s/ DAVID L. GAPPA
DAVID L. GAPPA
ROSS PEARSON
Assistant United States Attorneys