1  **ANTHONY P. CAPOZZI, CSBN: 068525**
   **LAW OFFICES OF ANTHONY P. CAPOZZI**
2  1233 W. SHAW AVE., SUITE 102
   FRESNO, CALIFORNIA 93711
3  PHONE: (559) 221-0200
   FAX: (559) 221-7997
4  EMAIL: Anthony@capozzilawoffices.com
   www.capozzilawoffices.com
5

6  ATTORNEY FOR Defendant,
   ADAM ALAN HENRY
7

8

9              **UNITED STATES DISTRICT COURT**

10             **EASTERN DISTRICT OF CALIFORNIA**

11                        \* \* \* \* \* \*

12  UNITED STATES OF AMERICA,          Case No.: 1:13-CR-00409 DAD-BAM

13                 Plaintiff,          **REPLY TO GOVERNMENT'S**
                                       **OPPOSITION TO MOTION FOR**
14        v.                           **ACQUITTAL AND NEW TRIAL**

15                                     *Evidentiary Hearing Requested*

16  ADAM ALAN HENRY,
                                       **Date: April 30, 2018**
17                 Defendant.          **Time: 1:30 p.m.**
                                       **Court: 5**
18

19

20  **TO:   THE ABOVE ENTITLED COURT AND TO THE UNITED STATES**
          **ATTORNEY GENERAL FOR THE EASTERN DISTRICT OF CALFIORNIA:**
21

22        Defendant, Adam Alan Henry, by and through his attorney Anthony P. Capozzi,

23  hereby replies to the Government's Opposition to Defendant's Motion for Acquittal under

24  Rule 29(c) and for New Trial under Rule 33(a).

25

26  **I.    The Evidence On Count One Was Not Sufficient To Establish A Violation Of 18**

27        **U.S.C. § 2251(a) and (e) Conspiracy To Sexually Exploit A Minor.**

28        The essence of the Government's case was a video surreptitiously taken by Angele

1    Henry of a minor in her bedroom, ten screenshots from the video, a video taken from a

2    bathroom camera set up by the Defendant and his wife and three screenshots from that video.

3           The bathroom video depicts adults, the minor child, Angele Henry, the Henry's

4    children and Mr. and Mrs. Todd, the parents of the minor child utilizing the bathroom.

5           The Government contends that these videos and screenshots satisfy the definition of a

6    **minor engaged in sexually explicit conduct.** The Government further argues that an

7    agreement alone is sufficient to support a conviction for conspiracy to sexually exploit a

8    minor.

9           The Government cites *United States v. Johnston*, 759 F.3d 934, 940-41 (9th Cir. 2015)

10   (Gov't Opp 2:17) for the fact that a defendant does not have to accomplish the object of a

11   conspiracy since the criminal act is the agreement. In *Johnston* federal agents found chat logs

12   of the defendant asking a co-conspirator to take pictures of nude children for him. (*Id.* at 937-

13   938)   Clearly, this is sufficient evidence of an agreement in *Johnston* however no such

14   evidence exists in the present case.  The record herein is devoid of any evidence to establish

15   an argument to **"use a minor engaging in sexually explicit conduct."**

16          The Government attempts to establish an agreement by referring to the videos and

17   screenshots as evidence of the agreement to sexually exploit a child.  However, the videos and

18   screenshots do not meet the criteria set out in *United States v. Overton*, 573 F.3d 679, 686 (9th

19   Cir. 2009) wherein the court stated:

20                      [T]he trier of fact will often look to six factors to determine
21                      whether a visual depiction of a minor constitutes a "lascivious
                        exhibition of the genitals or pubic area" in the particular case:

22                              1) whether the focal point of the visual depiction is on the
23                                 child's genitalia or pubic area;
                                2) whether the setting of the visual depiction is sexually
24                                 suggestive, i.e., in a place or pose generally associated
                                   with sexual activity;
25                              3) whether the child is depicted in an unnatural pose, or in
                                   inappropriate attire, considering the age of the child;
26                              4) whether the child is fully or partially clothed, or nude;
27                              5) whether the visual depiction suggests sexual coyness or
                                   a willingness to engage in sexual activity;
28

6) whether the visual depiction is intended or designed to
elicit a sexual response in the viewer.
Quoting *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal.
1986)

It is important to emphasize that the camera set up in the bathroom was elevated and inside a hanging plant above the shower/tub. It was not situated on the lower extremities of the body to facilitate the focus on the genital or pubic area.

