McGREGOR W. SCOTT
United States Attorney
DAVID GAPPA
ROSS PEARSON
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:13-CR-0409-DAD |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT RESPONSE TO DEFENSE FILINGS REGARDING WITHDRAWN DEFENSE DISCOVERY MOTION |
| ADAM ALAN HENRY, | |
| Defendant. | DATE: May 29, 2018<br>TIME: 2:15 p.m.<br>COURT: Hon. Dale A. Drozd |

The government has reviewed the defense filings at Docket Items 299 and 299-1 with corresponding attachments. The defense has stated that the "Government **did not** produce Government Exhibit 28.13 (the screenshot of the victim) prior to the Friday before the jury trial." Docket 299 at 1, lines 22-23 (emphasis in original). The defense has then gone on, at length, to reference statements from a detective who did much of the computer forensic analysis in an effort to convince the court that the government never referred to or provided evidence of what became Exhibit 28.13 until November 3, 2017. The defense presentation is surprisingly incomplete and inaccurate, especially in light of prior concessions that the government did provide a copy of the image to the defense. The government has fully complied with, if not exceeded, its discovery obligations throughout the prosecution of this case and will continue to do so.

The government initially provided discovery, mainly consisting of investigative reports with Bates numbers 1-290, to initial defense counsel Daniel Haralson on December 5, 2013. The government

transmitted this in a letter (Attachment A) that also stated:

> In addition, as we discussed by phone yesterday, the government will provide a copy of the digital evidence in this case to your expert at the FBI office in Sacramento. I will send separately a proposed protective order that has been entered in other similar cases. I'm told that Marcus Lawson's office should provide to Ceres Police Detective Britton Moore one or more hard drives onto which approximately 15 TB of data can be copied. Lawson's office can contact Detective Moore directly at 209-538-5627 to make arrangements for shipment of the drive(s) to the Ceres Police Department. Once the data has been copied, Detective Moore will have it sent to the Sacramento FBI office. This procedure has worked well in other cases.

Although the defendant switched to attorney Capozzi on approximately December 9, 2013, the defense continued to work with retained expert Marcus Lawson, and the procedure to provide all requested digital evidence was not interrupted.

The government made an exact copy of the Netgear Ready NAS, which became Exhibit 9 in the trial, and made that available through the Sacramento office of the Federal Bureau of Investigation. Without attributing fault to the defense, the government notes that it was not until mid-March 2014, that the defense clarified what and how it wanted the contents of that item provided. But Mr. Lawson communicated the following on March 16, 2014:

> Hello Detective Hively,
>
> I apologize for the delay in answering you.  * * *
>
> Thank you for reaching out for clarification on Item 9. Indeed an 8TB raid array is a challenging proposition. How did you image it for your own review? Did you image it in its native format as one large case file or each drive separately for your own review. I'm thinking the way you imaged it for your own review is fine for us to go with too, especially if you already have it acquired as an EnCase case file, that would be the easiest think for both of us I would think. Do you remember what type of raid it was?
>
> It has been awhile since I read the discovery on this matter and I don't recall the specifics of Item 16, but from your email it sounds like this was a desktop computer with 8 separate hard drives ... not another raid array? If that is the case, then yes, E01 images for each of the drives would be fine.
>
> What would be very helpful is if you can lable them something along the lines of "Item 16 a through h" so I can keep them straight.
>
> So much media looks to be a daunting task to both copy and examine.
> Thank you for clarifying with Ms. Isaak and again, I apologize for my delay in responding.

The requested copy of what became Exhibit 9 arrived at the Sacramento FBI office on approximately March 27, 2014. That copy of the defendant's Network Attached Storage device (Exhibit 9) contained a copy of what became Government's Exhibit 28.13.

