UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADAM ALAN HENRY,<br><br>Defendant. | No. 1:13-cr-00409-DAD-BAM<br><br><u>ORDER DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL, MOTION FOR A NEW TRIAL, AND MOTION FOR DISCOVERY</u><br><br>(Doc. Nos. 254, 260) |

This matter is before the court on defendant Adam Henry's motion for a judgment of acquittal—or in the alternative, motion for a new trial—and motion for discovery. (Doc. No. 254, 260.)

**BACKGROUND**

Defendant Henry was charged by way of a superseding indictment with conspiracy to sexually exploit a minor in violation of 18 U.S.C. §§ 2251(a) and (e), and receipt and distribution of a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 110.) After lengthy pretrial proceedings, on November 7, 2017 the jury trial commenced. On November 17, 2017, after approximately five hours of deliberation over two days, the jury returned their verdict, finding defendant guilty on both counts. (Doc. No. 236.)
/////

After seeking and receiving an extension of time in which to file post-trial motions (Doc. Nos. 243, 244), on January 8, 2018, defendant filed his motion for a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, and also moved in the alternative for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). (Doc. No. 254.) On January 10, 2018, defendant filed a motion for discovery related to his motion for a new trial. (Doc. No. 260.) The government filed its opposition on February 26, 2018. (Doc. No. 278.) Defendant filed his reply on April 2, 2018. (Doc. No. 285.) After several stipulated continuances, an initial hearing on defendant's motions was held on April 30, 2018. Assistant United States Attorneys David Gappa and Ross Pearson appeared for the government. Attorney Anthony Capozzi appeared on behalf of defendant Henry. At that hearing, the court determined that an evidentiary was necessary with respect to one aspect of defendant's motion. That evidentiary hearing was conducted on May 29, 2018, at which time the court also heard further argument from the parties.

Having considered the parties' briefing, and having heard the arguments of counsel, for the reasons set forth below defendants' motions will be denied.

**LEGAL STANDARDS**

**A.  Judgment of Acquittal**

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). In reviewing a challenge to the sufficiency of the evidence, the court must ask whether, viewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hursh*, 217 F.3d 761, 767 (9th Cir. 2000) (quoting *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996)); *see also United States v. Garrison*, 888 F.3d 1057, 1063 (9th Cir. 2018). The Supreme Court has established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en

banc) (citing *Jackson*, 443 U.S. at 319). "Second, the reviewing court must determine whether this evidence, so viewed, is adequate to allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *United States v. Katakis*, 800 F.3d 1017, 1023 (9th Cir. 2015) (internal ellipses and quotation marks omitted) (quoting *Nevils*, 598 F.3d at 1164). "[E]vidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case, or where there is a total failure of proof of a requisite element." *Id.* (internal quotation marks and citations omitted). However, "the government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or 'rule out every hypothesis except that of guilt beyond a reasonable doubt.'" *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 326); *see also United States v. Aubrey*, 800 F.3d 1115, 1127 (9th Cir. 2015).

**B.     New Trial**

In addition, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000). In considering a motion for a new trial, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Kellington*, 217 F.3d at 1095; *see also United States v. Katakis*, 252 F. Supp. 3d 988, 992 (E.D. Cal. 2017). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Kellington*, 217 F.3d at 1097 (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). Nonetheless, such authority is to be exercised only where extraordinary circumstances are presented. *United States v. Imran*, 964 F.2d 1313, 1318 (2d Cir. 1992); *Katakis*, 252 F. Supp. 3d at 992.

/////

/////

**DISCUSSION**

Here, defendant Henry has raised multiple arguments in support of his motion for entry of a judgment of acquittal or, in the alternative, a new trial. The court addresses each in turn.

**A.     Sufficiency of the Evidence on Count One**

Defendant first contends that the evidence introduced at his trial, as a matter of law, was insufficient to support a guilty verdict on count one of the indictment, charging him with conspiracy to sexually exploit a minor in violation of 18 U.S.C. §§ 2251(a) and (c).

