**ANTHONY P. CAPOZZI, CSBN: 068525**
**LAW OFFICES OF ANTHONY P. CAPOZZI**
1233 W. SHAW AVE., SUITE 102
FRESNO, CALIFORNIA 93711
PHONE: (559) 221-0200
FAX: (559) 221-7997
EMAIL: Anthony@capozzilawoffices.com
www.capozzilawoffices.com


ATTORNEY FOR Defendant,
ADAM ALAN HENRY


# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

* * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ADAM ALAN HENRY,<br><br>    Defendant. | Case No.: 1:13-CR-00409 DAD-BAM<br><br>**REQUEST FOR RECONSIDERATION OF ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL, MOTION FOR NEW TRIAL AND MOTION FOR DISCOVERY**<br><br>Date: September 10, 2018<br>Time: 10:00 a.m.<br>Court: 5<br>Hon. Dale A. Drozd |

The Defendant, Adam Alan Henry, by and through his attorney of record, Anthony P. Capozzi, requests this court to reconsider its Order Denying Defendant's motions for Judgment of Acquittal, New trial and Discovery based on the misinterpretation of the law and facts herein and on the failure to consider all of the Defendant's post-trial motions.

I.    **FAILURE TO CONSIDER ALL MOTIONS**

   **A.    Failure to Consider Defendant's Addendum To Defendant's Reply to Government's Opposition to Motion for Acquittal and New Trial.**

In its order of July 13, 2018, the court stated that it reviewed the following motions:

---

1
REQUEST FOR RECONSIDERATION OF JUDGMENT OF ACQUITTAL, NEW TRIAL AND DISCOVERY
CASE NO.: 1:13-CR-00409 DAD

1. Defendant's Motion for Judgment of Acquittal (Doc. 254),
2. Defendant's Motion for Discovery (Doc 260),
3. Government's Opposition (Doc. 278), and
4. Defendant's Reply (Doc. 285).

On April 27, 2018, the Defendant filed its *Addendum to Defendant's Reply to Government's Opposition to Motion for New Trial* (Doc. 292). (Exhibit A)

The Addendum cited *Jackson v. Conway* 763 F.3d 115, (2nd Cir. 2014) cert. denied 135 S.Ct. 1560 (2015), which clearly indicated that a CPS Officer in the like circumstance of the situation herein is a law enforcement officer and any violation of a defendant's *Miranda* rights would render any statement from a defendant a violation of the defendant's Fifth Amendment rights. *Id.* at p. 139.

### B. Rebuttal Testimony of Jose Antonio Ruezga.

Based upon *Harris v. New York*, 401 U.S. 227, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and *Jackson v. Conway*, 763 F.3d 115 (2nd Cir. 2014) the evidence obtained from the Defendant herein **could not** be utilized in the Government's case in chief.

### C. Statement of the Facts.

In September 2013, Defendant Adam Henry's residence was searched, he was arrested, and charged in the state court. He retained an attorney and pled not guilty to the charges.

On November 13, 2013, while the case was pending, the Defendant's residence was again searched by officers of the federal and local police. In the early morning hours of November 13, 2013, law enforcement officers woke up the Defendant from his sleep with guns pointed at him, arrested him, handcuffed him and had him sit in a chair in his living room. The Defendant was advised of his *Miranda* rights. The Defendant said that he had retained an attorney and **did not** want to make any statement while CPS Officer Jose Antonio Ruezga was present (Doc. 247, RT 36:1-38:10). (Exhibit B)

This court in its Order (Exhibit C, Doc. 306) denying the Defendant's motions misinterpreted the Defendant's testimony stating on page 13, lines 26-27 that the "Defendant generally had the impression that he was not free to leave." The court's trial transcript from

1  November 15, 2017, (Exhibit B - Doc. 247), page 39, lines 14-25, and page 40, line 1, states

2  to the contrary:

> Q. Did you believe you could have got up and left?
> A. No.
> Q. Were you told that you were being restrained and you couldn't leave?
> A. Yes. There was -- like I said, I was handcuffed, placed in a chair, told not to move and there was an agent not quite looming over me, but he was making sure I wasn't going anywhere.
> Q. And when they came into the house, they had guns drawn?
> A. Yes.
> Q. And did they say you were under arrest?
> A. Yes. It took them a couple of seconds after they came in, looked around, but –

11  This testimony should leave no doubt that the Defendant **was not** generally under the
12  impression that he was not free to leave. There was no question that the Defendant could not
13  leave, he was handcuffed and told he was under arrest!

