# EXHIBIT A

1 | **ANTHONY P. CAPOZZI, CSBN: 068525**
**LAW OFFICES OF ANTHONY P. CAPOZZI**
2 | 1233 W. SHAW AVE., SUITE 102
FRESNO, CALIFORNIA 93711
3 | PHONE: (559) 221-0200
FAX: (559) 221-7997
4 | EMAIL: Anthony@capozzilawoffices.com
www.capozzilawoffices.com
5

6 | ATTORNEY FOR Defendant,
ADAM ALAN HENRY
7

8

9 | **UNITED STATES DISTRICT COURT**

10 | **EASTERN DISTRICT OF CALIFORNIA**

11 | * * * * * *

12 | UNITED STATES OF AMERICA,                Case No.: 1:13-CR-00409 DAD-BAM

13 |        Plaintiff,                **ADDENDUM TO DEFENDANT'S REPLY**
**TO GOVERNMENT'S OPPOSITION TO**
14 |   v.                **MOTION FOR ACQUITTAL AND NEW**
**TRIAL**
15

16 | ADAM ALAN HENRY,

17 |        Defendant.                **Date: April 30, 2018**
**Time: 1:30 p.m.**
18 |                    **Court: 5**

19

20 | **TO:   THE ABOVE ENTITLED COURT AND TO THE UNITED STATES**
21 |        **ATTORNEY GENERAL FOR THE EASTERN DISTRICT OF CALFIORNIA:**

22 |       Defendant, Adam Alan Henry, by and through his attorney Anthony P. Capozzi, files

23 | this Addendum to his Reply to the Government's Opposition to Defendant's Motion for

24 | Acquittal under Rule 29(c) and for New Trial under Rule 33(a).

25 |       In *Jackson v. Conway,* 763 F.3d 115, (2nd Cir. 2014), cert. denied 135 S. Ct. 1560

26 | (2015), a state of New York case, on a habeas corpus petition before the district court and

27 | later to the appellate court, on facts similar to the instant case, the court held that since an in

28 | custody defendant was not informed by Child Protective Services (hereinafter "CPS")

---

ADDENDUM TO REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR ACQUITTAL AND NEW TRIAL
CASE NO.: 1:13-CR-00409 DAD

1   caseworker that his statements could be introduced at his criminal trial, the state should not

2   have been permitted to rely on those statements to secure the defendant's conviction.  The

3   court found that the admission of the CPS caseworker's testimony at trial violated the

4   defendant's right to be free from compelled self-incrimination under the Fifth and Fourteenth

5   Amendments. (*Id*. at 140.)  The facts are as follows:

6           Jackson was accused of rape, taken to the police department and questioned. As he

7   attempted to leave he was formally arrested and after being informed of his Miranda rights, he

8   invoked his right to remain silent and refused to speak to the police. Later that day, a member

9   of the police department contacted CPS about the incident.  The CPS caseworker contacted

10  the detective that interrogated the defendant and requested an interview with the defendant

11  regarding the sexual abuse allegations.  (*Id*. at 122.)

12          The detective escorted the defendant from his holding cell to a table in the hallway

13  where the CPS caseworker sat.  The detective went around the corner within earshot of the

14  conversation. (*Id*. at 122)

15          The CPS caseworker knew that the defendant was in custody and had refused to speak

16  with the police.  The CPS caseworker introduced herself as a CPS caseworker, explained her

17  role, and asked about the victim's allegations.   The CPS caseworker **did not** inform the

18  defendant of his rights to an attorney or give him any other warnings. The defendant agreed to

19  speak with the caseworker. (*Id*. at 122.)

20          During the interview, the defendant described his sexual relationship with his current

21  wife and ex-wife.  Eventually he told the caseworker about the events of the night that led to

22  his arrest and the allegations of raping his minor daughter, thus implicating himself. (*Id*. at

23  123.)

