UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

```
UNITED STATES OF AMERICA,    )
                             )
         Plaintiff,          )  No. 13-CR-409-DAD
                             )
vs.                          )  PRE-TRIAL MOTIONS
                             )
ADAM ALAN HENRY,             )
                             )
         Defendant.          )
_____)
```

Fresno, California                Monday, November 6, 2017

REPORTER'S TRANSCRIPT OF PROCEEDINGS

KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiff:      United States Attorney's Office
                        BY: **DAVID L. GAPPA**
                        and **ROSS PEARSON**
                        2500 Tulare Street
                        Suite 4401
                        Fresno, California 93721


For the Defendant:      Law Offices of Anthony P. Capozzi
                        BY: **ANTHONY P. CAPOZZI**
                        1233 West Shaw Avenue
                        Suite 102
                        Fresno, California 93711

3

1    Monday, November 6, 2017                    Fresno, California

2    1:31 p.m.

3             THE CLERK:  Court calls item number three.

4    13-CR-409.  United States versus Adam Alan Henry.

5             MR. GAPPA:  Good afternoon, Your Honor, David Gappa

6    and Ross Pearson for the United States.

7             MR. CAPOZZI:  And Tony Capozzi with the defendant

8    Adam Henry, who's in custody.

9             THE COURT:  Okay.  This is the date and time we set

10   for resolving a few motions pre-trial.  I did receive an email

11   regarding the jury instructions.  And the government

12   previously submitted jury instructions and more recently

13   submitted amended proposed jury instructions.

14            And there are issues, a few issues remaining that

15   need to be resolved.  And if I miss -- I'm just going off of

16   the email.  One is to give the other acts instruction.

17            MR. CAPOZZI:  Judge, I thought we both agreed -- if

18   I'm not mistaken -- that we wait on that one until we see what

19   the evidence shows.

20            THE COURT:  So we're going to reserve a ruling on

21   that; is that correct?

22            MR. PEARSON:  Yes, Your Honor.

23            THE COURT:  And then both sides have submitted

24   proposed instructions on receipt.  I don't know if you've had

25   a chance to meet and confer on that.

4

1        MR. CAPOZZI:  We talked about it.  And remind me what

2   we talked about.

3        MR. PEARSON:  Your Honor, for each of the three

4   issues flagged in the email, those were the only issues after

5   meeting and conferring that we couldn't resolve.  And so we

6   have two competing definitions of "receipt."  And then the

7   government objects to the inclusion of the voyeurism

8   instruction.  I believe that's all that's left to resolve

9   after we've spoken.

10        MR. CAPOZZI:  Judge, I have an issue with their

11   elements of the conspiracy.  I have additional instructions

12   that my paralegal is typing up now.  But, again, it's going to

13   depend on the evidence so I think we can hold off on those.

14        THE COURT:  Okay.  Now, I've received the proposed

15   instructions on receipt.  And they are different.  Both sides

16   have cited to case authority.  And I have reviewed those

17   cases, specifically on the defense side, the *Dobbs* case,

18   D-O-B-B-S, and the *Romm* case, R-O-M-M.  And the government's

19   proposed instruction citing to the *Mohrbacher* case,

20   M-O-H-R-B-A-C-H-E-R.  And I have reviewed those cases.  And I

21   do know where each side is citing to the case authority.

22        And I'm just not sure if you folks could meet and

23   confer and come up with a very simple explanation of

24   "received" to take into one's possession or something.  The

25   problem I have is with the government's instruction is the

1   second sentence, "an individual who downloads a visual image

2   takes possession of said delivery of the visual depiction."

3   Which is contained in the -- that language is contained in the

4   *Mohrbacher* case.

5          But my concern is that it seems to be almost not so

6   much an instruction as it is an argument that's being made.

7   And that's obviously a dispute with respect to whether or not

8   the fact that an image is downloaded means receipt.  Thinking

9   in terms of someone who accidentally downloads or

10  inadvertently downloads.

11         And the defense has stated it in more detail about

12  having the ability and intention to control the object.  In

13  other words, more of a conscious act.  Although that does seem

14  to bring into play an intent, which is not an element of the

15  offense itself.

