1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DRODZ


UNITED STATES OF AMERICA,    )
    )
        Plaintiff,    )
    )
       vs.    )  1:13-CR-00409 DAD
    )  JURY VOIR DIRE
ADAM ALAN HENRY,    )
    )
       Defendant.    )
    )
_____    )


Fresno, California        TUESDAY, NOVEMBER 7, 2017


REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES OF COUNSEL:

For the Government:        DAVID GAPPA and ROSS PEARSON
        Assistant U.S. Attorneys
        2500 Tulare Street, Suite 4401
        Fresno, CA 93721-1331


For the Defendant:        ANTHONY CAPOZZI
        **LAW OFFICE OF PATRICK  CAPOZZI**
        1233 W. Shaw Avenue, Suite 102
        Fresno, CA 93711-3718

Volume 1 Pgs. 1 - 143, inclusive


REPORTED BY:  RACHAEL LUNDY, CSR #13815
Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

TUESDAY, NOVEMBER 7, 2017                    Fresno, California
1:00 p.m.

 3          COURTROOM DEPUTY:  The Court calls case 1:13-cr-00409

 4   United States vs. Adam Alan Henry, jury trial.

 5          THE COURT:  Good afternoon.  Please state your

 6   appearances.

 7          MR. GAPPA:  Good afternoon, Your Honor.  David Gappa

 8   for the United States.

 9          MR. PEARSON:  Good afternoon, Your Honor,

10   Ross Pearson for the United States.

11          MR. CAPOZZI:  And Your Honor, Tony Capozzi for the

12   defense, along with Marcus Lawson, my expert witness, and

13   Mr. Henry, who is present in custody, Your Honor.

14          THE COURT:  And does the prosecution have a case

15   agent that they intend to have seated with them during trial?

16          MR. GAPPA:  Yes, Your Honor.  Currently, he's

17   downstairs but --

18          THE COURT:  All right.

19          MR. GAPPA:  It's Detective Art Hively.

20          THE COURT:  Okay.  And any objection to defense

21   expert, is it Mr. Lawson?

22          MR. CAPOZZI:  He's my expert/investigator both.

23          THE COURT:  Any objection to him being seated at

24   counsel table?

25          MR. GAPPA:  No, Your Honor.

1          THE COURT:  All right.  Is there otherwise a motion

2    to exclude witnesses?

3          MR. GAPPA:  Yes, I think --

4          MR. CAPOZZI:  On both sides, yes.

5          THE COURT:  All right.  That motion is granted, and

6    I'll ask counsel to please remain aware throughout the trial,

7    scan the audience on occasion, because I won't recognize the

8    witnesses.  So I have to rely upon you all to do that.

9          I think I'm ready to start with jury selection.  We

10   got your joint neutral statement of the case, which I will

11   read to the prospective jurors.

12         I will permit -- I know we haven't met about this

13   case, because it was just reassigned from Judge Ishii after

14   you appeared in front of him yesterday.

15         I normally permit 15 -- maximum of 15 minutes

16   supplemental Voir dire by counsel after I'm done.  I intend to

17   select two alternates because of the somewhat chopped up trial

18   schedule that I'm going to have to maintain.

19         Any other questions about --

20         MR. CAPOZZI:  I have one question, Your Honor.

21         THE COURT:  -- procedure.

22         MR. CAPOZZI:  How do we pick the jury and how do we

23   determine who to excuse and who is going to be on the jury

24   after we do that?  What system do you use?

25         THE COURT:  I always have difficulty in identifying

4

1   the system I use by name, because it means different things to

2   different people.  Sometimes I'll describe it.

3          Let's see, what do we have got out there, Renee?

4   We've got 19?

5          COURTROOM DEPUTY:  21.

6          THE COURT:  Excuse me.  Oh, that's right.

7          MR. CAPOZZI:  14 in the box, and 7 in front.

8          THE COURT:  So we'll fill 21.  I'll get to the point

9   where we have 21 qualified jurors.

10         Once we have 21 qualified jurors, we'll start passing

11   the strike sheet.  And then, if we get to the point where you

12   folks have exercised preemptory challenges in such a way that

13   that 21 isn't going to suffice to get us our 12-person jury

14   and our two alternates, then, when we hit that point -- Renee

15   will be keeping a eye out, because she's be the one passing

16   the strike sheet back and forth, I'll reposition everybody up,

17   because they'll be the lowest number.  And I'll refill in the

18   bottom until I qualify enough folks at the back end so that

19   even after you've -- even if you exercise all of your

20   remaining challenges, we've got a jury.

21         I leave them seated throughout the process.  If there

22   are excess jurors beyond the 12 plus the 2, it is the lowest

23   numbered 14 that will constitute the jury.  So it is important

24   that you keep track of what seat number they're in.

25         But I believe them in place.  I tell them they can

1    stretch, but I leave them in place so that you can associate a

2    name -- a face with a name with an answer, instead of excusing

3    them and having you do that in the blind.  I think that's a

4    little easier on you -- a little easier to remember.  "Now,

5    what number was that that who gave that answer?"  Now I

6    recognize the person that gave the answer.  So I don't excuse

7    them while you pass the strike sheet.  I leave them seated.

8            Now, does that describe is sufficient detail?

9            MR. CAPOZZI:  Yes.

10           And the other question I have is, since this is a

11   really sensitive type of case, jurors may not be willing to

12   say that they've had something in the past, would you be

13   willing to take them in the back to ask them if they have any

14   issues that bother them about this case, because they might

15   not want to say it publicly -- with the attorney present.

16           THE COURT:  Right.  I have not in -- I've had three

17   prior child pornography trials.  I understand this is even a

18   little bit different still.  But in those three cases, I cover

19   the subject matter.  I certainly don't go out of my way to

20   encourage private sessions, but at some point I'll probably

21   mention that it -- if the individual feels that it is

22   absolutely necessary, to please let me know, and I'll try to

23   make accommodations to hear them outside the presence of the

24   other jurors.

25           MR. CAPOZZI:  That's good.  Okay.

1          THE COURT:  Sometimes just asking them to approach

2     sidebar.

3          MR. CAPOZZI:  That's fine.

4          THE COURT:  I don't want to open the floodgates,

5     because -- it is my hope, and I apologize to you from the

6     outset, my civil law and motion calendar was very full today,

7     with very substantive matters.  We didn't get off the bench

8     until after 12:30.  So I know we're getting a late start

9     already.  But Renee and Rachael told me that they were ready

10    to stay late.  My hope is that we get a jury tonight before we

11    leave.  If I can't, I can't, but I hate it bring everybody

12    back in the panel, if I'm able to get a jury today.

13          Any other questions?

14          MR. CAPOZZI:  No, thank you.

15          MR. GAPPA:  Your Honor, if I've understood, we have

16    six preemptories.

17          THE COURT:  Yes.

18          MR. GAPPA:  And defense has 10.

19          THE COURT:  Yes.

20          MR. GAPPA:  Will we always be exercise one at a time?

21          THE COURT:  Yes.

22          MR. GAPPA:  Okay.

23          THE COURT:  One at a time, back and forth, back to

24    back passes.  That's your jury.  If you pass, you lose it.

25          MR. GAPPA:  Okay.

1          THE COURT:  Okay.  So a pass is an exercise of it --

2     effectively, an exercise of a challenge.  And one challenge

3     per side since we're picking two alternates.

4          MR. CAPOZZI:  Okay.

5          THE COURT:  One challenge for the alternate.

6          MR. CAPOZZI:  For the alternates.

7          THE COURT:  So are we ready to go?

8          MR. CAPOZZI:  Yes.

9          THE COURT:  All right.  Call them up.

10        (Prospective Jury enters courtroom.)

11        (Jurors are identified by number only.  Any reference to

12     personal identifiers regarding jurors has been redacted.

13     Actual personal information requires a motion and Court

14     order.)

15          THE COURT:  Good afternoon ladies and gentlemen.  And

16     welcome to the United States District Court for the Eastern

17     District of California.

18          My name is Dale Drodz, and I am the district judge

19     who will be presided over this trial.

20          The Court staff, who will be assisting me during the

21     trial include my courtroom deputy, Renee, seated to my left;

22     Rachael, our court reporter, seated to my right, and Sam, my

23     law clerk over there on the far left.

24          And Mr. Gappa and Mr. Pearson, would you please

25     introduce yourself to the prospective jurors.

1          MR. GAPPA:  Thank you, Your Honor.

2          Good afternoon, ladies and gentlemen.  My name is

3    David Gappa.  I'm an assistant United States attorney a

4    federal prosecutor.  I work in the building, representing the

5    government with my colleague, Ross Pearson.

6          THE COURT:  And, Mr. Capozzi, would you please

7    introduce yourself and those seated at counsel table with you.

8          MR. CAPOZZI:  Thank you, Judge.

9          My name is Tony Capozzi.  I'm the defense attorney in

10   this case.  And I'm defending Adam Henry, who is sitting here

11   at the table, and also assisting me is Marcus Lawson.  Thank

12   you.

13         THE COURT:  And ladies and gentlemen, you've been

14   summoned here today for the trial of a criminal case entitled

15   United States of America versus Adam Alan Henry.

16         In this case, the government has charged the

17   Defendant with two criminal offenses.  One offense is receipt

18   of child pornography on dates ranging from approximately

19   November 2, 2005 through approximately September 19th, 2013.

20         The other offense is conspiracy to sexually exploit a

21   minor on dates ranging from approximately May 2012 through

22   approximately September 19th, 2013.

23         Both offenses are alleged to have occurred within the

24   Eastern District of California, in or near Turlock and Ceres,

25   California.

1       The Court will provide you a more detailed
2  explanation of what the law is that governs this matter at a
3  later time.

4       Now, as to both charges, the Defendant, Mr. Henry,
5  has pled not guilty, which puts at issue each and every
6  element of the offenses charged.  And it is the prosecution's
7  burden to prove each and every element of the offenses charged
8  beyond a reasonable doubt.

9       The Defendant is presumed innocent, and that
10  presumption of innocence remains with him throughout the trial
11  and during the juries deliberations until and unless it is
12  dispelled by proof beyond a reasonable doubt.

13       Now, before we get started here, I will give you this
14  introduction and addition:  We're about to begin the process
15  of selecting a jury to hear this case.  Each party in this
16  matter is entitled to a fair and unbiased and unprejudiced
17  jury.

18       If there is any fact or any reason why any of you
19  might be biassed or prejudiced in any way, you must disclose
20  that fact or the reasons when you are asked to do so.

21       It is your duty to make this disclosure based upon
22  the oath of prospective jurors, which you have already taken
23  in the jury lounge before coming here to the courtroom.

24       Our purpose in conducting this questioning is not to
25  embarrass you or to pry inappropriately into your personal

1    lives.  Our only purpose is only to determine whether you can

2    be a fair and impartial juror in this particular case.

3           The jurors who will be selected as a result of this

4    process are selected as the judge of the facts in this case.

5    As judges, you must be fair and impartial to both sides.

6           If there are matters in your personal history that

7    would prevent you from being fair and impartial, then it would

8    be inappropriate for yo to sit at jurors in this matter.

9           Just as it would be inappropriate for me to sit as a

10   judge of the law in this case, if for some reason, I could not

11   be fair and impartial to both sides.

12          Please remember that the oath you have taken as

13   prospective jurors requires you to answer all questions put to

14   you during this process, truthfully, and completely.

15          And Madam Clerk, would you please call 21 individuals

16   to fill the seats and instruct them as to where in the box

17   they should go.

18          COURTROOM DEPUTY:  Juror 001, if you could come

19   forward, all the way up to the top row, seat closest to the

20   audience.  There's a little swinging gate right in the middle

21   there.

22          PROSPECTIVE JUROR SEAT NUMBER ONE:  Closest to the

23   audience?

24          COURTROOM DEPUTY:  So come up on the --

25          THE COURT:  Can you make that?

1          PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes.

2          THE COURT:  Oh, she has a walker.

3          Do you need some stance?

4          PROSPECTIVE JUROR SEAT NUMBER ONE:  I'll be good.

5          THE COURT:  Juror 002.  You're going to be sitting in

6   the top row next to Juror 001.

7          Juror 001, are you sure you don't need some

8   assistance?

9          PROSPECTIVE JUROR SEAT NUMBER ONE:  Nope, got it.

10         COURTROOM DEPUTY:  Okay.  Juror 003.  We are going to

11  continue filling the box this way.

12         Juror 004, Juror 005, Juror 006.

13         If I mispronounce your name, feel free to correct me

14  so we can get it right the next time.

15         Juror 007, Juror 008.

16         COURTROOM DEPUTY:  Juror 008, if you can take the

17  seat closest to the audience.

18         Juror 009, Juror 010, Juror 011, Juror 012, Juror

19  013, Juror 014, Juror 015.

20         Juror 015, if you can take the bottom row closest to

21  the audience, please.

22         Juror 016, Juror 017, Juror 018, Juror 019, Juror

23  020, and Juror 021.

24         THE COURT:  Now, two preliminary matters, for all of

25  those of you that are looking at sheets on your chairs, that's

1  going to be the very last thing that we do.  So you're not

2  going to need those for a while.

3          All right.  And second of all, for all of those of

4  you in the audience who have not been called to fill 1 the 21

5  seats, I'm telling you you're job is actually a more difficult

6  one.  Because I'm going to be requesting the 21 individuals

7  who are seated now.

8          However, if, for any reason, one of them is excused

9  during that process, Renee will call one of your names to fill

10 the vacated seat.

11         When that happens, what I'm going to ask you is

12 whether you have any responses to any of the questions I have

13 already asked.  So, you need to be paying close attention, and

14 in your mind, keeping track of the areas where you have

15 responses to my questions.  Because I can virtually guarantee

16 you that some of you will be joining those seated in the 21

17 seats, and I'll be asking you if you have any responses to any

18 of my questions.  So please, pay close attention if even

19 though you're in the audience and not in the 21.

20         First, for all of those of you seated in the 21

21 seats, are any of you have any -- having any difficulty

22 hearing me, seeing me, or understanding me?  No response.

23         It is important that each you hear the proceedings,

24 and obviously, those who are eventually selected as jurors in

25 the case.  So if at any point during these proceedings, you're

1    having difficulty hearing or understanding anything that's

2    being said, please, let us know immediately so that we can

3    correct the problem.

4         Does anyone suffer from any kind of disability that

5    would make it difficult for them to be seated for several days

6    and listen to evidence and argument?  Yes, Juror 001?

7         PROSPECTIVE JUROR SEAT NUMBER ONE:  So long as --

8         THE COURT:  We're going to get you a microphone, and

9    please, pass this microphone, which Renee will give you some

10   instructions on.  It can be touchy.

11        COURTROOM DEPUTY:  When you speak into the

12   microphone, keep it about four inches away from your lips.

13   When pass it, do not push the button the bottom, it will mute

14   it or turn it off, okay?  Thanks.

15        PROSPECTIVE JUROR SEAT NUMBER ONE:  I would just need

16   to be able to have a break every couple of hours.

17        THE COURT:  All right.  Beyond that, anything that

18   would prevented you from serving in terms of --

19        PROSPECTIVE JUROR SEAT NUMBER ONE:  In terms of

20   health?

21        THE COURT:  Yes.

22        PROSPECTIVE JUROR SEAT NUMBER ONE:  Just don't ask me

23   to walk too far.

24        THE COURT:  That we can do.

25        All right.  And there was another hand, Juror 020?

1    Can we pass the mic up, please?

2            PROSPECTIVE JUROR SEAT NUMBER TWENTY:  Uh, I'm just

3    recovering from foot surgery and just having it, my foot,

4    down, not being able to elevate it and missing my physical

5    therapy appointments, has been, you know, quite difficult.

6    But if I could just be deferred until after this, I would be

7    more than happy to serve.

8            THE COURT:  All right.  Are you on pain medication of

9    my kind?

10           PROSPECTIVE JUROR SEAT NUMBER TWENTY:  Not any

11   heavy-duty pain medications, because I have to drive, and I

12   deal with children, kids.

13           THE COURT:  But you need to keep it elevated?

14           PROSPECTIVE JUROR SEAT NUMBER TWENTY:  I do.  And the

15   physical therapy issues that I have to go through and the

16   exercises throughout the day I'm supposed to be doing for my

17   foot.

18           THE COURT:  How long ago was this surgery?

19           PROSPECTIVE JUROR SEAT NUMBER TWENTY:  In July.

20           THE COURT:  Boy.

21           PROSPECTIVE JUROR SEAT NUMBER TWENTY:  It's just

22   because I'm older now.

23           THE COURT:  We don't heal like we used to, right?

24           PROSPECTIVE JUROR SEAT NUMBER TWENTY:  That's true.

25           THE COURT:  If we were able to get you a chair to

1   elevate it and a pillow; would that suffice?

2        PROSPECTIVE JUROR SEAT NUMBER TWENTY:  Not so much.

3   It's just about keeping it down but also about the exercises

4   that I'm supposed to do during the day to deep it moving

5   without my boot on and without my compression stocking.  It's

6   just the little things.

7        THE COURT:  All right.  Any objection?

8        MR. CAPOZZI:  No.

9        MR. GAPPA:  No, Your Honor.

10        THE COURT:  Thank you, Ma'am, we'll -- I'll have you

11   excused from this summons.  You don't need to call in after

12   five o'clock, but you will go back on for possibility of being

13   called back again in the future.

14        PROSPECTIVE JUROR SEAT NUMBER TWENTY:  How far in the

15   future?

16        THE COURT:  No time soon, months.

17        PROSPECTIVE JUROR SEAT NUMBER TWENTY:  Okay.  Okay.

18   So --

19        THE COURT:  Thank you.  You're excused, free to go.

20        COURTROOM DEPUTY:  If you could pass the mic to

21   somebody next to you.  Thanks.

22        Juror 022.

23        THE COURT:  Juror 022, any responses to any of my

24   questions so far?  Just got started.

25        PROSPECTIVE JUROR SEAT NUMBER TWENTY:  No, sir.

1           THE COURT:  All right.  Before beginning today, the

2     attorneys and I have met to discuss matters including the

3     estimated length of this trial.

4           Unfortunately, due to other matters here at the

5     Court, this trial is going to take place in a little bit

6     broken up, which could make things easier for some of you, but

7     it's going to lengthen the number of days of the trial a bit.

8           Here's the schedule that we're going to keep:  We'll

9     be in session until approximately 5:00 p.m. tonight,

10    hopefully, following the selection of a jury.

11          Tomorrow, we will be in session from 8:30 to

12    approximately 4.30 or 5:00.

13          On Thursday, I have a full calendar in the morning,

14    so we'll only be in session on Thursday from 1:00 to

15    approximately 5:00 p.m.  Friday is a federal holiday.

16          On Monday of next week, we will -- I have a full

17    morning calendar.  So we'll, again, be in session from 1:00 to

18    4:30 to 5:00.

19          On Tuesday, same situation, 1:00 to about 4:30 or

20    5:00.

21          On next Wednesday, we have, again, a full day 8:30 to

22    4:30 or 5:00.

23          And Thursday, from 8:30 to approximately 4:30 or

24    5:00.  I would certainly anticipate by a week from Thursday,

25    this case would be to the jury for decision.  And if the jury

1  had not yet reached a verdict, they would return for further

2  deliberation on Friday the 17th.

3          Now, of course, all of that is subject to some

4  change.  You can never be absolutely certain with predictions,

5  but that's the way that the proceedings look to me so far.

6          Now, under certain very narrow circumstances, the law

7  does allow me to dismiss you from serving on a jury if that

8  service would create an undue hardship on you as defined under

9  the law.

10          And I do want you to know that we understand that we

11  disrupt your lives when we call you to jury service.  We take

12  you away from your families, your jobs, your responsibilities,

13  anything else that you would normally be doing today and for

14  the days of the trial.

15          But please understand that the law does not allow me

16  to dismiss you because jury service is inconvenient.  It has

17  to truly be an undue hardship in order for me to be allowed to

18  excuse you from jury service.

19          And I think it's important in that regard to just

20  keep in mind how absolutely critical jury service is to our

21  system of justice and to the freedoms that we all enjoy as

22  citizens of the United States of America.

23          Our constitution guarantees all of us the right to a

24  trial by jury, and that guarantee would not be a reality

25  without your service.  And for that, we thank you for being

1    here today and for having answered your summons.

2          As I've already mentioned to you, as jurors, the jury

3    in this case, who is selected, are, in fact, judges during the

4    course of the trial.

