PHILLIP A. TALBERT
United States Attorney
DAVID GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                              Plaintiff,

                    v.

ADAM ALAN HENRY,

                              Defendant.

CASE NO.  1:13-CR-00409 DAD-BAM

COURT: Hon. Dale A. Drozd

**UNITED STATES' OPPOSITION TO MOTION FILED UNDER 28 U.S.C. § 2255**

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND .......................................2

    A.  Law Enforcement Investigation of Henry ............................................2

    B.  Henry made incriminating statements about his child pornography possession, and investigators found child pornography on Henry's home network during a search. ...........................................................3

    C.  While investigators were reviewing the files on the password-protected partition of Henry's home computer system, they discovered that Henry and his wife had hidden a camera in their bathroom and used it to record their 14-year-old babysitter, A.T., while she showered and changed clothes. ...............................................................4

    D.  At trial, Henry presented a defense that his wife was responsible for the child pornography and the hidden-camera videos of A.T.  To rebut this defense, the United States called Antonio Ruezga, who testified that Henry told him his wife was not part of the charges. ...........................6

    E.  In closing, Henry argued that the videos of A.T. were not sexually explicit.  The court instructed the jury on factors relating to sexually explicit conduct, and the jury rejected Henry's argument and found him guilty. ...................................................................................7

    F.  After trial, Henry filed a motion for a judgment of acquittal, a motion for a new trial, and a motion for discovery.  The district court held an evidentiary hearing, denied all three motions, and sentenced Henry to 240 months imprisonment. ...................................................................7

    G.  Sentencing ...............................................................................................9

    H.  Ninth Circuit proceedings .....................................................................9

    I.  United States Supreme Court proceeding ............................................9

III. ARGUMENT - LEGAL ANALYSIS ...............................................................9

    A.  Henry Received Effective Assistance of Counsel. ...............................9

        1.  Legal Standard ...........................................................................9

            a.  *Performance* ..................................................................10

            b.  *Prejudice* ......................................................................11

        2.  Defense counsel was zealous throughout his representation of Henry as demonstrated by filing numerous motions for Henry's release from custody, pretrial motions, trial documents, as well as vigorously defending Henry through trial, post-trial motions, and the appellate process through a petition for certiorari to the United States Supreme Court. ...........................................11

3. **Counsel was not ineffective for failing to argue there was no jurisdiction for the conspiracy charge, because the essence of that charge was an agreement.** ...................................................13

4. **Mr. Capozzi was not ineffective for failing to investigate available discovery.** ...................................................14

5. **Mr. Capozzi was not ineffective for failing to impeach witnesses.** .................18

6. **Mr. Capozzi was not ineffective for failing to understand technical issues.** ...................................................20

7. **Mr. Capozzi was not ineffective for failing to introduce evidence.** ...............21

8. **Henry's Claims of Ineffective Assistance of Appellate Counsel Should Also be Denied.** ...................................................23

B. **No Evidentiary Hearing Is Warranted** ...........................................................25

IV. **CONCLUSION** ...........................................................26

# TABLE OF AUTHORITIES

Page

## CASES

*Bousley v. United States,*
  523 U.S. 614 (1998)..................................................................................... 23, 25

*Campbell v. Wood,*
  18 F.3d 662 (9th Cir. 1994) ............................................................................. 11

*Cooper v. Fitzharris,*
  586 F.2d 1325 (9th Cir. 1978) ......................................................................... 10

*Davila v. Davis,*
  137 S. Ct. 2058 (2017).............................................................................. 24, 25

*Davis v. United States,*
  417 U.S. 333 (1974) ......................................................................................... 9

*Eggeleston v. United States,*
  798 F.2d 374 (9th Cir. 1986) ........................................................................... 10

*Guam v. Santos,*
  741 F.2d 1167 (9th Cir. 1984) .................................................................... 11, 22

*Hughes v. Borg,*
  898 F.2d 695 (9th Cir. 1990) ...................................................................... 11, 22

*James v. Borg,*
  24 F.3d 20 (9th Cir. 1994) .............................................................................. 11

*Jones v. Barnes,*
  463 U.S. 745 (1983)........................................................................................ 24

*Kimmelman v. Morrison,*
  477 U.S. 365 (1986)........................................................................................ 11

*McMann v. Richardson,*
  397 U.S. 759 (1970)........................................................................................ 10

*Miller v. Keeney,*
  882 F.2d 1428 (9th Cir. 1989) ......................................................................... 10

*Shah v. United States,*
  878 F.2d 1156 (9th Cir. 1989) ......................................................................... 25

*Smith v. Robbins,*
  528 U.S. 259 (2000)........................................................................................ 24

*Strickland v. Washington,*
    466 U.S. 668 (1984)................................................................. 10, 11, 19, 20, 22, 23, 25

*Turner v. Calderon,*
    281 F.3d 851 (9th Cir. 2002) ................................................................. 11

*United States v. Barron,*
    172 F.3d 1153 (9th Cir. 1999) ................................................................. 9

*United States v. Birtle,*
    792 F.2d 846 (9th Cir. 1988) ................................................................. 11

*United States v. Cochrane,*
    985 F.2d 1027 (9th Cir. 1993) ................................................................. 10

*United States v. Goode,*
    814 F.2d 1353 (9th Cir. 1987) ................................................................. 17

*United States v. Grovo,*
    653 Fed. App'x 512 (9th Cir. 2016) ................................................................. 13

*United States v. Hamilton,*
    792 F.2d 837 (9th Cir. 1986) ................................................................. 10

*United States v. Hearst,*
    638 F.2d 1190 (9th Cir. 1980) ................................................................. 25

*United States v. Iriarte-Ortega,*
    113 F.3d 1022 (9th Cir. 1997) ................................................................. 13

*United States v. Johnston,*
    789 F.3d 934 (9th Cir. 2015) ................................................................. 14

*United States v. McMullen,*
    98 F.3d 1155 (9th Cir. 1996) ................................................................. 11, 25

*United States v. Quintero-Barraza,*
    78 F.3d 1344 (9th Cir. 1995) ................................................................. 10

*United States v. Reed,*
    575 F.3d 900 (9th Cir. 2009) ................................................................. 14

*United States v. Schaflander,*
    743 F.2d 714 (9th Cir. 1984) ................................................................. 10

*United States v. Taylor,*
    802 F.2d 1108 (9th Cir. 1986) ................................................................. 10

*United States v. Withers,*
    638 F.3d 1055 (9th Cir. 2011) ................................................................. 25

*Woratzeck v. Ricketts*,
   820 F.2d 1450 (9th Cir. 1987), *vacated on other grounds*,
   859 F.2d 1559 (9th Cir. 1988) ............................................................................ 10

## **STATUTES**

18 U.S.C. § 2251 ............................................................................................................ 13

18 U.S.C. § 2251(a) ....................................................................................................... 13

18 U.S.C. § 2251(e) ....................................................................................................... 13

28 U.S.C. § 2255 ..................................................................................................... passim

PHILLIP A. TALBERT
United States Attorney
DAVID GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:13-CR-00409 DAD-BAM |
| Plaintiff, | UNITED STATES' OPPOSITION TO MOTION FILED UNDER 28 U.S.C. § 2255 |
| v. | COURT: Hon. Dale A. Drozd |
| ADAM ALAN HENRY, | |
| Defendant. | |

