# EXHIBIT A

# Whitney Linder

---

| | |
|---|---|
| **From:** | HENRY ADAM ALAN (71064097) |
| **Sent Date:** | Friday, March 8, 2019 11:54 AM |
| **To:** | whitney@capozzilawoffices.com |
| **Subject:** | AOB Revision |

Whitney,

Sorry to hit you with this on Friday, but I went over the AOB draft with a fine tooth comb, and a few things, I thought I'd bring up, some more important than others. I did get the revised AOB email, read through them, so not sure how many of the following points still apply, but going to present them anyway.

These are more formatting and wording issues than content, so probably things you can deal with, rather then sending up to Tony, if that helps. Also, if you could send me a reply at least confirming receipt I'd appreciate it. Still not entirely sure I trust the system, especially with the filing deadline due on Monday.

Here goes, and thanks again.

1. Pg 11 3rd PP "Mr. Ruezga testified as a final rebuttal witness"
   I still don't think he qualifies as a rebuttal witness. The cases you have sent me say that requires him to "rebut direct testimony." Even Drozd noted my testimony only implied it was her, that it wasn't made explicit until Tony made his closing arguments, and never by me. We already know from his motions after quoting the penal code that Gappa's argument will be sine he was a rebuttal witness, it doesn't matter if he was a peace officer. So it feels like giving Gappa a quote from our own AOB referencing him as such will only give credence to his excuse and undermine our appeal.

2. Pg 11 4th PP "Defendant's testimony that it was his wife who had committed these offenses and not him."
   As far as I recall, and from you've said reviewing the transcripts as well as Drozds comments when he ruled, I did not testify that she did it, I testified that I didn't, allowing the implication to stand that she did. Again, maybe avoid giving Gappa something to quote from our own AOB claiming Ruezga was simply rebutting "direct testimony"?

3. Pg 14 1st Line "Under the 5th and 14th Amendments."
   & Pg 17 1st PP "right to be free from compelled self-incrimination under the 5th and 14th Amendments."
   I don't remember my Amendments so well, been a lot of years since Constitution class, but this case of similar facts and Tony a couple times back in Fresno referring to Ruezga both mentioned violations of the 5th and 14th. But the first Issue listed on page 6 of the draft mentions violations of the 5th and 6th. So is it the 6th, 14th, both, what am I missing?

4. Pg 17 4th PP "Under arrested"
   Simple typo.

5. Pg 21 1st PP "asking the Defendant questions while he is under arrest"
   Could be wrong, but the rest of the paragraph is past tense, so shouldn't this be was under, not is under arrest? or is arrest one of those odd cases that change the tense?

4. Pg 25 2nd PP "use the Defendant's statement in rebuttal to impeach the Defendant"
   As mentioned before, as far as I can remember and understand the term, Ruezga's testimony did not actually "impeach" anything I said during my testimony, since you can only impeach explicit statements, not implied ones. This means, as far as I understand it, that Ruezga shouldn't even have qualified as a rebuttal witness.

5. Pg 29 Part III "Comments and cumulative error"
   One thing missing from this section is when Gappa during his closing called Tony a liar. Even Drozd, though he denied our motion on it, ripped into Gappa harder on it than on any other misstatement. When Gappa tried to make excuses that that wasn't what he said, Drozd flat out said his comments were improper, and that he most certainly did call Tony a liar. His ruling that it was a minor issue to me is wrong, since as Ruezga's testimony and

# Whitney Linder

the arguments about it, as well as Pearson's admission when directly questioned by Drozd that the evidence was all circumstantial, that the case was clearly about credibility. Even Drozd said as much, saying the jury "chose not to believe" me. Gappa was obviously aware that's what the case amounted to, again as evidenced by his reliance on Ruezga, but impugning me wasn't enough, so he went so far as to call Tony himself a liar. This was clearly a tactical maneuver, and a blatant violation like that about the core of the case can't be anything but a major error, not the minor and passing "oops" that Gappa claimed and Drozd finally ruled it.

6. Pg 32 1st PP "Det. Hively testified at the grand jury that Item 16, the computer from the garage used Limewire not Shareaza. Det. Hively in one of his reports specifically indicated Shareaza was never used to download..."
    This isn't accurate, though close. Det. Hively's testimony to the grand jury was that the files were downloaded using Limewire, NOT Shareaza. His report on Item 16 (dated approx. May 2015 I believe) was that it contained Shareaza, but NOT Limewire. He analyzed the Shareaza folders, Shareaza's record of search terms, and the file that records the name of every file ever downloaded or shared via Shareaza, and found no contraband or mention thereof in any of them. He summarized this report in an email to Gappa (Also given a Bates number, numbered and dated immediately following the report itself) saying that the contraband found on Item 16 was "downloaded on some other computer." Which statement was never countermanded by any other report or testimony. This puts the lie to not only his closing argument statement, but also his repeated claims after trial during sentencing to get the distribution enhancment added to my charges.