In *Overton*, the three pictures utilized to convict the defendant were photos that depicted a lascivious exhibition of the genitals or pubic area of the victim. (*Id.* at 687.)

Neither the videos nor the screenshots, in this case, depict a lascivious exhibition of the genitals or pubic area of the victim, A.T. i.e. the focal point of the videos and screenshots are not of the genitals or pubic area of the victim.

Without any evidence of **"using a minor to engage in any sexually explicit conduct,"** there is a lack of any evidence to establish a conspiracy **"to utilize a minor to engage in sexually explicit conduct"** without additional evidence.

No evidence of an agreement has been produced by the Government other than the videos and the screenshots.  Without more it would strain the fabric of law beyond reason to establish an agreement "to use a minor to engage in sexually explicit conduct."

The Government has not cited any Ninth Circuit cases that uphold a conviction under 18 U.S.C. § 2251(a) and (e) without videos or screenshots focusing in on the genital or pubic area of a minor.

Of the six factors mentioned in *Overton* and *Dost* supra, the only factor that may apply is that the victim is fully or partially clothed or nude.  That in itself is not sexual exploitation.

A review of the other *Overton* and *Dost* factors clearly indicate they are not present.

1.  There **is not** any focal point of the depiction of the child's genital or pubic area.

2.  The setting of the depiction **is not** sexually suggestive, i.e. the child is not lying in a bed or on a chair with legs spread, etc.

3.  The child **is not** depicted in an unusual pose or in inappropriate attire, considering her age.

4.  Child is fully or partially clothed or is nude.

5.  The depiction **does not** suggest sexual coyness or a willingness to engage in sexual activity.

6.  There is **no evidence** that the depiction was intended to elicit a sexual response from the viewer.

### CASES CITED BY THE GOVERNMENT

In *United States v. Helton*, 302 Fed. Appx. 842, (10th Cir. 2008) an unpublished opinion, cited on page four, line eight of the Government's brief, the defendant placed a camcorder at floor level directly across from the toilet and angled it upward toward the toilet. The minor is videotaped sitting on the toilet, standing up and pulling up her underpants. Her underpants are the center of the focused area. The underpants and pubic area comprise the primary image for 1 ½ to 2 minutes in exhibit one.

Exhibit two was a copy of a second videotape which shows the defendant's 7 year old daughter sitting on the toilet, her pubic area and genitalia were not exposed.  Also depicted was a 14 year old girl undressing for a shower, breasts and buttocks displayed but her pubic area was not visible.

The defendant was indicted **ONLY** on exhibit one which was the video that focused on the genital and pubic area. None of these facts appear in this case.

In *United State v. Theis*, 853 F.3d 1178 (10th Cir. 2017), cited on page four, line 21 of the Government's brief, hidden cellphones were used to secretly record an 11 year old girl while she showered and used the toilet.  The recordings were transferred to the defendant's computer where he created still images which **focused** on her genital and pubic area. No such pictures exist in this case.

In *United States v. Clark,* 468 Fed. Appx. 102 (3rd Cir. 2011), an unpublished opinion, cited on page five, line five of the Government's brief, the defendant placed his cellphone at waist level in the bathroom to record his 14 year old step-daughter.  She is seen undressing and while naked, using the sink, mirror, and sometimes the toilet, and then stepping into the shower.  The genitals, pubic area, and buttocks were visible, often appearing to be only inches

from the camera.  The *Clark* court, in upholding the defendant's conviction for 18 U.S.C. § 2251(a), held that the image was intended or designed to elicit a sexual response and the focus was on "the photograph, rather than the viewer." None of these facts appear in this case.