Almost exactly one year later, the defense expert communicated to the prosecutor handling the case (Mike Tierney) that he was having difficulty accessing the copy of Exhibit 9 that had been provided. As a result, the government made additional copies of Exhibit 9 and provided those for the defense at the FBI office in Sacramento. Those copies were made available beginning on approximately April 6, 2015. Because they were exact copies of the original version of the defendant's Network Attached Storage device (Exhibit 9), this version of the device also contained a copy of what became Government's Exhibit 28.13. This version of what became Exhibit 9 remained available for the defense review through the time of the trial in November 2017 (and still remains available for review).

But the government did more than merely make the evidence available at the Ceres Police Department (which arguably would have satisfied its obligation under Federal Rule of Criminal Procedure 16), and it did more than provide copies of the evidence to the defense in the manner (requested) that would make it most convenient to the defense expert in Sacramento. As relevant evidence was encountered by investigators, law enforcement investigators documented findings and prepared reports. Sometimes government counsel gave courtesy oral updates by phone to defense counsel. Other times the government provided draft reports of new findings. For example, the government provided Mr. Capozzi on March 27, 2017, with a draft 33-page report that summarized ongoing government investigation and trial preparation. The report summarized some of the challenges in reviewing evidence but also contained reference to what became Exhibit 28.13. Those are noted on the first pages of the report. On Bates 1103 and 1104 Detective Hively provided screen captures from his forensic software that showed the contents of two folders that the defendant had labeled with the victim's name. Bates 1103 and 1104 both reference Untitled11.jpg with a file creation date of 5/27/13.

This is a screen capture that the defendant created from a video that also became a trial exhibit (Exhibit 27.7). It appears that the defense, as part of Docket 299, chose to submit some pages from this 33-page report, but not these pages. The government has attached what it believes are the five most important pages from that 33-page report as Attachment B. In the government's view, this establishes that the defense was provided with notice of what became Exhibit 28.13 no later than March 27, 2017.

The government provided another version of this report, once it was finalized and approved, to the defense on July 24, 2017. Attachment C, specifically Bates 1302 and 1303, contains relevant excerpts and shows that what became Exhibit 28.13 was identified as one of several still images in two folders labeled with the victim's name on what became Exhibit 9. The defense filing at Docket 299 incorrectly asserts that prior "to May 14, 2018, the defense **has never seen** [sic] these pictures or knew of their existence" (emphasis in original). The defense also has stated that the "Government is now trying to imply that the discovery provided on May 14, 2018, had been provided at time [sic] prior to the beginning of the jury trial." This is incorrect, because not only did the defense have access to the evidence at the Ceres Police Department, it was given two copies of what became Exhibit 9 at the Sacramento FBI office. Also, as outlined above, the government identified the contents of folders that the defendant had labeled with the victim's name and identified not just ten screen captures (which the defendant created), but eleven screen captures (which the defendant created), including what became Exhibit 28.13. The images finally received an exhibit sticker (including 28.13) and appeared within the government's exhibit binder within the deadline set by the court.

To his credit, the defense expert visited with Detective Hively on April 24, 2018, and verified that Untitled11.jpg indeed was on the copies of what became Exhibit 9 that the government had made available for years before the trial started. These are the very images that the government also identified in two reports beginning approximately eight months before the trial began. To his credit, once the defense realized this at the last hearing, defense counsel acknowledged the government's representations

and at least twice withdrew his motion for discovery and conceded that the images had been provided. To his credit, Mr. Capozzi stated, "You know, it's there on the computer. There's no question about it. Our expert looked at it last week and it's there." Transcript of April 30, 2018, Hearing at 17, lines 16-18.

Because the government complied with its discovery obligations, the court should deny the defense motion for discovery and deny that part of the motion for a new trial that is premised upon the allegedly untimely receipt of the image that became Exhibit 28.13.

Dated: May 25, 2018

McGREGOR W. SCOTT
United States Attorney

By: /s/ DAVID GAPPA
DAVID GAPPA
ROSS PEARSON
Assistant United States Attorneys