The court instructed the jury that to find defendant guilty of count one of the indictment, the government must prove beyond a reasonable doubt that: (1) there was an agreement between two or more persons to commit the crime of sexual exploitation of a minor; and (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to accomplish it. (Doc. No. 241 at 34.) To satisfy their burden as to that charge, the government introduced evidence at trial that defendant and his wife, Angele Henry, acted in concert to place and arrange a hidden camera in the bathroom of their home, which captured images of the minor victim A.T. These images, which depicted A.T. in various stages of undress, were then sorted, saved, and stored on a password-protected hard drive in defendant's home.

Although defendant appears to concede (at least for the sake of argument) that there was evidence presented that he and his wife conspired, he argues the evidence at trial was insufficient to demonstrate that they conspired *to sexually exploit a minor*. In support of this argument, defendant emphasizes that the hidden camera in their bathroom was installed high above the ground, and "was not situated as to focus on the lower extremities of the body." (Doc. No. 254 at 3.) Defendant takes the position that while his and his wife's actions may have amounted to voyeurism, they did not constitute sexual exploitation. Defendant also argues that under the so-called *Dost* factors, the images he secretly captured of A.T. did not amount to a lascivious exhibition, and therefore did not depict sexually explicit conduct. *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *and aff'd*, 813 F.2d 1231 (9th Cir. 1987).

/////

4

As noted above, defendant was charged in count one of the superseding indictment with conspiracy to sexually exploit a minor; he was not charged with the substantive offense of sexually exploiting a minor. When an individual is charged with a conspiracy offense, "[t]he agreement is the essence of the crime." *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997); *see also United States v. Loveland*, 825 F.3d 555, 561 (9th Cir. 2016) ("The agreement is an element of the crime, and has to be proved."). Moreover, conspiracy to violate 18 U.S.C. § 2251 does not require that an overt act be committed for the crime of conspiracy to be fully accomplished. *See United States v. Grovo*, 653 Fed. App'x 512, 514 (9th Cir. 2016) ("Unlike the general conspiracy statute, which expressly requires proof of an overt act, § 2251(e) makes no mention of such a requirement.") (citing *United States v. Skillman*, 922 F.2d 1370, 1375 (9th Cir. 1990)).[1] Thus, defendant's conviction on count one does not stand or fall depending upon whether the images of A.T. he was successful in capturing portrayed sexually explicit conduct.

Nonetheless, whether the images constituted a lascivious exhibition—and therefore amounted to sexually explicit conduct—is relevant to the jury's determination of whether a conspiracy to sexually exploit a minor existed. *See United States v. Reed*, 575 F.3d 900, 924 (9th Cir. 2004) (noting that "a jury may infer the existence of an agreement from circumstantial evidence, such as the defendant's conduct"). If the defendant recorded and compiled sexually exploitative images of the victim, and then stored them in a place that was readily accessible only to he and his co-conspirator, that is some evidence that sexual exploitation was one of the aims of the conspiracy. In evaluating whether the images captured by the hidden camera constituted a lascivious exhibition under 18 U.S.C. § 2251, the jury at defendant's trial was instructed on the *Dost* factors. These, are, respectively:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

/////

---

[1] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

5

> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832.

Given the evidence introduced at trial, consideration of the first prong of the *Dost* factors may be viewed as somewhat favorable to defendant since, as defendant argues, the hidden camera he installed in the bathroom was positioned high and arguably did not focus on a specific portion of the bathroom, let alone on any victim's genitalia or pubic area. Consideration of the second factor cuts both ways: some of the images stored on the defendant's password-protected side of the hard drive at his home were taken in the bathroom, while others were taken in the couples' bedroom, the latter being a place associated with sexual activity. *See United States v. Steen*, 634 F.3d 822, 827 (5th Cir. 2011). The third factor is of only limited relevance in this case because the victim was obviously unaware that she was being recorded by hidden cameras. *Id.* at 827 n.23. Under the fourth *Dost* factor, several of the images introduced in evidence at trial depicted A.T. as only partially clothed, with some depicting her fully exposed breasts or buttocks. Consideration of this factor weighs in favor of finding the images to constitute a lascivious exhibition. The fifth factor is irrelevant in this case because, as with the third factor, the victim here was unaware that she was being filmed surreptitiously. Finally, under the sixth *Dost* factor, the images in question were stored on the password-protected side of defendant's hard drive alongside other pornographic material, suggesting that the images were intended to elicit a sexual response from the viewer. Thus, at least some of the *Dost* factors are triggered by the evidence presented by the government at defendant's trial.