14  The evidence is unequivocal that the Defendant invoked his right to an attorney when
15  given his *Miranda* rights by FBI Agent Mark Lucas.  Undaunted, CPS Officer Ruezga, without
16  advising the Defendant of his *Miranda* rights, then begins a 15 minute interrogation of the
17  Defendant regarding the child pornography and the involvement of the Defendant, his wife and
18  children.  All questions related to this investigation and eventual charges herein. (Exhibit B,
19  Doc. 247, RT 4:18-31:1-20)

20  The court indicated that the Defendant's response **did not** demonstrate that it was
21  involuntarily made. Since the exchange took place in the Defendant's home, there was no
22  evidence of hostility or aggressiveness or misleading promises or that the Defendant was in a
23  distressed state of mind. (Exhibit C, Doc. 306, 14:1-6.)

**II.   ARGUMENT**

26  The Government bears the burden of proving, at least by a preponderance of the
27  evidence, the *Miranda* waiver, *Colorado v. Connelly,* 479 U.S. 157, 169, 107 S.Ct. 515, 93
28  L.Ed.2d 473, and the voluntariness of the confession. (*Lego v. Twomey*, 404 U.S. 477, S.Ct.

619, 30 L.Ed.2d 618 (1972). See also *Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 452 L.Ed.2d 416 (1975) and *Michigan v. Harvey*, 494 U.S. 344, 353, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990).)

The Government has not established that the Defendant's statement herein was made freely and voluntarily. An Evidentiary hearing was not held to establish whether the Defendant's statement was freely and voluntarily made.

The evidence clearly indicates that the law enforcement officers came in with their guns drawn, arrested and handcuffed the Defendant. This atmosphere, even in one's home, would be intimidating and coercive.

In *Collazo v. Estelle,* 940 F.2d 411 (9th Cir. 1991), a defendant declined to waive his *Miranda* rights and asked to speak to an attorney. The police said it "might be worse" if he did. Three hours later the defendant changed his mind, was re-advised of his rights and spoke to the police implicating himself, which led to his conviction.

The *Collazo* court held this confession to be involuntary and that its use to convict him was involuntary. *Id.* at p. 413.  The court went on to say that:

> Interrogation tactics need not be violent or physical in nature to be deemed coercive. Psychological coercion is equally likely to result in involuntary statements, and this is also forbidden.

*Id.* at. p. 416.

The *Collazo* court mentioned the pressures on a person in custody stating:

> …Miranda expresses concern about the compelling pressures that weigh upon a person in custody, pressures that can break a person's free will and cause that person to talk involuntarily. (citations omitted)

*Id. at p*. 416.

The court found that the "immediate interrogation of Collazo in direct response to his request for a lawyer is a textbook violation of *Edwards v. Arizona* (citations omitted)." *Id.* at p. 417.

There is no doubt that law enforcement is aware of the impeachment exception to the *Miranda* Rule approved in *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 21

(1971). Indeed some training programs advise officers to omit *Miranda* warnings all together or to continue questioning after the suspect invokes his rights.

Allowing testimony on rebuttal even though obtained by unconstitutional means, threatens the integrity of the legal system.

In *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), the police had a protocol for custodial interrogation that called for not giving warnings of the rights to silence and counsel until interrogation has produced a confession. Once a confession is obtained, the officer then gives the *Miranda* warnings and then leads the suspect to cover the same ground a second time. The admissibility of the repeated statement then becomes the issue. The *Seibert* court found this tactic unconstitutional and held that the repeated statement after the warning was inadmissible. *Id.* at p. 604.

Testimony was elicited in the *Missouri v. Seibert* case that the strategy of withholding *Miranda* warnings until after interrogating and drawing out a confession was promoted by a National Police Training Organization. *Id.* at p. 609. The court went on to state:

> Consistently with the officer's testimony, the Police Law Institute, for example, instructs that "officers may conduct a two-stage interrogation. . . . At any point during the pre-*Miranda* interrogation, usually after arrestees have confessed, officers may then read the *Miranda* warnings and ask for a waiver. If the arrestees waive their *Miranda* rights, officers will be able to repeat any *subsequent* incriminating statements later in court." Police Law Institute, Illinois Police Law Manual 83 (Jan. 2001-Dec. 2003) (available in the Clerk of Court's case file) (hereinafter Police Law Manual) (emphasis in original). The upshot of all this advice is a question-first practice of some popularity, as one can see from the reported cases describing its use, sometimes in obedience to departmental policy.

*Id.* at pp. 609-611.

In essence, what happened to the Defendant, Adam Henry, is not any different than what happened in the *Seibert, supra,* case and should not be condoned. The police knew the Defendant requested an attorney, but allowed CPS Officer Ruezga, who came with them and allowed him to question the Defendant even though he had invoked his *Miranda* rights.