24          The defendant was charged with the sexual abuse of all three women and at the trial

25  court level a suppression hearing was held to determine the admissibility of the defendant's

26  statements to the CPS caseworker.  The defense argued that the CPS caseworker acted as an

27  agent of the police when she interviewed the defendant on the day of his arrest.  The trial

28  court held that the defendant was interviewed "as part of a completely separate civil

Case 1:13-cr-00409-DAD-BAM Document 251-1   Filed 03/27/18   Page 4 of 15

1   proceeding" and "did not act as a law enforcement officer."  The trial court held that the CPS

2   caseworker was not required to give the defendant Miranda warnings and therefore his

3   statements to the CPS caseworker were admissible at trial. (*Id.* at 123.)

4          All appeals of the defendant's conviction were denied at the state level.  The defendant

5   filed a habeas application in the United States District Court for the Western District of New

6   York with the magistrate judge holding

7          the rejection of Jackson's Miranda claim was both contrary to an
        unreasonable application of clearly established Supreme Court
8          precedent, and that admission of the his post-arrest statement to
        [the CPS caseworker] was sufficiently injurious as to warrant
9          habeas relief on the convictions involving [the juvenile].

10  (*Id.* at 131.)

11         On appeal to the Second Circuit Court of Appeals the court stated that the issue is not

12         *whether the CPS caseworker's initiation of civil child abuse*
        *proceedings implicated the defendant's right to counsel, but*
13         *whether the admission at the defendant's criminal trial of his*
        *statements, to the CPS caseworker violated his Fifth Amendment*
14         *right to be free from compulsory self-incrimination.* (emphasis
        added).
15

16  (*Id.* at 135, footnote 21)

17         The appellate court agreed with the magistrate judge that the state's rejection of the

18  defendant's Miranda claim constituted an objectively unreasonable application of Miranda.

19  The court stated that the admission of the defendant's statements had a substantial and

20  injurious effect or influence on the jury's verdict as to the count's involving the juvenile and

21  affirmed the magistrate judge's judgement insofar as it granted relief on the counts involving

22  the juvenile. (*Id.* at 135, 138)

23         The appellate court specifically stated that the CPS caseworker knew at the time of the

24  interview that the defendant had been arrested and was in police custody as a result of the

25  same sexual abuse allegations that she was investigating. Therefore making it clear that the

26  CPS caseworker should have known that her express questioning, about the juvenile rape

27  allegations, and whether the defendant "did anything to [the juvenile]" could elicit an

28  incriminating response. (*Id.* at 139)  Because the defendant was not informed, prior to the

interrogation, that his statements to the CPS caseworker could be introduced at his criminal trial, the state should not have been permitted to rely on those statements to secure the defendant's conviction.

Accordingly, the court held that the admission of the CPS caseworker's testimony at trial violated the defendant's right to be free from compelled self-incrimination under the Fifth and Fourteenth Amendments. (*Id.* at 140.)

The court further found that the testimony was not harmless since the testimony had a substantial and injurious effect or influence in determining the jury's verdict. (*Id.* at 142.)

**ANALYSIS:**

The *Jackson* case has facts almost identical to that of Mr. Henry. Instead of being interviewed at the police department, Mr. Henry was interviewed at his home by a CPS social worker. Indeed, a detective requested that CPS social workers accompany the FBI and the local police in searching Mr. Henry's home. (Report of FBI SA Mark Lucas, mentioning the participants which included a CPS officer. (Exhibit A) Report of Detective Hively, where he requested a social worker to accompany the police during the search. (Exhibit B) Report of CPS Social Worker Ruezga, where he indicates that, at the request of Detective Hively, he attended a briefing prior to the search, took part in the search of Mr. Henry's home, and then he specifically states that he **interviewed** Mr. Henry where the Defendant made statements implicating himself, i.e. that his wife had nothing to do with his charges. (Exhibit C))

Mr. Ruezga testified that he knew the Defendant was arrested, was in custody and that the Defendant had invoked his Miranda rights. But yet, undaunted, continued to interview the Defendant without explaining to the Defendant that any statements he made could be used against him at trial. Based upon the holding in *Jackson, supra*, the admission of the Defendant's statement at trial violated the Defendant's right to the Fifth Amendment to be free from compelled self-incrimination.

The testimony of Mr. Ruezga cannot be considered harmless error in that Mr. Ruezga's testimony completely undermined and contradicted the Defendant's theory of the case.