16         So I do have a concern with both instructions.  I

17  recognize that you have cited -- correctly cited to case

18  authority in both of the proposed instructions.  But I do have

19  a concern that I'm not sure that either one -- or I should say

20  both are a bit problematic and I just don't know if we can

21  simplify "receipt" as just simply taking possession.

22         MR. CAPOZZI:  It has to be knowing position, knowing

23  receipt.

24         THE COURT:  Well, knowing is certainly an element of

25  the offense itself.  So -- and I believe that there is an

1  instruction with respect to "knowing."  And in the *Dobbs*

2  case -- and this is at page 1204.  The Court cites the

3  Webster's dictionary defining "receipt" as "to come into

4  possession of."  And then further down on that page, it says,

5  "However, mere receipt of child pornography is not what is

6  proscribed by Section 2252(a)(2).  Rather, it is the knowing

7  receipt of this illegal content that is punishable under the

8  statute."

9         And there is the knowing element in the offense

10  itself.  So I'm just not sure whether the parties would simply

11  just have "receipt" or "received" as "to come into the

12  possession of," period.  But that would be my suggestion if it

13  came down to not being able to come to an agreement.  As far

14  as I think the additional language that both sides have put in

15  your prospective proposed jury instruction goes a little bit

16  too far.

17         MR. PEARSON:  Your Honor, we would be fine with that

18  definition of "received."  I would also note that "knowingly

19  received" is in the essential elements of the offense.  So

20  when we're just talking about defining "receipt," I think the

21  Court's proposal is fine.  We have no objection.

22         THE COURT:  So basically "received" would be means to

23  take into one's possession.

24         MR. CAPOZZI:  Say again, judge?

25         THE COURT:  Received -- I'm looking at government's

1  instruction number 35.  Their first sentence is "'Received'

2  means to take into one's possession."  And that would simply

3  be the definition of "received."

4         MR. CAPOZZI:  That in itself is not the essence of

5  the charge though.  It has to be knowingly received.  And I

6  think -- is there an instruction on "knowingly"?  I don't have

7  it with me.

8         MR. PEARSON:  It would be the prior instruction in

9  the government's proposed instructions, which would be number

10 34, has "knowing receipt" in it.  So it would be --

11        MR. CAPOZZI:  That's fine.

12        MR. PEARSON:  -- essential element one.  "Defendant

13 knowingly received or distributed one or more visual

14 depictions of a minor."  And then the definition of "received"

15 would be the next one.

16        MR. CAPOZZI:  But then it's confusing, judge.

17 Because we're just giving a definition of receiving is just

18 merely having come in.  There's got to be a "knowing" tied in

19 with it.

20        THE COURT:  That's what instruction number 34 is.

21 That's the first element.  "The defendant knowingly received

22 any visual depiction."  So "knowingly" is part of that.  And

23 then the third element, the defendant knew the visual

24 depiction, et cetera.  So there is that knowledge aspect.

25        MR. CAPOZZI:  Are we defining "knowingly" anywhere?

1   That's why I think my instruction more adequately sets it out.

2          THE COURT:  Okay.  Well, if --

3          MR. GAPPA:  Yes.

4          THE COURT:  -- you folks want to attempt develop a

5   specific definition --

6          MR. GAPPA:  Your Honor, there is at government's

7   proposed number 43.  Knowingly.  It's the Ninth Circuit

8   instruction.

9          MR. CAPOZZI:  Is that included in your submissions?

10          MR. GAPPA:  Yes.

11          MR. CAPOZZI:  So long as it's there, then I'm fine.

12          THE COURT:  All right.  So I'm going to resolve,

13   then, that the instruction be given on "received" is

14   government's instruction number 35, the first sentence only.

15          Okay.  And then the other issue is the instruction on

16   voyeurism.

17          MR. CAPOZZI:  Judge, I think we just hold off and see

18   what the evidence shows.  That's all we can do at this point.

19          THE COURT:  Okay.  We'll hold off on that and see.

20   But neither side can assume that it's going to be an

21   instruction.