5          I think, if you are chosen as a juror in this matter,

6    I think you'll find your experience to be rewarded --

7    rewarding to the extent possible under the circumstances.  But

8    it is very, very important that you serve, if it is not an

9    undue hardship.

10         So given the schedule that I have just laid out, is

11   there anyone that's for whom service on this particular jury

12   would present an undue hardship in terms of their other

13   commitments?  Juror 013, if we could pass the mic.

14         PROSPECTIVE JUROR IN SEAT NUMBER 9:  Your Honor, may

15   I approach the bench?

16         THE COURT:  Is it a matter having to do with the

17   schedule?

18         PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yes, but it's

19   also a personal matter, too.

20         THE COURT:  I'll take that up in a moment.

21         Anyone else?  Yes?

22         PROSPECTIVE JUROR IN SEAT NUMBER 4:  It will be a

23   hardship for me.  We have a vacation that we've been planning

24   for a year, and we're supposed to leave tomorrow.

25         THE COURT:  And Juror 004, does the vacation entail a

1    flight of any kind?

2         PROSPECTIVE JUROR IN SEAT NUMBER 4:  No flight, but

3    all the plans are made and tickets for stuff have been bought.

4         THE COURT:  And is it out of state?

5         PROSPECTIVE JUROR IN SEAT NUMBER 4:  Yes, in

6    Colorado.

7         THE COURT:  Are you going with other members?

8         PROSPECTIVE JUROR IN SEAT NUMBER 4:  My husband, and

9    then my two sisters are going to meet us from -- one is from

10   Illinois and one is from Colorado.

11        THE COURT:  This is scheduled to be begin tomorrow?

12        PROSPECTIVE JUROR IN SEAT NUMBER 4:  Yes, yes.

13        THE COURT:  And you're supposed to travel?

14        PROSPECTIVE JUROR IN SEAT NUMBER 4:  Yes.  We're

15   supposed to leave tomorrow morning.

16        THE Court:  Over what period of time is the --

17        PROSPECTIVE JUROR IN SEAT NUMBER 4:  We should be

18   back about the 22nd, 23rd.

19        THE COURT:  Any objection?

20        MR. CAPOZZI:  No, Your Honor.

21        MR. GAPPA:  No, Your Honor.

22        THE COURT:  Thank you, Ma'am.  You may be excused.

23        Please fill seat.

24        COURTROOM DEPUTY:  Juror 023.

25        THE COURT:  Juror 023, any answers to any questions

1   so far?

2        PROSPECTIVE JUROR IN SEAT NUMBER 4:  With the first

3   question, I have to be able to get up and move my leg fairly

4   frequently.  If I sit still for too long, I won't be able to

5   walk.

6        I also smoke heavily, so, you know, going beyond two

7   hours, I'll get really restless.

8        And for hardships, my only real concern, is my

9   schooling.  I do an advance pay stuff with the University of

10  Phoenix.  I'm only allowed in miss one class.  And it gets

11  paid for through the VA, so if I don't have enough -- high

12  enough grade, all that money comes out of my pocket.

13       THE COURT:  So with respect to need to stand, to

14  move, if it's all right with me if you stand during parts of

15  the trial, does that suffice?

16       PROSPECTIVE JUROR IN SEAT NUMBER 4:  More than

17  likely.  I don't have to get up and -- I just have to get the

18  blood flowing.  If I sit still for too long, it locks, and I'm

19  in a lot of pain.

20       THE COURT:  In terms of scheduling during full days,

21  in particular, a morning recess, mid morning, usually hour and

22  15 minutes in, about a 15-minute recess followed by another 1

23  hour 15 minutes, then a lunch break, usually an hour and

24  15 minutes long, same thing in the afternoon.

25       PROSPECTIVE JUROR IN SEAT NUMBER 4:  That's two hours

1   later.

2          THE COURT:  I never go two hours straight.  Too hard

3   to listen to testimony and argument for two hours at a time, I

4   think.  All right.

5          PROSPECTIVE JUROR IN SEAT NUMBER 4:  But then, an

6   hour and 15 that's easy to go by.

7          THE COURT:  So let's get to the schooling.

8          PROSPECTIVE JUROR IN SEAT NUMBER 4:  The schooling,

9   again, that's every Monday.

10          THE COURT:  From when to when?

11          PROSPECTIVE JUROR IN SEAT NUMBER 4:  I usually leave

12   work early.  It's out in Bakersfield.  I travel all the way

13   from Ridgecrest to Bakersfield and go to school.  Class is

14   from 6:00 to 10:00, so --

15          And then I've got -- there's a lot of group work, so

16   I've got to meet with other students.

17          THE COURT:  Okay.  So if you miss one Monday.

18          PROSPECTIVE JUROR IN SEAT NUMBER 4:  If I miss one

19   Monday, I'll be all right.  But anywhere during this

20   particular course, my own personal emergency comes up, I need

21   to miss one, then I get dropped immediately.

22          THE COURT:  And if it's from 6:00 to 10:00, I know

23   it's always, but all right, I understand the problem.

24          Anyone else with an undue hardship given that

25   schedule?

1          Juror 013, if you could approach sidebar here on the

2    record, please.  Counsel.

3          Hold on.

4    ///

5      (The following discussion was held at sidebar between the

6    Judge, counsel and Juror 009.)

7          PROSPECTIVE JUROR IN SEAT NUMBER 9:  I have an

8    infant -- sorry.  I have an infant, and I'm breastfeeding.  So

9    I can't be away from my baby for had long.

10          But no top of that, my husband starts work at 4:00,

11    so that's every day, so that would be affecting my job, which

12    would be fine, but then, it would be affecting his as well.

13    So financially --

14          THE COURT:  Okay.  Let me back this up again.

15          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Okay.

16          THE COURT:  So you're pumping.

17          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yes, pumping and

18    breastfeeding.

19          THE COURT:  Is your baby with you right now?

20          PROSPECTIVE JUROR IN SEAT NUMBER 9:  No, no.

21          THE COURT:  Okay.  So --

22          PROSPECTIVE JUROR IN SEAT NUMBER 9:  I can pump every

23    two to two and a half hours, if that's allowed.  That's fine.

24          THE COURT:  Okay.  And in terms of today, for

25    instance, you're here this afternoon.  You've left --

1        PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yes.

2        THE COURT:  -- milk.  And so you need to be able

3   to -- like, you heard my schedule of how I keep it.

4        PROSPECTIVE JUROR IN SEAT NUMBER 9:  Uh-huh.

5        THE COURT:  Is that -- would that provide sufficient

6   time, or is that not enough time?

7        PROSPECTIVE JUROR IN SEAT NUMBER 9:  You mean, like,

8   if I'm listening to guys from 1:00 to 5:00?

9        THE COURT:  Right.

10       PROSPECTIVE JUROR IN SEAT NUMBER 9:  No, I would have

11  to be break in the middle at least one time to pump.

12       THE COURT:  For how long?

13       PROSPECTIVE JUROR IN SEAT NUMBER 9:  About

14  20-30 minutes.

15       MR. CAPOZZI:  No objection.

16       MR. GAPPA:  No objection.

17       PROSPECTIVE JUROR IN SEAT NUMBER 9:  Thank you.

18       THE COURT:  Yes, I'll excuse you from this summons.

19  For how long -- how long do you think you're going to be on

20  this schedule?

21       PROSPECTIVE JUROR IN SEAT NUMBER 9:  My daughter is

22  five months, so I'm going to try to feed her for a year.  Yes.

23       THE COURT:  Okay.  Then I'll excuse you from this

24  summons.  Don't call back in.  Yes.  All right.

25       PROSPECTIVE JUROR IN SEAT NUMBER 9:  Thank you.

1   Thank you.

2           THE COURT:  Juror 009 has been excused.

3           Can we fill that seat.

4           COURTROOM DEPUTY:  Juror 024.

5           THE COURT:  Juror 024.

6           PROSPECTIVE JUROR IN SEAT NUMBER 9:  Juror 024.

7           THE COURT:  Juror 024.

8           PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yes.

9           THE COURT:  Not even close.

10          Any answers to any of the questions I've put to the

11  panel so far?

12          PROSPECTIVE JUROR IN SEAT NUMBER 9:  No, sir.

13          THE COURT:  All right.  Ladies and gentlemen, did any

14  of you know me or any of my courtroom personnel?  No response.

15          Do any of you know the attorneys or the Defendant,

16  Mr. Henry?  No response.

17          During the course of this trial, the following

18  individuals may be called as witnesses, Britton Moore,

19  Arthur Hively, Gary Reid, Tim Cottman, Greg Lynning, Antonio

20  Rusca.

21          MR. GAPPA:  Rusca, Your Honor.

22          THE COURT:  Rusca.  Rebecca Jackson, Jessica Cassidy,

23  Laura Wharf, Robert Todd, Gary Reid, Luis Reid, David Silva,

24  Brandi Rolands, Robin Martin, Robert Gonzalez, and Marcus

25  Lawson.  Any one of you familiar with any of those names?

1          And Juror 006, if we could get a microphone.

2          PROSPECTIVE JUROR IN SEAT NUMBER 6:  David Silva.

3          THE COURT:  And the David Silva you know where do you

4   know them from?  Can you put them in context so we can figure

5   out if it's the same David Silva.

6          PROSPECTIVE JUROR IN SEAT NUMBER 6:  Turlock area.

7          THE COURT:  And do you know what Mr. Silva does for a

8   living?

9          PROSPECTIVE JUROR IN SEAT NUMBER 6:  What he used to

10  do was sell equipment.

11         MR. CAPOZZI:  That's the same David Silva.

12         THE COURT:  A friend of Mr. Silva's?

13         PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

14         THE COURT:  How good of a friend?

15         PROSPECTIVE JUROR IN SEAT NUMBER 6:  I've bought

16  equipment from him before.

17         THE COURT:  Stay in touch with him since then?

18         PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

19         THE COURT:  Socialize with him?

20         PROSPECTIVE JUROR IN SEAT NUMBER 6:  When I see him,

21  yes.

22         THE COURT:  Would you categorize him as a friend or

23  as an acquaintance?

24         PROSPECTIVE JUROR IN SEAT NUMBER 6:  Both, yes.

25         THE COURT:  Both.

1           If you were called upon to judge the testimony of

2    Mr. Silva, would you be more likely to believe him because of

3    your relationship with him --

4           PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

5           THE COURT:  -- than you would another witness?

6           PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

7           THE COURT:  So you're close?

8           PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes, I've known

9    him for a while.

10          THE COURT:  How many years do you think?

11          PROSPECTIVE JUROR IN SEAT NUMBER 6:  Since 2010.

12   He's also worked with my brother-in-law.

13          THE COURT:  Mr. Gappa, Mr. Pearson, what's your

14   position?  I don't know context.

15          MR. GAPPA:  Your Honor, in light of the response of

16   whether he would be fair or whether he would give more weight

17   to that testimony, that is a concern.

18          THE COURT:  All right.  Juror 006, if I -- part of

19   this whole process, and this is not a bad example, I'll be

20   giving the jurors in this case instructions regarding what the

21   law is.  And as jurors, you will all be sworn to apply the law

22   as I give it to you regardless of what you think the law

23   should be, whether you agree with my instructions or not.

24          One of those instructions would be that all witnesses

25   are to be judged by applying the same standards to the

1    testimony of each and every witness.  That is, the testimony

2    of someone who is not a police officer, is to be assessed

3    using the exact same standards that one would use in assessing

4    the testimony of a police officer.  Nobody gets presumption by

5    the jury that they're telling the truth just because of their

6    position in life.  Everyone's testimony is analyzed and

7    assessed under the same standards by the jury.

8         And by the same token, that the jury is required to

9    fairly and impartially make that assessment of whether they

10   believe what a witness is saying or is not or do not believe

11   what a witness is saying.

12        So if you were to tell me, Judge, I know Mr. Silva

13   really well, and even though I've tried to follow your

14   instructions, the bottom line is, I know him well enough that

15   I -- I could not judge his testimony by the same standards.  I

16   would be inclined to believe him, because I know him so well,

17   and I'm not going to be able to get that out of my head.  Then

18   you probably shouldn't serve as a juror on this case.

19        On the other hand, you may be able to say, You know,

20   I know Mr. Silva.  It's not like we're best friends.  I've

21   done business with him.  I've been out in social situations

22   with him before, but not a lot.  If he testified, and I

23   thought his testimony wasn't truthful, I would have no problem

24   with saying, you know, I just don't believe him.  I believe

25   the other witnesses.  Then, there would be nothing wrong with

1   you serving sa a juror in this case.

2           But a large part of what these questions call on

3   prospective jurors to do is to look deep, look into your heart

4   of hearts, and really think about, Can I be fair and

5   impartial?

6           Not, Gee, I hope I can be fair and impartial.  Gee, I

7   wish I could be fair and impartial.  No, I know myself, and I

8   can be fair and impartial.  I'll listen to both sides.  I'll

9   listen to the instructions, and I'll decide the case based

10  solely on the evidence that I hear in open court.  Not based

11  on any preconceived notions that I had about a certain person

12  or a certain kind of person or law enforcement officers.  No.

13  I'm going to hear the evidence.  I'm going apply the Judge's

14  instructions, and I'm going to be fair to both sides and

15  decide what I think the evidence demonstrates.

16          So in that context, now that I've pontificated, Juror

17  006, what do you think, can you be fair and impartial.

18          PROSPECTIVE JUROR IN SEAT NUMBER 6:  I think, at the

19  end of the day, no, probably not with him.

20          THE COURT:  All right.  The Court will excuse Juror

21  006 for cause.

22          Sir, please call back in after five o'clock on Friday

23  to the eight-hundred number for further instructions.  Thank

24  you, sir.

25          COURTROOM DEPUTY:  Juror 025.

1      PROSPECTIVE JUROR IN SEAT NUMBER 6:  It's pronounce
2  Juror 025.
3      THE COURT:  Juror 025.
4      PROSPECTIVE JUROR IN SEAT NUMBER 6:  Juror 025.
5      THE COURT:  Yes.  Any answers to any of the questions
6  I've asked already?
7      PROSPECTIVE JUROR IN SEAT NUMBER 6:  No.
8      THE COURT:  Do any of you have any belief or feeling
9  towards any of the parties, attorneys, or witnesses that would
10 make it impossible or difficult for you to act as fair and
11 impartial jurors to both the Defendant and the prosecution in
12 this case?  No response.
13     Other than what I've already told you at the outset
14 about the nature of the this case, have any of you heard of or
15 do any of you have any prior knowledge of the facts or events
16 in this case?
17     Do any you have an interest in the outcome of this
18 case of any kind?  No response.
19     Have any of you had any contact with the United
20 States Attorneys Office in the US District Court for the
21 Eastern District of California, or in any other district
22 contact with the United States Attorneys Office or with any
23 office of a criminal defense attorney, including Mr. Capozzi's
24 office?  Anyone have any contact with the offices of either
25 side in this case?  No response.

1          Have any of you or any of your close family members

2    or -- family members or close friends of yours ever been

3    prosecuted in a criminal action?

4          And Mr. --

5          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Juror 024.

6          THE COURT:  I wrote it down wrong the first time, and

7    I was going to use the same pronunciation.

8          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Prosecuted or

9    convicted?

10          THE COURT:  Prosecuted.

11          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yes, my father.

12          THE COURT:  Can we get you a mic even though you have

13    a great booming voice.

14          How long ago was that?

15          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Six years ago.

16          THE COURT:  And --

17          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Seven years ago.

18          THE COURT:  State Court or Federal Court?

19          PROSPECTIVE JUROR IN SEAT NUMBER 9:  It was State.

20          THE COURT:  And what was the charge, if you recall?

21          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Arson.

22          THE COURT:  Did you go through that the criminal

23    justice process with your father?

24          PROSPECTIVE JUROR IN SEAT NUMBER 9:  No.  I was a

25    witness.

1          THE COURT:  All right.  Prosecution witness or

2  defense witness or both?

3          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Defense.

4          THE COURT:  All right.  And that, from your question,

5  did that prosecution result in a conviction or an acquittal?

6          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Acquittal.

7          THE COURT:  Was that here in Fresno County?

8          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Kings.

9          THE COURT:  Kings County.

10          Anything about that process, the way you were treated

11  by the Court, the parties, the investigators, anything else,

12  anything about having gone through that process that left you

13  with a bad taste about the criminal justice system?

14          PROSPECTIVE JUROR IN SEAT NUMBER 9:  No, I think it

15  worked properly.

16          THE COURT:  Bear any ill will towards in government

17  investigators, prosecutor's office in general as a result of

18  that experience?

19          PROSPECTIVE JUROR IN SEAT NUMBER 9:  At the time I

20  had strong opinions, but growing older and looking back on it

21  a little bit, I think all parties were doing their job.

22          THE COURT:  Okay.  You understand that every case is

23  its own case?

24          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Absolutely.

25          THE COURT:  Do you think, as you sit here today would

1   you be comfortable if you were sitting in Mr. Gappa and

2   Mr. Pearson's shoes, would you be comfortable with you on the

3   juror?

4   　　　　PROSPECTIVE JUROR IN SEAT NUMBER 9:  Absolutely.

5   　　　　THE COURT:  Don't think you'd be prejudice against a

6   prosecution?

7   　　　　PROSPECTIVE JUROR IN SEAT NUMBER 9:  No, sir.

8   　　　　THE COURT:  And there was more.  Yes, Juror 005.

9   　　　　PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  My husband.

10   　　　　THE COURT:  All right.  How long ago?

11   　　　　PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I want to say

12   it was eight years ago before we were married.

13   　　　　THE COURT:  All right.  And were you with him at that

14   time now?

15   　　　　PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I knew him.

16   　　　　THE COURT:  Were you a participant either for support

17   reason as or --

18   　　　　PROSPECTIVE JUROR IN SEAT NUMBER 6:  No.

19   　　　　THE COURT:  Or in any other way in that proceeding?

20   　　　　PROSPECTIVE JUROR IN SEAT NUMBER 6:  Not in the

21   proceeding.  I'm mean, outside of court.

22   　　　　THE COURT:  Right.  And criminal case?

23   　　　　PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

24   　　　　THE COURT:  And --

25   　　　　PROSPECTIVE JUROR IN SEAT NUMBER 6:  Well, I don't

1   know as far as criminal.  It was a federal case.

2          THE COURT:  It was a federal case.  What kind of

3   charge?

4          PROSPECTIVE JUROR IN SEAT NUMBER 6:  Pornography.

5          THE COURT:  Child pornography?

6          PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

7          THE COURT:  All right.  And did that case go to

8   trial?

9          PROSPECTIVE JUROR IN SEAT NUMBER 6:  That, I don't

10  know all the details of that.  I don't remember.

11         THE COURT:  Okay.  Do you know --

12         PROSPECTIVE JUROR IN SEAT NUMBER 6:  He was

13  convicted, and he served time.

14         THE COURT:  Okay.  You heard me describe the nature

15  of the charges here.

16         PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Yes.

17         THE COURT:  Having gone through that proceeding with

18  your husband, do you think you can be fair and impartial?

19         PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Absolutely.

20         THE COURT:  In this case like this one?

21         PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Absolutely.

22         THE COURT:  Could you understand where the

23  prosecution in the case might say, I don't know if she can be

24  fair and impartial if her husband was prosecuted for a similar

25  offense in the past?

1    PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Uh-huh.

2    THE COURT:  What would you stay to that?

3    PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I would look

4  at the testimony, and if you're guilty, you're guilty.  If

5  you're not, you're not.

6    THE COURT:  And you think you could do that?

7    PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

8    THE COURT:  You don't harbor --

9    PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I also

10  believe people can be rehabilitated.

11    THE COURT:  You don't harbor any ill will towards the

12  prosecution because of what your husband went through?

13    PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  No.  I think

14  it was the best thing that ever happened to him.

15    THE COURT:  Okay.  And down below, I think we had a

16  few.  All the way up, Juror 002?

17    PROSPECTIVE JUROR IN SEAT NUMBER TWO:  Yes.  Hello.

18  My younger brother has been in and out of prison.

19    THE COURT:  Okay.

20    PROSPECTIVE JUROR IN SEAT NUMBER TWO:  Last time I

21  think was maybe five, seven years ago.

22    THE COURT:  Were you involved?

23    PROSPECTIVE JUROR IN SEAT NUMBER TWO:  No, it was

24  just him.