## I.     **INTRODUCTION**

The United States opposes Adam Henry's 28 U.S.C. § 2255 motion, filed on November 5, 2021, which alleges the ineffective assistance of Tony Capozzi. Dkt. 348.[1] Attorney Dan Harralson initially represented Henry, but Henry quickly retained Mr. Capozzi to represent him in district court. Henry never complained about Mr. Capozzi's representation, which was vigorous and consistent with Henry's suggested strategic choices, even after Henry's lack of funds required the court to appoint Mr. Capozzi before trial. Henry chose to continue with Mr. Capozzi's representation through trial, post-trial motions, and then for his direct appeal to the United States Court of Appeals for the Ninth Circuit (Ninth Circuit) as well as with a petition for panel rehearing. Henry then chose to have Mr. Capozzi file a petition for a

---

[1] There is a discrepancy throughout Henry's motion between the page numbers he assigned (and page numbers appearing on various attachments) and those generated by the court's electronic filing system. The government will reference the ECF pagination.

writ of certiorari with the United States Supreme Court. Only after Mr. Capozzi did everything possible to effectively represent Henry for approximately seven years has he alleged his dissatisfaction. Mr. Capozzi has provided a declaration and numerous documents that refute Henry's allegations and instead prove that Mr. Capozzi and his staff diligently worked with Henry to defend him in the most strategically effective manner. The court should deny Henry's motion in its entirety without a hearing.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Law Enforcement Investigation of Henry

In September 2013, Ceres Police Department Detective Britton Moore was searching for local child pornography traffickers by using a law enforcement tool designed to identify downloads of child pornography. SER 35:3–18.[2] This law enforcement tool showed that 24 files with hash values[3] and names associated with known child pornography were being downloaded at an IP address registered to a business in Turlock, California, called Lock-N-Stitch. SER 35:12–19, 37:7–42:22.

Detective Moore and other law enforcement officers executed a search warrant at Lock-N-Stitch and examined each computer at the business, looking for evidence of child pornography or the presence of peer-to-peer file sharing software. SER 43:1–44:22. Only one computer had peer-to-peer software on it: the computer in the Information Technology (IT) room. SER 44:7–22. This computer was turned on, and the screen showed a user account of "Adam Henry" with a password protecting the computer. SER 46:13–47:4. The owner of Lock-N-Stitch told Detective Moore that Adam Henry was the company's IT manager. *See* SER 338:2–16.

Detective Moore removed two hard drives from the IT computer and took them to Ceres Police Department for an initial forensic analysis to determine if the hard drives had child pornography on

---

[2] The government references to excerpts of record (ER) and supplemental excerpts of record (SER) are to those documents that were prepared for the appellate record. The district court is familiar with the record that is cited, and the parties did not dispute the summaries of that record on appeal. So rather than create another summary, the government believes it will be less confusing if references in this section are to already existing documents. The government can provide physical copies of the excerpts to the court and defendant upon request, although the defendant should already have received them from Mr. Capozzi's office.

[3] A hash value is a string of alphanumeric characters that represent a digital file. If any bit of data in the file is changed, the hash value of the file will change. Therefore, if two files have the same hash value they can be assumed to be the same file. SER 27:25–29:10.

them.  SER 47:20–48:4.  Detective Moore found child pornography on one of the hard drives.  SER

35:12–19, 37:7–42:22.  The hard drive contained a folder with files of child pornography that had

partially downloaded, but that were still viewable.  SER 48:1–56:17.

**B.**   **Henry made incriminating statements about his child pornography possession, and investigators found child pornography on Henry's home network during a search.**

After Detective Moore discovered child pornography on the IT computer's hard drive,

investigators arrested Henry, read him his *Miranda* rights, and interviewed him.  SER 148:2–109:11.

During the interview, Henry told Detective Arthur Hively that it was "quite possible" that if Hively

looked at Henry's hard drive he would find something that "shouldn't be there."  *See* Henry Interview.[4]

Hively questioned Henry further, and eventually Henry admitted that he had found a few files of child

pornography while he was sorting through his adult pornography but that he "consistently deleted

them."  Henry Interview.  On further questioning, though, Henry told Hively that it was "possible" that

he would find child pornography at his residence and that the child pornography would be "in a locked

partition . . . a password protected partition" on his home server.  Henry Interview.  Henry provided

Hively with the password and said that his wife accessed the other folder without a password.  Henry

Interview.

Later that day, officers searched Henry's residence in Ceres.  SER 63:18–64:23.  The officers

found a number of computer devices, including a Network Attached Storage device (referred to as a

NAS), a computer tower in the garage, and loose hard drives.  SER 65:2–5, 69:3–70:10.

Henry—who was present for the search—told investigators that there would be peer-to-peer files stored

on the NAS.  SER 72:24–73:21.  Henry also showed Detective Moore a computer in the main living

room and gave Detective Moore the password.  SER 74:1–25.  Detective Moore attempted to access a

partition on the computer titled "Aurrora," which was password protected.  SER 74:5–25.  Detective

Moore entered the password and was able to access child pornography in the folder.  SER 74:17–75:2.

During a forensic analysis, detectives found child pornography on four devices:  the hard drive

---

[4] Citations to "Henry Interview" reference the recorded interview of Henry the day of his arrest, which was admitted at trial only as a video recording, not transcribed.  The United States can provide a copy of this exhibit to the court and/or defendant upon request.

from the IT computer at Lock-N-Stitch, the NAS from Henry's residence, a loose hard drive found in a drawer in Henry's living room, and a computer tower in Henry's garage.  SER 321:13–23.

As Henry had told investigators in his confession, the NAS at Henry's residence contained two primary partitions users could access (called "shares").  SER 84:20–87:15.  One share, titled "Media," was not protected by any password.  SER 87:2–12.  The other share, titled "Aurrora," was only accessible with a password.  SER 87:2–12.  The two shares contained a substantial amount of similar content, but one key difference:  only the password-protected "Aurrora" folder contained child pornography.  SER 94:11–20.  Some of the child pornography was also sorted into subfolders entitled "Bad," "No," and "Kid."  SER 179:13–180:17.

**C.** **While investigators were reviewing the files on the password-protected partition of Henry's home computer system, they discovered that Henry and his wife had hidden a camera in their bathroom and used it to record their 14-year-old babysitter, A.T., while she showered and changed clothes.**

Detectives also found videos made with a hidden camera featuring the Henry's 14-year-old babysitter, A.T.  SER 97:8–98:5.  Some videos of A.T. on the NAS—on both the "Media" and "Aurrora" shares—show her changing clothes in the bathroom.  SER 97:22–98:5, 222:9–223:1.  Another video made with a hidden camera Angele Henry set up in the bedroom shows A.T. trying on clothes.  SER 225:6–227:18.  At one point during the recording, Angele Henry turned the victim towards the hidden camera and removed her top, briefly exposing the victim.  Hidden Camera Videos Ex. 27.11.[5] The videos of A.T. were not only saved to the NAS, but there were screenshots of the videos saved capturing the victim in various stages of undress.  SER 221:12–224:6.  These videos and pictures were saved under a folder called "Not Ok," a subfolder called "Misc People," and another subfolder with the victim's name.  SER 221:12–224:6.  From there, the videos were further subdivided and categorized— within the folder with the victim's name were two subfolders:  "15" and "14," the victim's age when she was surreptitiously recorded.  SER 221:2–18, 227:9–22.

Henry and his wife set up a hidden camera in their bathroom and took test videos to make sure

---

[5] Citations to "Hidden Camera Videos" and an exhibit number reference the hidden camera videos from Henry's bathroom camera, which were introduced and published as video recordings at trial.  The United States can provide the court with a copy of those videos upon request.

the camera worked.  The hidden camera videos also showed Henry and his wife working together to improve the quality of their bathroom videos, often shortly before A.T. came to their house and used the bathroom where the camera was hidden.  Hidden Camera Videos Ex. 26.1, 26.2, 26.3; SER 216:19–218:14.  For example, A.T. used the bathroom to change clothes but a curtain blocked the view of her.  Hidden Camera Videos Ex. 27.1; SER 220:12–221:18.  To fix the problem, Henry and his wife took the curtain down, and the same day they removed the curtain, A.T. came over to Henry's residence, used the bathroom, and twice changed clothes in the bathroom.  Hidden Camera Videos Ex. 27.2, 27.3; SER 340:24–341:19, 223:2–224:1.