7. Pg 34 1st PP "Det. Hively says 'I need the password for the work computers,' he says 'I'm not going to give it to you unless my boss tells me.'"
    This was a gross misrepresentation, and since you have the quote in here for something else, I figured I'd point it out if you wanted to add fuel to the fire. If you read the transcripts or watch my interview, I told Det. Hively that it was a company password, and not mine to give. I asked to see the search warrant or to get permission from my boss. Det. Hively responded that he wasn't even sure they HAD the search warrant, and got my boss, who OK'd it. I immediately rattled it off. Later when asked for my home passwords, since those were mine to give, I gave them without hesitation.

I hope this helps, please let me know,
Adam

# EXHIBIT B

| | |
|---|---|
| From: | HENRY ADAM ALAN (71064097) |
| Sent Date: | Saturday, October 5, 2019 10:35 PM |
| To: | whitney@capozzilawoffices.com |
| Subject: | Quick question |

Hope you're having a good weekend.
I had a question about the jurisdiction argument. During Gappa's reply, he said there was enough for the Jury to infer jurisdiction based on the Canon. Tony replied saying inference isn't enough, you have to have beyond reasonable doubt. Even more than that, the judge specifically told the jury to disregard that evidence, so there wasn't anything for the jury to base an inference on in the first place. With that testimony kicked out, there was absolutely no evidence establishing jurisdiction presented anywhere during the trial. Gappa waved his hand at the evidence cart during closing and said something, but again, that's not evidence, doesn't count. So on that one, clear rule of law should kick in double jeopardy if the appeals court overturns it. That's on one charge, there's always the other they might possibly retry on, of course.

Is that logic correct? Since I was held all those years in pretrial in spite of pretrial service's recommendation of release, which Gappa bowled over based on the claim that I was a danger because of the charge he had no jurisdiction for.... Will that lend itself to a false imprisonment claim to try to recoup some of my wages and financial losses?

Is it worth Tony pointing out to the appeals court I've spent all this time in custody based on a charge they apparently had no jurisdiction for?

Thanks
Adam

# EXHIBIT C



**GLOBAL COMPUSEARCH, LLC**
*E-Discovery & Digital Forensics*

509.443.9293
225 W. Main Street, STE 100
Spokane, WA 99201
info@gcsforensics.com

Palm Springs, CA 760.459.2122 | Sacramento, CA 916.760.7362 | Portland, OR 503.542.7448

# Curriculum Vitae
## Marcus Lawson J.D.

## ACADEMIC TRAINING

**Pepperdine University School of Law:** Juris Doctor, 1983

**Portland State University: Bachelors of Science:** Administration of Justice, 1980

**Portland State University: Adjunct Professor:** Administration of Justice, 1988/89

## POST ACADEMIC TRAINING

Special Agent Basic Training: Federal Law Enforcement Training Center: Glynco, GA
U.S. Secret Service Special Agent Academy: Beltsville, MD
Drug Enforcement Administration Special Agent Academy: Quantico, VA
U.S. Customs Service Special Agent Academy: Marana, AZ
Clandestine Lab School: Drug Enforcement Administration: San Diego, CA
Special Agent Undercover School: Federal Law Enforcement Training Center: Glynco, GA
Internet Crime & Computer Forensics School: National Consortium for Justice Information and Statistics: Sacramento, CA
Computer Forensics Training Courses (modules 1 through 4): Key Computer Services, Inc.
Computer Futures Inc/Mindleaders Inc.
Sun Microsytems Inc. SunLearningCenter
Knowledge Solutions LLC
T3i Inc.
Intense School, CCE Boot Camp: Applied Computer Forensics/FTK Tool Kit
Computer and Enterprise Investigations Conference

## PROFESSIONAL EXPERIENCE

**President, Global CompuSearch LLC** (Spokane WA, Portland OR, Sacramento CA, Palm Springs CA offices)

Provides forensics investigations, consulting and training on legal issues related to digital evidence in the areas of family law, business litigation, criminal issues and employment matters. Clients include the United States Army, Navy, Air Force, Marine Corps, Coast Guard, Federal and State Public Defender Offices throughout the United States and private attorneys throughout the United States. Drafts affidavits and declarations in support of client motions for access to digital evidence.. Testifies on behalf of client motions for access to digital evidence.