In *United States v. Holmes,* 814 F.3d 1246 (11th Cir. 2016) cited on page six, line four of the Government's brief, the defendant surreptitiously videotaped his teenage daughter performing her daily bathroom routine while in the nude from a recorder set up underneath the vanity at waist height.  Another recorder was hidden in the bathroom on the counter top level. Fifteen videos were recorded which depicted the minor from the waist up. None of which were introduced at trial. *Id.* at 1248.

However, eight videos recorded from the video camera hidden under the lip of the vanity counter top, show the minor completely naked with her nude pubic area plainly visible. All of these were introduced at trial. *Id.* at 1248.

The court held that capturing the images of the minor's pubic area, and the defendant's editing of the videos was sufficient to create a lascivious exhibition of the genitals or pubic area.  None of these facts exist in this case.

In *United States v. Miller,* 829 F.3d 519 (7th Cir. 2010) cited on page six, line 25 of the Government's brief, the defendant cut a hole through the drywall from a basement utility room into the basement bathroom.  He used his cellphone to take photos and videos of five minor females. The court found that he had focused on the minor's pubic area of the videos and took a number of steps to cut a hole, set up the camera and instructed the girls to take their showers in the basement bathroom.  Those actions led the court to believe that the defendant intended to view the minors for his own sexual arousal. *Id.* at 523.  None of these facts exist in this case.

In *United States v. Johnson,* 639 F.3d 433 (8th Cir. 2011) cited on page eight, line six of the Government's brief, the defendant, a weight lifting coach set up a hidden video camera on the shelf of a small table across the room from the scale where the women athletes had to weigh themselves, without clothing.  The court held that a reasonable jury could find that the defendant adjusted the zoom feature on the camera in an attempt to tighten the focus of the camera on the area where the females' genitals would be.  The video clips also showed the

females generally from their shoulders to their calves, including their naked breasts which indicated that the defendant attempted to obtain images portraying them as sexual objects and that their facial features were apparently of little or of no importance. *Id.* at 440.  None of these facts exist in this case.

Further, on page five, lines 9-18 of its opposition brief, the Government **concedes** that the cameras were elevated and hidden from plain sight, and difficult for the images to focus exclusively on the genital or pubic area.  The Government further conceded that if the material did not suggest sexual coyness, this factor is not as important since the minor did not know she was being recorded (citation omitted).

The Government argued that the second and third factors are arguable: some of the screenshots were from a video of the minor in the bedroom, a place generally associated with sexual activity, id. ("Traditional settings that meet this standard are beds or bedrooms."); and the minor was depicted in those screenshots putting on a corset and wearing a bikini.  Some show her exposed breasts.

The fourth factor undisputedly favors the Government, because the minor was often fully naked in the bathroom videos.

Finally, the sixth factor favored the Government, because the photos of the minor were intended or designed to elicit a sexual response from the viewer. The defendant stored the recordings of the minor on a password-protected side of his NAS along with his other pornographic materials and next to other surreptitious recordings. He viewed those videos and took screenshots of the minor at moments when she was fully naked and in the most sexually provocative poses.

These arguments display the obvious weakness of the Government's position which is a clear indication of the lack of sufficient evidence to uphold the conviction on Count One.

Based upon the facts in this case, without any depiction or focus on the genital or pubic area of the child and without any evidence of an agreement to "use a minor to engage in any sexually explicit conduct," Count One of the Superseding Indictment should be dismissed.

Further, the evidence required for a violation of 18 U.S.C. § 2251(a) must depict

sexually explicit conduct, as defined by 18 U.S.C. § 2256.  The evidence in this case, while voyeuristic, does not meet the requirements of 18 U.S.C. § 2251(a).  Accordingly, Adam Henry should be acquitted on Count One of this Superseding Indictment.