/////

The court's review on a motion for judgment of acquittal is limited to the question of whether "*any* rational trier of fact" could have found the defendant guilty of the charged offense beyond a reasonable doubt. *United States v. Espinoza-Valdez*, 889 F.3d 654, 656 (9th Cir. 2018); *Katakis*, 800 F.3d at 1023. At trial defendant contested whether he and his wife acted with the purpose of sexually exploiting A.T., as opposed to some other purpose. In this regard, the defense advanced an alternative explanation – that defendant's wife was an "exhibitionist" who "would record herself in various activities alone and she wanted to be able to continue doing that," but that he did not intend to videotape any other people in their bathroom. (Doc. No. 270 at 24:20–25, 25:1–4.) Thus, rather than agreeing to sexually exploit a minor, defendant argues that the couples' agreement was merely to record his wife, Angele Henry, a consenting adult.

Although the explanation for his actions offered by defendant is perhaps plausible, it is clearly not the only conclusion that a reasonable factfinder could draw from the evidence introduced at defendant's trial. The prosecution presented evidence showing the defendant and his wife setting up the hidden camera together, adjusting the camera angles, taking test videos including one of defendant examining A.T.'s underwear and displaying it to the hidden camera. The government also introduced evidence that from the videos he obtained of A.T., the defendant created screen shots of the minor and saved them in a separate folder on the password protected side of his hard drive with A.T.'s name on it. From this evidence a reasonable jury could find that the defendant and his wife conspired to sexually exploit A.T. In short, the jury was confronted with competing explanations as to why the defendant installed a hidden camera in the bathroom of his home and rejected his version of events, as it was entitled to do. *See United States v. Johnston*, 789 F.3d 934, 941 (9th Cir. 2015) ("We decline to second-guess a reasonable jury's interpretation of the evidence."); *Katakis*, 800 F.3d at 1023 (government need not rebut all reasonable interpretations of the evidence that would establish the defendant's innocence). Defendant's motion for judgment of acquittal will, therefore, be denied.

For similar reasons, defendant's motion for a new trial will be denied as well. As indicated above, there was arguably competing evidence as to the object of the conspiracy between defendant and his wife. However, the evidence introduced at trial certainly does not

preponderate against the jury's verdict as to count one. *Kellington*, 217 F.3d at 1097. The evidence at trial established that defendant and his wife collaborated to install a hidden camera in their bathroom. This camera captured multiple images of A.T., some of which depicted her partially nude and which could reasonably be found to involve lascivious exhibition. Moreover, those images were stored by defendant on a password-protected hard drive kept in his home, and the evidence at trial suggested that only defendant and his wife, the two co-conspirators, had access to that hard drive. Based on this evidence, a reasonable trier of fact could find defendant guilty of the charge brought against him in count one. The court is not persuaded that a miscarriage of justice occurred as a result of the jury doing so. Accordingly, plaintiff's motion for a new trial based on the claimed insufficiency of the evidence will be denied.