The Government should not now be permitted to use this evidence knowing they were

1 violating the Defendant's *Miranda* rights. This procedure undermines the criminal justice
2 system. This was not an innocent mistake. The procedure in *Missouri v. Seibert, supra*, was
3 utilized and should not now be allowed.

4 The court, in its Order (Exhibit C, Doc. 306, page 12:11-13) allowed the admission of
5 Ruezga's statements based upon *Harris v. New York*, 401 U.S. 222, 224-26 (1971).

6 In *Harris, supra,* the defendant was charged with two sales of heroin with the police
7 officers testifying to the transaction with the defendant. The defendant took the stand and
8 denied one sale and said the other was a sale of baking powder. On cross-examination the
9 defendant was questioned extensively as to statements made to the officer after his arrest which
10 contradicted his testimony on direct. The defendant said he could not remember all of the
11 questions and answers after his arrest. *Id.* at p. 223.

12 The trial court instructed the jury that the statements attributed to the defendant by the
13 prosecutor could only be considered in determining the defendant's credibility and not evidence
14 of guilt. *Id.* at p. 223.

15 The prosecutor conceded that the defendant's comments to the police were inadmissible
16 under *Miranda v. Arizona*, 384 U.S. 436 (1966), in its case in chief.  The court allowed this
17 impeachment testimony as a valuable aid to the jury in assessing the defendant's credibility. *Id.*
18 at p. 224.

19 One of the differences between the *Harris* case and the present case is that the
20 Defendant was never cross-examined by the Government as to any statement he made
21 regarding his wife's involvement with the charges.

22 Another difference is that a jury instruction was not given that the statement attributed
23 to the Defendant by the CPS officer could only be considered in determining the Defendant's
24 credibility and **was not** evidence of guilt.

25 In *The People of the State of New York v. Greene,* 306 A.D.2d 639, 760 N.Y.S.2d 769,
26 2003 N.Y. Slip Op. 14932 a case almost, if not identical to this case, a Child Protective
27 Services officer (CPS) and a State Police Investigator interviewed the victim of a sexual
28 molestation incident as part of a Family Violence Response Team (FVRT).  After the interview

the defendant was arrested and retained an attorney.

At a later time, the CPS worker saw the defendant at the jail while he was incarcerated for the sex charges against the victim.  She asked to speak with him, identified herself, indicated that she knew he had an attorney, mentioned the attorney by name, and stated that the defendant did not have to talk to her. The defendant met with her and gave a statement.

The State Court admitted the defendant's statement made to the CPS worker on rebuttal and the defendant was convicted.

The Appellate court found that the CPS officer was an agent of the police and the statements were made in violation of *Miranda*.  *Id.* at. p. 641.

The court ultimately held that since the evidence was utilized by the prosecutor as rebuttal evidence, the evidence could only have been considered by the jury on the issue of credibility and the jury should have been so instructed. Since the jury was not instructed on the credibility issue, the court reversed the judgment despite defense counsel's failure to request said instruction.  *Id.* at p. 643-644.

The same analysis should apply with Mr. Henry where the finding of guilt rests squarely on the jury's assessment of the credibility of the Defendant; such an error cannot be harmless.  The introduction of CPS social worker Ruezga's testimony was highly prejudicial to the Defendant and a violation of his Fifth and Sixth Amendment rights.  **The Defendant should have been granted a new trial on this issue.**

**A.     Government's Failure to Produce Trial Exhibit 28.13 in Discovery Violated the Defendant's Right to Due Process.**

The court has determined that since trial exhibit 28.13 was somewhere in the thousands of pages of discovery which included videos and screenshots, the Government has met its burden of producing discovery. It is important to note that any discovery depicting child pornography **is not** allowed to leave the FBI office.

The defense requested discovery in this case specifically the exhibits the Government intended to use at trial in this case.

Detective Britton Moore testified before the Grand Jury that brought the Indictment in this case. Attached as Exhibit D, is Detective Moore's Grand Jury testimony. On the very last page of his testimony page 28 lines 1-17, the following colloquy took place:

> MR. GAPPA: Okay. So for purposes of the presentation today, you have created some other images that relate to Count 1; is that correct?
>
> DET. MOORE: Correct.
>
> MR. GAPPA: And you've got those in the envelope?
>
> DET. MOORE: Yes, I do.
>
> MR. GAPPA: Can you explain in general what is in what I'm now marking Grand Jury Exhibit 1?
>
> DET. MOORE:  These are the screen shots which were created and were residing on Adam Henry's network attached storage device, and these are screen shots taken of [victim] when she was undressed, in the shower, and of the video that Angele Henry helped to create where her breasts are exposed and she has her clothing off.
>
> (Exhibit 1 was marked for identification.)
>
> MR. GAPPA: Okay. All right. Any questions at this point? All right. We'll leave those two envelopes behind.
>
> (The proceedings were concluded at 10:01 a.m.)