1    It is respectfully requested that the court grant the Defendant's request for a mistrial on

2  both counts.

3

4                                         Respectfully submitted,

5  Dated:        April 27, 2018        By:  */s/Anthony P. Capozzi*

6                                           ANTHONY P. CAPOZZI
                                            Attorney for ADAM ALAN HENRY
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADDENDUM TO REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR ACQUITTAL AND NEW TRIAL
CASE NO.: 1:13-CR-00409 DAD

# EXHIBIT A

FD-302 (Rev. 5-8-10)



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    11/20/2013

A search warrant, issued in the United States District Court for the
Eastern District of California on 11/07/2013, was executed at ▋▋▋▋▋
▋▋▋▋▋▋▋ at 7:05am on 11/13/2013. The purpose of the search was to
locate evidence in support of the production and collection of child
pornography. The search included the following participants:

SA Mark Lucas (Team Leader)

SA Greg Wenning

SA Justin Jacobs

SA Brian Huberty

SA Brian Lippo

TFO Britton Moore

Det. Art Hively

CPS Officer Luis Maldonado

At 7:05am the above Agents knocked and announced at the front door of
the residence. The door was opened by Adam HENRY who was placed in
handcuffs. Also at the residence was Angele Henry, her mother ▋▋▋▋
▋▋▋▋▋, and three children. Writer instructed Angele Henry to bring her
children to the front living room of the residence. Once the children were
in the living room, a security sweep of the residence was executed. Adam
Henry was the only individual handcuffed during the search warrant.

After the residence was cleared, writer asked Angele Henry to send the
children to their room during the search of the residence. CPS Officer
Moldanado conducted an interview with the children. Approximately 5 minutes
after the residence was cleared, writer explained the purpose of the search
warrant and provided Angele Henry a copy of the search warrant and the
attachment B (items to be seized). This occurred at approximately 7:15am.

17 items were collected as evidence from the residence and recorded on

Investigation on   11/13/2013   at   Turlock, California, United States (In Person)

File #   305C-SC-3444183     Date drafted   11/19/2013

by   LUCAS MARK E

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency

**US v. HENRY - 000666**

FD-302a (Rev. 05-08-10)

305C-SC-3444183

Continuation of FD-302 of  Search of ████████████████████  , On   11/13/2013  , Page   2 of 2

a FD-597 property receipt.    The search warrant and property receipt were
photographed in place on the kitchen table.  Entry and exit photos were
taken by SA Lippo and included on a CDR to the case file.

Items of note that were collected was a fake house plant located in the
guest bathroom hanging in the shower.  The hanging pot was pulled apart
where writer observed four windows cut out of the pot and covered with a
tinted clear plastic suitable for the placement of a hidden camera.    There
was not a camera present in the plant when it was collected.

Several small micro cameras were collected from the residence along
with multiple hard drives and four laptop computers.  All items were book
into FBI Sacramento evidence control room.

The FD-597 was left with ████████ along with a copy of the search
warrant at 9:38am.   The search team departed the residence at 9:39am
leaving the residence in the custody of ████████████ .

**US v. HENRY - 000667**

# EXHIBIT B

# CERES

## POLICE DEPARTMENT
### SUPPLEMENTAL REPORT

**213-004554**

**Page 1 of 2**

Date: October 1, 2015

**WITNESS:**

Antonio Ruezga
Cell:

**FACTS:**

On Wednesday, September 30, 2015, I spoke to AUSA M. Tierney regarding
the case against Adam Henry and the fact that there would be a bail
hearing in Federal court on Monday, October 5, 2015.

AUSA Tierney asked me to follow up with a social worker who had been
involved in this case. AUSA Tierney indicated he had a CPS document
that had a paragraph that contained a statement from Adam Henry to SW
Antonio Ruezga on November 13, 2013.

In November, 2013, I had requested prior to the search warrant at the
Henry home that a CPS worker be with us in case the children in the
home needed to be taken into protective custody. SW Ruezga was assigned
that task. He was present with us when the FBI search warrant was
served on November 13, 2013.

While in the home, according to SW Ruezga, Adam Henry indicated to him
while being interviewed by SW Ruezga that his wife (Angele Henry) had
nothing to do with his charges. He told SW Ruezga that none of the
children had been involved or exposed to anything inappropriate.