22          MR. CAPOZZI:  Right.

23          THE COURT:  You're just going to have to raise that

24   with Judge Drozd at the appropriate time.

25          MR. CAPOZZI:  Right.  Thank you.  The other question

1   I had, judge, is on the elements that the government put in on

2   the conspiracy.  They combined a lot of the elements together

3   and cited case law.  I'm having my paralegal put together the

4   Debitt & Blackmar instructions and some of the Ninth Circuit

5   instructions on conspiracy.  But I don't have those right now.

6   And again, a lot of it would depend on what the evidence

7   shows.

8        THE COURT:  Okay.  Yeah.  And obviously, this is

9   simply a ruling on that which can be ruled on.  Both sides are

10  entitled to a final jury instruction conference.  And probably

11  during the course of the trial you might be able to

12  meet -- either meet and confer amongst yourselves or with

13  Judge Drozd in terms of specific jury instructions that you

14  want to talk about or get resolved.

15       So I'm only dealing with those that were placed in

16  front of me by the request of the parties.  Okay.  So but

17  you're not -- neither side is precluded from offering other

18  proposed jury instructions.

19       Okay.  Anything else with respect, then, to jury

20  instructions before we get to the motions in limine?

21       MR. CAPOZZI:  No.

22       MR. PEARSON:  No, Your Honor.

23       THE COURT:  Okay.  Defense has filed a motion in

24  limine to exclude statements of A.T. and text messages from a

25  baseball game.  The statements defense has placed in the

1  motion.  And a reference to a baseball game.  And then any

2  reference -- the other one is any reference to "pedophilia,

3  pedophilic disorder, pedophile."  The request of the motion is

4  to redact those from exhibits.

5          Okay.  So let me ask:  First, let me ask defense.  On

6  the statements -- and if you feel you've already covered it

7  adequately, that's fine.  I don't have any problem with that.

8  But anything further on that regarding the statements of A.T.?

9          MR. CAPOZZI:  Judge, we've had hearings on the use of

10  the words "pedophilia, pedophile," et cetera.  And the Court

11  is saying that's not part of this case.

12          THE COURT:  Right.

13          MR. CAPOZZI:  And the experts are out.  Now the

14  government wants to put in words from A.T., "He massaged my

15  back, he tickled me, he weirded me out."  Which are clear

16  indications.  And they're going to put testimony in that he

17  massaged her back, he tickled her, et cetera, which is coming

18  back to the pedophilia again.  Him having interest in young

19  children.  And I think that should be excluded.  It's highly

20  prejudicial when we can't bring in the fact that he's not a

21  pedophile.

22          THE COURT:  Okay.  Government?

23          MR. PEARSON:  Your Honor, we believe this is highly

24  relevant.  The issue here isn't about whether he's a pedophile

25  in general.  It's about whether he had a sexual interest in

1   A.T., whether he intended to conspire to take sexually

2   explicit videos and photographs of her.  And so the extent

3   that this shows his interest in her, I believe it's highly

4   relevant.  It doesn't go to this general issue of his interest

5   in young girls in general.  It's specifically about this

6   victim.

7          THE COURT:  Anything else by defense?

8          MR. CAPOZZI:  Judge, it's -- that's pedophilia,

9   having an interest in younger children.  And again, we have

10  Count Two in here too.  And they're bringing this in in Count

11  One, which would lay over to Count Two also.  I think just

12  it's highly prejudicial.  There may be some probative value

13  there, but it's highly prejudicial to this defendant when he

14  can't bring in the fact that he's not a pedophile, he is not

15  interested in young kids.

16         THE COURT:  All right.  What I'm going to do is rule

17  as follows:  She can testify to the fact.  If it -- well, she

18  can testify that defendant massaged her back and that he

19  tickled her.  That's relevant on not being a pedophile or

20  being interested in young children in general.  But his

21  interest and relationship with A.T., which is important.

22  Because otherwise you have two strangers here.  The jury is

23  entitled -- well, the government is entitled to present

24  evidence regarding the relationship between defendant and A.T.