25    THE COURT:  Okay.

1          PROSPECTIVE JUROR IN SEAT NUMBER TWO:  Being a

2    troublemaker.

3          THE COURT:  Did you go to Court?

4          PROSPECTIVE JUROR IN SEAT NUMBER TWO:  No, no.

5          THE COURT:  No direct involvement in those

6    proceedings?

7          PROSPECTIVE JUROR IN SEAT NUMBER TWO:  None at all.

8          THE COURT:  In terms of attending the trials or

9    anything else?

10          PROSPECTIVE JUROR IN SEAT NUMBER TWO:  No.

11          THE COURT:  Did you visit him in prison?

12          PROSPECTIVE JUROR IN SEAT NUMBER TWO:  No, only my

13    mother.

14          THE COURT:  All right.  Anything about the fact that

15    your family has gone through that process that you think would

16    make it difficult for you to --

17          PROSPECTIVE JUROR IN SEAT NUMBER TWO:  No -- for his

18    own choices.  I believe he had a fair trial.  He was there

19    because he had to be there.

20          THE COURT:  All right.  Let's pass the microphone

21    down front.  Juror 016?

22          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  My uncle,

23    my sister, and two of my really close friends.

24          THE COURT:  Have all been charged in the past?

25          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

1    THE COURT:  With criminal offenses?

2    PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

3    THE COURT:  Were you involved in terms of providing

4    support, being in attendance in court, any of those sorts of

5    things in any of those instances?

6    PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  No.

7    THE COURT:  Anything about your family members and

8    friends having gone through the criminal justice system that's

9    left you with a strong feeling one way or the other about the

10   criminal justice system?

11   PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  No.

12   THE COURT:  Do you think there -- anything about

13   those experiences that those close to you have gone through

14   that would make it hard for you to be fair and impartial in a

15   criminal case such as this one?

16   PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  No,

17   absolutely not.

18   THE COURT:  Juror 017?

19   PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  Yes.  My

20   ex-husband was charged in a criminal case and convicted.

21   THE COURT:  All right.  How long ago, Ma'am?

22   PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:

23   25 years, actually.

24   THE COURT:  Were you involved in those proceedings in

25   terms of providing support or --

1          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  I was --

2     I was in the Court with him except for the last time he went

3     in, he pled -- he plea bargained, on the last visit.  But I

4     had gone to court with him before that.

5          THE COURT:  All right.  And as a result of that, he

6     was incarcerated.

7          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  Uh-huh,

8     yes.

9          THE COURT:  Are you still married?

10         PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  No.

11         THE COURT:  And as a result of that experience, did

12    you come away with strong feelings one way or the other

13    towards the criminal justice system?

14         PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  I just

15    know that in my opinion he was -- he was used as an example in

16    the plea bargain, the district attorney and the -- the private

17    investigating firm that was hired -- at least the investigator

18    lied on the stand.  So I mean, it was -- it was not a good

19    experience for me.

20         THE COURT:  All right.  Do you think that you could

21    be a fair and impartial juror in a criminal case like this one

22    given that experience?

23         PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  I

24    believe I could.  Although, there's one other experience that

25    I had that's not -- wasn't directly someone that I was very

1   close to, but it was someone that I knew and it affected my

2   family because my son was only two years old, and he was in a

3   daycare where he was turned upside down, because one of the

4   people that was, kind of, like, a helper at the daycare was

5   charged was some ICE came in and he was charged with child

6   pornography.  He was a deputy at Tulare County Sheriff's

7   Department.  And my -- my good friend who had the daycare, was

8   very close with him.  And I knew him very well, and my kids

9   knew him very well, and he ended up going to prison for child

10  pornography charges.

11          THE COURT:  All right.  Two separate issues.

12          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  Two

13  separate issues, right.

14          THE COURT:  When you say you think you could be fair

15  and impartial, do you have doubts about that?

16          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  So, I

17  also teach school, and I just as -- this whole subject is

18  difficult for me.

19          THE COURT:  All right.

20          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  It's

21  hard to.  I would try, but I can't say for sure just because

22  of all -- all of that.

23          THE COURT:  All right.  Juror 018?

24          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Thank

25  you.  My daughter married a registered child molester.

1          THE COURT:  Okay.

2          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  And he

3    was convicted.

4          THE COURT:  After they were married?

5          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  No,

6    before.

7          THE COURT:  Okay.  And so were you around during his

8    prosecution?

9          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  No.

10          THE COURT:  So subsequent to his conviction your

11    daughter married him?

12          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Correct.

13          THE COURT:  And any -- anything about your

14    relationship with him or knowledge of that situation that you

15    think would make it difficult for you to serve as a juror in

16    case like this one?

17          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Well, I

18    don't acknowledge him.  He's been convicted.  There's -- my

19    daughter knowingly married him and lost custody of her child.

20    So she left my granddaughter without a mother.  I wish -- you

21    know, I mean, I'd like to say I could, but I'm not -- I don't

22    know.

23          THE COURT:  All right.  And was there someone else in

24    the front row who had a response?

25          Let me -- let me talk to you about -- focus back

1   again on this particular case.  I've told the general nature

2   of the charges in this case, and some of you have raised some

3   concerns.

4          And it is possible that during this trial, the jury

5   will be presented evidence with respect to the child

6   pornography charges that may be graphic.  Certainly, I'll do

7   what is necessary to keep that evidence of that nature to a

8   minimum, but there may be evidence of some graphic images,

9   that the jury in this case will be exposed to.

10          Now, that being said, we ask jurors in a variety of

11   context, to view evidence that in another context certainly

12   they would find upsetting.  You know, in murder cases we have

13   to ask jurors often to review autopsy photos, and in accident

14   cases, you know, photographs, depictions of immediate

15   aftermath of deadly accidents and the like.

16          It is important that both sides in the case get and

17   receive a trial by a fair and impartial jury.  That's not

18   always an easy thing to do, and we recognize that.  But it is

19   also important that everyone called to jury service in that

20   kind of a case recognizes, Look, I may be called upon to

21   review evidence that's not the thing I would have chosen to

22   do, but that's not the evidence in the case.  And despite its

23   nature, I understand that what my job is to be fair and

24   impartial, not to be influenced by, you know, graphic

25   evidence, but instead to focus on the evidence and the

1   instructions of the Court and to decide the case based only on

2   the evidence that we receive in open court, not a major

3   reaction, not something that does not reflect deliberation,

4   but based upon a careful consideration of the evidence in that

5   case.

6          Now, it is also important, however, that if you look

7   in your heart of hearts and you say, You know, given things

8   that I've been exposed to in my past, given my own personal

9   history, I know myself if I see any of that kind of evidence,

10  I'm just not going to be able do my job, I can't do it.

11         If that's the case, then we need to know it.  Both

12  sides, everybody needs to know it.  Because both sides are

13  entitled to a fair and impartial jury, who is capable of

14  deciding the case based only on the evidence and the law.

15         So I know some of you are already out loud struggling

16  with those kind of issues trying to decide, Hey, can I be

17  fair?  That's the ultimate question, can I be fair?

18         Juror 017, gave you a little time to think.  What do

19  you think?  In a case like this, can you be a fair and

20  impartial juror?

21         PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  I don't

22  think I can review evidence that involves child -- children.

23         THE COURT:  All right.  Any objection?

24         MR. GAPPA:  No, Your Honor.

25         MR. CAPOZZI:  No, Your Honor.

1          THE COURT:  Thank you, Ma'am, please call the

2     eight-hundred number after five o'clock on Friday.

3          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  Thank

4     you.

5          COURTROOM DEPUTY:  Juror 026.

6          THE COURT:  Juror 026, any answers to my questions so

7     far?

8          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  No.

9          THE COURT:  Juror 018, what do you think?  Can you do

10    it?

11         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I don't

12    think I can be -- no.

13         THE COURT:  Now -- and it's the fact of your

14    daughter's marriage to the individual, who you've declined to

15    recognize, and all of the havoc that that's wreaked on the

16    family; that's just too much?

17         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes.  I

18    think that's the majority of it.  And I'm sure the prosecution

19    has done their job to get him here, so I don't know that -- I

20    don't think I can be impartial to that.

21         THE COURT:  Well, you heard what I said at the outset

22    about the presumption of innocence?

23         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I know.

24         THE COURT:  Well, those aren't just words, you know?

25    That's -- that's -- that is something that our system of

1    justice is built on, when an individual pleads not guilty that

2    each and every element of the offense charged is put at issue.

3    And it's the prosecution's burden to prove each and every

4    element beyond a reasonable doubt that the defense presumed

5    innocent, and the presumption of innocence remains with him

6    throughout the trial and during deliberations unless and until

7    it's dispelled by proof of guild beyond a reasonable doubt

8    present here in open court.  I mean -- those aren't -- that's

9    not just lip service.  That's really what our whole system of

10   justice is based on.

11          But other than that issue, do you think it would just

12   not be possible under these circumstances given what you've

13   been exposed to in the past to be fair?

14          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Well, I

15   shared it.  So you know, I didn't want to keep anything like

16   that from you, and have a chance of --

17          THE COURT:  No, I --

18          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  So I

19   mean, I'm not proud of not being able to be impartial to it.

20   I respect the procedure.  I just wanted you to know.

21          THE COURT:  And I appreciate that, and I didn't --

22   really, what I just said was more for the others' benefit than

23   it is for yours.

24          And I want to make clear something else.  We all

25   bring baggage with us.  We're all affected by our life's

1    experiences.  And our life experiences, I think, certainly

2    affect the way we view things, and the way we view even the

3    same thing.  I won't see evidence the same way that my

4    courtroom deputy may see the exact same evidence.  Why?

5    Because our life experiences have been different, you know.

6            Your experiences in life affect the way you see

7    things, affect what you think about them.  And to think

8    otherwise, I think, really defies reality.  There's no doubt

9    we're all affected by our life experiences.

10            The question is, in the end whether those experiences

11    are so powerful, that we really can't decide completely based

12    upon the evidence.  We've got too much baggage or the baggage

13    is too strong on a particular issue.  So that even though

14    we're trying to be fair, it's always going to cause us to go

15    one way, because our baggage is just too much.

16            And being able to acknowledge that, I think that's

17    what you're telling me, is that in particular case, you'd like

18    to be fair, but you just have doubts whether you can be?

19            PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Correct.

20            THE COURT:  Any objection?

21            MR. GAPPA:  No, Your Honor.

22            MR. CAPOZZI:  No.  I just thank you for your honesty.

23            THE COURT:  Much appreciated.  Please call in after

24    five o'clock on Friday to get further instructions.  Thank you

25    very much, Ma'am.

1          COURTROOM DEPUTY:  Juror 027.

2          THE COURT:  Juror 027, do you have any answers to the

3    questions that I've already put to the panel?

4          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  No, sir.

5    No, sir.

6          THE COURT:  Thank you.  Have any of you ever been a

7    party or a witness in a civil proceeding of any kind?  Either

8    a civil trial or a civil deposition?  Anybody ever been

9    involved as party, a plaintiff or a defendant or as a witness

10   in a civil case?

11         And Juror 024.

12         PROSPECTIVE JUROR IN SEAT NUMBER 9:  I was in a

13   dispute.  It was a corporate between a walnut broker and

14   farming operation.

15         THE COURT:  You were a witness or a party?

16         PROSPECTIVE JUROR IN SEAT NUMBER 9:  A party.  I

17   operated and ran a walnut dehydrator for seven or eight years,

18   and was the processor for the nuts.

19         THE COURT:  So you were named as a defendant?

20         PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yeah, I was -- I

21   wasn't named as a defendant.  It was my dad's ███████

22   Farms.  My uncle and dad were partners in the dehydrating

23   company that I ran.  So I was in charge of all weight tags and

24   things like that, how much product went in different

25   directions and contract disputes.

1       THE COURT:  I'm trying figure out what your role in

2   the civil case was.

3       PROSPECTIVE JUROR IN SEAT NUMBER 9:  I was a witness,

4   because I was the one that kept track of weight tags,

5   tonnages, thing like that, directions it went, what was

6   contracted, what wasn't.

7       THE COURT:  Anything about your involvement in that

8   civil dispute that left you with a strong feeling, negative or

9   positive, about the civil system of justice?

10      PROSPECTIVE JUROR IN SEAT NUMBER 9:  No, sir.

11      THE COURT:  All right.  And for those of you, we'll

12  get to this at the end, but for those of you that have sat as

13  jurors in a civil case in the past, if any of you have, there

14  are different standards of proof.  Proof in a criminal case,

15  the standard, the evidence is judged by is proof beyond a

16  reasonable doubt.

17      In a civil case, the standard of proof is proof by a

18  preponderance of the evidence.  Preponderance of the evidence

19  in a civil case means just a little bit more evidence.  The

20  scales of evidence tips slightly one way, that satisfies the

21  preponderance of the evidence standard.

22      The proof required in a criminal case is a greater

23  standard of proof.  It requires proof beyond a reasonable

24  doubt, not all possible doubt, beyond a reasonable doubt.

25  You'll be getting instruction at the end of the case about

1    what the reasonable doubt standards requires.  But it is a

2    different standard than that of which applies in a civil case.

3            Juror 010?

4            PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Yes.  I was

5    involved in a car accident and am currently suing the person

6    that hit me.

7            THE COURT:  Anything about your involvement in that

8    case either with respect to dealing with lawyers, dealing with

9    judges that has left you with a strong feeling or bitter

10   taste?

11           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  No, sir.

12           THE COURT:  You think it will have any impact on your

13   ability to fair and impartial in this case?

14           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  No, sir.

15           THE COURT:  There's someone up top.  Juror 005.

16           PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Juror 005.

17           THE COURT:  Oh, there's the "S."

18           PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I had a

19   workman's comp case probably about 15 years ago.  And then,

20   also a property dispute case, where we were the tenant

21   purchasing the house and the owner.  But no ill feelings with

22   the court system.

23           THE COURT:  Anything about your involvement in those

24   civil cases that you think would affect your ability to serve

25   as a fair and impartial juror in a criminal case like this

1   one?

2           PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  No.

3           THE COURT:  Didn't come away with any strong

4   feelings, "I really don't like judges at all"?

5           PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  No.

6           THE COURT:  All right.  Down in the front row.  Juror

7   016?

8           PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  My minor

9   child was a witness.  And now I'm drawing a blank, but I've

10  been involved in with the worker's comp case, but I was a

11  witness.

12          THE COURT:  Workman's comp case.  What kind of case

13  was your youngest child in?

14          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  He was

15  an -- initially, it was a criminal case, but then it was a

16  civil case.  So he was -- he was called up as a witness for

17  the civil trial.  It was, his buddies were messing around, and

18  it got out of the hand; and the young lady involved, her

19  parents filed charges against one of the boys involved.

20          THE COURT:  All right.  So was what age were the --

21          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  They

22  were --

23          THE COURT:  -- participants?

24          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  They were

25  13, 14 at the time.

1          THE COURT:  Okay.  And allegations of sexual

2    misconduct?

3          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes, yes.

4          THE COURT:  No criminal charges, but ultimately a

5    civil suit filed?

6          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

7          THE COURT:  And your son was called as a witness?

8          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

9          THE COURT:  But not as a subject of the

10   investigation.

11         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  No.

12         THE COURT:  Just a mere witness.

13         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Just a

14   witness.

15         THE COURT:  Anything about that exposure to that

16   incident through your son that you think would make it

17   difficult for you to be fair and impartial in a case such as

18   this one?

19         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  No.  In

20   fact, I know all of the children involved, and it was handled

21   extremely well.

22         THE COURT:  And anything about your involvement in

23   that process that left you with any negative impressions of

24   the civil system of justice or law enforcement for that

25   matter?

1          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  No.

2          THE COURT:  All right.  And there was someone else?

3     Yes, Juror 019?

4          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  When I

5     worked in the Department of Corrections I was a witness to

6     about six cases that went to -- I worked in Cal Patrick State

7     Prison, so that Imperial County and all the cases were tried

8     in San Diego, so I was -- I was a witness for the State.

9          THE COURT:  Okay.  Having to do with assaults in

10    prison.

11         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Assaults,

12    attempted murders.

13         THE COURT:  Violence in prison?

14         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Right.

15         THE COURT:  Anything about your involvement in those

16    civil cases that you think has impacted your ability to serve

17    as a fair and impartial juror in a criminal case such as this

18    one?

19         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Not in

20    those cases.  It was like always the -- it's like the nature

21    of the criminals that were there.  So it was always -- it was,

22    like, always, like, us against them --

23         THE COURT:  Uh-huh.

24         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  -- kind

25    of thing.  Because I was there as a witness.  I was -- I was a

1   correctional nurse, so I always saw the injuries or whatever

2   firsthand.  So as I would observe, and examine take notations

3   and things like that, that's what was brought back up into

4   court as far as me being the witness, you know.

5          THE COURT:  That seems fairly far afield from what's

6   at issue here.  Do you have any concerns about your ability to

7   be fair and impartial as a case such as this one as a juror in

8   a criminal case?

9          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  No, I

10  think I can do my best.  You get a little jaded when you work

11  the prison system for a long time.

12         THE COURT:  You'd recognize, however, that every

13  case --

14         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Oh, of

15  course, I know they're different.

16         THE COURT:  Stands on it's own merits, right?

17         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Right,

18  right.  They're all different.

19         THE COURT:  And there can be strong cases, there can

20  be weak cases, and everything across the board, right?  Do you

21  think you could decide a case based solely on the evidence

22  that you hear here in open court and my instructions?

23         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Yes.

24         THE COURT:  Are any of you or any members of your

25  family employed by the federal government with the exception

1   of military service?  Yes, Juror 011?

2       PROSPECTIVE JUROR IN SEAT NUMBER 11:  My husband.

3   Navfac on the naval air station.  My husband works for the

4   Navfac on the Naval air station.

5       THE COURT:  He's a civilian employee?

6       PROSPECTIVE JUROR IN SEAT NUMBER 11:  Yes.  He's

7   retired military.  Now he's a civilian employee.

8       THE COURT:  Not related to any law enforcement

9   function, correct?

10      PROSPECTIVE JUROR IN SEAT NUMBER 11:  Oh, no.

11      THE COURT:  Anything about the fact that he is now a

12  civilian employee at the federal government, do you think in

13  any way would cause you to favor the United States Government

14  in a criminal case like this one?

15      PROSPECTIVE JUROR IN SEAT NUMBER 11:  I don't think

16  so.

17      THE COURT:  You don't think so?

18      PROSPECTIVE JUROR IN SEAT NUMBER 11:  No.

19      THE COURT:  All right.  Anyone else?  Yes, Juror 016?

20  And Juror 015?  I think that was her hand raised.  It was

21  either an ear scratch or hand raise.  I'm not --

22      PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  I feel

23  like I have a lot of answers to a lot of questions.  You said

24  friends right?  Or just family?

25      THE COURT:  I said -- you or any member of your

1    immediate family.

2         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Okay.  No?

3         THE COURT:  Close friends.

4         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Close

5    friends, yes.

6         THE COURT:  What do they do?

7         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Postal

8    workers.  Thank you.

9         THE COURT:  Postal workers?

10        PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

11        THE COURT:  Anything about that relationship that

12   would make it hard to serve as a juror in a case prosecuted by

13   the government?

14        PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Not at

15   all.

16        THE COURT:  Juror 015, was it a hand raise?

17        PROSPECTIVE JUROR IN SEAT NUMBER 15:  No.

18        THE COURT:  No hand raise.

19        All right.  I repeated in my responses to Juror 018,

20   the notion of the presumption innocence, and proof, the

21   requirement of proof beyond a reasonable doubt.  You've heard

22   me talk a little bit about that now twice.

23        Is there anything anybody that has any quarrel or

24   more importantly, anyone that says, You know, I just don't

25   believe that, and I think I would have a hard time following

1  that instruction if that's what the judge tells me that's what

2  I have to do, that there's a presumption of innocence and that

3  the government has to prove their case by proof beyond a

4  reasonable doubt?  Anybody that has a problem with that

5  notion?

6          Yes, Juror 027?

7          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Sometimes

8  when it's heavy English, I have to check on -- my Google what

9  that means.

10          THE COURT:  So you have some difficulty understanding

11  what we're talking about?

12          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes, when

13  it's -- I know it's intelligent language, when it's very

14  higher language, I will have to Google it, what it's meaning.

15          THE COURT:  All right.  What's -- your native

16  language is?

17          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Filipino.

18          THE COURT:  Very different than English.  So have you

19  been having trouble following some of my questions so far?