In another hidden camera video a few weeks later, a bright light blocked the view of A.T. as she used the bathroom.  Hidden Camera Videos Ex. 27.5; SER 224:3–225:5.  To fix the problem, Henry and his wife installed a window shade and tested the camera to make sure the glare would no longer block the video.  Hidden Camera Videos Ex. 26.5, 26.6.  Two days later, A.T. came to Henry's residence and changed clothes in the bathroom three times.  Hidden Camera Videos Ex. 27.7, 27.8, 27.9.  The third time she used the shower, got out, and turned to the camera entirely naked.  Hidden Camera Videos Ex. 27.9  Henry created a screenshot of that video and placed it in a folder named for the victim on the password-protected partition of his network.  SER 253:16–254:10.  Then later in the afternoon, he rummaged through A.T.'s clothes in the bathroom and held them up for the camera.  Bathroom Videos Ex. 27.10.

Through further investigation, detectives were able to identify the victim, A.T., who confirmed that she did not know she had been recorded and that she was the girl featured in the videos.  SER 98:6–16, 128:17–130:11.

After detectives found the hidden recordings and identified the victim, FBI agents obtained a second search warrant and seized a macramé plant with a hole cut in it.  SER 98:17–99:3, 120:11–124:16.  At the time of the search, the plant was in the garage but it had been hanging in the bathroom, positioned to record guests and fitted with a hidden camera.  SER 120:11–121:24.

///

///

///

**D.**     **At trial, Henry presented a defense that his wife was responsible for the child pornography and the hidden-camera videos of A.T.  To rebut this defense, the United States called Antonio Ruezga, who testified that Henry told him his wife was not part of the charges.**

Henry's defense at trial was that his wife had been the one who downloaded child pornography and placed the hidden camera videos and photos of A.T. on the computer system.  In support of this effort, Henry took the stand, denied that he ever downloaded child pornography, and repeatedly implied that his wife might have.  SER 420:3–421:7, 423:15–424:8, 431:1–432:22, 436:10–437:11.  Henry's uncle—the owner of Lock-N-Stitch—and Henry's aunt both testified that Angele Henry would come to Henry's desk and sit down and access his work computer, implying that she may have downloaded child pornography while she was using Henry's work computer.  SER 370:25–372:25, 384:2–389:9.  Henry also used the deposition of Lock-N-Stitch employee David Silva who could only recall seeing Angele occasionally sit in Henry's office chair but never use his computer.  To counter this defense, the United States called one witness in rebuttal and asked him one question of substance.  ER 11–12.  Antonio Ruezga testified that he was a social worker for Stanislaus County Child Protective Services and in November 2013 he spoke with Henry while officers executed a federal search warrant at his residence.  ER 11:19–12:8.  Ruezga testified that Henry stated that "his wife was not part of the charges that were brought about by the incident."[6]  ER 12:14–16.

Henry cross-examined Ruezga and then moved to strike his testimony, arguing that Ruezga's questioning had violated Henry's constitutional rights because Henry was in custody and had invoked his *Miranda* rights.  ER 26:11.  The court recalled Ruezga outside the presence of the jury.  Ruezga, who accompanied law enforcement during the execution of the second search warrant, explained he was accompanying the officers so he could conduct a Child Protective Services investigation.  ER 51, 15:9–16:10.  At the time, Henry had been charged in state court for his possession of child pornography and a defense attorney represented him on the charges.

When the officers entered Henry's residence, FBI Special Agent Lucas handcuffed Henry and advised him of his *Miranda* rights, and Henry stated that he wanted a lawyer.  ER 51, 23:25:12–20.  At a

---

[6] The United States did not mention Ruezga's testimony in its closing argument or rebuttal argument.

1  later time, Ruezga asked Henry several questions.  ER 51.  Ruezga could not remember what specific

2  questions he asked Henry, but testified that the reason he was there was to conduct a child welfare

3  investigation, so the question was probably "were the children present?," or "Was anybody else involved

4  with . . . whatever was going on?"  ER 18:1–13.  Henry claimed that throughout the process, he

5  remained handcuffed, had been told he could not move, and had an agent positioned near him to ensure

6  he did not leave.  ER 25:17–22.

7       After hearing Ruezga's additional testimony, the court denied Henry's motion without prejudice.

8  ER 26:12–16.

9    **E.    In closing, Henry argued that the videos of A.T. were not sexually explicit.  The**

10       **court instructed the jury on factors relating to sexually explicit conduct, and the**
       **jury rejected Henry's argument and found him guilty.**

11      Henry's other defense—in addition to claiming that his wife was responsible for the child

12  pornography on his computer system—was that the videos and pictures Henry saved did not amount to

13  sexual exploitation of A.T.  SER 488:14–25.  In closing, Mr. Capozzi walked through a handful of

14  factors relating to whether the videos and pictures of A.T. were sexually explicit.  SER 489:1–491:15.

15  He posed a series of rhetorical questions to the jury, asking, for example, "Was there a focus on [A.T.'s]

16  genital areas?," and "Was there an unnatural pose?"  SER 489:21–491:15.

17      The district court instructed the jury on the elements of conspiracy to sexually exploit a minor,

18  SER 414:20–416:9, the definition of sexually explicit conduct, SER 418:10–15, and the factors to

19  determine whether a depiction amounts to lascivious exhibition of the genitals or pubic area, SER

20  418:16–419:7.

21      The next morning, the jury found Henry guilty of conspiracy to sexually exploit a minor and

22  receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct.

23    **F.    After trial, Henry filed a motion for a judgment of acquittal, a motion for a new**

24       **trial, and a motion for discovery.  The district court held an evidentiary hearing,**
       **denied all three motions, and sentenced Henry to 240 months imprisonment.**

25      After trial, Henry filed a motion for a new trial, a motion for judgment of acquittal, and a motion

26  for discovery.  In his motion for discovery, Henry argued that the government had failed to timely

27  produce a screenshot of A.T. completely naked after she had finished showering in Henry's bathroom,

28  which the court had admitted at trial as Exhibit 28.13.  Detectives found the screenshot on Henry's

GOVERNMENT OPPOSITION TO HENRY'S 2255
MOTION

7

computer, which was taken from a video of A.T. that Henry had recorded with the hidden camera in the bathroom.  The court held an evidentiary hearing on Henry's motion, and Detective Hively testified. The district court found that Detective Hively did not recognize the naked individual in Exhibit 28.13 as A.T. on his initial review of the videos.  ER 29:17–20, 60.  Hively noticed about two or three weeks before trial that A.T. was the individual featured in Exhibit 28.13 after reviewing the complete video from which Henry created the screenshot. ER 28:5–12, 60.  At that time, Hively notified the prosecution that the image that later became Exhibit 28.13 was A.T.  ER 28:13–29:13, 60.  On the Friday before trial, the United States provided Henry with an exhibit binder, which included Exhibit 28.13.  ER 60.

The court also found that Exhibit 28.13 had been available for Henry to inspect for years.  ER 60.  After law enforcement seized Henry's hard drive, the image that became Exhibit 28.13 was made available to Henry for inspection no later than 2014.  ER 60.  Henry's computer forensic examiner, in fact, went to inspect the images seized by the government and stated that he probably did see that picture of A.T.; he just did not recognize it as a picture of A.T.  ER 60.  The court found that by making this exhibit available to Henry to inspect for years, the United States satisfied its discovery obligations under Rule 16.  ER 60–61.  The court therefore denied Henry's motion for discovery.  ER 60–61.