1

Responsible for the overall supervision and forensic findings of examiners employed by the company. Offers expert testimony in areas of expertise in state, military and federal court.

Maintains an updated knowledge of Internet applications, Internet technologies and forensic tools in support of client needs. Maintains an updated knowledge of case and statutory law relevant to client needs. Provides training to family law, criminal and other attorney groups in the areas of digital evidence and digital forensics.

**Senior Special Agent, Department of Homeland Security,** Astoria OR and Spokane WA Resident Agents Office

Investigated and performed undercover in cases of fraud, narcotics, weapons violations, terrorism and child pornography. Specialization in the investigation of child exploitation cases for 11 years. Coordinated investigations with the Royal Canadian Mounted Police, Scotland Yard, German Polizei, Naval Investigative Service, Army Criminal Intelligence Division, Federal Bureau of Investigations and state and local police agencies. Recognized state, federal and international expert witness in the following areas: Internet undercover techniques, Internet child exploitation investigations, Internet investigations, computer evidence in child pornography cases, pedophiles and pedophile behavior. Received and provided training on issues related to Internet crime, child pornography and child sexual abuse. Coordinated training seminars training state and local law enforcement personnel. Assisted in the creation of the (now) Department of Homeland Security Cyber Smuggling Center in planning. Testified before the Oregon legislature on issues pertaining to the drafting of child pornography legislation. Represented U.S. Customs child pornography investigative efforts in numerous print media and television interviews including NBC Nightly News, MSNBC, The Montel Williams Show and BBC Television.

**Special Agent, Drug Enforcement Administration,** Los Angeles CA Field Office

Conducted and coordinated criminal investigations resulting in arrests and prosecutions for violations of federal narcotics laws. Acted as an undercover agent and acted as case agent in cases where others acted as undercover agents in high level narcotics transactions. Wrote affidavits for search and arrest warrants and testified as both case agent and witness in federal prosecutions for narcotics violations.

**Special Agent, United States Secret Service,** Los Angeles CA Field Office

Provided Executive Protection to the President and Vice President of the United States and their families as well as visiting foreign heads of state. Coordinated as case agent criminal cases in the area of counterfeit negotiable instruments, credit cards and identifications. Wrote affidavits for search and arrest warrants and testified as both case agent and witness in federal prosecutions.

## PROFESSIONAL PRESENTATIONS:

Magistrate Judges Conference, Boise ID - May 2013
District Judges Conference, Boise ID - January 2013
Federation of State Medical Boards Conference, New Orleans LA - October 2012
Federal Public Defenders CJA Panel Conference, San Diego CA - May 2012
Eastern District of California CJA Panel Training, Sacramento CA - October 2011
Annual Connecticut Judicial Conference, West Haven CT - June 2011
Idaho Association Criminal Defenders Lawyers, Sun Valley ID - March 2011

2

Defense Counsel of the Marine Corps Conference, Miramar AFB CA - February 2011
WSSDA Annual Conference, Seattle WA - October 2010
Washington Society of CPA's, Spokane WA - October 2010
Air Force Judge Advocate General School, Maxwell AFB AL - October 2010
Federal Public Defender District of Oregon, Eugene OR - April 2010
Federal Public Defender District of Oregon, Medford OR - April 2010
Federal Public Defender District of Oregon, Portland OR - February 2010
Federal Public Defender District of Oregon, Portland OR - February 2009
Washington School District Personnel Conference, Spokane WA - June 2009
Oregon Chapter of the American Academy of Matrimonial Lawyers, Portland OR - April 2009
Washington Association of Legal Investigators (WALI) Spokane Chapter - 2007, 2008, 2009
Naval Justice School, Newport, RI. - May 2008 & 2009
Spokane Bar Association - January 2008 & 2009
OCDLA - Oregon Criminal Defense Lawyers Association - 2008 & 2009
Conference of The American Institute of Certified Public Accountants & American Academy of Matrimonial Lawyers, Las Vegas NV - May 2008
WestLaw CLE Seminars - May 2007- 2010
Association of Certified Fraud Examiners - November 2006
National Association of Legal Professionals - October 2006
South Bay Bar Association - September 2006
Idaho Criminal Defenders Association Sun Valley ID - March 2006
Department of the Air Force, AFLSA, Circuit/Area Defense Counsel, San Antonio, TX - 2004, 2005, 2006.
Criminal Defense Attorneys of Michigan - 2004
Missouri State Public Defender System, Lake Ozark, MO - 2002
National Child Abuse Defense & Resource Center Conference, New Orleans, LA - October 2002