II.     **A Mistrial Should Have Been Granted Due To The Government's Violation Of The Defendant's Fifth and Sixth Amendment Rights.**

Based upon the Defendant's motion for mistrial the court ruled as follows:

> THE COURT: Based upon the testimony I've heard so far, unless it's challenged, I'm going to modify my ruling to find that the defendant was in custody at the time of the statement.

> THE COURT: Okay.  The motion is still denied. I will modify the ruling in that I am now finding, based upon what's in front of me now, without prejudice to something different or more being presented by either side, that the defendant was in custody at the time.

> And I am basing my denial of the motion to strike and the denial of the motion for mistrial on the grounds that the Child Protective Services Officer was not a law enforcement officer, was not acting in concert with law enforcement officers in connection with his conversation and that his conversation and inquiries posed to the defendant with respect to child welfare did not constitute an interrogation.

> But I am modifying the ruling and concluding that he was, in fact -- I said before it wasn't clear to me. I'm now changing that, I'm ruling he was in custody at the time this exchange took place. I'm basing my ruling on the fact that the CPS officer was not a law enforcement officer, was not acting as a law enforcement officer and did not engage in an interrogation of the defendant. Otherwise same ruling. Always without prejudice. If anybody's got any authority, they can certainly bring it to my attention and I'll reconsider.

(RT (Day 6) 40:2-5; 40:11-25; 41:1-7)

In analyzing the court's ruling, the court emphasized the following as a basis in denying Defendant's motion for mistrial:

1. Child Protective Services Officer was not a law enforcement officer. (RT 40:18-19)

2. CPS Officer not acting in concert with law enforcement officers in connection with

---

1  his conversation. (RT 40:15-20)

2      3.  CPS Officer's conversation and inquiries posed to the Defendant with respect to

3  child welfare did not constitute an interrogation. (RT 40:20-22)

4

5      **A.  CPS Officer Jose Antonio Ruezga Was A Law Enforcement Officer And Acted**

6      **In Concert With Law Enforcement In Connection With The Investigation.**

7      California Penal Code § 830.3 states in pertinent part:

8          The following persons are peace officers whose authority extends
9          to any place in the state for the purpose of performing their
           primary duty or when making an arrest pursuant to Section 836
10         of the Penal Code as to any public office with respect to which
           there is immediate danger to person or property, or of the escape
11         of the perpetrator of that offense, or pursuant to Section 8597 or
           8598 of the Government Code. Such peace officers may carry
12         firearms only if authorized and under such terms and conditions
13         as are specified by their employing agencies:

14         (h) All investigators of the State Departments of Health Services,
15         *Social Services*, Mental Health, Developmental Services, Alcohol
           and Drug Programs and the Office of Statewide Health Planning
16         and Development, and the Public Employees' Retirement
           System, provided that the primary duty of any such peace officer
17         shall be the enforcement of the law relating to the duties of his or
           her department, or office. Notwithstanding any other provision of
18         law, investigators of the Public Employees' Retirement System
19         shall not carry firearms. (Emphasis added.)

20     The California Center for Research on Women and Families published a child welfare

21 overview in 2002 which was updated in 2009 entitled *Understanding the Child Welfare System*

22 *in California: A Primer for Service Providers and Policymakers*.  This primer states that the

23 California Department of Social Services (CDSS) operates using a state-administered/county-

24 implemented model of governance.…CDSS monitors and provides support to counties through

25 regulatory oversight, administration, and the development of program polices and regulations.