**B.      Testimony of Jose Antonio Ruezga**

Next, defendant moves for a new trial based upon the testimony of government rebuttal witness Jose Antonio Ruezga, who at the time of defendant's arrest was an employee of Stanislaus County Child Protective Services ("CPS"). (Doc. No. 247 at 4:20–22.) Ruezga accompanied Ceres Police Department Detectives Arthur Hively and Britton Moore and FBI Agent Mark Lucas on November 13, 2013, when they executed a search warrant on defendant's residence. (*Id.* at 20:18–25, 21:1–3.) Ruezga stated that he accompanied the detectives and the agent in order to conduct his own CPS investigation. (*Id.* at 21:4–7.) At the home, Agent Lucas placed defendant in handcuffs and advised him of his *Miranda* rights, at which time defendant invoked his right to an attorney. (*Id.* at 37:6–19.) At some point thereafter, while defendant was still handcuffed in his home, Ruezga posed several questions to him. Throughout this process, according to the defendant, he remained handcuffed, had been told he could not move, and had an agent positioned near him to ensure he did not leave. (*Id.* at 39:16–21.)

When the government presented Ruezga's testimony in rebuttal, defendant's counsel moved to strike it and moved for a mistrial, arguing that defendant was in custody, had invoked his *Miranda* rights, and that Ruezga had violated those rights by questioning him nonetheless. The court found that defendant was in custody at the time of the arrest, but denied both motions without prejudice after finding that Ruezga was not a law enforcement officer and was not acting

in concert with law enforcement officers with respect to his conversation with the defendant. (*Id.* at 40:11–22.) In moving for a new trial, defendant renews his contention that his *Miranda* rights and his right to counsel were violated.

The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. The Supreme Court has "recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individuals will to resist and to compel him to speak where he would not otherwise do so freely.'" *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (quoting *Miranda*, 384 U.S. at 467). "To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused." *Moran*, 475 U.S. at 420; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *United States v. IMM*, 747 F.3d 754, 764 (9th Cir. 2014). Specifically, the Supreme Court has held the Constitution requires

> that a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

*Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444); *see also IMM*, 747 F.3d at 764. "An officer's obligation to administer *Miranda* warnings attaches . . . only where there has been such a restriction on a person's freedom as to render him in custody." *Stansbury*, 511 U.S. at 322 (internal quotation marks omitted) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)).

The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444 (1966). This definition has been refined to recognize that "'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

9

incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *see also Kemp v. Ryan*, 638 F.3d 1245, 1255 (9th Cir. 2011).

Meanwhile, the Sixth Amendment guarantees the right to counsel "in all criminal prosecutions." U.S. CONST. amend. VI. "The essence of this right . . . is the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Michigan v. Harvey*, 494 U.S. 344, 348 (1990) (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). The right applies "at all critical stages of prosecution." *United States v. Rice*, 776 F.3d 1021, 1024 (9th Cir. 2015) (citing *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) and *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004)). The Supreme Court has stated that the Sixth Amendment's guarantee of a right to counsel attaches no later than "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie County*, 554 U.S. 191, 198 (2008) (internal quotation marks omitted) (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)); *see also Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (noting that the initiation of adversary judicial criminal proceedings "is far from a mere formalism" because "it is only then that the government has committed itself to prosecute"). If, at any time during an interview, a suspect requests counsel, "he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)). Thus, "a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present." *Id.* (citing *Minnick v. Mississippi*, 498 U.S. 146 (1990) and *Arizona v. Roberson*, 486 U.S. 675 (1988)).

Defendant argues that Ruezga's questioning of him following his arrest violated his rights under the Fifth and Sixth Amendment and that introduction of his statements into evidence at trial by way of Ruezga's testimony constituted error, necessitating the granting of a new trial. As to the alleged Fifth Amendment violation, defendant contends that Ruezga was a law enforcement officer, that defendant was in custody, had clearly invoked his rights under *Miranda*, and had specifically requested an attorney, thereby precluding any further questioning. As to the alleged Sixth Amendment violation, defendant also points out that he had already been arraigned in

parallel state court proceedings prior to this search and his arrest by FBI Agent Lucas, and therefore was in fact represented by counsel at the time Ruezga questioned him. (Doc. No. 254 at 12.) Defendant contends that under these circumstances his being questioned outside the presence of his attorney violated his Sixth Amendment right to counsel.