Grand Jury Exhibit 1 **was not** produced to the defense along with the testimony. Request is made that Grand Jury Exhibit 1 to Detective Britton Moore's Grand Jury testimony be produced. It remains to be seen how many and which screenshots were produced to the Grand Jury.

On **May 30, 2017**, during arguments on the in limine motions (Exhibit E - Partial transcript) the Government specifically states on page 37:

> MR. GAPPA: There are approximately ten videos in the bathroom, one video in a bedroom, **ten** screen captures from the video in the bedroom, and **two screen captures from the videos in the bathroom**.  (Emphasis added.)

On **June 26, 2017**, during a motions hearing regarding the Superseding Indictment the transcript reveals the following: (Exhibit F - RT 9:8-10, 16:5-14, 33:21-25 & 34:1-16)

> MR. GAPPA: On February 4th, 2013, the Defendant creates 10 screen shots from a video that he's recorded -- well, that was recorded in the bedroom.
>
> MR. CAPOZZI: I submitted the video of the bedroom video, and then I submitted the snapshots -- and I think there's 10 or 12 snapshots of the girl dressing, undressing -- and I submitted the bathroom videos. To me, that's the child pornography allegations here. I believe that falls within the voyeuristic motif rather than child pornography. Child pornography is where you have to use or coerce a minor to engage in sexually explicit conduct. Nowhere in any of the videos that were submitted to the Court is sexually explicit conduct.
>
> MR. GAPPA: but, your Honor, if I could, just before we could -- just -- I think it might be a good use of the collective four to five minutes. The Defense has raised a couple of things which I don't think are accurate. There was reference to all of the screen captures were produced from that bedroom video. That's not correct. In fact, the Defendant himself, whether they realized it or not, submitted in Exhibit A, which is under seal, attachment -- the attachment to their brief, two screen captures which are Bates stamped "U.S. versus Henry 001010." They both have that number on it. However, they are two distinct, different images. And these are images that were created from a video that was taken in the Defendant's bathroom. And I'm bringing this out for a couple of reason. One, to clarify the record that it is not correct that all of the screen captures were only made from that one bedroom video. So that's significant. But, two, these two images were created on April 7th, 2013. That's a significant date for an additional reason, and this is, again, in response to the observation or at least argument that there's no agreement between the Defendant and Angel.

At both of these court hearings the defense and the Government stated that there were ten screenshots from the bedroom and two from the bathroom. Indeed, Exhibit A (Doc. 133, filed Under Seal) to Document 131, Defendant's Response to Government's Brief on Count One of the Superseding Indictment, displayed the 12 screenshots.  The Government **did not** indicate there were others.

Approximately a few weeks before the jury trial, Detective Hively located another

screenshot that appeared to be the victim (Trial Exhibit 28.13) and informed the Assistant United States Attorney. The Assistant United States Attorney did not produce this 13th screenshot to the defense until approximately four days before the trial in a trial binder that included hundreds of exhibits.

Federal Rule of Criminal Procedure 16(c) Discovery and Inspection:

> **(c) Continuing Duty to Disclose.** A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:
> (1) the evidence or material is subject to discovery or inspection under this rule: and
> (2) the other party previously requested, or the court ordered, its production.

The Government mislead the defense as to the number of screenshots taken in this case throughout the discovery process and at the last minute attempted to introduce a 13th screenshot which had not been produced to the defense.

The declaration of paralegal Whitney S. Linder Document 299-1 (Exhibit G) and her testimony at the Evidentiary hearing on May 29, 2018, clearly indicates that the defense **was not** provided trial exhibit 28.13 until four days before trial.

The defense had been misled by the Government throughout the discovery process as to the number of screenshots the Government possessed. To add an additional screenshot which was the only front nudity screenshot of the victim violated the Defendant's right to due process and should be considered as Government misconduct which should result in a dismissal of Count 1.

### III.    CONCLUSION

It is respectfully requested that the court reconsider its ruling and grant the Defendant a new trial on Count 2 and a dismissal of Count 1 of the Superseding Indictment.

Date:   August 27, 2018        By:  */s/Anthony P. Capozzi*
                                                            ANTHONY P. CAPOZZI
                                                            Attorney for ADAM ALAN HENRY