I spoke to SW Ruezga on today's date and he confirmed that, in fact,
Adam Henry had made that statement to him regarding Angele Henry's lack
of involvement with anything that he was being arrested for.

| OFFICER: | HIVELY | ID #: | 627 | APPROVED: $\mathcal{PV}$ | | ID #: | 32/ |
|----------|--------|-------|-----|--------------------------|--|-------|-----|

**COPIES TO:**
DPS: □CHIEF □CMDR. □INV. □DRUG UNIT
□PATROL □INTEL □RECORDS □PROPERTY □CSO
□COURT LIAISON □VIPS □CHAPLAINS □COMPUTERS
COUNTY: □DA □S/O □SDEA □PROBATION □HEALTH
□SCFW □ANIMAL CONTROL □DEPT. ENV. RES.
□OTHER

EMERGENCY SERVICES: □CMCPL □B/C □F/M □CAPT.
COURT: □MUNI □TRAFFIC □JUVENILE
CITY HALL: □CITY MNGR. □CITY ATTY □PUBLIC WORKS
STATE/FED: □CII □ABC □FBI □PAROLE □DOJ □DMV

| RELATED FILE NUMBERS: | | Tran by: | Date Tran: |
|-----------------------|--|----------|------------|

CU3: 10-2-15
 AUSA T. erner,

**US v. HENRY  000819**

# CERES
## POLICE DEPARTMENT
### SUPPLEMENTAL REPORT

213-004554

**Page 2 of 2**

**DISPOSITION**:

Please  forward  a  copy  of  this  supplemental  report  to  AUSA  Michael
Tierney ███████████████████████ .

| OFFICER: | HIVELY | ID #: | 627 | APPROVED: $\mathcal{OV}$ | | ID #: $577$ | |
|----------|--------|-------|-----|--------------------------|--|-------------|--|

| COPIES TO:<br>DPS: ☐CHIEF ☐CMDR. ☐INV. ☐DRUG UNIT<br>☐PATROL ☐INTEL ☐RECORDS ☐PROPERTY ☐CSO<br>☐COURT LIAISON ☐VIPS ☐CHAPLAINS ☐COMPUTERS<br>COUNTY: ☐DA ☐S/O ☐SDEA ☐PROBATION ☐HEALTH<br>☐SCFW ☐ANIMAL CONTROL ☐DEPT. ENV. RES.<br>☐OTHER | EMERGENCY SERVICES: ☐CMCPL ☐B/C ☐F/M ☐CAPT.<br>COURT: ☐MUNI ☐TRAFFIC ☐JUVENILE<br>CITY HALL: ☐CITY MNGR. ☐CITY ATTY ☐PUBLIC WORKS<br>STATE/FED: ☐CII ☐ABC ☐FBI ☐PAROLE ☐DOJ ☐DMV | | |
|---|---|---|---|

| RELATED FILE NUMBERS: | | Tran by: | Date Tran: |
|-----------------------|--|----------|------------|

US v. HENRY 000820

# EXHIBIT C

Case 1:13-cr-00499-ADA-BAM Document 220-3 Filed 08/27/18 Page 14 of 15

## DELIVERED SERVICE LOG
### All Contacts, Services & Visits

FROM: 11/13/2013    TO: 12/3/2013

FOR: ███████████████

---

**Contact** Date: **11/13/2013**    On Behalf Of: ███████████████
Contact Purpose: Investigate Referral            Staff Person: Jose Antonio Ruezga
Participant(s): **Angele Henry,** ███████████████ , **Adam Henry**
Method: In-Person            Location: Home            Status: Completed

On 11/13/13 @ 6:30AM responding to an AA this SW met with CPD det. Art Hively &
Britton Moore and FBI agent Mark Lucas and his team for a briefing of the search
warrant. The meeting took place in the parking lot of the Celerity Baptist Church
in Turlock. The search warrant for the residences of Adam and Angele Henry █████
███████████████. FBI agent Lucas reported that they were searching for
various items in connection with "Receipt/distribution of child pornography and
production of child pornography".