25         Now, however, I am going to exclude her statement or

1  purported statement "he weirded me out."  Her statement is not

2  relevant and it is prejudicial and it's her opinion, which I

3  believe is -- has little relevance.  And certainly, under 403,

4  would not be admissible.

5          So she can testify to the facts as to what he

6  physically did.  But she cannot testify as to the impact that,

7  quote, "he weirded me out."  Okay?  That would be

8  inadmissible.

9          With respect to the text message and pictures that

10 Mr. Henry purportedly sent to his wife of children and adults,

11 apparently pictures he took at a baseball game.

12         MR. CAPOZZI:  Again, it's the same argument.  We're

13 not allowed to bring anything in -- expert evidence that he's

14 not a pedophile, but yet we're taking pictures of young

15 children and that's being brought in by the -- by the

16 government to show his interest in young kids.  Indeed some

17 were -- we'll argue, some were adults.  But again, I think

18 that's highly prejudicial and not probative of anything in

19 terms of exploiting A.T., the confidential victim here.

20         THE COURT:  And government response?

21         MR. PEARSON:  Your Honor, mostly stand by what we set

22 forth in the briefing and the 404 notice that we filed a few

23 months ago.  But this is during the scope of the conspiracy,

24 they're text messages between him and a co-conspirator

25 discussing young women.  And to that extent, again, it shows

1   his interest in young women.  It shows that it makes it much
2   less likely that his wife was the only one who did this
3   because he's saying that he also has this interest.  And it
4   doesn't touch on pedophilia in general.  This is a specific
5   instance where he was the one taking these pictures and sent
6   them.
7           THE COURT:  Okay.  Well, this is what I'll -- I'll go
8   ahead and overrule the objection and allow them in.  Now,
9   basically what it's allowed for is similar to my ruling on
10  A.T.  It shows the relationship, if at all, between Mr. Henry
11  and Angele or Angelina.  And that's important in this case for
12  the government because the government is going to have to show
13  that common relationship between defendant and wife, their
14  purported mutual interest and which is -- would be arguably
15  consistent with the allegation that both he and his wife were
16  involved in basically -- well, we've already seen the setting
17  up of the cameras, et cetera.  So it's relevant for that
18  aspect only to show his relationship with his wife relating to
19  these text messages and pictures.
20          MR. CAPOZZI:  And we would ask the Court to give an
21  instruction as to that before this is done.
22          THE COURT:  Okay.  And again, any of these rulings,
23  if the parties believe that there should be proposed jury
24  instructions, cautionary instructions, limiting instructions,
25  whatever, you can go ahead and prepare those and present those

1    out of the presence of the jury to the trial judge.

2          Okay.  Now, the last thing is references to

3    "pedophilia, pedophilic disorder, pedophile."  Now, when we

4    had discussion in terms of motions in limine, I did indicate a

5    concern that Mr. Henry is not being charged as a pedophile or

6    having any kind of pedophilic disorder.  Clinically.  And we

7    did have the reports from various mental health experts that

8    really related more towards, of course, pretrial release.  But

9    nonetheless, those issues came up.

10         And I did indicate that apparently it's not an issue

11   in this case.  And just the words themselves have potential

12   prejudicial impact on a jury.  Even though they don't

13   understand a clinical definition, certainly it is problematic.

14         Now, the government did indicate that it would

15   attempt to redact titles or content that had that.  Now, the

16   government apparently is indicating that there's some that

17   would not or could not be redacted or that there are other

18   videos or other visual depictions that could be used.  And

19   what's the government's thought on that?

20         MR. GAPPA:  Thank you, Your Honor.  Our understanding

21   in reviewing the previous hearing is that it arose in the

22   context of, as the Court noted, a motion in limine.  And it

23   was in the context of whether or not any defense proposed

24   expert should be allowed to give their opinions.  And an

25   example was that defense counsel said, Your Honor, they have a

1   video that's entitled "pedophilia."  Which is incorrect.

2   There is no title simply "pedophilia."  There are titles that

3   do reference the words "pedo" and "pedophilia."  So that was

4   inaccurate.