20          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  No.  I'm

21  just -- I'm just telling you just up front that sometimes I

22  have to read it constantly for me to understand it.  It's not

23  only one time reading for me, too.  I need to follow that.

24          THE COURT:  And you think that -- is there anything

25  that I've said so far in my questions that you have not

1   understood?

2          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:   I

3   understood.

4          THE COURT:  You have?

5          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes.

6          THE COURT:  But you are concerned that there may be

7   some words that you may not understand.

8          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes, when

9   it's very heavy professional English.

10          THE COURT:  Okay.  But just to be clear, anything

11   that I've said so far you think you understood?

12          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes, yes.

13          THE COURT:  Including my question about the law right

14   now?

15          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes.

16          THE COURT:  Whether you have any difficulty applying

17   that standard?

18          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes, I

19   understand.

20          THE COURT:  Okay.  Because I don't think that it will

21   get much more technical than that.

22          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  All

23   right.

24          THE COURT:  My instructions will be in writing not

25   that I -- but I'll also be telling you that you can't consult

1    a dictionary.  So --

2            PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  No Google

3    either?

4            THE COURT:  No Google, no internet searches, no, no.

5    The jury will be repeatedly told that they can't do any

6    research about the evidence of the case on the internet, using

7    a dictionary, using any source other than the instructions

8    that I give you and what you hear here in court.  And they'll

9    be told that every day when they leave.  They can't -- the

10   jury will not be allowed to search the internet or to Google

11   words.  Are you concerned about your ability to follow?

12           PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I can

13   read.  I can read.

14           THE COURT:  All right.

15           PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I just --

16   I'm just saying I'm not so talented like you guys.

17           THE COURT:  I don't know about that.  We all have our

18   own talents.

19           Juror 014?

20           PROSPECTIVE JUROR IN SEAT NUMBER 14:  I have almost

21   the same problem.  I understand, but when time to ask, I

22   respond, and I have trouble with that.  And more problem when

23   I'm writing.  I don't know if that still good to still be

24   here.

25           THE COURT:  Have you had difficulty understanding

1    what I've been asking?

2           PROSPECTIVE JUROR IN SEAT NUMBER 14:  I understand

3    most of the -- you say.  But you ask me a question,

4    probably -- I probably is to asking you to respond.  And I

5    have more problems when writing.

6           THE COURT:  Okay.  The jury won't be called upon to

7    write, for the most part.  But the bigger question is whether

8    you think that your English language skills are sufficient

9    that you'll be able understand what I say, and what the

10   witnesses testified to.

11          You've heard me ask a lot of questions today, do you

12   think you've followed all of my questions and understood them?

13          PROSPECTIVE JUROR IN SEAT NUMBER 14:  Most of them.

14          THE COURT:  Most of them?

15          PROSPECTIVE JUROR IN SEAT NUMBER 14:  Maybe 70

16   percent, 75.

17          THE COURT:  Any objection?

18          MR. CAPOZZI:  No, Your Honor.

19          MR. GAPPA:  No, Your Honor.

20          THE COURT:  Thank you, sir.  And I think I'm going to

21   excuse me him from the summon.

22          COURTROOM DEPUTY:  Yes, Your Honor.

23          THE COURT:  Thank you, sir.

24          COURTROOM DEPUTY:  Juror 028.

25          THE COURT:  Yes, Juror 028, any answers to my

1   questions so far?

2          PROSPECTIVE JUROR IN SEAT NUMBER 14:  I'm good.

3          THE COURT:  All right.  Can you pass the microphone

4   to Juror 007 behind you.

5          Yes, Juror 007?

6          PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  Yes.  I have

7   the same problem as she told you, the guy told you.  Some, I

8   can understand, some not.  But most I understand, but if

9   you -- you're asking me something to get my idea, then I give

10  you the answer of something, my opinion.

11         THE COURT:  What I'm most concerned about is whether

12  you've understood everything that I have asked.

13         PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  Some, but

14  some not.

15         THE COURT:  What's your primary language, sir?

16         PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  Punjabi from

17  India, Punjabi State.

18         THE COURT:  And how much do you think of what

19  you've -- how much of my questions have you understood?  All

20  of them?

21         PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  Not all of

22  them.  About 70, 72, like that.  The -- some of you -- what

23  you said is too -- I mean, too hard to understand what it

24  mean.  So I can understand the simple thing, but not the like

25  a tech, legally, I can't answer proper answer.

1     THE COURT:  Well, I'm not all that concerned about

2  answers.  I'm more concerned about what you understand that's

3  being said, and your ability to do deliberate with your fellow

4  jurors.  You will not be called upon except on an unusual

5  circumstances here in open court to answer questions.

6     The question is can you understand the evidence,

7  understand the instructions, and discuss the case with your

8  fellow jurors?  Do you think you're capable of doing that?

9     PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  I can try,

10  but I don't want to give the answer incorrect.

11     THE COURT:  All right.  Anyone else?

12     A defendant in a criminal case has the right to

13  testify in their own defense.  However, if they elected not to

14  do so, no inference of guilt can be drawn from the fact that

15  they will elect not to testify.  That's the law.

16     Anybody have difficulty with that proposition or

17  think that they couldn't follow an instruction that tells you

18  that's the law?  No response.

19     Do any of you or any members of your immediate family

20  belong to any group or organization that is primarily

21  concerned with issues related to the rights of victims of

22  crime, such as Mother's Against Drunk Driving, organizations

23  like that?

24     On the other hand, are any of you or members of your

25  family involved in organizations with a strong emphasis in

1   criminal justice issues from the rights of defendant's point

2   of view, such as Families Against Mandatory Minimus, or other

3   similar organizations?  No response.

4            MR. CAPOZZI:  There's one.

5            PROSPECTIVE JUROR IN SEAT NUMBER 4:  Just a question.

6            THE COURT:  Yes, Juror 023?

7            PROSPECTIVE JUROR IN SEAT NUMBER 4:  I participate

8   with a motorcycle club, and we go support a lot of different

9   groups, Bikers Against Child Abuse would be one.  I don't know

10  if that's equal to what you were asking, but I felt the

11  information should be given.

12           THE COURT:  All right.  What other kinds of

13  organizations has your group participated with?

14           PROSPECTIVE JUROR IN SEAT NUMBER 4:  There's been a

15  bunch.  Pretty much any excuse to go out and ride.

16           THE COURT:  Like toy drives?

17           PROSPECTIVE JUROR IN SEAT NUMBER 4:  Yes.  Like

18  Saturday we're supposed to do a poker run for ourselves where

19  we raise money for food baskets to give to needy families our

20  town.

21           THE COURT:  All right.

22           PROSPECTIVE JUROR IN SEAT NUMBER 4:  We do that for

23  Thanksgiving as well as for Christmas.

24           THE COURT:  Anything about your charitable work in

25  that regard that you think would make it difficult for you to

1  be fair and impartial in a case such as this one?

2          PROSPECTIVE JUROR IN SEAT NUMBER 4:  You know, as a

3  parent, you know, I really support like the BOCA folks and

4  stuff.  As we going through this, I'm asking myself a lot, if

5  I could be truly fair.  I like to think, yes, but we keep

6  bringing up questions and other people keep bringing up

7  points.  And I'm starting to question myself.  Just to be

8  honest.

9          THE COURT:  Do any of you have strong feelings about

10  the criminal justice system or the prosecutions of criminal

11  cases in general that would affect your ability to be fair and

12  impartial?

13          Have any of you or any members of your immediate

14  family ever been -- I think I may have asked this -- ever been

15  a witness or a victim -- witness to or victim of a crime?

16  Witness to or victim of a crime?  Yes, Juror 023?

17          PROSPECTIVE JUROR IN SEAT NUMBER 4:  A good chunk of

18  my family got victimized by an aunt that fell into a drug

19  habit a few years back.

20          THE COURT:  Anything about that incident or your

21  involvement with any investigation of that matter that you

22  think would make it hard for you to be fair and impartial

23  other than what you've already he revealed?

24          PROSPECTIVE JUROR IN SEAT NUMBER 4:  No.  That was

25  really kind drugs, completely different scenario.

1          THE COURT:  All right.  Let's take an our afternoon

2     recess.  We'll convene at 3:15 p.m.

3          Ladies and gentlemen, you can talk about anything you

4     want outside except what we've talked about in here.  That

5     should not be the subject of any conversations except here in

6     open court.  We'll see you again in about 12 minutes.  Thank

7     you.

8          (Recess taken.)

9          THE COURT:  We're back in the presence of the

10    prospective jurors.

11         Have any of you members of your immediate family,

12    ever been affected by enforcement of child pornography or

13    obscenity laws or laws that govern and criminalize sexual

14    exploitation of children that you have not already disclosed

15    to me?  No answers.

16         I believe that I've already covered this, but out of

17    abundance of caution, have any one of you, anyone in your

18    family or any close, personal friend of yours ever been

19    accused by anyone of a crime involving a child that you have

20    not already divulged?  Yes, Juror 016.  If we can get the

21    microphone to Juror 016.

22         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  My uncle

23    was accused of molesting his daughter.  One of my best friends

24    was accused of having sex with a minor when he was 18.  And

25    then the sexual assault between the kids.

1          THE COURT:  Right.  And the offense involving the

2     charge involving your uncle, how long ago was that?

3          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  I would

4     say 20 years ago.

5          THE COURT:  Were you in any way involved directly in

6     terms of attending court hearings that sort of thing?

7          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  No, it all

8     happened in New York.

9          THE COURT:  All right.  Anything about any of those

10    experiences involving family and friends that you think would

11    make it difficult for you to serve on a jury in case like this

12    one and do so fairly and impartially?

13         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Not at

14    all.

15         THE COURT:  Anyone else?

16         And again, I've touched on this in other ways, have

17    any of you had either very bad or very good experience with

18    law enforcement of any kind, state, local, federal that would

19    cause you either to always trust and favor the testimony of

20    law enforcement officers, or cause you to always distrust and

21    disfavor the testimony of law enforcement officers?  Any very

22    positive or very negative experiences with law enforcement

23    that would color your ability to make credibility assessments?

24    Juror 023?

25         PROSPECTIVE JUROR IN SEAT NUMBER 4:  My own

1  interactions with policemen have always been good, but I've
2  watched a couple of my friends that have dark histories been
3  clean and away for a long time, when the police roll up, they
4  just really kind of dig into them.
5       I've seen a few things that really kind of make me
6  question -- you know, I really have to listen to -- to police
7  and you know, law enforcement.  I tend to have to question
8  them a little bit after seeing what they've gone through, but
9  that's all secondhand.  And I don't necessarily know
10 everything that went on in the past.
11      THE COURT:  Having seen instances where you thought
12 law enforcement acted inappropriately, would you also agree
13 that, again, just like every case is different that every
14 individual, every situation is different?
15      PROSPECTIVE JUROR IN SEAT NUMBER 4:  It is.  You
16 know, I tend to believe that, you know, people in general are
17 good.  I tend to believe that, you know, people that, you
18 know, put on the suit and the badge have the best of
19 intentions.  But you know, there's bad apples amongst all of
20 us so you kind of have to question all of them, you know, and
21 sort it out.
22      THE COURT:  All right.  Have any of you or any member
23 of your family or close friends of yours ever been audited by
24 or had a dispute with any agency or department of the United
25 States Government; for instance, IRS, Social Security,

1    Veterans Administration all of whom our organization that

2    might audit or investigate individuals over payments?  Any of

3    you or any people close to you ever been involved in one of

4    those kinds of audits?

5       Juror 010?

6       PROSPECTIVE JUROR IN SEAT NUMBER TEN:  I have a

7    brother that was audited by the IRS.  He has a couple of

8    businesses but nothing major.

9       THE COURT:  Was anything about the fact that your

10    brother was audited that left you with a sour taste with

11    respect to the Federal Government in general?

12       PROSPECTIVE JUROR IN SEAT NUMBER TEN:  No.

13       THE COURT:  Think it would affect -- the audit would

14    affect your ability to be fair and impartial in this case?

15       PROSPECTIVE JUROR IN SEAT NUMBER TEN:  No, sir.

16       THE COURT:  All right.  Here's a group question to

17    mix it up a little bit.  And there aren't too many more.

18       If you used a computer at least once a week, raise

19    your hand.

20       The attorneys who are asking me to ask this question

21    need to revamp their questions.  They've become somewhat stale

22    over time.  We get "yes" answers from almost everybody.

23       For those of you who raised your hands, please raise

24    your hand if you have ever sent or received files or documents

25    to other computer users over the internet?  So sending files

1  or receiving files or documents attachments or otherwise?

2  Anybody who sent or received files or attachments by way of

3  computer?  Some of us aren't quite sure.  We think maybe we

4  did, right?

5         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Is that

6  considering a resume?

7         THE COURT:  Excuse me?

8         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Consider

9  resume?  Is that what you're asking?  But that will be an a

10  file?

11         THE COURT:  An attached resume?

12         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes.

13         THE COURT:  Yes, something like that.

14         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  That's

15  me.

16         THE COURT:  All right, almost everybody.

17         For those of you who have done so, please raise your

18  hand, have you ever sent or received pictures or movie files

19  over the internet?

20         Sent or received pictures, photographs, or movie

21  files?  Okay.

22         Do any of you have special training or knowledge with

23  respect to computers or internet usage?  Special training?

24         Juror 012, let's get the microphone to Juror 012.

25         PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  Well, I

1    work at IQ Vision Care.  So I deal with a lot of patient

2    information.  So I have to keep a lot of things under wraps.

3            THE COURT:  So you've -- you keep it under wraps do

4    you say?

5            PROSPECTIVE JUROR IN SEAT NUMBER 11:  Yes, with HIPAA

6    violations, stuff like that.

7            THE COURT:  So you've received training with respect

8    to being sensitive of disclosure of any personal health care

9    information?

10           PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  That is

11   correct.

12           THE COURT:  Any other technical computer training?

13           PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  No.

14           THE COURT:  Anybody else receive any technical

15   computer training or work in a field where you've received

16   specialized training in terms of computer, computer usage, or

17   the internet?

18           Yes, Juror 010?

19           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Yes.  I'm a

20   civil engineer, and I do GIS.  And auto CAT design for

21   computer projects.

22           THE COURT:  So you use computer programs that are

23   very specialized to your industry?

24           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Yes, sir.

25           THE COURT:  Anything beyond that in terms of computer

1   expertise?

2           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  I used to

3   build websites, when I was in college, but that's about it.

4           THE COURT:  And those websites that you built back in

5   college are no doubt obsolete by now?

6           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Some are

7   still --

8           THE COURT:  Yeah, some of them are still going?

9           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Yes.

10          THE COURT:  Well, you must have done a good job, or

11  somebody has been maintaining them.

12          PROSPECTIVE JUROR IN SEAT NUMBER TEN: (Nods head).

13          THE COURT:  Any -- we don't have anybody with

14  computer programming experience, that's sort of thing?

15          Yes, Juror 005?

16          PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I was part of

17  a computer programming interchange back when I was 18, when I

18  went to Chicago and trained people on a program switch.  But I

19  mean, nothing like the nuts and bolts of computer training.

20          THE COURT:  Right or --

21          PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I use a

22  computer regularly but --

23          THE COURT:  Right.  But you are not a programer who

24  writes --

25          PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  No.

1          THE COURT:  Okay.  There are people who, because of

2     moral, ethical, or religious beliefs who would say, Judge,

3     because of my religious beliefs, I am unable to pass judgment

4     on anyone that -- I cannot do that under -- given my religious

5     beliefs.  Is there anyone that has those types of concerns?

6     No response.

7          Is there anyone who, despite any personal feelings a

8     they might have or because, excuse me, of any personal

9     feelings they might have, would not be able to follow the law

10    as I give it to you at the conclusion of this case?  This is a

11    sort of a rehash of the question.  I'm going to tell you what

12    the law is that applies to the case, and you just take an oath

13    saying that you will apply that law to the best of your

14    ability.

15         Is there anyone that feels because of their own

16    beliefs being so strong that they just won't be able do that?

17         And finally, is there any reason, based on what

18    you've heard so far during this process, is there any reason

19    it's come to mind that any of you feel that you could not be a

20    fair and impartial juror in case?  Juror 023?

21         PROSPECTIVE JUROR IN SEAT NUMBER 4:  Not so much fact

22    of, you know, can I not be impartial?  It's a matter of

23    personal distraction, you know, giving enough of myself to the

24    case.  You know, a lot of different things going on right now

25    that are just distracting to me on a personal level.

1           THE COURT:  All right.  Let's take up the

2   questionnaires that are on your seats.  If we can get the

3   microphone up to Juror 001, in the far corner.  And if each of

4   you would address those matters.

5           PROSPECTIVE JUROR SEAT NUMBER ONE:  My name is Juror

6   001.  I live in Denair.  I worked in the school.  Before that

7   I worked Tulare County Office of Education.  I have a BA.

8   Never been in the service.  I'm married.  My husband's

9   occupation is quality control up.  My children -- my son is a

10  chemist -- sorry.

11          THE COURT:  That is all right.

12          PROSPECTIVE JUROR SEAT NUMBER ONE:  My son is the --

13  oldest is a chemist in a cannery.  My second son does IT, fix

14  es computers and stuff.

15          And I've never served on a jury.  I've gotten, like,

16  this far but never more.

17          THE COURT:  And Ma'am, where did you get your BA

18  from?

19          PROSPECTIVE JUROR SEAT NUMBER ONE:  San Jose State.

20          THE COURT:  In what field?

21          PROSPECTIVE JUROR SEAT NUMBER ONE:  French with a

22  minor in business.

23          THE COURT:  All right.  Are you doing okay?

24          PROSPECTIVE JUROR SEAT NUMBER ONE:  No, not really.

25  I'm sorry.

1            THE COURT:  That's all right.  Let's take a moment.

2    Let's pass the mic to Juror 002.  Do you need a break?

3            PROSPECTIVE JUROR SEAT NUMBER ONE:  No, nothing's

4    going to change.

5            THE COURT:  Okay.

6            PROSPECTIVE JUROR SEAT NUMBER ONE:  After today I

7    have to rely on the trains and my walker to get here, and

8    there are possible ways to accomplish that.

9            THE COURT:  Where are you coming from, Ma'am?

10           PROSPECTIVE JUROR SEAT NUMBER ONE:  Denair.  The

11   first train in the morning is at 8:42, and it gets into Fresno

12   at nine-something.  If I stay over night, I just have to find

13   a hotel that's really close so I can get to it, and it's a bit

14   stressful.  So --

15           THE COURT:  It's all right.

16           Counsel, approach.

17           (Sidebar held.)

18           THE COURT:  Ma'am Clerk, did you have something you

19   want to tell me?

20           COURTROOM DEPUTY:  Your Honor, we can make

21   arrangements for her to stay at a hotel.

22           MR. CAPOZZI:  She doesn't want.

23           THE COURT:  That's obviously difficult, but what's

24   your guys' position?  I mean, I'm losing jurors, you know, as

25   it is.  So on the other hand, you know, she can't keep it

1  together to answer these questions without breaking down.

2  That raises a concern.

3       MR. GAPPA:  And it does sound like it would be a

4  possible hardship for her even if she accomplishes to get

5  here, she's going to be extremely stressed about it the next

6  day and the next day.

7       THE COURT:  No doubt about it.

8       MR. CAPOZZI:  I'm fine for cause.

9       THE COURT:  Any objection?

10      MR. GAPPA:  No.

11      THE COURT:  All right.

12     (Sidebar end.)

13      THE COURT:  ███████, I take it that the hardships

14  and the stress that this would cause, it's not going to change

15  as you said, right?

16      PROSPECTIVE JUROR SEAT NUMBER ONE:  Coming here

17  today, I had to close my eyes because my daughter was driving,

18  because I can't handle the freeways.

19      THE COURT:  All right.  I'm going to excuse ou from

20  the summons, you're free to go.

21      PROSPECTIVE JUROR SEAT NUMBER ONE:  Thank you.

22      COURTROOM DEPUTY:  Juror 029.

23      PROSPECTIVE JUROR SEAT NUMBER ONE:  Juror 029.

24      COURTROOM DEPUTY:  Juror 029, thank you, Juror 029.

25      THE COURT:  Before we turn to that sheet, Juror 029,

1  you are this person to fall in this unfortunate category of

2  people, who after an hour and 20 minutes, I ask you, so do you

3  have any responses to any of those questions that I asked?