The court also denied Henry's motion for a new trial, in which he again argued that the rebuttal testimony of Antonio Ruezga violated his Fifth and Sixth Amendment rights.  The court assumed without deciding that Ruezga was acting as a law enforcement officer, that Henry was in custody at the time Ruezga questioned him, that Henry had invoked his rights, and that Henry was represented by an attorney at the time.  ER 54.

The court nonetheless rejected Henry's argument because Ruezga's testimony was used in rebuttal, and the court found "no basis to conclude that [Henry's] statement was in any way coerced." ER 56.  The court specifically found that when Ruezga spoke to Henry, there was no evidence suggesting that the exchange was hostile or aggressive, no evidence that Ruezga made any misleading promises or representations, and no evidence that Henry was in a distressed state of mind.  ER 57. The court also denied Henry's motion for judgment of acquittal.  ER 45–51.

///

**G.     Sentencing**

The court sentenced Henry to concurrent prison terms of 240 months on each count.  ER 33–41; CR 416.  Henry is serving his sentence and has a projected release date of April 14, 2031.

**H.     Ninth Circuit proceedings**

Henry filed a notice of appeal on September 20, 2018.  The Ninth Circuit appointed Mr. Capozzi to represent Henry on appeal.  Mr. Capozzi filed an opening brief on March 12, 2019, that argued four main issues.  The government filed an answering brief on July 10, 2019.  Mr. Capozzi filed a reply brief on September 5, 2019.

The Ninth Circuit heard oral argument on December 2, 2019, and filed a memorandum decision on January 13, 2020, that dismissed Henry's appeal and affirmed the district court's judgment.

Mr. Capozzi filed a motion for panel rehearing on January 27, 2020, which the Ninth Circuit denied on February 4, 2020.

**I.     United States Supreme Court proceeding**

Mr. Capozzi filed a motion for leave to file a petition for a writ of certiorari with the United States Supreme Court on July 6, 2020.  The Supreme Court denied the petition on November 9, 2020.

**III.     ARGUMENT - LEGAL ANALYSIS**

**A.     Henry Received Effective Assistance of Counsel.**

A court may only grant relief to a federal prisoner challenging the validity of his conviction or sentence under 28 U.S.C. § 2255 if it finds that the prisoner was sentenced in violation of the Constitution or the laws of the United States, or the disposition is otherwise subject to collateral attack. *See Davis v. United States,* 417 U.S. 333, 344–45 (1974); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999) (en banc).  Relief is warranted only where the motion has shown "a fundamental defect which inherently results in a complete miscarriage of justice[.]"  *Davis*, 417 U.S. at 346.

**1.     Legal Standard**

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having

produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In *Strickland*, the Supreme Court established a two-pronged test for determining if counsel rendered ineffective assistance. *Id.* Under this test, a defendant has the burden to establish: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced his defense. *Id.* at 687; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1347 (9th Cir. 1995); *United States v. Taylor*, 802 F.2d 1108 (9th Cir. 1986).

### a.  *Performance*

To establish incompetent performance, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Strickland*, 466 U.S. at 689–690; *Eggeleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986); *United States v. Schaflander*, 743 F.2d 714, 717–18 (9th Cir. 1984). The defendant must show that counsel made errors so serious that s/he was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 685. The Court must determine whether, in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 718.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable representation. *Id.* at 689; *United States v. Cochrane*, 985 F.2d 1027, 1030 (9th Cir. 1993); *United States v. Hamilton*, 792 F.2d 837, 839 (9th Cir. 1986). Judicial scrutiny of counsel's performance must be highly deferential because it is "all too tempting for a convicted defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 466 U.S. at 689. Counsel's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690.

A defendant must prove serious derelictions on the part of counsel. *McMann v. Richardson*, 397 U.S. 759, 774 (1970). The United States Constitution does not guarantee representation that is infallible. *Cooper v. Fitzharris*, 586 F.2d 1325, 1330 (9th Cir. 1978). Counsel need not recognize and assert every possible defense and argument. *Woratzeck v. Ricketts*, 820 F.2d 1450, 1453 (9th Cir. 1987), *vacated on other grounds*, 859 F.2d 1559 (9th Cir. 1988). Counsel does not commit ordinary error or any type of error when counsel does not raise claims that do "not have a reasonable probability of succeeding." *Miller v. Keeney*, 882 F.2d 1428, 1435 (9th Cir. 1989).

A standard of objective reasonableness recognizes tactical choices.  *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *Strickland*, 466 U.S. at 689–90 ("Even the best criminal attorneys would not defend a particular client in the same way.").  Therefore, "the defendant 'must overcome the presumption that under the circumstances the challenged action might be considered sound trial strategy.'" *Turner v. Calderon*, 281 F.3d 851 (9th Cir. 2002), quoting *Strickland*, 466 U.S. at 689. Where a defense attorney chooses one potential argument over another, the failure to present the alternative argument does not show ineffectiveness where the petitioner fails to identify evidence counsel should have presented which would support the alternative argument.  *See James*, 24 F.3d at 27. A tactical decision by counsel that is not objectively unreasonable, but with which the defendant disagrees, does not constitute ineffective assistance of counsel.  *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984); *Hughes v. Borg,* 898 F.2d 695, 703 (9th Cir. 1990).  The Ninth Circuit has continuously warned that it will "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994).

<blockquote>b.   *Prejudice*</blockquote>

To prove prejudice, it is not enough for a defendant to show that errors or omissions had some conceivable effect on the outcome of the proceeding, as virtually every act or omission of counsel would meet that test.  *Strickland*, 466 U.S. at 693; *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1988). "He must show there is some reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  This standard is "rigorous" and "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381–82 (1986).  In assessing prejudice, a court must also consider the applicable legal standard.  *Strickland*, 466 U.S. at 695 (for example, when conviction challenged, would fact finder have had a reasonable doubt, absent counsel's errors).

<blockquote>2.   **Defense counsel was zealous throughout his representation of Henry as demonstrated by filing numerous motions for Henry's release from custody, pretrial motions, trial documents, as well as vigorously defending Henry through trial, post-trial motions, and the appellate process through a petition for certiorari to the United States Supreme Court.**</blockquote>

The court should view Tony Capozzi's declaration and supporting attachments in the context of

the almost seven years, from December 9, 2013, through at least November 10, 2020, during which he represented Henry.  Mr. Capozzi, upon being retained, almost immediately filed a motion with a magistrate judge to reconsider her detention order, and he then filed at least three additional motions for bail review and/or to reconsider detention orders.  Dkt. Nos. 21, 32, 35, 47.[7]  Mr. Capozzi retained an expert in digital forensics, obtained additional time for that person to review discovery and assist in the defense, and filed pretrial motions, including a motion to dismiss the superseding indictment.  Dkt. Nos. 37, 94, 95–97, and 111.  Defense counsel was also successful in efforts to limit the government's reference to and use of important trial exhibits.  Dkt.  Nos. 137, 195, 196, 219.  He also filed a trial brief, proposed voir dire, proposed jury instructions, and actively participated in jury selection to the point that there were no alternate jurors.  Dkt. Nos. 170, 207–09, 212.  He also sought to admit the results of polygraph and psychological exams.  Dkt. Nos. 144, 152, 153.