# EXHIBIT D

# MEMORANDUM

===================================================================
**TO:** Tony Capozzi
**FROM:** Whitney Linder
**DATE:** May 9, 2017
**RE:** Adam Henry Notes – Lawson To Do List
===================================================================

Tony,

Below is an excerpt from the February 28, 2017, letter from Adam with a "To Do List" for Marcus Lawson.

TO DO LIST: **(Expert)**

1. My work computer contained 2 hard drives, 1A and 1B. Have expert confirm presence of video editing software, AVS. Also, if possible, that it was never used to open, view, or edit any of the contraband files.

   6/28/2017 global: Why would this matter? There are no allegations that Henry used his work computer to edit files taken from his residence. The allegation is that he used the Lock&Stitch computer to download cp via P2P software. Aside from his unsupported claim that his wife used his computer to do this, there is ample evidence to show that is exactly what he was doing.

2. Also from 1A and 1B, pull the settings from the P2P program of both drives. Confirm that shared folders have been removed, and that upload bandwidth and simultaneous upload settings have been crippled.     6/28/17 global: Done

3. My home PC, item 3. Confirm that it is my PC, easiest way is probably that my work email is configured in outlook. Also check outlook account settings to show I had built company email server to use a self-signed SSL certificate to create an encrypted connection tunneling through HTTPS. That this shows an advanced knowledge and awareness of encrypted communications that was employed for email, when the contraband was not hidden or obscured at all.     6/28/2017 global: This accomplishes nothing and is a waist of billing hours.

4. Also from 3, confirm my PC had no attempts to find, look at, or talk to minors through Facebook, Google searches, etc.     6/28/2017 global: There is no need for this, there is no allegation that Henry was attempting to locate minors online.

5. Also from 3, the porn terms I had entered in P2P are as follows in order:

   "Brandi Belle", "mother-daughter", "mother daughter fuck", "ffm", "amatuer", "teen", and "libertines".

   The police have claimed that the "mother daughter" and "teen" terms are CP related. ON my PC, item 3, my wife and I had looked at a website called searchgalleries.com. The expert should be able to confirm from the web history that all these terms are adult, legal subjects found in categories on this site, or websites found through it. The "mother daughter" website is also "ffm" related, which is why the search terms were entered

:wl

together. Hopefully this should show that not only are they adult subjects, but that I **knew** they were adult and was not looking for CP.   6/28/2017 global: This is a misnomer. It only takes into account the most recent searches still remaining in the P2P logs. It does not take into account any searches prior to the date of seizure.

6. Items 14 and 15. Need the "in use" date ranges from the drives when they were installed, and when they were last used.   6/28/2017 global: Why, what is the point of this?

7. Items 4 and 5. Need to confirm that these were my wife's PC's. She was migrating from one to the other. Confirmation can probably come from outlook email accounts, facebook accounts, etc. Need to confirm presence of the following, if able to:   6/28/2017 global: Again, why? what difference does this make?
   a. Website design software, used to build her business website;
   b. Advanced excel spreadsheet she used to administer "walking club" at local elementary school;
   c. Accounting software she used for the business;
   d. Pamphlets, flyers, etc. in word and perhaps elsewhere she'd made for her business;
   e. Anything else either demonstrating her above-average computer skill set or that the art/daycare business was hers, not mine, including the contact information on the page she built. One of these also had an alternate login for "Alyssa", which one?

8. Also items 4 and 5, web history, she has said she liked bondage and other "out there" subjects, did she look at that kind of stuff? Did she have her "S&S" folder on either or both PC's?   6/28/2017 global; Again, why, what diffidence does this make? It has nothing to do with what Henry is charged with.

9. Also item 5 – police reports say that PC had "adult pornography related to the case" found on it, but doesn't say what or where, need to locate, ascertain what exactly it is, and **where else** it can be found. Is it only here and in the "Aurrora" folder on the netgear? Is it also on a loose hard drive? Everywhere else it can be found.   6/28/2017 global: No, waist of time, what does it accomplish in terms of the charges?