26     The county department…administers and provides local child welfare and foster care

27 services under Sections 300 et seq. and 16500 et seq. of the California Welfare and Institutions

28 Code.

1  According to the California Department of Social Services website
2  (http://www.cdss.ca.gov/inforesources/Child-Welfare-Protection) the bureau's policy area
3  includes the investigation of Child Abuse and Neglect, assessment of the children and families
4  that come to the attention of child welfare services (CWS), and includes intervention programs
5  such as CWS Emergency Response (ER) and Family Maintenance (FM) services provided by
6  county welfare departments, probation departments, and Indian tribes.

7  Under California law, Mr. Ruezga is considered a peace officer pursuant to Penal Code
8  section 830.3(h).  At the very least he displayed himself as an agent of law enforcement by
9  attending the pre-search meeting, taking part in the search of the Defendant's home and asking
10  the Defendant questions while he is arrested, handcuffed, and in custody.

11  Mr. Ruezga's report (filed under seal as Documents 232 and 233) indicates that on
12  November 13, 2013, at 6:30 a.m. **he responded** to a meeting with Ceres Police Detectives Art
13  Hively and Britton Moore, and FBI Special Agent Mark Lucas and his team for a briefing of a
14  search warrant for the Defendant's residence.  They were searching for various items in
15  connection with the receipt/distribution of child pornography and production of child
16  pornography.

17  Mr. Ruezga's report indicates that the Defendant was secured by being handcuffed. **Mr.**
18  **Ruezga reviewed the referral allegations with the Defendant.  The Defendant** stated he was
19  not sure of what he was being arrested for but reported his wife had nothing to do with his
20  charges.

21  **He denied** that his children were ever involved with anything and **stated** that the
22  children were not exposed to anything that was inappropriate.

23  **He reported** that everything was concentrated to their bedroom where the children do
24  not have access.

25  In *People v. Acosta,* 2017 Cal. App. Unpub. LEXIS 8053, 2017 WL 5664230
26  (unpublished opinion) on November 27, 2017, the Fifth District Court of Appeal presumed
27  without deciding, that a CPS worker who questioned a Defendant while he was in jail pending
28  charges **was a state agent** for purposes of **Miranda** when she interviewed the defendant and

1    obtained incriminating statements. (*Id.* at p. 10)

2        The *Acosta* court ultimately held the statements of the defendant admissible since the

3    defendant had been in jail for three days, the CPS worker told the defendant she had nothing to

4    do with the criminal investigation and was just trying to figure out what was in the best interest

5    of the children. (*Id.* at p. 22.)

6        In the present case of the Defendant, the CPS worker, Ruezga, never said that he had

7    nothing to do with the criminal investigation and Mr. Ruezga had all the attributes of a law

8    enforcement officer in that he was in control of the situation.  His conduct was tantamount to

9    what a law enforcement officer would do under the circumstances.  He met with the FBI and

10   local police, at their request, prior to the search and entered the Defendant's residence along

11   with the other law enforcement authorities.

12       In *People of the State of New York v. Greene,* 306 A.D.2d 639, 760 N.Y.S.2d 769

13   (2003) (exhibit 'D' of Defendant's motion for new trial), where a defendant, while in jail and

14   represented by counsel was interviewed by a CPS worker.  The worker knew the defendant had

15   an attorney but said he did not have to talk to her (this advisement was not made in the present

16   case) and went on to obtain a statement which incriminated the defendant.

17       The *Greene* court stated that the defendant had an attorney and could not have waived

18   his right to an attorney without his counsel being present. (*Id.* at p. 640)  The court found the

19   CPS worker to be an agent of the police.

20       The court further found that since the evidence was utilized by the prosecutor as rebuttal

21   evidence, the evidence could only have been considered by the jury on the issue of credibility

22   and since the jury was not so instructed, error also occurred by allowing into evidence prior

23   acts without the jury being given a limiting instructions.