For purposes of resolving the pending motion, the court will assume, without deciding, that Ruezga was a law enforcement officer, that defendant was in custody at the time Ruezga questioned him, that defendant unambiguously invoked his rights to remain silent and to an attorney, and that he was represented by an attorney in his state court case at the time. Nonetheless, the court concludes that no constitutional violation occurred here. This conclusion is based upon the fact that Ruezga's testimony was not introduced in the prosecution's case-in-chief. Instead, Ruezga testified as a rebuttal witness following defendant's own testimony at trial. In his trial testimony, defendant denied that he had ever intentionally downloaded child pornography but rather implied by his answers that his wife, Angele Henry, may have done so instead. (*See* Doc. No. 270 at 34:11–25, 35, 36:1.) The defense advanced this theory in two ways. First, defendant focused on the search terms that, according to the government, were used to search for and then download the child pornography. Some of these search terms appeared to be in French, and defendant testified that he essentially spoke no French, while his wife was at least somewhat conversant in the language. (*Id.* at 33:15–25; *see also id.* at 35:17–24.) The obvious implication from that testimony was that Angele, rather than defendant, entered the search terms in question, and was therefore responsible for downloading the child pornography. Second, defendant testified that Angele had used the computer from which child pornography had been downloaded, but that he had never used that computer to download such material. (*Id.* at 48:25, 49:1–11.) There was similarly testimony throughout the trial by various other witnesses that Angele would sometimes use defendant's computer at his place of work. Collectively, introduction of this evidence sought to cast doubt on the conclusion that defendant attempted to download child pornography, and instead implicated defendant's wife Angele as having done so. This theory was made explicit in the defense's closing argument, where defense counsel explicitly argued that "she's the one who's responsible for this." (Doc. No. 248 at 3:15–16.)

11

The government attempted to challenge this narrative by offering Ruezga's testimony on rebuttal. *See Riel v. Warden*, No. CIV. S-01-0507 LKK, 2010 WL 4628142, at *4 (E.D. Cal. Nov. 5, 2010) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)) ("[T]he term 'rebuttal' refers to a witness who is intended to contradict evidence introduced by the other party."). According to Ruezga, during his conversation with defendant, defendant explained to him that "his wife was not part of the charges that were brought about by the incident." (Doc. No. 247 at 5:14–15.) Were the jury to credit Ruezga's testimony, that would undermine the defense's theory that Angele Henry was the one responsible for downloading the unlawful material. Through his own statements to Ruezga, defendant implicated himself and attempted to exonerate his wife, Angele.

While statements taken in violation of *Miranda* are not admissible in the prosecution's case-in-chief, voluntary statements taken in violation of *Miranda* may be introduced at trial for impeachment purposes. *Harris v. New York*, 401 U.S. 222, 224–26 (1971) ("The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."); *United States v. Gomez*, 725 F.3d 1121, 1126 (9th Cir. 2013) ("But a defendant's voluntary statements—even if obtained in violation of Miranda—are admissible as impeachment evidence."); *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002). This same logic has been extended to Sixth Amendment violations as well: although "[t]he prosecution must not be allowed to build its case against a criminal defendant with evidence acquired in contravention of constitutional guarantees and their corresponding judicially created protections," once a defendant chooses to testify, "he assumes a reciprocal 'obligation to speak truthfully and accurately.'" *Harvey*, 494 U.S. at 351 (quoting *Harris*, 401 U.S. at 225); *see also United States v. Rosales-Aguilar*, 818 F.3d 965, 969–70 (9th Cir. 2016), *pet. for cert. filed* (U.S. May 30, 2018) (No. 17-9205); *United States v. Ortega*, 203 F.3d 675, 681 (9th Cir. 2000) ("Although the INS interview violated the Sixth Amendment so that the statements relating to the gun offenses may not be admitted as substantive evidence in the government's case-in-chief, the government may still use these statements to impeach Ortega's inconsistent testimony."), *holding modified on other grounds by United States v. Larson*, 495

F.3d 1094 (9th Cir. 2007). To the extent defendant's statements to Ruezga at the time of the search were made voluntarily, the government is not precluded from introducing those statements in rebuttal, even if the statements were obtained in violation of defendant's constitutional rights.