This team drove to the address and FBI agent knocked on the door and identified
self and the team was invited into the residence by Adam. The home appeared clean
with no safety hazards noted by this SW at the time of H/V. Adam was secured as he
was hand cuffed and separated from his wife Angele, also present were their three
children ███████████████ and Angele's mother ███████████ who was
holding ████ on her arms. The children ███████████ were permitted to remain in
their bedroom.

This SW provided her a business card and a CRB to her. SW reviewed referrals
allegations with her. She was being interview by the FBI agents and SW was unable
to conduct interview.

SW F/F interview with Adam Henry in the living room. SW reviewed referrals
allegations with him. He reported that he was not sure of what he was being arrest
for but reported that his wife had nothing to do with his charges. He denied that
his children were ever involved with anything and stated that the children were not
exposed to anything that was inappropriate. He reported that everything was
concentrated to their (his and Angele) bedroom where the children do not have
access to. He request that his children be allowed to stay in the home with his
mother-in-law ████████. SW advised he would not be allowed around the children until
CPS had set services through FM and he agreed.

This SW F/F visit ███████████████ at the residence. This SW informed her that
interview was voluntary and her cooperation was appreciated. She agreed to
participate in interview. Interview completed in less then 30 minutes. She declined
to have any one present during this interview. She appeared to be clean and healthy
with no visible bruises or marks. She was able to distinguish between the truth and
a lie and agreed to tell the truth during this interview. SW reviewed good vs. bad
touch; it was evident that the difference between the two was understood. She
denied ever been touched inappropriately. For discipline she is sent to her

bedroom.

This SW F/F visit ▮▮▮▮▮▮▮▮▮▮ at the residence. This SW informed him that interview was voluntary and his cooperation was appreciated. He agreed to participate in interview. Interview completed in less then 30 minutes. He declined to have any one present during this interview. He appeared to be clean and healthy with no visible bruises or marks. He was able to distinguish between the truth and a lie and agreed to tell the truth during this interview. SW reviewed good vs. bad touch; it was evident that the difference between the two was understood. He denied ever been touched inappropriately. For discipline he will made to stand in his bedroom all day.

SW F/F visit with ▮▮▮▮▮▮▮▮▮▮ at the residence. He appeared clean and healthy with no visible bruises or marks. He was too young to interview.

▮▮▮▮▮ the maternal grandmother was allowed to stay at the residence and care for the children. SW wrote and discussed safety plan with ▮▮▮▮ that she would provide care for the children and that Angele and Adam would not be allowed back in the residence. She agreed to the safety plan and signed it.

SW drove to CPD station to meet with Angele Henry to discussed referral allegations and safety plan.

At 9:35AM SW F/F visit with Angele Henry at CPD. SW reviewed referrals allegations with her. She reported that she not was aware of the child porn. She admitted that she would go on adult porn websites. She denied ever engaging with child porn. She reported that she and Adam would have people over but would always have the children out from the home with their sitter. The only time she would view any porn would be when the children were sleeping and it was only in her bedroom. She denied that she ever had any minors involved with them. SW discussed FM services with her and she agreed to FM services for counseling, and parenting. She agreed not to have any porn around the children. She agreed not to return to the residence until FM services were in place and she agreed.

SW discussed case with ER sup Leann, who agreed that FM services would be appropriate for Angele.

SW received T/C from ▮▮▮▮▮▮▮▮ who reported that she was contacted by Aladdin Bail Bond to bail Angele. She agreed to bail Angele and meet with this SW and FM SW at the residence at 3:00PM.

SW scheduled FM assessment for 11/13/13 at 3:00PM at the families residence.

**Contact** Date: 11/13/2013      On Behalf Of: ▮▮▮▮▮▮▮▮▮▮
Contact Purpose: Investigate Referral                 Staff Person: LeAnn Wesner-Donaldson
Participant(s): Angele Henry, Adam Henry
Method: Written                 Location:                 Status: Completed

On 11-13-13, the undersigned requested a CLETS for Adam Henry ▮▮▮▮▮, father; and Angele Henry ▮▮▮▮, mother; for the purpose of completing an investigation. Livescan forms were mailed to each person.

Henry Defense 000007