5          However, the Court then said that's an interesting

6   point.  What about that?  And the government response was

7   there are a lot of videos.  To the extent that he would choose

8   to pick any video that has that reference in it, we could

9   redact it and we've done that.  So for -- I believe

10  there's -- there are six potential child pornography videos

11  where we would show excerpts from.  And of those, I believe

12  that every reference within the titles to "pedo" or

13  "pedophilia" has been redacted.

14         So I think to that extent we've abided by what we

15  said we would do.  So the remaining issue, then, is where we

16  have a list of other videos that are found, which aren't

17  necessarily going to be played, where there are some where

18  there is reference to "pedo."  But with that, our point was

19  that if the Court looks at some of those, in our view other

20  parts of those titles are arguably more prejudicial.  For

21  instance, if it says, "5 year old rape.  Father incest.  Three

22  year old daughter."  Things of that nature.  That to us is far

23  more inflammatory than the reference to "pedo" or

24  "pedophilia."

25         So it's hard to see how, under 403, if that's the

1   argument.  And again, there was no legal authority in support

2   of the motion.  But even if it were under 403, when the Court

3   looks at the prejudicial nature of redacting any reference to

4   "pedo" or "pedophilia," we, I think, have far more prejudicial

5   references.  And those shouldn't be excluded because, as we

6   pointed out, even -- the Ninth Circuit has said even in the

7   case of a stipulation that a particular video or image is

8   child pornography, the government is still entitled to play

9   that or show that material.  So we don't have a stipulation on

10  that basis.

11          So we think that there's a strong argument that

12  there's no need to redact these references in the titles.  And

13  that it's very important, when it's combined with the other

14  evidence that we anticipate showing what shows -- the only way

15  those titles get to where they are is through a set of

16  processes where the software is installed and then there's a

17  search box and you put in search terms.  And we'll show what

18  some of those searches terms were, such as preteen, lolita,

19  hussyfan, Raygold, PTHC.  Those are well known terms used to

20  search for and obtain child pornography.

21          And then when those search terms are entered, you get

22  a list of titles and files that relate to those terms.  And

23  it's only when someone goes through those lists and further

24  selects the ones to conclude the download process does the

25  download process continue.

1          Further, we'll show that not only was that done, but
2     then they were moved from that location where the download was
3     completed to a different device.  And then they were put into
4     a folder, among other things, that references "bad, sorted,
5     kid."  So that all goes to what is the person who's doing that
6     awareness, their knowledge, their intent to have that material
7     there.  It's highly probative of what the content is.
8          So for all of those reasons, we think that it's
9     important that the jury have an accurate understanding.
10    Although we are -- because we said we would do it, willing to
11    and have redacted for the videos that we'll play, reference to
12    those words that he's objected to.
13         THE COURT:  That's the only thing that's in front of
14    me.  Other titles and how the government went about locating
15    these files and where they were on the computer, et cetera,
16    and what the titles might be and what are common search terms,
17    whatever, that's not in front of me.  The only thing that's in
18    front of me is references to "pedophilia, pedophilic disorder"
19    or "pedophile."  And the government has indicated that they've
20    been able to redact that.
21         And it seems to me that if there's enough materials,
22    if you will, that you could probably do an example.  I know in
23    prior trials that I've had, the government did not attempt to
24    publish every image and just selected a few and were able to
25    elicit from the witnesses that, yeah, there were others that's

1  very similar.  If the government objects to that, then the

2  government played however many the government feels is proper.

3       If the defense says, well, how do we know that they

4  really are child pornography, let's see them all.  Then the

5  defense opens the door.  I don't think the defense is going to

6  do that.  Just a matter of example.  The ruling will still

7  stand.  And I agree that references to those terms should not

8  be used, they should be redacted.

9       The government, I assume, has other images, other

10  files, et cetera, other folders that can be used as examples.

11  Certainly I would anticipate that counsel would meet and

12  confer before the government attempts to introduce and publish

13  to the jury videos, images, et cetera.

14       MR. GAPPA:  Your Honor, just so we could have some

15  confirmation of the ruling.  So, for instance, in the

16  response, the government attached two exhibits.  Did the Court

17  see those?  There's 29.2 and then 36.2?