4          PROSPECTIVE JUROR SEAT NUMBER ONE:  When it comes to

5  hardship, it is 212 miles each way, and I work on commission.

6  So, two weeks, I should be okay on half days to get my work

7  done.

8          The IRS -- my husband owned a company, and we are

9  paying back taxes on it.  That's about it.

10          THE COURT:  Anything about that fact that --

11          PROSPECTIVE JUROR SEAT NUMBER ONE:  No.

12          THE COURT:  -- leaves you with --

13          PROSPECTIVE JUROR SEAT NUMBER ONE:  We have a bad

14  accountant.  It is what it is.

15          THE COURT:  Oh, all right.  So you don't hold --

16          PROSPECTIVE JUROR SEAT NUMBER ONE:  No.

17          THE COURT:  -- that against the government, okay.

18          All right.  Well, why don't you go ahead and answer

19  the questions on that sheet.

20          PROSPECTIVE JUROR SEAT NUMBER ONE:  My name is Juror

21  029.  I live in Bakersfield, California.  I am an accountant

22  executive for a radio station in Bakersfield, that's the only

23  job I've had.

24          I have -- I didn't quite receive my degree.  I have

25  38 units, I believe.  No military service.  I am married.  My

1 | husband is truck sales, truck part sales.

2 |       My former husband owned a trucking company.  And my

3 | children -- my oldest is a college student at Cuesta.  She's

4 | going for business finance.  My other two, I have a high

5 | school -- she's a sophomore.  My son is a seventh grader.

6 |       And a couple months ago, I was called but I didn't

7 | get selected for the jury.

8 |       THE COURT:  That was at state court?

9 |       PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes.  It was

10 | Bakersfield.

11 |       THE COURT:  Did you attend some college?

12 |       PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes, I did.

13 |       THE COURT:  Where was that?

14 |       PROSPECTIVE JUROR SEAT NUMBER ONE:  Bakersfield

15 | College BC, and also San Joaquin.

16 |       THE COURT:  What did you study?

17 |       PROSPECTIVE JUROR SEAT NUMBER ONE:  Medical at San

18 | Joaquin, and BC I was just doing my general education.

19 |       THE COURT:  All right.  Juror 002?

20 |       PROSPECTIVE JUROR IN SEAT NUMBER TWO:  My name is

21 | Juror 002.  I live in Bakersfield, California also.  I'm a

22 | manager in retail.  I was previously occupational sales

23 | association in retail.  I have some college experience

24 | credits.  No military service.  Single.  No spouse.  No

25 | former.  No children.

1          I was called for jury service but never served.

2          THE COURT:  All right.  Thank you, sir.

3          Juror 003?

4          PROSPECTIVE JUROR IN SEAT NUMBER THREE:  My name is

5  Juror 003.  Location is Fresno.  Voice operator, general

6  service.  Education is -- highest is high school.  Military,

7  no.  Single.  No spouse.  No former spouse.  No children.  No

8  prior jury experience.

9          THE COURT:  Where are you working?

10          PROSPECTIVE JUROR IN SEAT NUMBER THREE:  Table

11  Mountain Casino.

12          THE COURT:  Where before that?

13          PROSPECTIVE JUROR IN SEAT NUMBER THREE:  Table

14  Mountain also as a general service.

15          THE COURT:  All right.  Juror 023?

16          PROSPECTIVE JUROR IN SEAT NUMBER 4:  My name is Juror

17  023.  I currently reside in Ridgecrest, California, about

18  220 miles away from here.

19          Currently, I am an EOR technician at -- in the naval

20  air base out in China Lake making -- maintain target laser

21  targeting pods for the F18s.

22          Educational background, I have an associates in auto

23  body repair, and I'm working on a bachelor's in business

24  management.  I have done a bunch of military training.  As I

25  served in the marine corps in 2002 to 2007.  I had two trips

1   to Iraq.  That's where I learned to work on the F18.

2         Marital status is complicated.  You know, I'm no

3   longer with my wife.  I am -- who works at -- in, I believe,

4   it's a middle school now as a teacher's assistant.  Before

5   that she was at an elementary school with special needs

6   children.

7         My current girlfriend doesn't work.  I have two

8   children.  One is finishing up middle school and going into

9   high school.  The other one is in high school.

10        They don't have any occupations, and -- and this is

11  as far as I've ever made it in jury duty.

12        THE COURT:  What was your rank at separation?

13        PROSPECTIVE JUROR IN SEAT NUMBER 4:  I separated at

14  as corporal E4.  As I called it E4-ever.  It's kind of hard to

15  get past that during my time.

16        THE COURT:  Any military police service?

17        PROSPECTIVE JUROR IN SEAT NUMBER 4:  No.  I was a

18  strictly avionics repair.

19        THE COURT:  All right.  Juror 005?

20        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  My name is

21  Juror 005.  I live in Clovis.  I'm currently a real estate

22  agent, realtor with FAR, also work on getting my day-to-day

23  sub, to do substitute teaching.

24        Before that, I was several different office jobs

25  throughout town, did property management, worked through Pride

1   Staff.  I've had a lot of different jobs.

2           But my background is forensic education.  I have my

3   four-year degree from University of Phoenix in small business

4   entrepreneurship.

5           And I am currently married.  My husband is works for

6   a trucking company has as a manager.

7           And we have four daughters between the two of us, two

8   stepdaughters.  One lives in Australia, graduate from UCLA.

9   The other one lives in LA, and is a graduate from UCLA.  My

10  oldest is at Fresno State and doing equine physical therapy.

11          And we have a five-year old.

12          THE COURT:  And what do the two stepdaughters do for

13  a living?

14          PROSPECTIVE JUROR IN SEAT NUMBER 4:  One is a travel

15  agent in Australia, and the other one works for a social media

16  in company in LA.

17          THE COURT:  Any prior jury experience?

18          PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I've been

19  called for jury but never actually served on the jury.

20          THE COURT:  All right.  Mr. --

21          PROSPECTIVE JUROR IN SEAT NUMBER 6:  It's pronounced

22  Juror 025.  The "o" is silent.  My name is Juror 025.  I

23  reside in Bakersfield.  I am retired.  Before that, I worked

24  as a loan portfolio manager for field crops and livestock for

25  Farm Credit West in Bakersfield.

1          I have three years of community college at

2     Bakersfield College that was interrupted by military service,

3     in the United States Naval Reserve.  I was called to active

4     duty for a three-year term, and I was medically discharged

5     after six months.  At which time I then started my banking

6     career.

7          I am married.  My spouse works as a customer service

8     manager for a retail business in Bakersfield.

9          My first wife, who is now deceased, was an English

10    teacher.

11         Let's see, I have three boys and one step daughter.

12    One boy is a wild life biologist.  The second son is English

13    teacher.  And my the third son works in the California prison

14    system for an independent contractor.

15         I've served on one jury, which was a criminal case in

16    the County of Kern Superior Court.

17         THE COURT:  And without telling me what the verdict

18    was, did that jury reach a verdict?

19         PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

20         THE COURT:  How many years ago was that?

21         PROSPECTIVE JUROR IN SEAT NUMBER 6:  15.

22         THE COURT:  And how many years did you work with Farm

23    Credit West.

24         PROSPECTIVE JUROR IN SEAT NUMBER 6:  18 years.

25         THE COURT:  And the son works as an independent

1  contractor --

2            PROSPECTIVE JUROR IN SEAT NUMBER 6:  Yes.

3            THE COURT:  -- what sort of work does he do?

4            PROSPECTIVE JUROR IN SEAT NUMBER 6:  I'm not sure.

5  He just -- he worked for State Farm in work comp recovery

6  cases, and went to work for a family member related to his --

7  his wife.

8            THE COURT:  All right.  Juror 007?

9            PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  My name is

10 Juror 007.  I live in Fresno County, and I'm doing a job as a

11 cashier at the liquor store.

12           Before then -- this, I used to drive a taxi.  I went

13 to college in India.  No military service.

14           I am married.  My wife is -- she work as a CNA.  My

15 former wife, she also she was CNA.

16           I had -- I have two; one boy and one girl.  And

17 they're in school.  I -- they call me for jury duty, but I

18 never serve it.

19           THE COURT:  All right.  Juror 028?

20           PROSPECTIVE JUROR IN SEAT NUMBER 14:  Okay.  My name

21 is Juror 028.  I live in Ridgecrest.

22           I work for Sierra Sands Unified School District.  My

23 previous occupation was in a warehouse.

24           Educational background is high school.  No military

25 service.  I'm married.  My spouse is an operator in a chemical

1    plant.

2            My former spouse was -- he's retired military.  I

3    have three children; one step child, and two children.  My

4    first one is deceased.  My son is an electronic technician,

5    and my stepdaughter is lab technician.

6            And I've never been called to jury duty.

7            THE COURT:  How long have you worked for school

8    district?

9            PROSPECTIVE JUROR IN SEAT NUMBER 14:  22 years.

10           THE COURT:  Juror 013?

11           PROSPECTIVE JUROR IN SEAT NUMBER THIRTEEN:  My name

12   is Juror 013.  I live in Merced.  Okay.  I currently am a

13   custodian.  And before that, I was an auto mechanic.

14           And I completed an associate degree in automotive.  I

15   have no military service.

16           And I'm married.  And my wife is a teacher aid.  And

17   got two daughters.  They're accountants.

18           And I have no jury experience.

19           THE COURT:  Thank you.

20           Juror 012?

21           PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  My name is

22   Juror 012.  I live here in Fresno.

23           I work at EYE-Q Vision Care.  Previous to that, I

24   worked at Valley Surgical Specialist.

25           I went to UEI College for medical billing.  I've

never been in the military service.  I'm married.  My husband

is a construction worker, and I have a six-year old in school.

And I have been called for jury, but never been served.  This

is my first time serving.

THE COURT:  Thank you.

Juror 011?

PROSPECTIVE JUROR IN SEAT NUMBER 11:  My name is

Juror 011.  I live in Lemoore.  My current occupation is a

grandmother.  Previous occupation I worked at the commissary.

High school graduate.

My husband did the military time.  Still married for

30 years.  He is a heavy equipment operator.

My kids -- one of them works as a plane captain.  One

works at Home Depot.  And the other one is currently

unemployed.

Prior jury experience, plenty.

THE COURT:  You've been called before?

PROSPECTIVE JUROR IN SEAT NUMBER 11:  I've served

three times.

THE COURT:  State court or federal court?

PROSPECTIVE JUROR IN SEAT NUMBER 11:  No, federal.

THE COURT:  Okay.

PROSPECTIVE JUROR IN SEAT NUMBER 11:  So it was

criminal, civil, criminal.

THE COURT:  How long ago were those three jury

1   services?

2         PROSPECTIVE JUROR IN SEAT NUMBER 11:  Within the last

3   ten years.

4         THE COURT:  All three?

5         PROSPECTIVE JUROR IN SEAT NUMBER 11:  Yes.

6         THE COURT:  What was the most recent one?

7         PROSPECTIVE JUROR IN SEAT NUMBER 11:  I don't know.

8   That was quite a while ago.  So maybe back in '12.

9         THE COURT:  12 years ago?

10        PROSPECTIVE JUROR IN SEAT NUMBER 11:  2012.

11        THE COURT:  2012 was the most recent?

12        PROSPECTIVE JUROR IN SEAT NUMBER 11:  Yes.

13        THE COURT:  But all three within the last ten years?

14        PROSPECTIVE JUROR IN SEAT NUMBER 11:  Yes, all within

15  about 10 years.

16        THE COURT:  And did all three of those juries all

17  reach verdicts.

18        PROSPECTIVE JUROR IN SEAT NUMBER 11:  Yes.  One of

19  them I was only an alternate.

20        So you didn't deliberate in that one?

21        PROSPECTIVE JUROR IN SEAT NUMBER 11:  No.

22        THE COURT:  But the other two, you deliberated and

23  those juries reached verdicts?

24        PROSPECTIVE JUROR IN SEAT NUMBER 11:  Right.

25        THE COURT:  When and for how long did you work in the

1   commissary?

2          PROSPECTIVE JUROR IN SEAT NUMBER 11:  I worked for

3   about ten years.

4          THE COURT:  Where at?

5          PROSPECTIVE JUROR IN SEAT NUMBER 11:  In Lemoore.

6          THE COURT:  Juror 010?

7          PROSPECTIVE JUROR IN SEAT NUMBER TEN:  My name is

8   Juror 010.  I live in Fresno, California.  I'm a public works

9   special districts manager for the County of Madera.  My

10  previous occupation is a civil engineer for the County of

11  Madera.

12         I have a bachelor's in civil engineering, a physical

13  science degree and a minor in math.

14         I didn't serve in the military.

15         I am married.  My wife is a stay-at-home mom.  Former

16  spouse, she was a waitress.  I have one child.

17         And this is the first time I'm -- I've been called

18  for a jury.

19         THE COURT:  Where were your degrees earned?

20         PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Fresno City

21  College and Fresno State.

22         THE COURT:  All right.  Juror 024.

23         PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yes.  My name is

24  Juror 024.  I live in Laton, California.  I currently run my

25  own farm management company, and I'm also an estimator and

1    project manager for a construction company in Lemoore.  I've

2    been in either ag or construction my entire career.  I was

3    plant science operations at Fresno State.

4          No military service.  I'm married.  My wife does the

5    books for our farm management.  No former.

6          My children are in elementary school.  I've been

7    called twice but never served.

8          THE COURT:  How long have you been running your own

9    farm management company?

10         PROSPECTIVE JUROR IN SEAT NUMBER 9:  I separated from

11    my father two years ago.

12         THE COURT:  And how long before that as a --

13         PROSPECTIVE JUROR IN SEAT NUMBER 9:  I was --

14         THE COURT:  Were you a project estimator right before

15    that or --

16         PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yeah, I worked

17    multiple.  Mostly in sales for my buddy who owns Cen-Cal

18    Paving, Stoney's Sand & Gravel.

19         I've been part-time sales, you know, just helping

20    them out all throughout my college.  I drove truck in college.

21    I -- then I managed our processor and dehydrator for my dad

22    and my uncle all through -- right out of the high school all

23    the way until two years ago, where partners separation has got

24    me on my own direction.

25         THE COURT:  All right.  Juror 008?

1          PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  My name is
2    Juror 008.  I live in California City, California.  I am
3    currently a stay-at-home mom.  I home school my two children.
4    I am a pastor's wife, and I teach piano.
5          Prior to becoming a mom, I worked for a cancer center
6    primarily as a receptionist and a scheduler.
7          I have a bachelor's degree in practical Christian
8    training and a child care minor.  I have not served in the
9    military.
10          I am happily married.  My husband is an assistant
11    pastor of an independent fundamental baptist church.  He is
12    also an Air Force reservist.
13          We have two children, ninth grader and fifth grader.
14          And I have no prior jury experience.
15          THE COURT:  And where was your bachelor's degree
16    earned?
17          PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  Bob Jones
18    University.
19          THE COURT:  Juror 015.
20          PROSPECTIVE JUROR IN SEAT NUMBER 15:  My name is
21    Juror 015.  I live in Madera.  I am a kindergarten teacher.
22    And prior to that, I worked in after school programs and
23    daycares.
24          I got my AA at Madera Center College, went Fresno
25    State to get my BA and my credential.  No military background.

1        I'm married.  My husband owns his own business, a

2   pool service.  My two children are 10 and 15.

3        And I've been called for jury service but never

4   served.

5        THE COURT:  Juror 016?

6        PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  My name is

7   Juror 016.  I am from Bakersfield, California.  I'm currently

8   a supervisor with the Department of Motor Vehicles.  Prior to

9   that I was a control cashier with the Department of Motor

10  Vehicles.  I have some college nothing need to speak of.  I'm

11  divorced.  My ex-husband is a naval reservist as well as a

12  maintenance worker out at Frito Lay.

13       I have three children; two are in high school and one

14  is developmentally disabled.

15       And prior jury service, I get called every year, like

16  clock work, but I've only served on one jury.

17       THE COURT:  And I take it that that was in the state

18  court in Kern County.

19       PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

20       THE COURT:  How long was ago was that?

21       PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  I think

22  that was, like, two years ago, maybe three.

23       THE COURT:  Was it a civil or criminal case?

24       PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Criminal.

25       THE COURT:  Did that jury reach a verdict?

1          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

2          THE COURT:  How long have you been with DMV total.

3          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  17 years.

4          THE COURT:  Juror 026?

5          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  I'm

6   Juror 026.  I'm from Modesto.  I am a cafe manager, and before

7   that I was a cafe worker.  I have high school and some junior

8   college, just general education.

9          No military service.  I'm married.  My wife is a

10  human resources manager.

11         No former spouse.  No children.

12         And no prior jury experience.

13         THE COURT:  Juror 027?

14         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I'm Juror

15  027.  I live in Fresno, California.

16         My current occupation, I work at Ingram Lightening

17  source as a part operator.  My previous job I worked at IRS as

18  a tax examiner.  I have two years college in the Philippines.

19  No military.

20         I am married.  My husband he works at IRS also.  My

21  former spouse, he was in the Air Force.

22         I have only we've got one daughter.  She's 26, and

23  she works for State Farm, program technician.

24         And I serve on jury on Fresno Superior Court 2007,

25  and we reached a verdict.

1          THE COURT:  Was that a civil case or a criminal case?

2          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  A civil.

3          THE COURT:  And Ma'am, how long did you work as an

4     IRS tax examiner?

5          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I was

6     there for eight years.

7          THE COURT:  Approximately, how long ago?  From when

8     to when, approximately?

9          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I will --

10    2007 to 2014.

11         THE COURT:  All right.  And as a tax examiner, were

12    you involved in any criminal investigations?

13         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  No, sir.

14         THE COURT:  Strictly civil or --

15         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes.

16         THE COURT:  -- administrative review?

17         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes.

18         THE COURT:  Juror 019?

19         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  My name

20    is Juror 019.  I live in Tehachapi, California.  I own my own

21    pool service repair.  I'm my own employee -- employer; I'm the

22    only one.

23         THE COURT:  How does the management go?

24         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Well, you

25    know, I get along with him okay, except when I'm here because

1    nothing is getting done.

2              My previous occupation I was correctional nurse with

3    the California Department of Corrections.  I have some

4    college.  I was a Navy corp man.  I worked for the marine

5    corp.

6              I'm married.  My wife is -- return to work

7    coordinator for Department of Corrections.  My son is an

8    aviation technician with United States Navy, and my daughter

9    is a part-time student and lives at home with our grandkids.

10             And I don't have any other jury experience.

11             THE COURT:  And how long did you work as an -- with

12   CVCR as a nurse?

13             PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  I was

14   there from '91 to '95.

15             THE COURT:  Where were you at?

16             PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:

17   Calipatria State Prison.

18             THE COURT:  With respect to your work with the Navy,

19   how long was that service?

20             PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Four

21   years.

22             THE COURT:  What was your rank at separation?

23             PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  E4, third

24   class.  E4-ever, same as him.

25             THE COURT:  Any military police service during those

1   four years?

2          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Any

3   military what?

4          THE COURT:  Did you serve as a military policeman in

5   any way?

6          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  No.  I

7   was always corp man and medic.

8          THE COURT:  Juror 022?

9          PROSPECTIVE JUROR SEAT NUMBER TWENTY:  My name is

10  Juror 022.  I lived in Clovis, California.  Right now I'm a

11  substitute teacher for Clovis Unified.  I was previously

12  involved in the music business and a coach.  I'm a coach now,

13  too.

14         Educational background, I have a BS from Fresno

15  State.  Military service, no.

16         I'm married.  Did I push something?  No, I guess not.

17  My husband is retired, but he's a machinist.  I have one

18  child, 31.  She's a PE teacher at Fresno Unified Junior High.

19         I was on a jury about 12 years ago, criminal case.

20         THE COURT:  Did that jury reach a verdict?

21         PROSPECTIVE JUROR SEAT NUMBER TWENTY:  Yes.

22         THE COURT:  What do you coach?

23         PROSPECTIVE JUROR SEAT NUMBER TWENTY:  Martial arts

24  and cross country and track.

25         THE COURT:  At a high school?

1          PROSPECTIVE JUROR SEAT NUMBER TWENTY:  No, an

2     elementary school.

3          THE COURT:  At an elementary school.

4          PROSPECTIVE JUROR SEAT NUMBER TWENTY: (Nods head).

5          THE COURT:  How long have you been doing that?

6          PROSPECTIVE JUROR SEAT NUMBER TWENTY:  I've been

7     involved in martial arts for about 20 years, and I've been

8     coaching running and track events for about 5-6 years.