Once the trial began, defense counsel cross-examined government witnesses and presented testimony from Henry and four other witnesses, one of whom appeared by video deposition taken prior to the trial.  Dkt. No. 230.  Defense counsel vigorously objected to the testimony of the government's only rebuttal testimony and repeatedly moved to strike it from the record.  Dkt. 235.  Defense counsel made an oral Rule 29 motion and followed this with a written motion and a motion for a new trial.  Dkt. Nos. 236, 243, 254.

He also filed post-trial motions for discovery and was able to postpone the hearings for his motions and the sentencing.  Dkt. Nos. 260, 265, 266, 314.  Mr. Capozzi filed informal and formal objections to the presentence investigation and report and sentencing recommendations from the probation office.  Dkt. No. 288.  He also filed multiple documents in support of his sentencing arguments.  Dkt. Nos. 290–92, 298.  Defense counsel argued that a key exhibit (28.13) had not been made available to him before trial and litigated this issue at a hearing at which he called his expert in digital forensics and paralegal as witnesses.  Dkt. Nos. 299, 304, 305.  When those efforts were not

---

[7] The court will note that Henry was detained throughout all of his criminal proceedings, so there was no opportunity for him to hear a government attorney say, "It's easier to get a conviction for a man that it is a woman in these cases."  Dkt. No. 348 at 2:1-3.  This is because Henry concedes that there is no evidence that this statement was made but suggests it was made in the halls of the courthouse (not in his presence).  Mr. Capozzi asserts that government counsel did not make that statement, nor did he make it to Henry.  Capozzi Declaration at 1, para. 2.

successful, Mr. Capozzi obtained more time to prepare for the sentencing and filed a motion to

reconsider the denial of his motion for a new trial.  Dkt. No. 307, 311.  In light of the evidence,

particularly Henry's admissions to law enforcement, it is difficult to image how any defense attorney

could have been more effective.

3. **Counsel was not ineffective for failing to argue there was no jurisdiction for the conspiracy charge, because the essence of that charge was an agreement.**

Henry has argued that Mr. Capozzi was ineffective in failing to argue that there was no federal

jurisdiction to convict Henry for conspiracy to sexually exploit a minor in violation of 18 U.S.C.

§§ 2251(a) and (e) as alleged in count one of the superseding indictment.  Henry correctly notes that his

expertise "is in computers, not law."[8]  Having worked in concert with Mr. Capozzi to devise a trial

strategy that sought to shift responsibility for the sexual exploitation of a minor to his wife, Henry now

seeks to argue that there was no jurisdiction for the most consequential charge in the case to proceed.

Part of the defense before, during, and after trial was that none of the material that Henry and his wife

created crossed the threshold of being sexually explicit.  The court correctly ruled, in denying Henry's

motion for new trial based on an alleged insufficiency of evidence for count one, that when an individual

is charged with a conspiracy offense, "[t]he agreement is the essence of the crime."  *United States v.*

*Iriarte-Ortega,* 113 F.3d 1022, 1024 (9th Cir. 1997).  Moreover, the court noted, conspiracy to violate

18 U.S.C. § 2251 does not require that an overt act be committed for the crime of conspiracy to be fully

accomplished.  *United States v. Grovo,* 653 Fed. App'x 512 514 (9th Cir. 2016).  The court correctly

instructed the jury that the government was required to prove beyond a reasonable doubt that: 1.) there

was an agreement between two or more persons to commit the crime of sexual exploitation of a minor;

and 2.) the defendant became a member of the conspiracy knowing at least one of its objects and

intending to accomplish it.  Dkt. No. 241 at 34.

Logically, if the government does not need to prove the commission of any particular overt act,

because the crime is completed when an agreement is made, it is also not necessary to prove that a

particular camera was used or that a particular image depicted a minor engaged in sexually explicit

---

[8] Dkt. No. 348 at 18, line 6.

conduct. The court correctly ruled that Henry's "conviction on count one does not stand or fall depending upon whether the images of A.T. he was successful in capturing portrayed sexually explicit conduct." Dkt. No. 306, at 5, lines 11–13. Similarly, the conviction on one count did not require the government to prove that any particular camera – or one produced outside of California – was used during the conspiracy. The criminal act was the agreement to commit the offense, regardless of whether, or how, the defendant actually created sexually explicit materials. *See United States v. Johnston*, 789 F.3d 934, 940–41 (9th Cir. 2015).

Mr. Capozzi has stated that "Count One charged a conspiracy . . ." and the issue "was whether or not there was an agreement to commit the illegal act as alleged. I argued against any evidence of an agreement however, the jury based upon the overwhelming circumstantial evidence determined there was an agreement." Capozzi Declaration at 2, lines 4, 13–16. Mr. Capozzi also stated that he "did cross examine Officer Hively . . . and had evidence excluded as to his belief as to which camera was used and whether that camera was manufactured outside of California." Capozzi Declaration at 2:11–13. Defense counsel is correct that there was ample evidence that Adam and Angele Henry entered into an agreement to sexually exploit A.T. Videos from the bathroom showed the couple setting up a camera together, making test videos, adjusting the camera's angles, and removing obstacles that blocked their ability to record AT. From these videos, the defendant created screenshots of A.T. and saved them in a folder on a password-protected side of his network attached storage (NAS) device with A.T.'s name on it. The jury was permitted to infer the existence of an agreement from the defendant's conduct, including his coordination with a coconspirator. *United States v. Reed*, 575 F.3d 900, 924 (9th Cir. 2009). Here, the defendant's coordination with Angele to surreptitiously record A.T. was sufficient evidence for a rational trier of fact to infer that the two conspired to sexually exploit A.T. That the jury rejected counsel's arguments does not render his efforts ineffective.

4. **Mr. Capozzi was not ineffective for failing to investigate available discovery.**

Henry has argued that defense counsel was ineffective because he failed to investigate available discovery. More specifically he has argued the following: 1.) Angele had all my passwords; 2.) Angele had access to my work computer; 3.) Angele had access to and used an older computer recovered in the garage (Exhibit 16); and 4.) Angele's prurient interests emerged when her sexual life suffered. He has

1  suggested that had Mr. Capozzi introduced some of this evidence, "it would have demonstrated

2  significant doubt as to my culpability on Count 2, far more significant than is necessary to demonstrate

3  reasonable doubt." Dkt. No. 348 at 35, lines 5–6. Not only are Henry's arguments contradicted by the

4  record, they are too speculative to demonstrate any prejudice.

5       The court can review Mr. Capozzi's declaration and see its reference to billing records from the

6  inception of his representation through the jury trial. Mr. Capozzi and his paralegal met with Henry at

7  detention facilities or by phone for a total of 110 hours. Counsel also stated that he and his office

8  received numerous letters and court documents from Henry, many with notations on them, and they

9  spent an additional unknown number of hours going over discovery and trial strategy with him. Capozzi

10  Declaration at 5, lines 4–12; Exhibit G.

11       It is only necessary to review a small sample of some of these written communications from

12  Henry to Mr. Capozzi to see how Henry's most recent allegations are completely meritless. Henry told

13  Detective Hively, during an initial encounter when a state search warrant was served in September 2013,

14  that he systematically downloaded files using Shareaza, a file-sharing program, by entering search

15  terms. As discussed above, during a post-*Miranda* interview, Henry told Hively that it was "quite

16  possible" that if Hively looked at Henry's hard drive he would find something that "shouldn't be there."

17  *See* Henry Interview. Hively questioned Henry further, and eventually Henry admitted that he had

18  found a few files of child pornography while he was sorting through his adult pornography but that he

19  "consistently deleted them." Henry Interview. On further questioning, though, Henry told Hively that it

20  was "possible" that he would find child pornography at his residence and that the child pornography

21  would be "in a locked partition . . . a password protected partition" on his home server. Henry

22  Interview. Henry provided Hively with the password and said that his wife accessed the other folder

23  without a password. Henry Interview. Henry explained that he placed items that his wife might find

24  objectionable in a location from which he would then sort and categorize the material before sharing it

25  with her.