10. Item 18 – a loose hard drive. What were the files put on the drive? What CP was found on it, and from where? Did it also have AT videos on it?   6/28/2017 global: mixture of cp and adult ... cp is in a folder titled "kid"

11. Item 13. Need the "In use" date range, when it was installed, when it was last used.   6/28/2017 global; Why? How does this effect the allegations?

12. Item 16 - 2007-2010 PC. Met and talked to wife on this computer, through game called "World of Warcraft." Install folder is "program files\wow" I believe. She played two different characters, one named "Silviah" and the other "Aurrora." I have no idea what if any communications the game saves, but see if you can find chat logs, contact lists, something that links the two names either to my wife, to each other, or both.   6/28/2017 global: Why? What does this have to do with Mr. Henry's charges?

13. Items 8, 9, and 13. All three should have manually configured IP Settings with no gateway IP address configured. Can get screenshots of the three, and also confirm that none contain any configured/installed communications software. IE, No P2P, IM, configured email, etc.   6/28/2017 global: Why, what difference does this make to his charges?

:wl

> 6/28/2017 global: What difference does this make with what he is charged with? So what if this computer streamed videos, that has nothing to do with the allegations.

14. Item 9 – Netgear NAS. The police have alleged that the password-protected "Aurrora" folder existed to hide CP from my wife while she used the "Media" folder. Need expert to confirm as much of the following as possible:
    a. The netgear is not only a network storage device, but a media streaming device.
    b. The "Media" folder was a manufacturer installed folder set-up to stream media to devices like our DVD player, so they could be played on the T.V. This is why the "media" folder was a duplicate of files in the Aurrora folder. Movie files were copied to it from the "Aurrora" folder for streaming purposes, and should have contained nothing but.
    c. The "Aurrora" folder on the other hand was essentially the "master." It should have contained all the media from the media folder as well as pretty much everything else-document back-ups, mp3 back-ups, email back-ups, even whole hard drive back-ups, our home movies, vacation pictures and movies of us and the kids, etc. All this plus the low percentage of files that actually were CP should show that the Aurrora folder was not the hidden CP storage they are alleging.

15. Also, on item 9. The netgear, under the "Aurrora" share, should have a folder called "Silviah" containing samples of my wife's exhibitionism, including one instance with her wearing the same corset I've seen in discovery screenshots of her and A.T. Can we get descriptions and file dates?   6/28/2017 global: Why, what does this have to do with what Henry is charged with?

16. Also on Item 9. In the same "Silviah" folder should be a home sex movie of my wife and I from August or September 2010. If the camera pans to the back of the room, it should show item 16 (2007-2010 PC) on the floor by my desk. If it does, a screenshot of the PC and a confirmation of video date.   6/28/2017 global: Again, what does this have to do with anything?

17. Also on item 9. During my interview I mentioned find bad stuff, especially in folders given to me years ago in folders I never brought myself to go through or just flat deleted. The police are alleging these comments referred to CP. One of these folders, probably originally given to me 15 years or so ago now in the "Aurrora" share, would be called "hmm" or something similar. It should contain a hodge podge of files, specifically looking for animal related stuff (should NOT be any bestiality, but I'd said "animal stuff" in my interview and they ran with it, would like the option of clarifying) as well as videos of self-mutilation, which are what I was referring to with police when I'd described bad stuff I would delete whenever I found.

18. Also on Item 9 as well as item 13 – On the netgear in the "Aurrora" share should be a folder called "Rebecca Alvernaz" between it and item 13 should have videos of my ex and I ranging from 2006 to 2010 showing she was not exactly camera shy, quite the opposite. Need date of video on bates 1083 in Lawson's report for wife when he says ex is "obviously aware" of camera. Intent of all this to show that camera was not setup without her knowledge and participation. It was not intended to be a surreptitious camera, though 2 other unknowing people did get recorded. Get file names from 2006 videos and dates.

:wl

19. Also in Item 9. At one point my ex texted me photos of herself topless. They can be found in the "Rebecca Alvernaz" folder. This was what was done with photos of people I was interested in. I never saved or stored any of the phone pics my wife sent me or that the police are alleging I took with bad motives. Also, an examination of the videos/pics that I am responsible will show a marked interest in heavy set, darker haired women about 5'6" in general, and my approximate age. I very clearly have a "type" that I tend to gravitate toward if this can be demonstrated. A.T. and the others my wife noted were not of this mold.