24       Mr. Ruezga asked the Defendant questions for 15 minutes after the Defendant was

25   arrested, handcuffed, not free to leave, after he retained an attorney and invoked his *Miranda*

26   rights. (RT 28:2-12)

27       This cannot be considered anything but outrageous Government conduct. The FBI and

28   local police advised the Defendant of his *Miranda* rights, which he refused to waive, explaining

1   that he had an attorney, and then allowed a CPS officer to further question the Defendant. The

2   ultimate outrageous conduct is to then use the Defendant's statement in rebuttal to impeach the

3   Defendant and attempt to destroy his credibility at trial.

4          Such conduct should not be condoned.  A Defendant is entitled to a fair trial, not a trial

5   by ambush which this was by the Government (without seeking a motion in limine prior to the

6   testimony of Mr. Ruezga to determine if this testimony was permissible).   The jury was

7   allowed to hear testimony of a Defendant's statement **after** he had invoked his *Miranda* rights.

8   The prejudice to the Defendant clearly outweighs any probative value. This was utilized to

9   damage the Defendant's credibility without the jury being given a limited instruction contrary

10  to the dictates of *Greene supra*.

11         There can be no question that Mr. Ruezga was a law enforcement officer, was an agent

12  of law enforcement and was acting as a law enforcement officer under the circumstances.

13

14         **B.  The Defendant Was Interrogated By CPS Officer Jose Antonio Ruezga On**

15         **November 13, 2013.**

16  Reporters Transcript, Day 6, 6:17-22:

17              [MR. CAPOZZI]:  Did he make any other statements to you?

18              A. We had some conversation, yes. I don't recall everything that he said,

19         sir.

20              Q. Wait. I didn't hear what you said.

21              A. We did have other conversation, sir. I don't recall everything that he

22         told me.

23  Reporters Transcript, Day 6, 8:9-21:

24              Q. Okay. Did he also say that none of the children were involved in or

25         exposed to anything inappropriate?

26              A. Yes, he did.

27              Q. Okay. And everything was concentrated to the bedroom, where the

28         children had no access?

---

1    A. That was what he told me.

2    Q. Right. So what was he talking about? Sex with his wife in the

3    bedroom?

4    A. I don't know, sir.

5    Q. Was he talking about child pornography?

6    A. Maybe. Yes, sir.

7    Q. You think so?

8    A. I think so.

9    Mr. Ruezga was recalled as a witness and the following questions were asked by the

10    court:

11    THE COURT: What did you ask him, sir?

12    THE WITNESS: I don't recall specifically what I asked. The
     reason I was there is to conduct a child welfare investigation.

13    And my question was not entered into that document. So I don't
     recall the actual question, but the question that I would have

14    probably been asking Mr. Henry would be were the children

15    present? Was there anybody else involved with the child -- with
     whatever was going on? And then he -- and then that was his

16    answer, what he gave me.

17    As towards the end of my statement there, he continued saying

18    that the children were not involved – the children were not privy
     to whatever was going on, that everything was within the

19    bedroom.

20    THE COURT: So you knew that it was a child pornography

21    investigation?

22    THE WITNESS: Yes, sir.

23    THE COURT: And you think that what you would have asked

24    him and what is referred to is "Was anyone else involved?"

25    THE WITNESS: Correct.

26    THE COURT: And you would have done that because you would

27    want to know whether or not you could leave the children in that
     location?

28

1    THE WITNESS: Correct, sir.

2    THE COURT: Okay. And you think you asked that question in
3    this case?

4    THE WITNESS: I believe so, sir.

5    THE COURT: All right.

6  (RT (Day 6) 22:25; 23:1-25; 24:1-2)

7        The following questions were asked by defense counsel and the court:

8    BY MR. CAPOZZI: Well, did you ask him about child
9    pornography?

10   A. I don't recall, sir.

11   Q. You don't recall. Then why were you there?

12   A. I don't recall –

13   MR. GAPPA: Asked and answered.

14   THE WITNESS: If I –

15   THE COURT: Overruled.

16
17   THE WITNESS: I don't recall if I particularly asked him that
     question. But I -- I'm pretty sure I did.