The only remaining question then is whether defendant's statement to Ruezga was given voluntarily, and was therefore admissible in rebuttal. *See Pollard*, 290 F.3d at 1033 ("Although a statement, taken in violation of Miranda, may not be used substantively in the prosecution's case-in-chief, such a statement, if voluntary, may be used for impeachment should the Defendant testify inconsistently.") (citing *Harris*, 401 U.S. at 224–26). "[I]f the statement was procured such that it was involuntary, then the statement is excluded for all purposes." *Id.* (citing *Harvey*, 494 U.S. at 351 and *Henry v. Kernan*, 197 F.3d 1029, 1029 (9th Cir. 1999)). The test for whether a statement is voluntary is whether it is "the product of an essentially free and unconstrained choice by its maker." *Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir. 1991) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). "In determining whether a statement is voluntary, the court looks at the surrounding circumstances and the combined effect of the entire course of the officer's conduct upon the defendant." *Pollard*, 290 F.3d at 1033 (citing *United States v. Polanco*, 93 F.3d 555, 560 (9th Cir. 1996)). Factors such as the declarant's state of mind, the physical environment in which the statement was given, the manner in which the declarant was questioned, the questioner's tone of voice, and whether the questioner made any promises or representations are all relevant considerations. *Id.* at 1033–34 (citing *Mincey v. Arizona*, 437 U.S. 385, 398–99 (1978) and *Henry*, 197 F.3d at 1027 n.3)).

Here, defendant has advanced no argument that his statement to Ruezga was given involuntarily, and the court finds no basis to conclude that his statement was in any way coerced. At trial, defendant testified that when the agents executed the warrant, they entered his house with guns drawn, put him in handcuffs and proceeded to search the house. (Doc. No. 247 at 36.) Defendant was informed that he was under arrest, placed in a chair, and advised of his rights under *Miranda*, which he invoked. (*Id.* at 37:4–19.) Defendant generally had the impression that he was not free to leave. (*Id.* at 39:14–21.) At some point thereafter, Ruezga approached defendant and began questioning him. (*Id.* at 38:9–22.) Although this evidence tends to show

that defendant was in custody at the time of the questioning, it does not demonstrate that defendant's response to the inquiry was in any way involuntarily made. The exchange occurred in defendant's own home, there is no evidence suggesting that the exchange was hostile or aggressive in any way, and neither Ruezga nor anyone else appears to have made any misleading promises or representations to defendant. There is similarly no evidence before the court that defendant was in a distressed state of mind at the time. *See Pollard*, 290 F.3d at 1034 (noting that the Ninth Circuit had previously "found it significant that the declarant's statement was incoherent, confused, disjointed, and throughout the interview the declarant was shaken, frightened, and crying") (citing *Henry*, 197 F.3d at 1027–28).

In short, the court finds nothing to indicate that Ruezga or any of the other officers extracted the statement in question by employing coercive or manipulative tactics. Accordingly, no error was committed in admitting Ruezga's testimony rebutting that of defendant presented in his defense. Defendant's motion for a new trial based on this ground will be denied as well.

**C.      The Prosecutor's Comments in Rebuttal**

Defendant next moves for a new trial due to the prosecutor's rebuttal argument to the jury. In his rebuttal argument, the prosecutor stated as follows:

> So we want to thank you for your service. You play a very important part in this process. And we're asking you to find the defendant guilty of these two counts. And I want to let you know that Mr. Capozzi did a great job on his closing. And the defendant is entitled to be well represented. Mr. Capozzi is the most experienced attorney here. And he's done his job. But what is his job? His job as a defense attorney is to distract and to deflect and to give you alternate facts or argue things that aren't necessarily what actually happened. And he started by bringing up something irrelevant for this case.