18       MR. CAPOZZI:  Was it attached to your memo?

19       THE COURT:  Okay.  I didn't -- if it's there, I

20  didn't print it out.

21       MR. CAPOZZI:  I don't have it attached to my memo

22  either.  Can I respond, judge?  Is that okay?

23       THE COURT:  Sure.

24       MR. CAPOZZI:  I think the government is a little off

25  on that last hearing.  Last hearing was whether or not the

1    words "pedophile, pedophilia," et cetera was going to come in

2    evidence.  And then the judge pointed out the word "pedo" is

3    mentioned in the videotape that you want to play.  And

4    indicated it should be redacted.

5           And specifically, on the transcript from the October

6    16th, 2017 hearing on page six of the transcript, the Court

7    said:  "So I did indicate that to the extent that the word or

8                those terms like that are used, they needed to be

9                excluded as not really relevant.  But also under 403,

10               the potential prejudicial impact upon Mr. Henry.  And

11               I did direct the parties to meet and confer with

12               respect to exhibits.  The government did indicate

13               that although there was some videos or other

14               materials that had titles that indicated 'pedophilia'

15               or 'pedophile' or information such as that, that

16               would have to be redacted."

17               This is the court saying this.

18               And the government agreed.

19               "The government indicated that there were a number of

20               files that did not have the terminology and would

21               disclose to the defense the exhibits that would be

22               used.  And if there were any that had as the title or

23               contents, that it would be redacted."

24               Judge, in their packet for exhibits is the

25    number -- I think it's 150 to 200 child porn.  In there is the

1   word "pedo" or "pedophile."  That's an exhibit going to the

2   jury.  That shouldn't be.  And again, now the government is

3   saying other words within those titles are worse than

4   "pedophilia."  I would ask that those be excluded because

5   it's, again, going back to the pedophilia that we can't bring

6   in.

7           THE COURT:  Well, I'm not addressing any other -- any

8   other titles other than those which contain those terms.

9           MR. CAPOZZI:  Okay.

10          THE COURT:  The government, at page three of the

11  opposition, does give a reference to one of the titles.  It's

12  "r@ygold, real kitty move pedo underage illegal preteen."

13          If the government is going to play that or give that

14  title, I don't see why "pedo" can't be deleted, redacted.  I

15  don't understand what the problem is.  And I'm not saying

16  anything else about titles or visual depictions.  Because that

17  wasn't what was in front of me.

18          That's the only reason I dealt with that issue is the

19  defense wanted to get in testimony from their expert witnesses

20  that Mr. Henry was not a pedophile.  And I said that that's in

21  part irrelevant because pedophilia, pedophile is not an issue.

22  And then the defense said well, but they're going to bring

23  that up in terms of some of the titles.  Government -- and I'm

24  paraphrasing this.  Government says, well, we can redact that.

25          And I don't see any problem with the example that the

1   government gave at page three, line 24, why that one word

2   "pedo" can't be deleted, redacted, whatever.  And it's

3   still -- obviously the jury will still get the title.  And if

4   the government chooses to play portions from that, if they're

5   images only, and the word "pedophilia, pedophile," et cetera

6   is not raised, I don't see how that prejudices the government

7   while still complying with my directive.

8          Again, remember, this only came up because the

9   defense was attempting to admit expert testimony of their

10  witnesses, which I said is not relevant whether or not Mr.

11  Henry is a pedophile.  That's how it came up and that's how I

12  addressed that.  I'm not dealing with any other titles, names,

13  et cetera.  I'm not going to say it out loud, but at page

14  three, line 25, sure, there is a title there that's --

15         MR. CAPOZZI:  Sure indicates "pedophilia."

16         THE COURT:  Well, no, it uses the F word.

17         MR. CAPOZZI:  Oh, I --

18         THE COURT:  And so I'm saying if that's what it is,

19  that's what it is.  I'm not saying the government can't admit

20  that because that wasn't part of my ruling.  And I'm sure that

21  there are other titles that are even more graphic.  But that's

22  the nature of child pornography.  And I'm not going to require

23  those to be cleansed, redacted or scrubbed clean or whatever

24  because that's all part of the nature of the alleged offense.