9          THE COURT:  Oh, all right.

10          Juror 021.

11          PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  My name

12     is Juror 021.  I live in Fresno.  My current occupation is --

13     I'm an executive assistant for an architectural firm, and I've

14     done that type of work for forever.

15          Some college, about five semesters, never declared a

16     major.  No military service.

17          I am married.  My husband works for the California

18     International Guard, avionics.  He's a master sergeant there.

19     No former spouse.  No children.

20          And I've been called to jury service but not been

21     chosen for the jury.

22          THE COURT:  Where were those five semesters of

23     college?

24          PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  Fresno

25     State.

1          THE COURT:  I know you say you've been doing your job

2    forever, but a guesstimate?

3          PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  Oh,

4    well, yeah.  The same type of work for 30-plus years, yeah.

5    In different -- for different industries, but yes.

6          THE COURT:  All right, thank you.

7          PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  Uh-huh.

8          THE COURT:  Mr. Gappa, Mr. Pearson, any supplemental

9    questioning that you would like to conduct?

10         MR. GAPPA:  Your Honor, if we could I use that

11   microphone.

12         THE COURT:  You can go anywhere you want as long as

13   you're within range of a mic.

14         MR. GAPPA:  Good afternoon, ladies and gentlemen.

15   Again, my name is David Gappa.

16         I just have a few questions, some for all of you,

17   some just to follow up with what the Court has already asked.

18         I wanted to start with Juror 007, because almost

19   everybody -- I think almost everybody raised their hand on the

20   question about use of a computer and the internet.  I didn't

21   see your hand go up, Juror 007, when the question was on

22   sending pictures or files using a computer.  Is that anything

23   that you have done?

24         PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  No.  I never

25   use the computer, but somebody sent me pictures.  I sent --

1          THE COURT:  Can we get a microphone to Juror 007?

2   Thank you.

3          PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  I never used

4   the computer.  But somebody sending me picture, but I sent to

5   someone pictures.

6          MR. GAPPA:  Okay.  So you have used a computer and

7   internet to send pictures?

8          PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  No, just the

9   phone not the computer.

10          MR. GAPPA:  Oh, on the phone, okay.  Fair enough.

11          Now, you had said that your understanding of what was

12   being asked today might be 70 to 72 percent.

13          PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  Yes, some

14   questions is too, too hard for me, some I understand.

15          MR. GAPPA:  Is English your second language?

16          PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  Yes.  And

17   India, yes, but I've never been schooled over here but India.

18          MR. GAPPA:  Okay.  Did you learn English in India?

19          PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  Yes.

20          MR. GAPPA:  If you were hearing testimony, if you're

21   selected as a juror, and you hear testimony and you just don't

22   understand a word or a phrase, what would you do?

23          PROSPECTIVE JUROR IN SEAT NUMBER SEVEN:  Well, I

24   can't answer the question then.  I -- that's all I can say.

25   Better than I give a wrong answer.

1          MR. GAPPA:  Okay.  I think, Juror 027, you also at

2     some point had expressed that you might have some difficulty

3     if the testimony or the topics get technical.  Is that still

4     the case having heard more questions and answered some

5     questions?

6          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I --

7     thank you.

8          What I'm saying earlier, when it's like, intelligent

9     English, like, lawyer's English, I -- they have -- they're

10    different phrase than the normal dictionary.

11         MR. GAPPA:  Okay.  So on any given day do you have

12    find yourself looking up words in English?

13         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Not --

14    not every time.  But I know on -- on, like, you guys, the

15    lawyers, English are very kind of heavy.

16         MR. GAPPA:  Okay.  Well, the Court has already said

17    that the Court will give you and everybody who is picked as a

18    juror the la and the instructions and definitions.  Do you

19    understand that if you are given that that's what you have to

20    listen to and that would control, you're not allowed to look

21    anything up if you didn't understand?

22         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I will

23    understand it.  It -- I just have to focus closely.

24         MR. GAPPA:  Okay.

25         All right, Juror 010.  I think I might have heard you

1    say computer aided designed or CAID?

2            PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Just design

3    websites.

4            MR. GAPPA:  So --

5            PROSPECTIVE JUROR IN SEAT NUMBER TEN:  For

6    dealerships.

7            MR. GAPPA:  Did you take any instruction on how to

8    design a website?

9            PROSPECTIVE JUROR IN SEAT NUMBER TEN:  I just learned

10   it on my own.

11           MR. GAPPA:  Do you think you have a pretty good

12   understanding of how the internet works?

13           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Yes.

14           MR. GAPPA:  Have you taken classes on the internet or

15   computers?

16           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  In college,

17   yes.  It's part of the civil engineering program, is computer

18   classes.

19           MR. GAPPA:  How long ago was that?

20           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  I graduated in

21   2012.

22           MR. GAPPA:  Okay.  So that's pretty recent.  And do

23   you think that you've kept up with your interest in the area

24   of technology?

25           PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Just like

 1   anyone else, I guess.  So it's not -- yeah.

 2        MR. GAPPA:  All right.  Does anybody here who is

 3   answering questions consider themselves to have an above

 4   average ability with technology or computers?  So you've had

 5   specialized experience or maybe because of work projects or

 6   responsibilities?

 7        PROSPECTIVE JUROR IN SEAT NUMBER 9:  Well, just like

 8   he's talking about, computer drawings, you're talking CAID

 9   designs, things like that.  I've dealt with small issues, you

10   know, or small things like a plasma cutters.  My cousin cuts

11   out panels, because race cars or things like that, or general

12   interest.  But like he's talking on estimating side, I do

13   takeoffs on different engineered projects.  Like we're

14   building a Tesla station right now.  So as I estimate, just

15   general drawings that -- we used different technologies to

16   measures and things like that but...

17        MR. GAPPA:  Okay.  Does anybody here do a lot of work

18   at home where sometimes you're in an office setting or

19   environment, but then you take work home.  And I'm really

20   interested more in a situation where you're taking home a

21   computer or accessing your work environment from home.  Does

22   anybody do that?

23        So one hand, Juror 005, what is the situation with

24   you?

25        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I'm realtor,

1    so I'm an independent contractor.  I do most of my work from

2    home and handle legal documents.  I work also out of my

3    office, but my home office is where I spend most of my

4    computer time.

5              MR. GAPPA:  So do you every connect to your office

6    from your home by computer?

7              PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  My personal

8    computer is the same computer that I take to the office.

9              MR. GAPPA:  Okay.  I wanted to ask you a question or

10   two.  You said that at the time, years ago, your current

11   husband had a federal case that involved child pornography.

12   You were not married to him at the time?

13             PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Correct.

14             MR. GAPPA:  Did you ever attend any of the court

15   proceedings related to that?

16             PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  No.

17             MR. GAPPA:  And then, you said that he was convicted

18   for that offense, yes?

19             PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Yes.

20             MR. GAPPA:  Did he plead guilty?

21             PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I believe he

22   pled not guilty.

23             MR. GAPPA:  Okay.

24             PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  But I don't

25   know all of the things of that.

1        MR. GAPPA:  Did you ever to that him about the case.

2        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  We have, but

3   it's been so long ago I do not remember all the details.

4        MR. GAPPA:  You were not charged for that case?

5        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I was not

6   charged?

7        MR. GAPPA:  Correct.  I was just asking you.

8        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  No, I was not

9   involved in the case at all.

10        MR. GAPPA:  Do you think that you can put all of that

11   experience aside, and then, if you're selected as a juror

12   consider this case and not be prejudiced by anything that you

13   might have learned from that case or your current husband's

14   experience?

15        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Yes.

16        MR. GAPPA:  You wouldn't ask him, Hey, this issue

17   came up in court today?

18        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  No.

19        MR. GAPPA:  Okay. Juror 023, you mentioned that your

20   family, you thought, had been victimized by an aunt, who,

21   sounds like had a substance abuse problem.  Was she ever

22   prosecuted for that?

23        PROSPECTIVE JUROR IN SEAT NUMBER 4:  Not really so

24   much.  Pretty much got away with murder.  Got away with almost

25   -- which I wasn't talking into the mic.  She pretty much just

1   got away with murder.  Nothing real came of anything.  She

2   just slowly dissolved as a person.  And she robbed my

3   grandmother.  She tricking -- she gave up the car with her

4   four -- five-year old son in it.  You know, things were ugly.

5   Her behavior caused some domestic problems between her and my

6   uncle.  My uncle spent a year in jail.  That whole thing was

7   ugly, but that was back in the early to mid '90s.  But she

8   recently passed away.

9           MR. GAPPA:  So would that all be in the past?  You

10  wouldn't let that affect your service, if you were selected as

11  a juror here?

12          PROSPECTIVE JUROR IN SEAT NUMBER 4:  That was drugs.

13  I mean, it's all -- that's a different scenario altogether.

14  It was just frustrating that nothing did happen to her.

15          MR. GAPPA:  So you think it actually might have

16  helped if she had been prosecuted?

17          PROSPECTIVE JUROR IN SEAT NUMBER 4:  Something to

18  wake her up.  She never stopped or slowed down right up until

19  the end.

20          MR. GAPPA:  Juror 016, I believe you said you had a

21  close friend, or at least a friend that had been accused of a

22  crime with sex with a minor.  Was the friend charged with a

23  crime?

24          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

25          MR. GAPPA:  Was the friend prosecuted?

1          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

2          MR. GAPPA:  And convicted?

3          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Yes.

4          MR. GAPPA:  Do you know if that was because of a

5   guilty plea or was there a trial?

6          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  I don't

7   know.

8          MR. GAPPA:  Okay.  How long ago was that?

9          PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  Uh, we

10  were 19; it's been a year or two.  Probably 20 years.

11         MR. GAPPA:  So would any of that experience or your

12  memories of what you might have heard about that case have any

13  impact if you're selected in this case?

14         PROSPECTIVE JUROR IN SEAT NUMBER SIXTEEN:  I wasn't

15  involved with him at the time.  I knew him, but I wasn't as

16  frequent with him.

17         MR. GAPPA:  Juror 019, you were in the Navy, and then

18  you worked for Department of Corrections.  And was it

19  Department of Corrections and Rehabilitation at the time?

20         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  It wasn't

21  called that then.

22         MR. GAPPA:  But it is now?

23         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Yes.

24         MR. GAPPA:  At that time, when it was just Department

25  of Corrections, you were a nurse or in the medical unit?

1           PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  I was a

2    correctional nurse, so we had the same peace officer status as

3    the officers.

4           MR. GAPPA:  That wasn't my question.  Were you

5    considered a peace officer?

6           PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  With PCA

7    32, yes.

8           MR. GAPPA:  So since then, have you had any type of

9    peace officer position or anything that might be considered

10   law enforcement?

11          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  No.

12          MR. GAPPA:  Do you think that experience where your

13   job classification had you as a correctional officer, a peace

14   officer would that have any influence on how you would listen

15   to testimony in this case if it's a defense witness or defense

16   questioning of a government witness?  Would you be able to

17   evaluate that, give it equal consideration?

18          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Well, I

19   think I could.  I mean, it's -- it's different when you work

20   in the prison for a long time and you're around a lot of

21   different people.  But you know, I've -- like I've said

22   before, I have been to court a lot, so I'm kind of used to how

23   it goes and you have to just weigh -- weigh the evidence.

24          MR. GAPPA:  So when you would go to court, you were

25   acting as a witness?

1          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  For the

2     State.

3          MR. GAPPA:  Okay.

4          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  For the

5     department.

6          MR. GAPPA:  Did you actually testify sometimes?

7          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Every

8     time.

9          MR. GAPPA:  Were there jury trials sometimes?

10         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Yes,

11    there were.

12         MR. GAPPA:  So you have some empathy for the process

13    of being a witness and telling what facts you can remember as

14    a witness; is that right?

15         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Yes.

16         MR. GAPPA:  Do you think that would influence you in

17    any way if you were a juror in this case, the fact that you've

18    participated in the trial process?

19         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Would it

20    influence me or --

21         MR. GAPPA:  Yeah, would it have any impact on --

22         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  No.

23         MR. GAPPA:  Okay.  Does anybody use peer-to-peer file

24    sharing software, or has anybody heard of peer-to-peer file

25    sharing software?  One hand.  Juror 026, what do you know, or

1  what have you heard?

2          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  I

3  haven't used it myself, but I think that's what people use to

4  share, like, movies and music, basically.

5          MR. GAPPA:  Okay.  So you've not personally used

6  that?

7          PROSPECTIVE JUROR IN SEAT NUMBER SEVENTEEN:  No.

8          MR. GAPPA:  Has anybody else used peer-to-peer

9  software?

10          PROSPECTIVE JUROR IN SEAT NUMBER 4:  Years ago.

11          MR. GAPPA:  Juror 023, you said years ago?

12          PROSPECTIVE JUROR IN SEAT NUMBER 4:  Before everybody

13  understood what it was, and it was -- before, you know, when

14  everybody was feeding music, and movies every which way.

15  Everybody thought it was just sharing, not necessarily

16  stealing, I was one of those fools.

17          MR. GAPPA:  So you have some familiarity with the

18  technology?

19          PROSPECTIVE JUROR IN SEAT NUMBER 4:  It's been a long

20  time, but yeah.

21          MR. GAPPA:  Does anybody else -- do I see any other

22  hands on that issue?  Okay.

23          Just to follow up with, Juror 024, you said your

24  father, I guess, several years ago, was prosecuted for arson.

25  Sounds like it went to a jury trial, and ultimately, he was

1  acquitted, right?

2          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yes, sir.

3          MR. GAPPA:  Then, you said for a while after that,

4  you were a witness in the case, and then, you had some --

5  sounded like, ill feelings that -- to go through?

6          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yes.  I think,

7  you know, when you're in the center of it and it's your

8  family, and you're, you know, a bit narrow-minded, I guess you

9  could say about thinking somebody is attacking you when

10 they're probably doing their job -- because I had a lot of

11 friends that were in the Kings County Sheriffs Department --

12 on both sides.  And it's a tight-knit community around there.

13 And the whole situation was really weird.

14         So I think at the time I had a lot of animosity

15 towards it, because I felt like they were directly attacking

16 our family and pinpointing them.  When they were probably just

17 trying to do their job to the fullest extent.

18         MR. GAPPA:  So that wouldn't have any lingering

19 impact?

20         PROSPECTIVE JUROR IN SEAT NUMBER 9:  No.  It's given

21 me different opinion -- not an opinion, but a different view

22 of how all this is, because I guess, I've been in it.

23         Lawyers, both sides -- interviewed by both sides, you

24 see a lot of the strategy on both sides.  And at the time, I

25 thought that the prosecutors were crossing the line.  Now that

1   I look at it, they were doing their job to get a conviction.

2               MR. GAPPA:  Okay.  Final question, and for Juror 005.

3               PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Yes.

4               MR. GAPPA:  Your husband, there were consequences for

5   that conviction of your husband, if you're selected on this

6   panel and people ask what happened to your husband, would you

7   be able to not discuss that case --

8               PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Yes.

9               MR. GAPPA:  -- if you were asked?  Because everybody

10  understands that the Court will tell you punishment is

11  separate from what your responsibility is?  Does everybody

12  understand that?  Okay.

13              Final question, if I could, Your Honor.  Is there any

14  question that hasn't been asked that you somebody should ask

15  you that might have an impact?  Because sometimes people will

16  sit through this process and as many questions as you hear

17  asked and answered, sometimes people say afterwards, I can't

18  believe they didn't ask this question or that question.  Is

19  there anything like that that you could think of that might

20  impact your ability to be fair and impartial on this jury, if

21  you're selected?  All right.

22              Thank you, Your Honor.

23              THE COURT:  Mr. Capozzi.

24              MR. CAPOZZI:  Thank you, Judge.

25              THE COURT:  And folks, just so you know, Mr. Capozzi

1 is going to ask his follow-up questions.

2           I'm going to end up keeping this group a little later

3 into the early evening, and the reason I'm going to do that is

4 this, if we can get a jury selected before the end of the day

5 today, then anybody who is not selected, doesn't have to come

6 back.  So I am going to push a little bit -- we're going to go

7 a for a while longer.

8           Yes?

9           PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  How much

10 longer?

11           THE COURT:  Maybe an hour.

12           PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  What would

13 be out by 5:00?

14           THE COURT:  Probably not.  5:30, maybe.

15           PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  Can I call

16 somebody?

17           THE COURT:  We'll take a break.

18           Mr. Capozzi, you may continue.

19           Remind me.

20           MR. CAPOZZI:  Thank you, Judge.

21           Just to let you know, this is going to be, I think, a

22 difficult case to sit on.

23           You're going to see some videos of adults having sex

24 with children, young children, five years old, six years old,

25 seven years old.

1          I watched those.  They're not easy.  Is that going to

2     prejudice you one way or the other in this case?  And be

3     honest about it.  It's going to be difficult.  Just because

4     you see those, does that mean my client is guilty, in your

5     mind?  Is that going to prejudice you in any way?  Please tell

6     us.

7          PROSPECTIVE JUROR SEAT NUMBER ONE:  I'm a mother, so,

8     yes, seeing those videos --

9          THE COURT:  Can we get the microphone?

10         PROSPECTIVE JUROR SEAT NUMBER ONE:  To be honest, I'm

11    a mother, and yes, seeing those videos, and knowing -- I don't

12    know the facts, if you saw them or not.  But that somebody

13    could watch them, of course that's gonna -- I don't want so

14    see the videos.

15         And for me to know somebody saw those videos, yeah,

16    that's going to affect me.

17         MR. CAPOZZI:  So that would prevent you from being

18    fair --

19         PROSPECTIVE JUROR SEAT NUMBER ONE:  Oh, yes.  I mean,

20    I'm just being honest.  But for sure, that is --

21         MR. CAPOZZI:  Please be honest here.  This is very

22    important of what's going on here.  You're going to be the

23    judge of the facts, and if you can't be fair and impartial,

24    you have to let us know.

25         PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes, I don't even

1  want to see those videos, if there's any way.

2          THE COURT:  Juror 029.

3          PROSPECTIVE JUROR SEAT NUMBER ONE:  I know.

4          THE COURT:  You heard me talk about this, right?  And

5  I just want to play it out.

6          Now, yes, we do ask jurors to look at disturbing

7  evidence, but that evidence -- and I will do what I need to do

8  place appropriate limits on what the jury is exposed in the

9  case.  Those images may, though, be disturbing.

10         PROSPECTIVE JUROR SEAT NUMBER ONE:  I --

11         THE COURT:  I acknowledged that, and I told you that.

12         PROSPECTIVE JUROR SEAT NUMBER ONE:  I don't want to

13  look at them.  If there's any way -- I can't -- I don't want

14  to see that.

15         THE COURT:  I hear you.  And here's the question

16  though -- none of us do, that's the truth of the matter.

17  Nobody does.

18         The question is, if that's part of the evidence in

19  the case, even to the extent that I limit the exposure to the

20  jury of it, do you think you're capable of saying, All right,

21  that's some of the evidence in the case.  The question is, the

22  judge is going to give me instructions on what the government

23  has to prove beyond a reasonable doubt in order to lead to a

24  conviction.  I don't like that evidence, but let me analyzing

25  under the evidence that I've seen and I've heard here in open

1    court, has the Government satisfied that burden?

2         Can you do that, or is the mere fact that part of the

3    evidence in the case, are those kind of photos, is that going

4    to cause you to just say, I can't even think about it any

5    more --

6         PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes, that's going

7    to cause that for sure.

8         THE COURT:  Yes.

9         PROSPECTIVE JUROR SEAT NUMBER ONE:  Uh-huh.

10        THE COURT:  Mr. Gappa, do you want to follow up at

11   all?

12        MR. GAPPA:  If I could, briefly.

13        THE COURT:  Sure.

14        MR. GAPPA:  So, Juror 029.

15        PROSPECTIVE JUROR SEAT NUMBER ONE:  Juror 029.

16        MR. GAPPA:  Juror 029, thank you, sorry.

17        Do you understand, though, that it's not a matter of

18   simply having a disturbing image, and somebody saying, that

19   was on a specific location, therefore, the case is over.  It's

20   not that simple?  That's not what the law is.  And if you're

21   instructed what the law is, you would be able to follow the

22   law?