26       Consistent with his initial statements that he had downloaded – albeit in his view inadvertently –

27  child pornography files when searching for legal pornography that he would consume with his wife,

28  Henry told Child Protective Services Office Ruezga, when a federal search was executed at Henry's

residence on November 13, 3013, that "his wife was not part of the charges that were brought about by the incident."[9]  ER 12:14–16.   Although Henry's wife was charged with state law offenses related to video recordings she had made of victim A.T., Henry's wife was not charged with receipt of child pornography that had previously made by other people.

Relatively early in Mr. Capozzi's representation, Henry was suggesting to defense counsel's paralegal in a note dated February 24, 2014, that "**I don't want to stab my wife in the back, and I know it looks bad for her and I don't want to add to it, Mr. Capozzi had mentioned an option of her blaming me and me blaming her.  He's pointed out that she's the one in the video.**"  Henry continued that he hadn't "been able to talk to her, get her side, and **I do believe in innocent until proved guilty.  I also don't believe she would harm a child**."  Exhibit K, page 1, para. 4 (emphases supplied).  He went on to suggest that "perhaps the fact that my wife chatted with [A.T.] via text message and [F]acebook, while I didn't, that most of the minor spent at our house, I was at work, and that my wife was obviously bi-sexual and into women (the video should clearly demonstrate that) combined with the officer's report suggesting my wife was "grooming" her might suggest I wasn't involved with the recordings of the minor in our bathroom."  Exhibit K, page 1, para. 5.  These statements suggest a guilty mind working on the advice of skilled counsel to try to develop a plausible defense.

As time passed and law enforcement provided forensic evidence of when, how, and where child pornography files had been downloaded onto computers and then organized, Henry believed that blaming Angele Henry for everything connected to images of sexual exploitation of minors might be his best path forward.  Henry began to develop lengthy and detailed "To Do" lists for Mr. Capozzi and his paralegal.  As one example, the court can review Attachment L which is an eight-page outline of notes from Henry to counsel which outlined different ideas, strategies, and items that Mr. Capozzi's paralegal believed should be vetted with the retained expert in digital forensics (Marcus Lawson).  At the end, Henry summarized his thoughts with every "single expectation based on training, experience, or facts, does not match me.  Though they all match my wife, if thought about.  They expect hidden computers.

---

[9] The United States did not mention Ruezga's testimony in its closing argument or rebuttal argument.

How better than framing someone else if found?  She didn't have time to set up advanced stuff on my computer so kept it simple.  Nothing was found on work servers not because I was keeping it separate, but because my wife couldn't easily get to it, and had no reason to.  She had access to my desktop." Exhibit N at 8, final paragraph.

Interestingly, of course, by the time of trial, Henry wanted the jury to believe that his wife Angele had gone to his office, sat at his password-protected computer, used a peer-to-peer file sharing program, downloaded child pornography, and then figured out a way to transport it to their residence, only to place it on a computer to which he had access.  She only did this because she was sexually frustrated by being approximately eight months pregnant.  Even though she had plenty of privacy at their home while Henry was at Lock-N-Stitch working, Angele Henry allegedly chose to download illegal content from Henry's work computer, using a file-sharing network which required time for files to completely transfer, and then she took the files home and transferred them to a computer that he used. Obviously, the defense made no sense.  Yet, defense counsel arranged to depose David Silva who worked at the Lock-N-Stich plant with Henry.  Even though Silva could only say that he saw Angele in Henry's office a few times, and never using his computer or typing on his keyboard, defense counsel chose to introduce the deposition testimony at trial.  And defense counsel called Jack Reed and Louise Reed in an effort to bolster Henry's defense.  Dkt. No. 230.  Moreover, as noted below, defense counsel worked with retained expert Lawson to try to corroborate Henry's suggestion that they could blame Angele for the contraband found on Henry's computers, one of which contained material downloaded before he began living with Angele.  But Lawson – to his credit – refused to testify in support of Henry's elaborate story.

The record shows that Mr. Capozzi was very diligent in meeting with Henry, conferring with him about strategy, and presenting Henry's preferred defense at trial.  The jury weighed Henry's testimony, the testimony of other witnesses, and all of the arguments Henry made in his defense. Determining the weight to give to Henry's defense case was within the jury's exclusive province. *United States v. Goode*, 814 F.2d 1353, 1355–56 (9th Cir. 1987).  Just because the jury did not believe Henry's defense does not mean that counsel was ineffective in presenting it.  Henry has failed to demonstrate that Mr. Capozzi's performance in reviewing, and then using, discovery was anything but

thorough.

     5.     **Mr. Capozzi was not ineffective for failing to impeach witnesses.**

Contrary to Henry's claim, defense counsel attempted to impeach Detective Hively and Henry's former wife. Detective Hively testified about finding the Shareaza file-sharing program on multiple computers that Henry had used at his residence and at Lock-N-Stitch, and Henry himself conceded that he had used the program for many years. There was sufficient evidence from which the jury could have inferred that Henry used Shareaza to download child pornography on each device on which it and the file-sharing program were located. Indeed, the government established that Henry had moved two completely downloaded files, at least one of which was child pornography, from a folder associated with Shareaza on his work computer onto his home network on the morning of the first search warrant. During his cross-examination, Henry was not able to name any other person who might have been responsible for that illegal activity. Defense counsel cross-examined Detective Hively about his prior grand jury testimony referencing LimeWire, a different file-sharing program. Although Mr. Capozzi attempted to impeach Hively about inconsistent opinions on use of LimeWire, there was no real inconsistency to exploit. Dkt. No. 334 at 76–83.

Henry's complaint about a perceived ineffective cross-examination of Hively about the location of a macrame plant, hidden camera, and operating system on an old computer cannot support an argument that defense counsel was ineffective. None of the points that Henry has now focused on are material to whether he agreed with his wife to sexually exploit a minor by creating visual depictions of her. Nor do they detract from the overwhelming evidence that supported his conviction on the conspiracy to sexually exploit a minor charge. Henry and his wife set up a hidden camera in their bathroom and took test videos to make sure the camera worked. The hidden camera videos also showed Henry and his wife working together to improve the quality of their bathroom videos, often shortly before A.T. came to their house and used the bathroom where the camera was hidden. Hidden Camera Videos Ex. 26.1, 26.2, 26.3; SER 216:19–218:14. For example, A.T. used the bathroom to change clothes but a curtain blocked the view of her. Hidden Camera Videos Ex. 27.1; SER 220:12–221:18. To fix the problem, Henry and his wife took the curtain down, and the same day they removed the curtain, A.T. came over to Henry's residence, used the bathroom, and twice changed clothes in the

1   bathroom.  Hidden Camera Videos Ex. 27.2, 27.3; SER 340:24–341:19, 223:2–224:1.

2          In another hidden camera video a few weeks later, a bright light blocked the view of A.T. as she

3   used the bathroom.  Hidden Camera Videos Ex. 27.5; SER 224:3–225:5.  To fix the problem, Henry and

4   his wife installed a window shade and tested the camera to make sure the glare would no longer block

5   the video.  Hidden Camera Videos Ex. 26.5, 26.6.  Two days later, A.T. came to Henry's residence and

6   changed clothes in the bathroom three times.  Hidden Camera Videos Ex. 27.7, 27.8, 27.9.  The third

7   time she used the shower, got out, and turned to the camera entirely naked.  Hidden Camera Videos Ex.