20. Phone logs, if we get them. Overall, look for stuff showing I'm not interested in minors, ever sought to be around them, and edits, omissions, or selective representation police did to insinuate. Specifically, show I never had direct contact with any of the Todd family other than the father. My wife was the only one to communicate with the victim, did so on an almost daily basis, in a manner befitting a teenager, rather than a 30-year old. That after the first search warrant, when they were alerted to the case, she tried to re-establish contact through the victim and her mother. Also, I believe wife had quite a few pics on her phone, need to go through them.

21. Need a list of files compiled which shows files with terms that might be considered CP related in the file name, but legal content.

22. Need a list of all the evidence items where the "S&S" folder shows up, contents are bondage videos and wife's website subscription to "sex and submission." Need evidence item number where found folder path, and screenshot of adjoining folders where found.

23. Date when 2005-2008 "Kid" folder was copied or downloaded to Item 16.

24. When were the Child Porn search terms entered vs. adult search terms – i.e. what is timeline when did it start?

25. Adam has some concerns about the netgear device mentioned on pages 828-829. Apparently the device states that 79% of 5,543 GB (approx. 5TB) is used, but his account only shows 2.1TB is used. He believes the unaccounted for usage is under the Admin account. Is there any way to show this? Is there any way to show dates and times items were added under the admin account?

26. Also, on page 1109 Det. Hively talks about the "P2P file sharing program locations" but according to Adam the items listed are the applications that were downloaded in order to install the program on the computers. In his words, "we have to show the difference between an installed program and an installed file." Any help with this would be appreciated.

:wl

# EXHIBIT E

| | |
|---|---|
| **From:** | Marcus Lawson <marcus@gcsforensics.com> |
| **Sent:** | Thursday, June 29, 2017 11:55 PM |
| **To:** | Whitney Linder |
| **Cc:** | Anthony Capozzi; Mary Isaak |
| **Subject:** | RE: Adam Henry |
| **Attachments:** | Newest Memo re to do list 5 9 17.pdf |

Hello Whitney,

Most of the things on this list were discussed with Mr. Henry at our last jail conference. I made it abundantly clear to him at the time that with the limited hours I have been assigned on his case I was not going to waist them chasing down rabbit holes that have nothing to do with his charges. Hence my comments on his "to do" list.

He did what he did and if he is willing to own up to it I'll do my best to help minimize the consequences but if he continues along this line that "the wife did it" there isn't much I can do to help him. If he is willing to admit what he did, I think there are some mitigating things that would help, but as long as he takes this current stand, there is very little I can d to help him.

I obviously will help Tony prepare his cross regardless.

Marcus

**MARCUS LAWSON**
Cellular (509) 863-5052
marcus@GCSForensics.com

Confidentiality Notice: This e-mail is intended only for the personal and confidential use of the individual(s) named as recipients and is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. It may contain information that is privileged, confidential and/or protected from disclosure under applicable law including, but not limited to, the attorney client privilege and/or work product doctrine. If you are not the intended recipient of this transmission, please notify the sender immediately by telephone. Do not deliver, distribute or copy this transmission, disclose its contents or take any action in reliance on the information it contains.

**From:** Whitney Linder [mailto:whitney@capozzilawoffices.com]
**Sent:** Tuesday, June 27, 2017 8:31 AM
**To:** Marcus Lawson
**Cc:** Anthony Capozzi
**Subject:** FW: Adam Henry

Marcus,

Tony would like to know where you are at in the to do list from Adam's notes in February and the second to do list from May. I've attached both for you.

Thanks!

Whitney

**From:** Whitney Linder [mailto:whitney@capozzilawoffices.com]
**Sent:** Wednesday, March 22, 2017 2:05 PM
**To:** Marcus Lawson (marcus@gcsforensics.com)

1

# EXHIBIT F

From: **Marcus Lawson** marcus@gcsforensics.com
Subject: Re:
Date: May 19, 2017 at 1:54 PM
To: Anthony Capozzi capozzilaw@aol.com



Yes, that is correct. As well as helping you in drafting questions for Adams direct testimony.
I believe you indicated you wanted one more jail visit before trial with me present correct?
If so, I think it would be helpful to prepare Adam by my "crossing" based on the answers to your direct questions.
On Fri, May 19, 2017 at 1:48 PM Anthony Capozzi <capozzilaw@aol.com> wrote:
> Give me an update of your review of the evidence.. Told the gov you were not going to do a report. You would only be helping with the cross examination of the gov witnesses and possibly testify regarding their testimony. Am I correct?
>
> Tony

--
Sent from Gmail Mobile