18
19   MR. CAPOZZI: Yeah.

20   Q. You had reports of child pornography being on a computer?

21   A. That was the understanding.

22   Q. Right. And that's why you were there.

23   A. Correct.

24   MR. CAPOZZI: Okay. Thank you.

25
26   THE COURT: As a result of -- first of all, tell me, as best you
     can recall, what questions you asked of Mr. Henry?

27
28   THE WITNESS: My question would have been if the children
     were involved in any of the pornography. If they had any

REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR ACQUITTAL AND NEW TRIAL
CASE NO.: 1:13-CR-00409 DAD

1    knowledge of it. Or they were either viewing it or being exposed
2    to it.

3    THE COURT: Okay. And do you recall what answer you got?

4    THE WITNESS: The only answer that I can recall was the
      statement that was given, that everything was kind of concerning
5    the bedroom, constrained in the bedroom and the children had no
      access to it.
6

7    THE COURT: Did you ask any other questions?

8    THE WITNESS: Yes. The other questions I probably would have
      asked, the well being of the children as far as medical
9    information and so forth.

10   THE COURT: Any other questions?
11
12   THE WITNESS: Not that I can recall.

13   THE COURT: Did you ask specifically whether anyone else was
      involved with child pornography?
14

15   THE WITNESS: No. I don't recall.

16   THE COURT: Are you saying that when you asked about the
      child pornography in general, that Mr. Henry merely offered in
17   response, "The children aren't exposed to any of this. I'm not sure
      of the charges that are against me but whatever they are, my wife
18   wasn't involved in it"?

19   THE WITNESS: As I recall, that was the conversation.

20   THE COURT: How long do you think your entire conversation
21   with Mr. Henry took place on that day?

22   THE WITNESS: Probably 15 minutes.
23
      THE COURT: 15 minutes. That's quite a while. That's not very
24   many questions. What else did you talk about?

25   THE WITNESS: Concerns about the house. The well being of
      the children within the household.
26

27   (RT (Day 6) 26:17-25; 27:1-25; 28:1-17)

28   ///

---

REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR ACQUITTAL AND NEW TRIAL
CASE NO.: 1:13-CR-00409 DAD

1   Mr. Ruezga had a 15 minute, what he called a conversation, with the Defendant while

2   he was handcuffed and under arrest.   The definition of a conversation is "an informal talk

3   involving two or more people; the act of talking in an informal way."   The definition of an

4   interrogation is "to ask someone questions in a thorough and often forceful way."

5   To find that under the circumstances where the Defendant is handcuffed, arrested, in

6   custody, not free to leave, where he indicated that he had retained an attorney and refused to

7   answer questions, the 15 minute period of time with Mr. Ruezga cannot be considered anything

8   other than an interrogation.   Under these circumstances where the interrogation concerned child

9   pornography and the involvement of his wife and children, to say that this was merely a

10   conversation and not a law enforcement interrogation would again strain the fabric of law

11   beyond reason.

12

13   **C.  The Government's Comments Were Highly Prejudicial To The Defendant.**

14   The Government's comments in its rebuttal that defense counsel had done his job to

15   distract and deflect and to give alternative facts or to argue things that aren't necessarily what

16   actually happened is essentially saying that the defense attorney is lying.   These comments

17   were highly prejudicial to the Defendant and a violation of due process.

18

19   **III.   Conclusion**

20   It is respectfully requested that the court grant the Defendant's motion for a mistrial,

21   order a new trial or in the alternative acquit the Defendant on both counts for the lack of

22   sufficient evidence to sustain a violation of 18 U.S.C. § 2251(a) and (e) and 18 U.S.C. §

23   2252(a)(2).

24   Respectfully submitted,

25   Dated:   April 2, 2018   By:   */s/Anthony P. Capozzi*

26   ANTHONY P. CAPOZZI
        Attorney for ADAM ALAN HENRY

27

28