(Doc. No. 250 at 17:3–13.) Defendant characterizes this argument as "backhandedly praising defense counsel" and "akin to vouching in addition to improper comment about opposing counsel." (Doc. No. 354 at 19.)

"When prosecutorial conduct is called in question, the issue is whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." *United States v. Frederick*, 78 F.3d 1370, 1379 (9th Cir. 1996)

14

(quoting *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990)); *see also United States v. Sanchez*, 659 F.3d 1252, 1257 (9th Cir. 2011). Because defense counsel did not timely object to this aspect of the prosecutor's argument at trial, the court reviews for plain error. *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1190 (9th Cir. 2015). Defendant is entitled to relief if: "(1) there was error; (2) it was plain; (3) it affected the defendant's substantial rights; and (4) 'viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 1191 (quoting *United States v. Combs*, 379 F.3d 564, 568 (9th Cir. 2004)).

"The prosecutor's job isn't just to win, but to win fairly, staying well within the rules." *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993) (citing *United States v. Hill*, 953 F.2d 452, 458 (9th Cir. 1991)). In the undersigned's view, aspects of the prosecutor's rebuttal argument appear, upon reflection, to have departed from that mandate. By stating that the job of a defense attorney is to present the jury with "alternate facts" and "things that aren't necessarily what actually happened," the prosecutor suggested to the jury that defense counsel had intentionally provided them with a false narrative. *See United States v. Nobari*, 574 F.3d 1065, 1079 (9th Cir. 2009) (noting that it would be improper to "accus[e] the defense of fabricating a story") (citing *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999)). In addition, the prosecutor's argument that defense counsel's job "is to distract and to deflect" could easily be taken as implying that defense counsel's methods were underhanded or unethical. *See Frederick*, 78 F.3d at 1380 (improper to argue that defense counsel was asking the jury not to see the truth).

Nonetheless, the undersigned cannot conclude that in the context of the entire trial the prosecutor's brief statement in his rebuttal argument affected the fairness, integrity, or public reputation of the proceedings. Accordingly, the court declines to grant a new trial on this basis.

**D.  Cumulative Error**

Finally, defendant identifies numerous additional passages from the government's closing argument that, in defendant's view, collectively warrant the granting of a new trial. (See Doc. No. 254 at 22–25.) Once again, however, at trial defense counsel did not object to any aspect of the prosecutor's closing arguments. The court therefore reviews for plain error.

15

Most of defendant's additional objections relate to perceived mischaracterizations of the evidence by the prosecution, or touch on comments made during argument that, at worst, were irrelevant in the undersigned's view. None of the belatedly objected to statements of the prosecutor in his closing arguments, either in isolation or collectively, amount to an error so plain that it could be said to have seriously affected the jury's verdict in this case.

**E.      Defendants' Motion for Discovery**

Finally, the court addresses the parties' post-trial discovery dispute related to Government's Trial Exhibit 28.13. Defendant now contends that the government failed to produce this exhibit to the defense prior to trial, and because the evidence was withheld the defendant is entitled to a new trial. (*See* Doc. No. 254 at 17–18.) Separately, defendant now moves the court for an order requiring the government to produce Government's Trial Exhibit 28.13 pursuant to Federal Rule of Criminal Procedure 16. (Doc. No. 260.)

To fully understand whether Government's Trial Exhibit 28.13 was produced in discovery or otherwise made available to the defense prior to trial, the court held an evidentiary hearing on May 29, 2018. At that hearing the government called Detective Arthur Hively as a witness, while the defense produced its computer forensic expert Marcus Lawson and paralegal Whitney Linder as witnesses. Based upon this testimony, the court now understands the series of events as follows. Exhibit 28.13 consisted of an image of an individual, apparently taken in defendant's bathroom by the hidden camera. That image was stored on defendant's hard drive and was also contained in a folder with twelve other images. After law enforcement officers seized defendant's hard drive, the image that became Exhibit 28.13 was made available to defendant for inspection at the Ceres Police Department. This appears to have occurred no later than 2014, long before the trial of this action. In addition, the image was also made available to the defense at an FBI facility in Sacramento pursuant to a January 16, 2014 protective order in this case issued by the previously assigned district judge. (Doc. No. 20.) In both his testimony at the post-trial evidentiary hearing and in a subsequent written submission to the court, defense computer forensic expert Lawson stated that he did inspect at least some of these images seized by the government. (*See* Doc. No. 305.)