25  I'm only dealing with that one set of words.

1          MR. CAPOZZI:  But in the amended stipulation that we

2    had, we took out the word "pedo."  But what the government is

3    saying is on the ones we're playing, we're taking out "pedo."

4    But in all the others that the defendant apparently possessed,

5    allegedly possessed, there's "pedo" in those titles.  And

6    they're going to submit that to the jury.  That's what I

7    object to.

8          THE COURT:  Well, I think those could be redacted.

9    There's a long title and just one word could be.  And it may

10   well be that if the government has enough files or whatever,

11   folders or -- that, you know, it may be that they don't even

12   need a couple of those things just to show -- and there might

13   be a stipulation.  Okay, how many files, folders, whatever,

14   were there?  But if there can't be a stipulation, the

15   government is going to have to -- have to --

16          MR. CAPOZZI:  We would stip -- defense would

17   stipulate that there was child porn in these videos -- no

18   question about it -- to avoid playing them and to avoid giving

19   all the titles to the jury.  But I'm sure the government

20   wouldn't agree to do that.

21          THE COURT:  I'm just saying on the limited ones

22   dealing with pedophilia, et cetera.  The others, the

23   government is right, I mean, the case authority is clear that

24   they don't have to sanitize, cleanse, et cetera.  And that

25   they don't have to accept the stipulation and not play some of

1    the examples.

2           In previous trials that I've had, the government did

3    not attempt to play hundreds of videos.  Just some

4    illustrations with the indication that there were similar

5    videos and it totaled X number.

6           MR. CAPOZZI:  We're making the offer to stipulate

7    that they are child porn.

8           THE COURT:  And again, that's the government's

9    call --

10          MR. CAPOZZI:  Right.

11          THE COURT:  -- as to whether or not they stipulate.

12          MR. CAPOZZI:  Judge, in your ruling the other day,

13   you said that -- reading the last sentence.  "The government

14   indicated that there were a number of files that did not have

15   the terminology and would disclose to the defense the exhibits

16   that would be used.  And if there were any that had that as a

17   title or content" -- you indicated content -- "of those

18   videos, that it would be redacted."

19          Now, to me, the content of something -- something

20   that indicates pedophilia would be an adult having sex with a

21   child.

22          THE COURT:  Well, no, I -- if that's what you thought

23   that I -- I certainly did not intend that.  Because otherwise

24   that ruling would prohibit the government from introducing any

25   files.  So -- and that's not -- I'll make it clear that was

1    not my intent.  What I was concerned about is somehow in the

2    content of the video, the file, the folder, whatever, that

3    there were specifically references to those words.

4              MR. CAPOZZI:  Okay.

5              THE COURT:  Not that there was, you know, minor/adult

6    content.  I did not intend that at all.

7              Okay.  All right.  So -- and you folks will need to

8    meet and confer obviously.

9              Those are the issues that were in front of me that

10   you wanted me to get resolved before I formally transferred

11   the case to Judge Drozd for trial.

12             Before I close this, is there anything else for

13   plaintiff's side that we need or should address today at this

14   hearing?

15             MR. GAPPA:  No, Your Honor.  Although if the Court

16   were willing to, I believe that the defense and the government

17   have conferred before the Court called the case about the

18   admissibility of the defendant's statements.  We have provided

19   the edited version of the defendant's statements.  And we

20   intend to show and play those statements.  So I don't know

21   that the Court needs to make a ruling that those are going to

22   be admissible.  But I don't believe there's going to be any

23   objection to them.

24             MR. CAPOZZI:  Well, the disks that the government

25   sent, we're not able to see yet.  We have to do something with

1   encryptions and zip file or something of that nature.  I

2   haven't seen it.  Now, from what the government has said, I

3   don't have an objection.  I think the only thing they deleted

4   was the defendant asking for a lawyer.

5              MR. GAPPA:  Right.

6              MR. CAPOZZI:  And there was some dead time.

7              MR. GAPPA:  And the reference to any prior arrests.

8              MR. CAPOZZI:  And reference to any prior arrests.

9   Yeah.  Are you deleting the asking about how much time will

10  this be if it's federal or state?

11             MR. GAPPA:  Yes.

12             MR. CAPOZZI:  Is that deleted?

13             MR. GAPPA:  Yes.

14             MR. CAPOZZI:  Then I'm fine.

15             THE COURT:  Obviously you can review that and just

16  make sure.  And certainly sometime during the course of the

17  trial, Judge Drozd can review that.  Okay.  But other than

18  that, anything else, plaintiff's side, that has to be

19  addressed?

20             MR. GAPPA:  No.  And maybe this is obvious, Your

21  Honor.  But just for our benefit, since I've not had a case

22  like this transfer this late in the process.  Can we assume

23  that all the rulings that have been made are essentially

24  binding on the case?  So that, for instance, we don't have to

25  revisit the issue of Angele Henry being called?

1          THE COURT:  No.  Up to this point, any ruling that

2    any judge makes is the law of the case unless and until the

3    next judge, if there's a different judge, takes under motion

4    for reconsideration.  But other than that, any ruling stands

5    as the law of the case.  And the transfer does not impact

6    those rulings.

7          MR. GAPPA:  That was all we had, Your Honor.

8          THE COURT:  Defense, anything else?

9          MR. CAPOZZI:  Just a quick question to the

10   government.  There was an audiotape in the car.  Is that going

11   to be played also?

12         MR. GAPPA:  (Nods head.)

13         MR. CAPOZZI:  Okay.  Then we're fine.  The question I

14   have, judge, is the government has indicated in their exhibit

15   binder that they were going to bring in some testimony from

16   Rebecca Johnson, I think it was.  This was his prior fiancee,

17   where there were some videos taken back then.  I don't know if

18   the government wants to introduce those.  But there's some

19   other videos that I think they're trying to get into evidence.

20   So I'd like to hear what the government intends to do.

21         MR. GAPPA:  It's Rebecca Jackson.

22         MR. CAPOZZI:  Jackson.

23         MR. GAPPA:  And yes.  We think those are highly

24   relevant.  We had a hearing on that in the context of the

25   challenge to the conspiracy count.  And that was some of the

evidence offered -- because in part it seemed like there's a

lot of prongs to the defense.  But one of them is that this

was all Angele's idea.  That she had the initiative to install

these cameras and it wasn't his idea.

So the fact that he has set up other hidden cameras

to surreptitiously record other people taking showers, for

instance, to us is highly relevant of whose idea it is to do

that when it relates to a victim who's the subject of a

conspiracy count.

THE COURT:  Okay.  And I'm going to make it clear.

On all of these proceedings and all of my rulings, I'm looking

more towards whether or not the contested evidence or whatever

it is, motions in limine, impacts the government's case in

chief.  Okay?  And whether or not it's relevant to the

government's case in chief.  We've heard what the defense

position might be, but the defendant need not testify nor put

on any evidence.

And so I can't make the assumption that, yeah, this

is admissible because the defendant is going to say this or

this is the defense position.  Because at trial, the jury

doesn't know that.  As far as the defense is concerned, they

don't have to say anything other than cross-examination, et

cetera.  So all of my rulings really related to the burden of

proof on the government, not in anticipation of what the

defense might say or do.

28

1          Okay.  Anything else, defense side, anything else?

2          MR. CAPOZZI:  I don't think so, judge.  I'm fine.

3          THE COURT:  Okay.  All right.  And I'll go ahead and

4    issue the transfer order.  And then I believe Judge Drozd's

5    courtroom deputy has already sent you the schedule for --

6          MR. CAPOZZI:  Yes.

7          THE COURT:  All right.  So this will conclude these

8    proceedings.

9          MR. CAPOZZI:  Thank you, Your Honor.

10          MR. GAPPA:  Thank you, Your Honor.

11      (The proceedings were concluded at 2:11 p.m.)

12

13          I, KAREN HOOVEN, Official Reporter, do hereby certify

14    that the foregoing transcript as true and correct.

15

16    DATED:  14th of November, 2018     /s/  Karen Hooven
                                          KAREN HOOVEN, RMR-CRR
17

18

19

20

21

22

23

24

25