23        PROSPECTIVE JUROR SEAT NUMBER ONE:  Follow the law,

24   I'm going to follow the law.  But seeing that is going to

25   disturb me, and it's going to make me look at this whole

case -- I don't want to see that.  I mean, if there's any
way -- I don't want to see a video like that.  And for me to
have to look at a video like that, is going to be disturbing.
And is definitely going to change my views on anybody else who
would have looked at that video.

     MR. GAPPA:  What about this, we don't know what will
happen, and the defendant has absolutely no burden.  It's
always the Government's burden in a criminal case to prove
what's charged.

     But if the Defendant testified, and he said, I don't
like that material either, and I didn't have anything to do
with it, wouldn't you be obligated to consider those
statements?

     PROSPECTIVE JUROR SEAT NUMBER ONE:  I'm going to hear
him say that, but it's just going to be hard.  If somebody
tells me that somebody looked at a video like that, and -- I
don't want to see that video.  So that's going to be disturb
me.  I mean, I sell radio advertising.  I don't look at stuff
like, and I don't work in a position where I look at stuff
like that, because I don't want to look at stuff like that.
And it's going to be disturbing.  I don't want to see that.

     MR. GAPPA:  Those are my questions, Your Honor.

     THE COURT:  For cause?

     MR. CAPOZZI:  Challenge for cause.

     THE COURT:  Anything more?

1          MR. GAPPA:  No, Your Honor.

2          THE COURT:  Granted.

3          Ma'am, you are excused.  You do need to call in after

4   five o'clock on Friday on the eight-hundred number for further

5   instruction.  Thank you.

6          MR. CAPOZZI:  Thank you for your honesty.

7          COURTROOM DEPUTY:  Fill the box?

8          THE COURT:  Yes.

9          COURTROOM DEPUTY:  Juror 030.

10          THE COURT:  Juror 030?

11          PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes.

12          THE COURT:  You've heard a lot of questions asked.

13          PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes.

14          THE COURT:  Do any of them cause you to have any

15   responses?

16          PROSPECTIVE JUROR SEAT NUMBER ONE:  No, they don't.

17          THE COURT:  None of them?

18          PROSPECTIVE JUROR SEAT NUMBER ONE:  No.

19          THE COURT:  Really?

20          PROSPECTIVE JUROR SEAT NUMBER ONE:  No.

21          THE COURT:  No exposure to the criminal justice

22   system, family or friends, that sort of thing?

23          PROSPECTIVE JUROR SEAT NUMBER ONE:  No.

24          THE COURT:  All right.

25          PROSPECTIVE JUROR SEAT NUMBER ONE:  No.

1          THE COURT:  Anything about the nature of the charge

2     that we've talked about that causes you concern regarding your

3     ability to fair and impartial?

4          PROSPECTIVE JUROR SEAT NUMBER ONE:  No.  I will be

5     fair and impartial, yes.

6          THE COURT:  Take a look at that sheet, if you will,

7     sir, that's still up there.

8          PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes.

9          THE COURT:  Why don't you cover that background with

10    us.

11         PROSPECTIVE JUROR SEAT NUMBER ONE:  You want me to go

12    over the information here?

13         THE COURT:  Please do.

14         PROSPECTIVE JUROR SEAT NUMBER ONE:  Okay.  My name is

15    Juror 030.  I am from Fresno, California.  My most recent --

16    well, I am retired now.  My most recent job was in food

17    service.  Before that I actually worked as technical help for

18    computers and media equipment.  I do have a degree, an AA

19    degree.  I was in the Air Force.

20         I am married.  My wife is homemaker.  And I have five

21    children.  And they -- my oldest son is a nurse.  My oldest

22    daughter works for the Department of Defense.  My other son is

23    works for a plumbing company.  My other daughter works for a

24    retail store, and the other one works for a restaurant.

25         As far as prior jury experience, I have been called

1   but never selected.

2          THE COURT:  And sir, with respect to your work, who

3   was it that you have worked for?

4          PROSPECTIVE JUROR SEAT NUMBER ONE:  For the Fresno

5   County schools, and I worked for a company called Alorica.

6          THE COURT:  All right.  And I'm sorry, I think you

7   said that you had -- did you say you had some college?

8          PROSPECTIVE JUROR SEAT NUMBER ONE:  An AA degree,

9   yes.

10          THE COURT:  Where was that from, sir?

11          PROSPECTIVE JUROR SEAT NUMBER ONE:  Fresno City

12   College.

13          THE COURT:  Mr. Capozzi, you may continue.

14          MR. CAPOZZI:  Thank you, Judge.

15          What, sir, was the degree in?

16          PROSPECTIVE JUROR SEAT NUMBER ONE:  It was an

17   associated arts.

18          MR. CAPOZZI:  Any specialty?

19          PROSPECTIVE JUROR SEAT NUMBER ONE:  Well, a little

20   bit of psychology and social work in there, yes.

21          MR. CAPOZZI:  You said you worked a bit with

22   computers?

23          PROSPECTIVE JUROR SEAT NUMBER ONE:  Yes, I took a

24   course in computers.  Yes, sir.

25          MR. CAPOZZI:  Do you use a computer very often now?

1          PROSPECTIVE JUROR SEAT NUMBER ONE:  I do use a

2    computer, yes.

3          MR. CAPOZZI:  I guess, I think, I'm the oldest person

4    in the courtroom.  The most exciting thing I got when I

5    started working was this electronic typewriter that went real

6    fast, and we thought that was good.  Now we're in computer.

7    I'm not real computer savvy.  Most of you are.

8          And most of you heard of peer-to-peer.  I think we

9    have a couple that did.  Does anybody use peer-to-peer for

10   music?  Anything else besides music/songs?  Nothing else okay.

11         Again, back to my question about looking at a video.

12   That's going to be hard to watch.  Is everybody here able to

13   do that and not hold it against my client?

14         PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  I don't

15   know.  Honestly, I don't know.

16         MR. CAPOZZI:  Why do you say you don't know?

17         We're talking to 021.

18         COURTROOM DEPUTY:  Please pass the mic.

19         MR. CAPOZZI:  Juror 021.

20         PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  Yes,

21   thank you.  I'm just often thought, I could probably sit on

22   any case but this kind of case.

23         It's just so troubling about having to do that.

24         MR. CAPOZZI:  It's important you tell us this.

25         PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  I

1 | appreciate the opportunity.  I don't know how it would
2 | affect --
3 |      MR. CAPOZZI:  Do you think it could affect you?
4 |      PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  Yes, I
5 | do.
6 |      MR. CAPOZZI:  How so?  How so?
7 |      PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  Well,
8 | besides just being physically sick and being, you know, as the
9 | previous lady was saying, it's so disturbing.  I'd like to
10 | think I could be fair.  I would want to be fair, but I -- I
11 | just -- I'm just not sure.  I'm just not sure if I can be
12 | after witnessing something like this.  Just the thought of it
13 | right now, is making me sick.  So, yeah.
14 |      MR. CAPOZZI:  Well, trust me, when you see it, it
15 | will have an affect one way or the other.  But will that then
16 | prejudice you against Mr. Henry?
17 |      PROSPECTIVE JUROR IN SEAT NUMBER TWENTY-ONE:  I would
18 | hope not.  I don't know for sure.  I'm just saying and trying
19 | to be honest about it.
20 |      MR. CAPOZZI:  Okay.  Juror 022, when I brought it up,
21 | I saw your fingers tapping your chair pretty hard, pretty
22 | nervously.  Would it affect you in looking at these videos.
23 |      PROSPECTIVE JUROR SEAT NUMBER TWENTY:  Well, one
24 | reason I was tapping, I teach percussion, too.  So I'm
25 | constantly tapping.

1          MR. CAPOZZI:  Good answer.

2          PROSPECTIVE JUROR SEAT NUMBER TWENTY:  So I'm always

3    thinking of a beat.

4          Of course, I wouldn't be human if it wasn't

5    disturbing.  But I think --

6          MR. CAPOZZI:  You think you could still be fair and

7    impartial?

8          PROSPECTIVE JUROR SEAT NUMBER TWENTY:  Yes, I could

9    be.

10          MR. CAPOZZI:  You think so?

11          PROSPECTIVE JUROR SEAT NUMBER TWENTY: (Nods head).

12          THE COURT:  Juror 019, I saw your leg really going.

13          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Right.

14    Like I had said earlier, when you work in the Department of

15    Corrections, I worked in maximum security.  So you have all

16    kind of inmates that you deal with.

17          And anything to do with children was the worse.

18          MR. CAPOZZI:  Yes, I know.

19          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  It was

20    not right.  It was not good.  And it was repulsive.  And it

21    was something that I had to try to be impartial and do my job.

22    But I didn't like it.  I don't like it.  And my grandchildren

23    live with me, so --

24          MR. CAPOZZI:  Would it bias you one way or the other?

25          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Well,

1   it's going to be a tough one.

2          MR. CAPOZZI:  And you work with Department of

3   Corrections?

4          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  I did.

5          MR. CAPOZZI:  Would you tend to believe law

6   enforcement over any other type of lay witness?

7          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  I would.

8          MR. CAPOZZI:  So you're telling us then --

9          PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Well,

10  because it takes a while -- it takes a while to get to this to

11  point.  And I know that in going to Court, it takes an -- it

12  just doesn't happen.

13         MR. CAPOZZI:  You're saying because Mr. Henry is

14  here, he did something wrong.

15         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  There's a

16  case.

17         MR. CAPOZZI:  So if you had to vote right now as to

18  whether or not he's guilty or not guilty, how would you vote?

19         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Well,

20  without being fair, I couldn't vote.  I wouldn't have the

21  information.

22         MR. CAPOZZI:  So how would you vote?

23         PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  I don't

24  have the information.

25         MR. CAPOZZI:  Right.

1       THE COURT:  Right, you haven't heard any evidence.

2       PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Right,

3  exactly.  I don't have evidence, but I have the same emotional

4  reaction.

5       And if you walked up and the first thing and said,

6  Hey, you guys are going to watch these disturbing videos of

7  children, you would be calling in a whole new crew of people.

8       THE COURT:  Yeah, if I can interrupt for one moment.

9       PROSPECTIVE JUROR IN SEAT NUMBER NINETEEN:  Sorry.

10       THE COURT:  No, that's -- that -- what you folks are

11  telling me, and the lawyers, is perfectly appropriate.  And I

12  know Juror 008, you had your hand up, too, and I'm sure

13  Mr. Cappozi is going to get to you.  But let me talk a little

14  bit more about this.

15       MR. CAPOZZI:  I prefer that do you, Judge.  Thank

16  you.

17       THE COURT:  It is better, I think, if I set the stage

18  a little bit.

19       Now, this is not -- I'm not telling you this is how

20  I'm going to exactly instruct the jury in this case.  But as

21  to the charge that the lawyers are talking about, the jury in

22  this case is ultimately, at the end of the trial going to

23  receive an instruction that tells them something like this:

24  The Defendant is charged in Count II of the indictment with

25  receipt of a visual depiction of a minor engaged in sexually

1    explicit conduct in violation of 18 USC sections 2252(a)(2).

2              In order for the Defendant to be found guilty of that

3    charge, the Government must prove each of the following

4    elements beyond a reasonable doubt:

5              First, the Defendant knowingly received any visual

6    depiction.

7              Second, that the production of the visual depiction

8    involved the use of a minor engaging in sexually explicit

9    conduct.

10             Third, that the Defendant knew the visual was of a

11   minor engaged in sexually explicit conduct.

12             Fourth, that the visual depiction had been either

13   mailed, shipped, or transported in interstate or foreign

14   commerce by any means including by computer, or was received

15   or distributed with materials, which were mailed, shipped, or

16   transported in interstate or foreign commerce including by

17   computer; or C, was received or distributed by use of any

18   means or facility of interstate or foreign commerce; or D, the

19   receipt or distribution of the image was in or affecting

20   interstate or foreign commerce.

21             These are all requirements of the federal statute

22   that the Defendant is charged with having violated.

23             So when the simple question is asked, Look, if some

24   of the evidence in this case are disturbing images that are

25   introduced into evidence, I think you can understand just

1    hearing me even read that instruction as to what the

2    Government must prove beyond a reasonable doubt, I'm sure that

3    in your mind you can think of, Well, yes, the case might

4    involve evidence of a very disturbing image that I certainly

5    don't want to view.  But that's not the end of the inquiry.

6    There's a number of elements that have to be established by

7    proof beyond a reasonable doubt.

8            And the image, for instance, could be disturbing, and

9    yet, not -- and there's further instructions -- not be a

10   visual depiction involving a minor involved in sexually

11   explicit conduct.  So you might be disturbed by it, but you

12   might read the other definitions and say, You know, I don't

13   think they've proved that it's a depiction of a minor engaged

14   in sexually explicit conduct.  So even though I'm disturbed by

15   it, I don't think I can return a guilty verdict.

16           I'm not saying that's this case.  I'm saying in the

17   hypothetical case.  I -- I don't -- hopefully, I'm doing a

18   halfway decent job of explain it to you.  That the simple

19   question of, if you see a disturbing image, is that going to

20   cause you to just stop with the rest of the analysis, and say,

21   I don't care what law requires, I saw that picture.  I hated

22   it.  I'm voting for guilty.

23           Because then, you wouldn't be doing your job.  And if

24   you can't do your job, you need to tell us now.

25           On the other hand, if you say, No, I didn't -- I wish

```
1    I wouldn't have been picked for this one, but I know what my
2    duty is.  And yeah, as much as I don't want to see a
3    disturbing picture, if it's part of the evidence of the case,
4    just like if it was an autopsy photo, I guess I've got to look
5    at it.  I'm not going to spend too long looking at it, but I
6    guess I've got to look at it.  But after that, I'm going to
7    follow the Judge's instructions, and I'm going to go
8    step-by-step, and I'm going to decide whether I was satisfied
9    by the evidence that was presented at trial that the
10   prosecution proved their case beyond a reasonable doubt.  And
11   I'm not going to let that one piece of evidence dictate my
12   result on everything else.  I'm going to do my job.  That's
13   what it is.
14            But Juror 012, needs to make arrangements by
15   five o'clock, right?
16            PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  At least
17   before 5:15.
18            THE COURT:  Yeah, counsel approach.
19            (Sidebar held).
20            COURTROOM DEPUTY:  On the record, Your Honor?
21            THE COURT:  Please.
22            Well, I'd love to get a jury by the end of the day,
23   and I knew it was going to be tough because the kind of case
24   it is.  And I hate to bring everybody back.
25            MR. CAPOZZI:  I'm not sure we have enough here to get
```

1   a jury.

2            THE COURT:  I'm not sure we're getting any more.

3            MR. CAPOZZI:  Oh, really?  Okay.  Can't get in more

4   tomorrow, if we had to?

5            THE COURT:  We couldn't get more tomorrow, if we

6   wanted.

7            COURTROOM DEPUTY:  Yeah.

8            THE COURT:  Could we?

9            COURTROOM DEPUTY:  Maybe.  We have 13.

10           THE COURT:  Yeah, but could we get any more if we

11  needed them?

12           Anyway, the question for tonight is whether or not to

13  press forward and go as late as I can press it or whether to

14  let --

15           MR. CAPOZZI:  I don't think we'll have one tonight.

16           THE COURT:  No, I don't think I'm getting a jury.

17           MR. GAPPA:  We did that once with Judge Wanger.  He

18  swore them in at 6:59.  Everybody was angry.

19           THE COURT:  No, I don't want to do that, especially

20  given her problem.

21           MR. GAPPA:  Yeah.  So that's -- I don't think it

22  would be the best alternative.

23           THE COURT:  You want to recess?

24           MR. CAPOZZI:  Probably some get off the jury now, if

25  you want to do it now, answer a few questions.  I thought I

1    could tell you --

2          COURTROOM DEPUTY:  Nobody is calling back until

3    Friday.

4          THE COURT:  No, we're not getting any more this late,

5    is what you've got.

6          MR. CAPOZZI:  Okay.

7          THE COURT:  You know, we'll take that issue up, if we

8    get to it.

9          Why don't we go forward, at least your supplemental

10   voir dire.  Maybe start the exercise.  I won't go past

11   five o'clock, though.

12         MR. CAPOZZI:  Okay.  Thank you.

13         MR. GAPPA:  Thank you.

14      (End of sidebar.)

15         THE COURT:  Juror 012, and those rest you, my best

16   laid plans are not going to work.  I don't think we will have

17   a jury tonight.  We're going to go until five o'clock.

18         Will that give you enough time?

19         PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  Yes.

20         THE COURT:  We'll go to five o'clock and then recess.

21   Unfortunately, anybody who is still here at 5:00, is going to

22   have to come back tomorrow morning.

23         Mr. Cappozi.

24         MR. CAPOZZI:  Thank you, Judge.

25         Was Juror 008, did you raised your hand?

124

1          PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  Yes.

2          MR. CAPOZZI:  Juror 008, is it?

3          MR. CAPOZZI:  I am super conflicted when you're

4    talking about these videos, and based upon my faith and my

5    beliefs --

6          MR. CAPOZZI:  It's hard -- there you go.

7          PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  Willfully

8    allowing things to come into my eye gates, truthfully, knowing

9    it's going to be of a child, the nature you've described,

10   honestly, I would look away.  I just could not willfully watch

11   that.

12         It's not -- my concern is not whether I could be

13   impartial, or -- it's just what I'm allowing myself to view

14   and -- based upon my beliefs.

15         I mean, if was a murder trial, and like the Judge

16   said, seeing pictures of an autopsy that are gruesome --

17         MR. CAPOZZI:  That's totally different than what this

18   is.

19         PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  Exactly.

20   That's why I'm conflicted.

21         In some ways, I think I could take a glance at an

22   autopsy picture.  But in this case, in this video, honestly, I

23   can't watch that.  What goes in my eye gaze, I can't unsee

24   that, and that's something I can't do.

25         MR. CAPOZZI:  If you see it, and how would that

1  affect you making a decision here?

2          PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  Truthfully,

3  I guess it depends on how it relates to the Defendant.

4          MR. CAPOZZI:  Right.  Good answer.

5          Okay.  Do you think seeing that, you still would be

6  fair, both to the Government and to the Defendant?

7          PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  I would not

8  watch it.  I mean, if someone's going to describe to me what

9  goes on, I would take their word for it, if they've watched

10  it.  But willfully, I will not watch it.

11          MR. CAPOZZI:  Okay.  By not watching it, do you think

12  you could be fair to both sides?

13          PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  Yes.

14          MR. CAPOZZI:  Okay.  Would it bother you after seeing

15  it or not seeing, the fact that the Defendant didn't take the

16  stand and exercise his Fifth Amendment right not to testify,

17  would you hold that against him?

18          PROSPECTIVE JUROR IN SEAT NUMBER EIGHT:  No.

19          MR. CAPOZZI:  Would anyone, the fact that the

20  Defendant did not testify, would that affect you in your

21  decision?

22          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  No.

23          MR. CAPOZZI:  It would not?

24          Okay.  How about in looking at Juror Number -- is it

25  18?  Juror 027, is it?

1          Would it -- looking at those videos, would that have

2   an affect on you in making a determination in this case?

3          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  It will

4   be first, but we are looking for evidence on this pictures.

5   So even though -- even though maybe they're disturbing, but

6   I'm looking for their real truth.

7          MR. CAPOZZI:  Okay.

8          PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  That's --

9          MR. CAPOZZI:  And the Judge read the elements to you

10  as to what the Government has to prove.  And if one of the

11  elements is the Defendant has to know that he has those

12  videos --

13         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes, I

14  will check in all that evidence for --

15         MR. CAPOZZI:  And if the evidence shows he does not

16  have knowledge of those videos, what would your decision be?

17         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I will go

18  by --

19         MR. CAPOZZI:  Well, whatever the law the judge tells

20  you?

21         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  Yes.

22         MR. CAPOZZI:  Okay.  Let's leave it that.  I'm sorry.

23         Anybody else in terms of the videos?  Let's go to

24  Juror 005.  Your husband had been -- I believe your name -- I

25  go by jurors numbers.  Juror 005, is it?

1        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Yes.

2        MR. CAPOZZI:  How would that affect you in seeing a

3  video?

4        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I don't think

5  I can watch the videos either.

6        MR. CAPOZZI:  I'm sorry?

7        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I don't think

8  I can watch the videos either.

9        MR. CAPOZZI:  If you don't watch it, how can you

10  render a verdict?

11        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  Because I can

12  judge the sin, but not the person.

13        MR. CAPOZZI:  Say that again.

14        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I can judge

15  the sin but not the person.  I believe people are innocent

16  until proven guilty.  I disagree with the action.  I don't

17  want to visually see an adult with a child.  I can't do that.

18        MR. CAPOZZI:  Would you be able to still render a

19  verdict and still be fair and impartial?

20        PROSPECTIVE JUROR IN SEAT NUMBER FIVE:  I believe so.

21  I would rather not see any images or videos.

22        MR. CAPOZZI:  Okay.

23        All right.  Anybody else want to input on that?  Can

24  we pass that over to Juror Number 14, is it?

25        PROSPECTIVE JUROR IN SEAT NUMBER 14:  Yeah, I will

1   have --

2           MR. CAPOZZI:  Juror 028?

3           PROSPECTIVE JUROR IN SEAT NUMBER 14:  Juror 028.

4           MR. CAPOZZI:  Juror 028, I'm sorry.

5           PROSPECTIVE JUROR IN SEAT NUMBER 14:  Yeah, I would

6   have a problem, too.  Just because I have a granddaughter, you

7   know, and I can't -- that would just --

8           MR. CAPOZZI:  Can't look at it.

9           PROSPECTIVE JUROR IN SEAT NUMBER 14:  I can't look at

10  it.

11          MR. CAPOZZI:  All right.  And how did would that

12  affect you in rendering a decision?

13          PROSPECTIVE JUROR IN SEAT NUMBER 14:  To be honest

14  with you, I don't know.  I don't, you know.  I was just hoping

15  that it wasn't going to be this kind of a jury -- I mean,

16  trial, with anything to do with a child --

17          MR. CAPOZZI:  These aren't images.  These are videos.

18          PROSPECTIVE JUROR IN SEAT NUMBER 14:  That's what I

19  mean.  I was hoping --

20          MR. CAPOZZI:  Would that prejudice you against the

21  Defendant?

22          PROSPECTIVE JUROR IN SEAT NUMBER 14:  I don't know.

23          MR. CAPOZZI:  Why could you say you don't know?

24          PROSPECTIVE JUROR IN SEAT NUMBER 11:  We've never

25  been in a situation.

1      PROSPECTIVE JUROR IN SEAT NUMBER 14:  Yes.  Thank

2  you.  That's it.  I mean, I see the news and stuff like that,

3  you know.  I don't even watch the news, because it's always

4  bad.

5      MR. CAPOZZI:  Negative.

6      PROSPECTIVE JUROR IN SEAT NUMBER 14:  And so I don't

7  know.  To be honest with you, I don't know.

8      MR. CAPOZZI:  And what city are you in?

9      PROSPECTIVE JUROR IN SEAT NUMBER 14:  Ridgecrest.

10     MR. CAPOZZI:  Ridgecrest.

11     PROSPECTIVE JUROR IN SEAT NUMBER 14:  Uh-huh.

12     MR. CAPOZZI:  All right.  Juror 012, you have a

13 child?

14     PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  Yes.

15     MR. CAPOZZI:  How is this going to affect you,

16 looking at it?

17     PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  I probably

18 won't watch.  It's traumatizing.  I'm pretty sure it will be

19 traumatizing.  There's a lot of people here that don't -- you

20 guys are asking how we're going to judge a person.  How are we

21 supposed to know if we've never been in a situation like this?

22 How do we know how we're going to react to it?

23     MR. CAPOZZI:  But if it's something that bothers you

24 emotionally, how is that going to affect the decision you're

25 going to make?

1    PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  I'm just
2 not going to watch.
3    MR. CAPOZZI:  Pardon me?
4    PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  I'm just
5 not going to watch it.
6    MR. CAPOZZI:  Not going to watch it.
7    Juror 011?
8    PROSPECTIVE JUROR IN SEAT NUMBER 11:  Not going to
9 watch.
10    MR. CAPOZZI:  Not going to watch?
11    PROSPECTIVE JUROR IN SEAT NUMBER 11:  Not going to
12 watch.
13    MR. GAPPA:  Your Honor, I'll object at this point.
14    THE COURT:  Overruled.
15    PROSPECTIVE JUROR IN SEAT NUMBER TWELVE:  We went to
16 a picture, to a video.  And I'm sorry, but you all people deal
17 with this stuff a lot more than us people do.  And it's not
18 really fair that you're making -- making it on us of how we're
19 going to feel after we see this.
20    MR. CAPOZZI:  Because it may have an affect on how
21 you rule against this --
22    PROSPECTIVE JUROR IN SEAT NUMBER 11:  It very might.
23 And how do we know that?  I don't watch child pornography.
24 And now you guys all expect me to come up here, judge somebody
25 who does.

1          MR. CAPOZZI:  And you see --

2          PROSPECTIVE JUROR IN SEAT NUMBER 11:  And in the

3    meantime, I'm traumatized for life.  That's so not fair.  This

4    is not -- no.

5          THE COURT:  All right.  That's enough.

6          MR. CAPOZZI:  Okay.

7          PROSPECTIVE JUROR IN SEAT NUMBER 11:  Sorry.

8          THE COURT:  That's enough.

9          MR. CAPOZZI:  Did you raise your hand?  Scratching

10   your nose, all right.

11         PROSPECTIVE JUROR IN SEAT NUMBER EIGHTEEN:  I'm not

12   raising my hand.

13         MR. CAPOZZI:  Juror 010?

14         PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Juror 010.

15         MR. CAPOZZI:  How is it going to affect you?

16         PROSPECTIVE JUROR IN SEAT NUMBER TEN:  I don't think

17   it's going to affect me.  I just don't think anybody here

18   would want to watch the videos, if you're simply asking me

19   that question.

20         But as far as giving a fair verdict or -- it wouldn't

21   affect me.

22         MR. CAPOZZI:  Okay.  So long as you listen to the law

23   the Judge gives you.  Just follow the law, is all we're

24   asking, and that's all the Government is asking.  And make a

25   decision on what the law is and whether or not the Defendant

1   is guilty or not guilty in this defense.  That all we're all

2   asking.

3          PROSPECTIVE JUROR IN SEAT NUMBER TEN:  Right.

4          MR. CAPOZZI:  But it's going to be tough sitting

5   through the trial.

6          Anyone else?  You've been hit quite a bit, Juror 024.

7          PROSPECTIVE JUROR IN SEAT NUMBER 9:  Yeah.  I mean,

8   it's obvious that nobody here wants to watch that.  It's how

9   it's presented and how it replies that you've got to take into

10  affect.

11         To be honest, the first image that comes on screen,

12  we all might turn our head.

13         MR. CAPOZZI:  Sure.

14         PROSPECTIVE JUROR IN SEAT NUMBER 9:  We've got to

15  take it as it's presented.

16         THE COURT:  Everybody, look, Juror 011, my only

17  comment to you was to try to keep a leveled tone going on the

18  argument, because there's all the prospective jurors present.

19  I understood what you were expressing, and I don't denigrate

20  what you're expressing at all.  I get.  I completely

21  understand it.

22         There are competing values at issue here, and I'm

23  sure that when you -- you know, there's your -- there is a

24  concern for you.  And I've said a couple of times, look, I'm

25  going to do what I can to limit what you're concerned about.

1    Whatever I can do, I will.

2            But both sides also have a constitutional right to a

3    fair and impartial jury.  And a jury trial, that's what our

4    criminal justice system is built on.

5            And ultimately, a jury is going to decide this case.

6    And the question is, is it going to be a fair and impartial

7    jury, drawn from a cross-section of our come community with

8    all walks of life represented, or is it going to be a jury

9    only of people that say, Oh, it doesn't bother me to see it at

10   all.  You know, that is, I'm sure if you sort of consider

11   like, Oh, if that's the way this works, that the only people

12   that can sit on a jury like this are people who say to

13   themselves, Oh, you know, I'm as hard as hard can be, you

14   know, I've seen everything that can ever be seen.  It's not

15   going to bother me.  Well, that's not a very much of a

16   cross-section of the community.  And I know it's hard.  I know

17   it's hard.

18           And maybe you're not the right person to be on this

19   jury, and if so, that's -- I completely understand, and I'm

20   not criticizing you for it at all.

21           But I got to try to save everybody around you, too,

22   because I need a fair jury.  Everybody in this room needs a

23   fair jury.

24           PROSPECTIVE JUROR IN SEAT NUMBER 11:  I know you do.

25           THE COURT:  Okay.  That's what we're trying to get

1   to.  So I'm appreciate what you're saying.  I get it.

2           But I'm going to have a conversation with the lawyers

3   once I let you go here in a few minutes to see if there's

4   anything that might be done to address some of the issues that

5   you, as a group, are raising.  Maybe there isn't, but I'm

6   going explore that a little bit more.  And we're going convene

7   again in the morning, when maybe we've had a time a little bit

8   of time to mull it over about how we all really think about

9   it.

10          But eventually, we're going to end up with a jury

11  that's going to be the fairest jury that I can pick to hear

12  this case.  And I appreciate that it's -- that it's hard on

13  everybody to even think about it, under some circumstances.

14  But that's what we've got to do.

15          All right.  I want you to report tomorrow morning at

16  8:30, all of you, including those in the audience in the jury

17  assembly lounge.  And once you're present, you'll be brought

18  up.

19          Juror 023?

20          PROSPECTIVE JUROR IN SEAT NUMBER 4:  I'm sorry.

21  Physically sitting for this long, I can't -- I apologize.  I

22  can't do it.

23          THE COURT:  Okay.  Report tomorrow morning at 8:30.

24  Thank you very much.  Jury is excused.

25      (Prospective Jury exits courtroom.)

1    THE COURT:  Juror 023, do you need a hand, because we

2    can't do what we need to do until you've left the courtroom.

3    PROSPECTIVE JUROR IN SEAT NUMBER 4:  I apologize,

4    Your Honor.

5    THE COURT:  Let the record reflect we're outside the

6    presence of the prospective jurors.

7    Mr. Gappa and Mr. Pearson, I am concerned about our

8    ability to pick a jury.  We've got 13 left.  We've been told

9    by the jury administrator that no additional jurors can be

10   called until Friday of this week.

11   I mean, Friday?  Yeah, it's Friday, even though it's

12   a holiday.

13   MR. CAPOZZI:  Oh, that's right.

14   COURTROOM DEPUTY:  They're instructed to call back on

15   Friday.

16   THE COURT:  Friday night, so nobody can be notified.

17   So what we've got out there, is what we've got.  I

18   suspect I'm going to be getting several -- if the

19   circumstances stay the way they are, I'm going to be getting a

20   slough of challenges for cause, maybe by both sides, but at

21   least by one.

22   If you folks were to exercise your preemptory

23   challenges, all of them, we can't pick a jury this week.

24   There's only one way this jury gets picked, in my view -- and

25   maybe I'm wrong -- is if the Government agrees to accept the

1   defense stipulation and says, We're not presenting photos or

2   videos.  We're going to present the testimony that describes

3   the images.

4          And I'll tell you, you know, I didn't pre-try this

5   case.  I have not gone that far.  I have not imposed such a

6   rule on prosecutors in child pornography cases.  I certainly

7   have very, very strongly encouraged them to limit to a very

8   few images, that sort of evidence that they introduce.

9          But I will say that at least two of my colleagues in

10  Sacramento routinely prohibit the prosecution in child

11  pornography cases from putting in evidence before the jury of

12  the images themselves as opposed to descriptions of the

13  images.

14         I mean, that -- I mean, we've now got a tidal wave of

15  jurors saying that they're going to refuse to -- they've

16  refused to look at the evidence.  What do we do?

17         MR. GAPPA:  Your Honor, I don't know that it solves

18  the problem, but the reason the Government objected, and we

19  let it go for quite a while, I do think, however, not having

20  the benefit of the text in front of me, if we didn't cross a

21  line in asking the jurors to prejudge evidence, it got really

22  close.  And I think that's improper.  So I think the Court

23  handled it very well, and we were all doing well until the

24  questions started coming and it was personal and it was, What

25  is your reaction going to be?  And in their mind, they're

1    imaging something horrible.  And then the question is, You

2    have children, what's that going to be like for you?  Are you

3    going to be able to view this?  What will that do to you?  Do

4    you see that, are you going to find my client guilty?

5        So I think we're not here because the Government has

6    said we're going to show portions of six items out of

7    hundreds.  I think we're here because a lot of it is asking

8    these jurors for their own personal emotional reaction.

9        THE COURT:  But if I've got jurors saying, I'm going

10   to refuse to look at the evidence, what am I supposed to do

11   with that?  I mean, I did try to keep drawing it back to -- I

12   didn't think the questions crossed the line.  I thought the

13   jurors took it in a direction that maybe started to cross the

14   line.  They became inflamed, especially Juror 011, who, I

15   finally had to stop, or she was about to infect our entire

16   jury pool, in my view.

17       I mean, I kept trying to bring it back to what I

18   think is the, essence, look, if you see a disturbing image is

19   it going to prevent you from going through the rest of the

20   legal analysis?

21       At one point, I thought they were indicating "yes".

22   What's troubling to me is when one after another, after

23   another, says, I'm not looking at any -- I'm not looking at

24   that evidence.  I'm refusing, and you can't make me.  And, Oh,

25   by the way it's not even fair for you to bring me in here and

1    ask.

2         What am I supposed to do with that?  And I'm running

3    out of the folks.  I mean, we're going to run out.  I guess

4    we'll pick up -- we could pick up jury selection next week.

5    But if you want to get a jury out of this pool, the only way I

6    can think of getting it, unless nobody challenges for cause,

7    but -- or no -- or people don't exercise their preemptories in

8    large part, the only way I can think we're saving these folks

9    is if I tell them tomorrow morning, I've met with the lawyers,

10   and we've worked something out.  The images themselves are not

11   going to be presented into evidence.  The Government is merely

12   going to present descriptions, has agreed to present only

13   descriptions of the evidence.  In light of that, can you be

14   fair and impartial and base your decision solely on the

15   evidence?

16        My guess is that all of the prospective jurors who

17   said they won't look at photos or videos, will say, Oh, yeah,

18   I can do that.  That's my guess.  Otherwise, you know, I'm

19   very concerned that we're going to be done early tomorrow when

20   we run out of jurors.

21        I mean --

22        MR. GAPPA:  Your Honor, to help inform our thoughts

23   and then discussions that we have with Mr. Capozzi, if the

24   Court were asked if we had plowed forward and the Court were

25   forced to make a decision tonight about whether there would be

1   a justification for a strike for cause, if the basis were that

2   somebody stated, "I would not look at the video, but I would

3   listen a description from a fellow juror," would the Court be

4   inclined to say that's justification for cause?

5           THE COURT:  I'm concerned.  At least -- I mean, I've

6   never had this in my two years so far, and that's as long as

7   I've been trying cases like this.  But when I look at the

8   elements of the offense, and it requires, for instance, that

9   proof beyond a reasonable doubt that -- what's the language of

10  the statute, the -- you know it much better than I do.

11          MR. GAPPA:  The visual depiction of a minor engaged

12  in sexually explicit conduct.

13          THE COURT:  Exactly.

14          MR. GAPPA:  Right.

15          THE COURT:  How would a juror make determination if

16  the evidence --

17          MR. GAPPA:  Right.

18          THE COURT:  If they declined to view the evidence and

19  there's no description of it?

20          MR. GAPPA:  Well, I just here -- it's just a thought

21  that crossed my mind.  Say that by luck, we had three people

22  who are visually impaired, and they couldn't see, are they

23  disqualified?

24          MR. CAPOZZI:  Well, they wouldn't be on the jury.

25          MR. GAPPA:  But are they disqualified because --

1          THE COURT:  I don't know what's the evidence of that,

2     Mr. Gappa.  You're going to have to help me there.

3          MR. GAPPA:  So --

4          THE COURT:  If you can find something over night that

5     gives me a way out, I mean -- I'm happy to consider it.  I'm

6     thinking on the fly, and as soon as they started saying, I

7     will refuse to look at the evidence that's introduced, my

8     flags immediately went up and thought, Well, how can they

9     serve if they're going refuse to look at evidence that was --

10    if they're telling us in advance, I'm going to refuse to look

11    at the evidence.  I will avert my eyes, and I will not view

12    it, that strikes me as a big problem.

13         If you can show me a lawful route where it -- you

14    know, where I can tell them, Hey, not to worry.  You're not

15    going to have to look at it.  You can still do your job.

16         And I mean, the first thing that came to mind is,

17    Hey, why don't you take them up on their stipulation.  Put in

18    descriptions only.  Then I can tell these folks, and I bet I

19    can rehabilitate them tomorrow.  Because if I tell them you

20    don't have to look at the photos or videos, instead you're

21    going to hear descriptions of what they portray, Oh -- I bet

22    most of them, if not all of them would say -- I think a couple

23    of them already did, Oh, I could do that.  I just can't look

24    at the image.

25         MR. GAPPA:  If that were to be a solution how

1  descriptive can the description be?  In other words, for

2  instance --

3       THE COURT:  Very.  Everything but the words pedo or

4  pedophile, as best as I can tell from pretrial rulings.

5       MR. GAPPA:  For instance, if it happened to be a 23

6  minute, 51 second video, the description could be, This video

7  runs for 23 minutes 51 seconds.  And it depicts a series of

8  videos that were spliced together, that show adult males

9  sexually abusing minors in this --

10      THE COURT:  From my point of view, it could even

11 describe the sexual abuse.

12      MR. GAPPA:  Okay.

13      THE COURT:  I can't see a reason to limit a

14 description of what the video depicts.

15      As I understood, whatever dispute that was being

16 talked about up until this point, I thought the defense

17 said/offered, we'll stipulate that it's --

18      MR. CAPOZZI:  Child pornography.

19      THE COURT:  -- child pornography.  And the

20 prosecution said, We'll limit the number of videos or images

21 we're going to put in, but we want to put in at least these

22 six.  And we're not willing to go on the basis of testimony

23 describing those videos.  We want the images in.

24      If I let the descriptions in, I would let very

25 graphic -- I mean, relatively graphic, fair descriptions of

1   what the video or the photograph actually depicts in the view

2   of the witness, who has reviewed it.  I would allow that.

3          The defense can cross-examine if they disagree with

4   what it depicts.

5          MR. CAPOZZI:  We haven't seen them.  We've seen 30

6   second, and that was enough.

7          MR. GAPPA:  That's part of logistical problem.  So --

8          THE COURT:  Look, I'm fine with just going forward

9   tomorrow, but I am very concerned.  I've given you the

10  preview.  I'm concerned that I'm going to get challenges,

11  maybe more than just the folks who say they won't look at the

12  evidence.  But I'm going to get preemptories.  I'm going to

13  grant a number of them.  And that's going to get us to the

14  point where if you exercise any more than half of your

15  preemptory challenges, I'm going to run out of jurors tomorrow

16  without a jury being seated, and we're going to be in recess

17  until the following week.  That could happen.

18          And then I might start losing people for hardship,

19  because they say, oh, well, you told us this week and next,

20  not next week and Thanksgiving week.  I don't know what to do.

21          But any -- I'm not telling you you have to.  I'm just

22  pointing out what I think has unfortunately played out.

23          MR. GAPPA:  Understood.

24          THE COURT:  So let's convene at 8:30 tomorrow

25  morning.  We told them to be downstairs at 8:30.

1        MR. CAPOZZI:  What time?

2        THE COURT:  Be here at 8:30, because they won't be up

3   here at 8:30.  They'll be getting together downstairs.  That

4   will be give us sometime downstairs to see if you folks have

5   come to anything you want to share with me in the morning.

6        MR. GAPPA:  All right.

7        MR. CAPOZZI:  If I can Judge, I think that issue had

8   to be brought out to the jury.

9        THE COURT:  If I thought you would have crossed the

10  line, I would have stopped you.

11       MR. CAPOZZI:  You're telling me.

12       THE COURT:  I did not.  I was a little surprised at

13  how it spread like wild fire --

14       MR. CAPOZZI:  So was I.

15       THE COURT:  -- through the panel.  It is what it is.

16       I'm not unhappy about anything.  I'm just trying to

17  figure out what to do about it.  See you tomorrow.

18       MR. GAPPA:  Thank you, Your Honor.

19       (Proceedings concluded at 5:09 p.m.)

20

21

22       I, RACHAEL LUNDY, Certified Shorthand Reporter, do
    hereby certify the foregoing transcript as true and correct.
23
    DATED:  21st of November, 2018          /s/ Rachael Lundy
24                                          RACHAEL LUNDY, CSR
                                            Certificate No. 13815
25