8   27.9  Henry created a screenshot of that video and placed it in a folder named for the victim on the

9   password-protected partition of his network.  SER 253:16–254:10.  Then later in the afternoon, he

10  rummaged through A.T.'s clothes in the bathroom and held them up for the camera.  Bathroom Videos

11  Ex. 27.10.

12          And there was abundant evidence for the jury to conclude that he was the person responsible for

13  receiving visual depictions of a minor, including 25 child pornography video files that were added to a

14  computer hard drive on August 20, 2010, before Angele Henry was living with the defendant at their

15  Burman Drive residence.  The defendant's own testimony established that he did not even see Angele in

16  person for the first time until the end of 2009 when she visited for about one week while he was still

17  married to and living with a different woman.  He also testified that Angele would usually stay at a

18  motel when she began visiting the defendant.  Dkt. No. 335 at 85–86.

19          Similarly, Mr. Capozzi did cross-examine Henry's ex-wife Rebecca Jackson.  The government

20  elicited direct testimony that she never gave Henry consent to surreptitiously record her taking a shower

21  in the master bathroom of a house that she shared with Henry.  Dkt. No. 334 at 52.  Mr. Capozzi cross-

22  examined her and attempted to impeach her by suggesting that she had given a contrary statement to

23  Detective Hively several years earlier.  But she clarified that although she might possibly have given

24  Henry consent to make a video recording of her in the bathroom when he had a camera visible, she had

25  never given consent to the secret recordings that Henry had made.  Dkt. No. 334 at 55–56.

26          Henry has not rebutted the strong presumption that Mr. Capozzi's conduct fell within the wide

27  range of reasonable representation.  *Strickland*, 466 U.S. at 689.  Counsel cross-examined witnesses and

28  focused on what he believed to be the most important points for potential impeachment.  Henry has

GOVERNMENT OPPOSITION TO HENRY'S 2255        19
MOTION

failed to demonstrate that these efforts were in any way deficient, much less to the point that counsel was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 685.

### 6. **Mr. Capozzi was not ineffective for failing to understand technical issues.**

Henry has complained, alternatively (and incorrectly) that Mr. Capozzi failed to hire a technical expert and that counsel failed to use the technical expert hired to help him with technical issues. Compare Dkt. No. 348 at 62 line 22 with lines 11–12. Not only did Mr. Capozzi retain an expert in digital evidence and computer forensics, he worked with that expert to explore the numerous theories that Henry was positing for his defense. As previously noted, Mr. Capozzi's paralegal spent countless hours with Henry going over notes that he prepared, sharing discovery, and discussing strategies. She made notes on his lists about points that the retained digital evidence expert, Marcus Lawson, should fact check. Mr. Capozzi has addressed this in his declaration. He has provided Lawson's resume which outlines his education (including a law degree) and extensive work as a federal law enforcement agent prior to establishing his own firm that specialized in digital evidence and forensics. Lawson reviewed all relevant discovery and met with Henry several times to go over Henry's defense that his wife had downloaded child pornography on Henry's password-protected work computer before transferring it to Henry's home computer. Capozzi Declaration at 3–4. Mr. Capozzi notes that Henry gave Lawson a "To Do" list on approximately May 9, 2017, which is included as Exhibit D.

Although the red color of Lawson's notes has not survived the scanning and copying process, the substance of his comments has. Some important notes include the following:

- [in response to the request to confirm that Henry never opened, viewed, or edited any contraband files on his work computer] Why would this matter? The allegation is that he used the Lock&Stitch computer to download cp via P2P software. Aside from his unsupported claim that his wife used his computer to do this there is ample evidence to show that is exactly what he was doing.
- [in response to a request to provide information about content on Exhibit 18, a loose hard drive] mixture of cp and adult . . . cp is in a folder titled "kid"

In light of the numerous comments from the expert such as "what does this have to do with what Henry is charged with" and "What difference does this make with what he is charged with?" it appears that Mr. Lawson did not believe that Henry's proposed defense had any merit and the To Do list was only going to lead to a waste of time and money if he fully completed all suggested tasks.

Indeed, Mr. Lawson sent his comments to Mr. Capozzi's office by e-mail on June 29, 2017.  Mr. Lawson noted that he had discussed with Henry most of the items on the To Do list during their last jail meeting.  Mr. Lawson stated that he made it "abundantly clear" to Henry that he was not going to waste time chasing down "rabbit holes" that had nothing to do with the charged crimes.  Perhaps most significant is his comment and conclusion that Henry "did what he did and if he is willing to own up to it I'll do my best to help minimize the consequences but if he continues along this line that 'the wife did it' there isn't much I can do to help him. "  To reenforce that strong statement, Mr. Lawson added: "If he is willing to admit what he did, I think there are some mitigating things that would help, but as long as he takes this current stand, there is very little I can d[o] to help him.  I will obviously help Tony prepare his cross regardless."  Exhibit E

Henry claims that Mr. Capozzi was ineffective for failing to present the work of Mr. Lawson, but the opposite is true.  Mr. Capozzi has explained that in light of Mr. Lawson's findings and opinions, he told him not to prepare a report.  Had a report been prepared, it necessarily would have been necessary to provide the government with a copy.  The report would have made for a devastating cross-examination.  Indeed, Mr. Lawson prepared a report for the defense attorney working on Angele Henry's case and concluded with this opinion: "although I would agree that there is no question Ms. Henry was complicit in the surreptitious filming of unwitting guests in the Henry home, it appears that many of the file creation dates on these videos that this behavior originated with Mr. Adam Henry prior to his relationship with Ms. Angele Henry."  Exhibit O.   Despite Mr. Lawson's recognition of the overwhelming evidence of Henry's guilt, he was able to follow through with his professional commitment to prepare both Henry and Mr. Capozzi for their testimony by providing several pages of bullet points that reflected Lawson's expertise applied to his review of the evidence.  Exhibits F, M, and N.  It is clear that Mr. Capozzi was more than diligent in his selection and judicious use of Mr. Lawson in defending Henry despite his refusal to acknowledge the volume and strength of evidence against him.

### 7.  **Mr. Capozzi was not ineffective for failing to introduce evidence.**

Henry has argued that defense counsel was ineffective for failing to introduce three types of evidence: 1.) Henry's ex-wife framed a former husband for sexual abuse of her and their children; 2.) the results of psychological evaluations; and 3.) statements that Henry's co-conspirator spouse had made

to law enforcement. Henry has continued to misrepresent the record of a prior case in which his former wife (and her former spouse) were involved with in Canada. But the record, as well as the declaration and attachments from Mr. Capozzi, prove that – contrary to Henry's current assertions – counsel did attempt to introduce all of the evidence that Henry sought to use.

Henry has alleged that Angele Henry framed her Canadian ex-husband for spousal abuse, sexual abuse, and child abuse, and had this evidence been introduced at his trial, it would have bolstered his defense that Angele framed him. Dkt. No. 348 at 63–64. One problem is that Henry has mischaracterized the proceeding against Angele Henry's former husband in Canada. He has stated that Angele Henry managed to have her husband convicted for spousal abuse, sexual abuse, and child abuse but his conviction was "overturned by the appellate courts in Canada for good cause." Dkt. No. 348 at 64, lines 4–5. It appears that Angele Henry was a complaining witness in a criminal case in which she accused her then-husband of sexual assault. The husband-defendant was convicted after a court trial that largely turned on witness credibility. The appellate court determined that the trial record did not establish that the judge had correctly applied the law in making credibility and other findings. So the appellate court vacated the conviction and ordered a new trial. Exhibit H. Mr. Capozzi also obtained records related to a separate criminal proceeding in which the same defendant was exonerated of an assault against a child allegation. Exhibit I.

Mr. Capozzi researched the proceedings, obtained court records, reviewed them, and then determined – correctly – that they were not relevant to issues in Henry's case. Capozzi Declaration at 5–6. Nonetheless, he attempted, on Henry's behalf, to depose Angele's former husband in Canada to obtain and preserve potential trial evidence, but the district court ruled that the evidence was not relevant to issues in this case. Dkt. No. 321 at 10–14. Henry still has not outlined how any evidence from any proceeding in Canada would have been relevant to any issue in his case. And more importantly, he has not demonstrated how any of that evidence would have been admissible in his trial. A tactical decision by counsel that is not objectively unreasonable, but with which the defendant disagrees, does not constitute ineffective assistance of counsel. *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984); *Hughes v. Borg,* 898 F.2d 695, 703 (9th Cir. 1990). Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Counsel's strategic decisions

made after thorough investigation of the law and facts are virtually unchallengeable. *Id.* at 690. Henry has failed to meet his high burden in providing ineffective assistance of counsel as alleged on these grounds.

Mr. Capozzi also unsuccessfully sought to compel testimony from Angele, but she invoked her Fifth Amendment privilege against self-incrimination at a pretrial hearing on April 30, 2017. Dkt. No. 125. And contrary to Henry's assertion, Mr. Capozzi attempted to introduce the results of various tests and examinations that doctors prepared as part of counsel's representation of Henry. As Mr. Capozzi states in his declaration, he filed numerous in limine motions to admit testimony from at least four different psychological experts. Counsel has referenced docket entries 99, 119, and 194 and provided docket entry 94 as confirmation of those efforts. Exhibit J. Mr. Capozzi's efforts were actually more extensive, as he convinced the court on June 26, 2017, to delay its rulings on the defense effort to introduce expert testimony so that he could update reports. Dkt. No. 142 at 48–52. Mr. Capozzi then filed another notice of proposed expert witness testimony on August 7, 2017. Dkt. No. 144. The court then conducted another hearing related to the defense proposed experts on September 29, 2017, during which the defense withdrew its effort to present testimony from Dr. Terrel and the court tentatively precluded the testimony from Doctors Malinek and Trompetter on relevance and Rule 403 grounds. Dkt. No. 166. Mr. Capozzi obtained a supplemental report from Dr. Seymour and submitted that with notice of proposed testimony on October 12, 2017. Dkt. Nos. 173–75. The court conducted another hearing on October 16, 2017, and precluded the proposed report and testimony on relevance and Rule 403 grounds. Dkt. No. 188 at 15–19. Henry did not challenge the district court's correct evidentiary rulings on direct appeal, so he has waived those issues in this proceeding. Collateral review in a habeas petition is only available where claims are first made on direct review. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). Even assuming the issue were not precluded in this proceeding, the only reasonable conclusion to draw from Mr. Capozzi's efforts is that he made robust efforts to introduce evidence that Henry believed would be helpful to his defense.

8.   **Henry's Claims of Ineffective Assistance of Appellate Counsel Should Also be Denied.**

Henry has alleged that Mr. Capozzi failed to represent him effectively during appellate

proceedings.  More specifically he claims that he "harped continuously on the issue of jurisdiction on Count 1," but Mr. Capozzi didn't raise the issue in his opening brief and only appreciated the significance of the issue when it was time for the reply brief.  Dkt. No. 348 at 74.  Mr. Capozzi has directly refuted these allegations and reiterated that, based on his experience as an appellate lawyer, an argument based on a lack of jurisdiction for count one was not among the strongest on which to focus.  He has stated that he sent Henry a copy of the opening brief and received numerous suggested corrections, but Henry never asked why the brief did not raise a jurisdictional argument for count one.  Capozzi Declaration at 2.  As corroboration, the court can review the two pages of detailed commentary that Henry e-mailed to Mr. Capozzi's paralegal.  Henry stated that he had gone "over the AOB draft with a fine tooth comb, and a few things, I thought I'd bring up, some more important than other."  Nowhere on the list of comments and proposed corrections is any reference to counsel's failure to raise the jurisdictional issue that Henry allegedly had been harping on.  To the contrary, Henry's observations were "more formatting and wording issues than content," so he didn't think they needed Mr. Capozzi's attention.  Exhibit A.   Not until after Mr. Capozzi forwarded to Henry a copy of the defense reply brief did Henry discuss the issue of jurisdiction, but there was no discussion of why that issue hadn't been raised earlier.  Exhibit B.

Putting aside his patent failure of proof that he told Mr. Capozzi to make a jurisdictional argument he now claims would have let him win his appeal, the United States Supreme Court has held that "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."  *Davila v. Davis*, 137 S. Ct. 2058 (2017).   "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger that those actually presented to the appellate court."  *Id.,* citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000).   Moreover, the Supreme Court has held that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Id.,* citing *Jones v. Barnes*, 463 U.S. 745 (1983).   "[B]ut it is difficult to demonstrate that counsel was incompetent."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Mr. Capozzi's declaration and supporting documents confirm that even though the Ninth Circuit

24

did not agree with his appellate arguments, he was not ineffective.  Courts are required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 668, 687–88.  And "in most instances in which the trial court did not rule on the alleged trial error (because it was not preserved), the prisoner could not make out a substantial claim of ineffective assistance of appellate counsel." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017).  And "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998).  Since Henry has failed to demonstrate that this argument was plainly stronger than the many arguments that appellate counsel did raise, his claim should be denied.  *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017).

## B.   No Evidentiary Hearing Is Warranted

Nothing in Henry's motion warrants an evidentiary hearing. The Ninth Circuit has held that courts may deny a request for an evidentiary hearing where the allegations, "viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotations and citations omitted); *see also United States v. Withers*, 638 F.3d 1055, 1062–63 (9th Cir. 2011).  To warrant a hearing, a petitioner must make specific factual allegations that, if true, would entitle him to relief. *Withers*, 638 F.3d at 1062.  Conclusory allegations are insufficient, without more, to warrant a hearing on a § 2255 motion. *See United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).  Moreover, "where the issue of credibility can be 'conclusively decided on the basis of documentary testimony and evidence in the record,' no evidentiary hearing is required." *Shah*, 878 F.2d at 1159 (internal quotations and citations omitted).  "In addition, judges may use their own notes and recollections of the plea hearing and sentencing process to supplement the record." *Id.*  This court should deny Henry's request for an evidentiary hearing, as Henry's claims are contradicted by the sworn statement of Mr. Capozzi with reference to supporting documents or the claims fail as a matter of law.

///

///

**IV.**     **CONCLUSION**

For the reasons stated above, the court should deny Henry's 28 U.S.C. § 2255 motion.


Dated:  February 25, 2022                    Respectfully submitted,

                                             PHILIP A. TALBERT
                                             United States Attorney


                                             /s/ David Gappa
                                             DAVID L. GAPPA
                                             Assistant U.S. Attorney

CERTIFICATE OF SERVICE BY MAIL

The undersigned certifies that he is an employee in the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers.

That on September 25, 2022, I caused to be served a filed copy of the United States' Opposition to Adam Alan Henry's Motion under 28 U.S.C. § 2255 by placing a copy in a postpaid envelope addressed to Adam Alan Henry, at the place and address stated below, which is Henry's last known address, and by depositing the envelope and contents in the United States Mail at Fresno, California.

ADAM ALAN HENRY
REGISTER NUMBER 71064-097
FCI LOMPOC
FEDERAL CORRECTIONAL INSTITUTION
3600 GUARD ROAD
LOMPOC, CA  93436

/s/ David L Gappa
DAVID L. GAPPA
Assistant United States Attorney