16

Much of the confusion regarding this image stems from the difficulty of identifying the individual portrayed in it. Both parties now agree that the image depicts A.T., the primary victim in this case, but that was not clear from an initial review of the image. According to the post-trial testimony of Detective Hively, he did not make the determination that this image depicted A.T. until roughly the middle of October 2017, only weeks before defendant's trial began.[2] Detective Hively then advised the U.S. Attorney's Office of his realization.[3] Because of this uncertainty, the defense appears to have overlooked this image when it conducted its review of the voluminous contents of defendant's hard drive.

In sum, the government made this image—along with thousands of other images and videos that were stored on defendant's hard drive—available for defense inspection years in advance of trial. The defense does not dispute that the image was available for inspection during that time, instead arguing that it was not affirmatively and specifically provided to them as having any import until the parties exchanged trial exhibits immediately prior to trial. In addition, the defense points out that although they were permitted to inspect this material, they were prohibited from copying or removing any images containing child pornography. (Doc. No. 305.) The question is whether this discovery procedure complied with Federal Rule of Criminal Procedure 16.

Rule 16 provides that upon a defendant's request, "the government must permit the defendant to inspect and to copy or photograph" various materials within the government's possession, custody or control if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). "In the Ninth Circuit, federal

---

[2] He did so when reviewing a video filmed by defendant's hidden camera and realized, given the background and other features, that this image was a screen shot of one of the hidden camera videos taken of A.T. in defendant's bathroom.

[3] Unfortunately, it also does not appear that the prosecutor specifically pointed out the now realized significance of the image but rather merely included it in the trial exhibit binders that were produced to the defense just prior to trial. Had the prosecutor pointed out the government's then-recent realization to defense counsel, the court would not now be required to address this issue.

17

prosecutors are deemed to have 'possession and control' over material in the possession of other federal agencies as long as they have 'knowledge' of and 'access' to that material." *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007) (citing *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995)). There is no doubt that the images seized from defendant's hard drive fall within the ambit of this Rule, since they were seized from defendant himself. However, in 2006, Congress passed the Adam Walsh Child Protection and Safety Act (the "Walsh Act"), establishing different procedures for the handling of child pornography discovery. In relevant part, the Walsh Act states that "[i]n any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, or control of either the Government or the court." 18 U.S.C. § 3509(m)(1). Further, the Walsh Act provides that

> Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined in section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.

18 U.S.C. § 3509(m)(2)(A).

Neither party appears to contest that the Walsh Act applies to the material in dispute here. Accordingly, the defense was not entitled to make copies of this material. Moreover, there appears to be no dispute that the material was made "reasonably available to the defendant." 18 U.S.C. § 3509(m)(2)(A). The defense was given the opportunity to inspect Exhibit 28.13, both at the Ceres Police Department and at the Sacramento FBI Field Office. Under the Walsh Act, this is apparently all that is required. Accordingly, defendant's motion for discovery will be denied as well.[4]

/////

/////

---

[4] In keeping with the language of the Walsh Act, a protective order filed early on in this case provided that materials which would be considered child pornography may not be copied or removed from the Sacramento FBI Office by the defense. (Doc. No. 20.)

18

CONCLUSION

For the reasons set forth above:

1. Defendant's motion for acquittal, or in the alternative for a new trial (Doc. No. 254), is denied;

2. Defendant's motion for discovery (Doc. No. 260) is denied; and

3. A sentencing hearing is hereby scheduled for August 6, 2018 at 10:00 a.m.

IT IS SO ORDERED.

Dated: **July 13, 2018**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE